UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MCCROBIE

          Plaintiff,

v.                     Civil Action No. _____

PALISADES ACQUISITION XVI, LLC AND
HOUSLANGER & ASSOCIATES, PLLC AND
TODD HOUSLANGER

          Defendants.
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

In 2007, a company called Centurion Capital Corporation obtained a default judgment against Christopher McCrobie. Mr. McCrobie had no knowledge of the lawsuit, or the default judgment, as service was achieved by posting to an old address. Seven and a half years later, Todd Houslanger ("Mr. Houslanger"), an attorney acting on behalf of Palisades Acquisition XV, LLC ("Palisades"), forwarded an income execution to Mr. McCrobie's employer.

Beginning in the early to mid-2000's debt buyers and creditors began flooding state courts with lawsuits that the courts were ill equipped to efficiently supervise.[1] For instance, according to the Boston Globe more than 60 percent of the 120,000 small claims cases filed in Massachusetts in 2005 were filed by debt collectors.[2] As of June 2008, there were 119,000 civil

---

[1] FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE – A WORKSHOP REPORT
(2009), p. 55, available at https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf (last visited April 22, 2015).

[2] *Id.* (citing Beth Healy, A Debtor's Hell: Part 2, A Court System Compromised, BOSTON GLOBE, July 31, 2006, available at
http://www.boston.com/news/special/spotlight_debt/part2/page1.html.).

1

lawsuits against alleged debtors pending in Chicago's Cook County Circuit Court.[3]  12,000 such suits were assigned to a single judge in that circuit—roughly twice the number of debt collection lawsuits on that judge's docket one year previously.  Judges and consumer reasonably expressed concern to the FTC that the sheer number of collection lawsuits posed a threat to the judicial system's ability to handle not only the collection cases themselves, but to attentively handle other matters.

A staggering number of the flood of collection suits ended in default.  In 2007, 60,699 out of the 130,000 collection lawsuits filed in Cook County, Illinois ended in default judgment.[4]  A 2013 study by the New Economy Project concluded that 62 percent of lawsuits initiated by debt buyers in the state of New York end in default judgments being entered against consumers.[5]  That same study found that in Buffalo City Court, 54 percent of all collection lawsuits filed in 2011 resulted in default judgments being entered, and answers were filed in only 568 of 11,747 cases.[6]

The unusually high default rates should not be interpreted to mean that the flood of lawsuits which debt buyers have initiated in state court have merit.[7]  Instead, a large driver for

---

[3] *Id*. at 55-56 (citing . Ameet Sachdev, Debt Collectors Pushing To Get Their Day In Court, CHICAGO TRIBUNE, June 8, 2008, available at http://www.chicagotribune.com/news/nationworld/chi-sun-debtchasers-jun08,0,2426495,print.story.)

[4] *See supra*, n. 3.

[5] The New Economy Project, *The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality*, NEWECONOMYNYC.ORG, p.6, http://www.neweconomynyc.org/wp-content/uploads/2014/08/DebtCollectionRacketUpdated.pdf (last visited April 22, 2015).
[6] *Id*. It was noted that collection industry representatives disputed this claim.  *Id*.

[7] Speaking in the New York Times, Noach Dear, a civil court judge in Brooklyn, estimated that "roughly 90 percent of the credit card lawsuits are flawed" because the Plaintiff can't prove "the person owes the debt."  Silver-Greenberg, Jessica, Problems Riddle Moves to Collect Credit Card Debt, NEW YORK TIMES, August 12, 2012, available http://dealbook.nytimes.com/2012/08/12/problems-riddle-moves-to-collect-credit-card-debt/?ref=business&_r=0/.  Similarly, the New Economy Project noted that in 9 out of 10 cases, affidavits from debt buyers were made by persons having no connection to the original creditor.  *See supra*, n. 6 at p. 4.

the unusual default rate in state court collection actions is the fact that consumers are often not served properly. In 2009 the FTC noted that consumer groups reported that consumers "often are not properly served with notice of the debt collection lawsuit."[8] A 2010 follow up to that report noted that, "[m]any consumer advocate and judges who adjudicate debt collection cases stated that inadequate service or improper service occurs frequently."[9]

In any case, a staggering number of default judgments have been issued against New York residents in recent years as a result of suits brought by debt buyers and debt collectors. For a variety of reasons, some of these judgments are never enforced by the judgment creditor.

Palisades buys the rights to judgments, sometimes times years later (and upon information and belief, for pennies on the dollar). Mr. Houslanger has carved out a niche as an attorney who will initiate post judgment remedies on behalf of purported assignees of the original judgment creditor. At Palisades' behest, and at the behest of other similar companies, Mr. Houslanger has initiated post judgment remedies against numerous New York State residents within the past three years. As laid out above, many (if not most), of these people had no knowledge that they have ever been sued, let alone that a judgment has been entered against them.

Mr. Houslanger enforces post judgment remedies on behalf of Palisades (and other entities purporting to be the assignees of judgment creditors) without possessing documentation establishing that Palisades has any right to enforce the judgement he is executing on. Based on Plaintiff's investigation, outlined in more detail in the body of the complaint, it appears as though Mr. Houslanger is initiating post-judgment remedies on behalf of creditors all over the

---

[8] *See* supra n. 3 (citing comments furnished to the Federal Trade Commission by consumer advocates).

[9] Federal Trade Commission, Repairing A Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration,

3

state of New York without proper documentation, and without filing the documentation he has with the court clerk prior to initiating remedies. Mr. McCrobie is just the latest victim of Defendants' unlawful scheme.

Defendants' actions violate the Fair Debt Collection Practices Act in that they are "debt collectors" engaged in collection actions which they have no legal right to pursue. Neither Palisades, nor its attorney and agent Mr. Houslanger and his law firm Houslanger & Associates PLLC, have any right to enforce the default judgment obtained by Centurion Capital Corporation against Mr. McCrobie. More broadly however, Defendants are engaged in an unfair business practice prescribed by New York General Business Law §349. Specifically, Defendants' are initiating post judgment remedies against consumers all over the state of New York without any right to do so.

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this district under 28 U.S.C. §1391(b) in that Defendants transacts business within the Western District of New York and the conduct complained of occurred here.

## PARTIES

4. Plaintiff, Christopher McCrobie, is a natural person residing in the County of Erie and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5. Defendant, Palisades Acquisition XVI, LLC, (alternatively referred to as "Palisades") is a foreign limited liability company organized and existing under the laws of the State of New Jersey and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

6. Defendant, Palisades Acquisition XVI, LLC regularly attempts to collect debts alleged to be due another.

7. Defendant, Houslanger & Associates, PLLC is a domestic professional corporation organized and existing under the laws of the State of New York and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

8. Defendant, Houslanger & Associates, PLLC regularly attempts to collect debts alleged to be due another.

9. Defendant Todd Houslanger is an attorney who is employed by Houslanger & Associates, PLLC. On information and belief he is also the owner of Houslanger & Associates PLLC

10. The acts of the Defendants alleged hereinafter were performed by its employees acting within the scope of their actual or apparent authority.

11. All references to "Defendant" herein shall mean the Defendant or an employee of the Defendant(s).

**FACTUAL ALLEGATIONS**

12. Plaintiff allegedly incurred a credit card debt to Providian Financial. This debt will be referred to as "the subject debt."

13. The subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

14. Plaintiff thereafter allegedly defaulted on the subject debt.

15. Sometime after the alleged default, Providian Financial allegedly assigned the subject debt to Centurion Capital Corporation

16. Centurion Capital Corporation filed an action against the Plaintiff in Buffalo City Court in or about August 6, 2006.

17. The action referenced in paragraph 15 was never personally served upon Plaintiff. Instead, it was served by substitute service (posting and mailing) at an old address of Plaintiff's.

18. Centurion Capital Corporation obtained a default judgment against the Plaintiff in said court on or about March 8, 2007.

19. Plaintiff had no knowledge of the default judgment. The default judgment was never reported against his credit.

20. On or before October, 2014, Palisades retained the services of Houslanger & Associates, PLLC to proceed with post judgment enforcement against the Plaintiff on the Centurion Capital Corporation judgment

21. On or about October 7, 2014, Houslanger & Associates, PLLC forwarded an income execution on behalf of Palisades to Plaintiff's place of employment pursuant to the judgment obtained in the City Court for the City of Buffalo in favor of Centurion Capital Corporation.

22. Prior to the Plaintiff's employer receiving the aforementioned income execution, no assignment was filed in the City Court of Buffalo by Centurion Capital Corporation as judgment creditor to Defendant Palisades.

23. Prior to the Plaintiff's employer receiving the aforementioned income execution, Plaintiff was never provided of any notice of an assignment of the Centurion Capital Corporation judgment to Defendant Palisades.

24. On March 23, 2015 Plaintiff, by and through its attorney, contacted Houslanger &Associates, PLLC, by and through Todd Houslanger. Plaintiff requested that Mr.Houslanger provide a copy of the chain of title proving that Palisades had a right to enforce the default judgment obtained against Plaintiff by Centurion. (*See* Exhibit A). Houslanger & Associates, by and through Todd Houslanger, provided the following documents in response to that request (*See* Exhibit B):

    a. A purported Bill of Sale (signed in duplicates) between Great Seneca Financial Corporation and Palisades Acquisition XV, LLC.

    b. A purported Bill of Sale between Palisades Acquisition XV, LLC and Palisades Acquisition XVI, LLC.

25. None of the documents provided to Plaintiff make any reference to the default judgment obtained against Plaintiff (*See* Exhibit B).

26. None of the documents provided to Plaintiff establish that the default judgment obtained against Plaintiff was ever assigned, much less that the default judgment was ultimately assigned to Palisades XVI, LLC (*See* Exhibit B).

27. On April 22, 2015 Plaintiff contacted Houslanger & Associates by and through Todd Houslanger, and informed it that none of the documents purportedly showing chain of title mention Centurion Capital Corp, or identify the default judgment taken against Plaintiff by Centurion Capital Corp. (*See* Exhibit A).

28. On May 7, 2015 Todd Houslanger responded via email. He reiterated his belief that the documents previously provided on March 23, 2015 was "the assignment." He added that this assignment was for a "pool of matters" in which Plaintiff was apparently included. He stated "[t]his is how they did things at the time of the assignment." (*See* Exhibit A).

29. As a result of the foregoing, it is clear that Defendant Palisades had no legal right to restrain and garnish Plaintiff's wages. There is simply no proof that Palisades ever acquired the judgment which Centurion obtained against Plaintiff in March of 2007.

30. At all times relevant herein, Todd Houslanger and Houslanger & Associates, PLLC were Palisades' agent-in-fact.

31. As a result of Defendants' acts Plaintiff became nervous, upset, anxious, and suffered from emotional distress.

32. Defendants Todd Houslanger, Houslanger & Associates, PLLC, and Palisades are routinely enforcing, or attempting to enforce post judgment remedies regarding judgements entered many years ago, and without documentation sufficient to prove that the Defendants have any right to enforce said judgments.

    a.    Defendants Todd Houslanger, Houslanger & Houslanger, and Palisades XVI, LLC have an established practice of enforcing post judgment remedies many years after the original judgment was taken. *See Okyere v. Palisades Collection*, LLC, 961 F.Supp.2d 508, 510 (S.D.N.Y. 2013) (Noting that a default judgment was taken against the Plaintiff in 2004, and that Palisades, by and through Todd Houslanger, enforced post judgment remedies "[n]early seven years later."); *Musah v. Houslanger & Associates*, PLLC, 962 F. Supp.

2d 636, 637 (S.D.N.Y. 2013) (pursuing post judgment remedies in 2011 for a judgment from 1997).

b. In *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345 (Civ. Ct. 2012), Palisades XVI, LLC (represented by Todd Houslanger of Houslanger & Associates) was noted to be filing assignments of "judgements" with "so many defects" and in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected." *Id*. at *4. Particularly troubling to the court were "fundamental" discrepancies between the "name of the plaintiff and designated counsel in the court file and those on the papers being submitted by [Plaintiffs, including Palisades XVI, LLC and, interestingly, Centurion]." *Id*. While the court ultimately lifted the stay it had previously issued regarding the enforcement of post judgment remedies by Palisades, it noted that any defendant who seeks to vacate a judgment obtained by Palisades or Todd Houslanger, would be entitled to raise the issues addressed in its opinion. *Id*. at *8.

c. In *Colonial Credit Corp. v. Beyers*, 46 Misc. 3d 1221(A) (N.Y. Civ. Ct. 2015), Colonial Credit Corp, an assignee of Bally's Fitness Center, took a default judgment against the defendant in 2005. Roughly seven years later, "Palisades Collection LLC as successor to Great Seneca Financial Corp" filed a notice to change attorneys from Wolpoff & Abramson, LLP to "Houslanger & Associates, PLLC" in June of 2012. *Id*. at 2-3. On December 18, 2012 the court ordered Defendants, including Palisades Collection LLC and Houslanger & Associates, PLLC to provide proof of chain of title, as well as

notice being given to the Defendant. *Id*. at 3. Defendants apparently did not respond to this request. *Id*. Further review of the file by the court revealed that the judgment had already been satisfied in July of 2007. *Id*. The court then ordered Defendants to appear at a Rule 56 conference to "explain why they should not either be held in contempt or assessed costs for filing consents to change attorneys more than five years…after this matter was satisfied." *Id*. at 4. Neither of the Defendants appeared, and simply ignored the court order. *Id*. The court subsequently imposed sanctions against both Palisades, and Houslanger & Associates. *Id*. at 4-5.

    d.    In sum, these cases show that Defendants have routinely engaged in an attempt to collect debts (often including an attempt to enforce post judgment remedies) without documentation sufficient to prove they have any right to collect on the subject debts.

33. Defendant Todd Houslanger's May 7, 2015 email adds further support to the allegation that all named Defendants routinely attempt to enforce judgments many years after the fact, and without documents sufficient proving chain of title from the judgment creditor to Palisades Acquisition XVI, LLC. When confronted with the absence of chain of title any from Centurion to Palisades, Mr. Houslanger simply responded "[t]his is how they did things at the time of the assignment." (*See* Exhibit A). Mr. Houslanger's response is an admission that he is aware that Palisades Acquisition XVI, LLC does not have standing to pursue any post judgment remedies as they cannot produce a proper chain of title for Mr. McCrobie's judgment.

34. Despite such awareness and lack of documentary evidence entitling Defendants to proceed with post judgement collections and utilizing the powers of the Court for post judgment remedies, Mr. Houslanger and Palisades are currently enforcing these judgments anyways.

35. Plaintiff's attorneys previously brought suit against Houslanger & Associates and Todd Houslanger for attempting to enforce post judgment remedies without any legal right to do so in the matter *of Argenteri v. Credigy Receivables Inc. et al*, Civil Action No. 1:14-cv-00425.

36. In that matter, Plaintiff's June 3, 2014 complaint noted that Mr. Houslanger attempted to enforce post judgment remedies on behalf of Credigy, regarding a judgment which was taken by First Select Corporation. (*See* Exhibit C). Mr. Houslanger was subsequently asked by Plaintiff's attorneys to produce documents establishing a chain of title between the judgment creditor and Credigy Receivable. In that case, yet again, there were numerous deficiencies with the documents in Mr. Houslanger's possession (*See* Exhibit D):

    a. Mr. Houslanger provided counsel for Plaintiff with a purported assignment, dated on July 11, 2014. Because Plaintiff filed his complaint alleging that Mr. Houslanger took unlawful postjudgment remedies on June 3, 2014 (Exhibit E), there was absolutely no assignment on file at the time Mr. Houslanger initiated post judgment remedies.
    The purported assignment is signed by only one individual, a Vice President at Credigy who purported to be both a representative of Credigy and the "attorney in fact" for First Select Corporation.

    b.    The assignment Mr. Houslanger provided to Plaintiff, represented that there was $0.00 due on the Judgment, including interest. Thus, by the assignment's own terms, the judgment had been satisfied as of July 11, 2014.

    c.    Accompanying the assignment are a "bill of sale" and a "purchase agreement"—neither of which mention the named Plaintiff in that case. These agreements are from 2002—some twelve years prior to the assignment provided to counsel for Plaintiff. These agreements are also not notarized as is required by Delaware Law.

    d.    In sum, in *Argenteri* Mr. Houslanger failed to provide any documents demonstrating a valid assignment from First Select Corporation to Credigy, and the questionable post-hoc assignment which was self-executed by Credigy (allegedly on behalf of First Select Corporation) admitted that the judgment had been satisfied.

37. Relying on the facts alleged in Plaintiff's complaint, the facts alleged in *Argenteri,* as well as years of knowledge on the part of Plaintiff's attorneys as to the inner workings of the practices of third party debt buyers, Plaintiff alleges that the named Defendants have an established business practice of attempting to enforce post judgment remedies without documentation to prove that they have any legal right to do so.

**COUNT I: A FAIR DEBT COLLECTION PRACTICES ACT CLAIM AGAINST ALL NAMED DEFENDANTS**

38. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 37 above.

39. The conduct of Defendants as described in this complaint violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

    A. Defendants violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(2), 15 U.S.C. §1692e(5), 15 U.S.C. §1692e(9), U.S.C. §1692e(10), 15 U.S.C. §1692f, 15 U.S.C. §1692f(1), 15 U.S.C. §1692f(5) and 15 U.S.C. §1692f(6) by sending an income execution to Plaintiff's place of employment when they were not the proper judgment creditor.

    B. Defendants violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(5), 15 U.S.C. §1692e(10), 15 U.S.C. §1692f (1), 15 U.S.C. §1692f(1), 15 U.S.C. §1692f (5) and 15 U.S.C. §1692f(6) by improperly trying to garnish Plaintiff's wages.

    C. Defendants violated 15 U.S.C. §1692e, §1692e(2), §1692e(5), §1692e(10) and 15 U.S.C. §1692f(1) by representing that Plaintiff owed Palisades Acquisitions XVI, LLC an obligation despite actual or constructive knowledge that this statement was not true, and without any meaningful investigation by Defendants Todd Houslanger and Defendant Houslanger & Associates as to whether Palisades Acquisitions XVI, LLC actually had any right to enforce a judgment against Plaintiff.

40. That as a result of the Defendants' FDCPA violations as alleged herein, Plaintiff became nervous, upset, anxious and suffered from emotional distress.

**COUNT II: A NEW YORK GENERAL BUSINESS LAW §349 CLAIM AGAINST ALL NAMED DEFENDANTS**

41. Plaintiff realleges and reincorporates paragraphs 1-40 of its complaint, as if fully laid out herein.

42. Defendants' actions as alleged in paragraphs 1-40 of this complaint demonstrate broad, consumer oriented conduct because the Defendants have, on more than one occasion, enforced post judgment remedies against consumers without proper documentation. In fact, as alleged in paragraph 33, Defendants apparently know that they lack the proper documentation, but enforce the judgments anyways.

43. Defendants' business practice of enforcing judgments despite the lack of any documentation proving its ability to enforce said judgments is deceptive and fraudulent.

44. Defendants' fraudulent conduct has caused economic and emotional damages to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendants for:

(a) Actual damages;

(b) Statutory damages for pursuant to 15 U.S.C. § 1692k.

(c) Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

(d) Actual and punitive damages pursuant to N.Y. Gen. Bus. §349.

(e) For such other and further relief as may be just and proper.

## VI. JURY DEMAND

Please take notice that Plaintiff demands trial by jury in this action.

Dated: May 12, 2015

*/s/ Timothy Hiller, Esq.*
Timothy Hiller, Esq.
Seth Andrews, Esq.
Kenneth Hiller, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Plaintiff*

6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email:   thiller@kennethhiller.com