UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MCCROBIE, individually, and
on behalf of all others similarly situated,

                                        Plaintiff,

            v.                                      Civil Action No. 15-cv-0018 JTC

PALISADES ACQUISITION XVI, LLC;
ASTA FUNDING, INC.;
HOUSLANGER & ASSOCIATES, PLLC;
TODD HOUSLANGER

                                        Defendants.
_____

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

This is a consumer class action brought on behalf of consumers subjected to Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692, and New York General Business Law §349 (GBL §349). The FDCPA prohibits debt collectors from engaging in abusive, deceptive, unfair, and illegal collection practices.  GBL §349 prohibits deceptive acts or practices in the conduct of any business.

In 2007, a company called Centurion Capital Corporation obtained a default judgment against Christopher McCrobie. Mr. McCrobie had no knowledge of the lawsuit or the default judgment, as service appears to have been achieved by mailing the pleadings to an old address at which he no longer resided. More than seven years later, Houslanger & Associates, PLLC, a law firm acting on behalf of Palisades Acquisition XV, LLC ("Palisades"), forwarded an income execution to the Buffalo City Marshall's Office, who pursuant to their instructions, forwarded it to Mr. McCrobie's employer.

1

Beginning in the early to mid-2000's debt buyers and creditors began flooding state courts with lawsuits that the courts were ill equipped to efficiently supervise.[1]  For instance, according to the Boston Globe more than 60 percent of the 120,000 small claims cases filed in Massachusetts in 2005 were filed by debt collectors.[2]  As of June 2008, there were 119,000 civil lawsuits against alleged debtors pending in Chicago's Cook County Circuit Court.[3]

Approximately 12,000 such suits were assigned to a single judge in that circuit—roughly twice the number of debt collection lawsuits on that judge's docket one year previously.  Judges and consumer reasonably expressed concern to the FTC that the sheer number of collection lawsuits posed a threat to the judicial system's ability to handle not only the collection cases themselves, but to attentively handle other matters.

A staggering number of the flood of collection suits ended in default.  In 2007, 60,699 out of the 130,000 collection lawsuits filed in Cook County, Illinois ended in default judgment.[4] A 2013 study by the New Economy Project concluded that 62 percent of lawsuits initiated by debt buyers in the state of New York end in default judgments being entered against consumers.[5] That same study found that in Buffalo City Court, 54 percent of all collection lawsuits filed in

---

[1] FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE – A WORKSHOP REPORT
(2009), p. 55, available at https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf (last visited April 22, 2015).

[2] *Id*. (citing Beth Healy, A Debtor's Hell: Part 2, A Court System Compromised, BOSTON GLOBE, July 31, 2006, available at
http://www.boston.com/news/special/spotlight_debt/part2/page1.html.).

[3] *Id*. at 55-56 (citing Ameet Sachdev, Debt Collectors Pushing To Get Their Day In Court, CHICAGO TRIBUNE, June 8, 2008, available
At http://articles.chicagotribune.com/2008-06-08/news/0806080066_1_debt-collectors-court-papers-pushing

[4] *See supra*, n. 3.

[5] The New Economy Project, *The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality*, NEWECONOMYNYC.ORG, p.6, http://www.neweconomynyc.org/wp-content/uploads/2014/08/DebtCollectionRacketUpdated.pdf (last visited April 22, 2015).

2011 resulted in default judgments being entered, and answers were filed in only 568 of 11,747 cases.[6]

The unusually high default rates should not be interpreted to mean that the flood of lawsuits which debt buyers have initiated in state court have merit.[7] Instead, a large driver for the unusual default rate in state court collection actions is the fact that consumers are often not served properly. In 2009 the FTC noted that consumer groups reported that consumers "often are not properly served with notice of the debt collection lawsuit."[8] A 2010 follow up to that report noted that, "[m]any consumer advocate and judges who adjudicate debt collection cases stated that inadequate service or improper service occurs frequently."[9]

In any case, a staggering number of default judgments have been issued against New York residents in recent years as a result of suits brought by debt buyers and debt collectors. For a variety of reasons, many of these judgments are never enforced by the judgment creditor.

Palisades Acquisition XVI, LLC (an indirect wholly owned subsidiary of Asta Funding, Inc.) purports to buy "pools of matters" or "portfolios" which purportedly contain these judgments. Often times, Palisades buys these "pools of matters" or "portfolios" not from the judgment creditor, but from some other entity who purports to have purchased the "pool of matters."

---

[6] *Id*. It was noted that collection industry representatives disputed this claim. *Id*.

[7] Speaking in the New York Times, Noach Dear, a civil court judge in Brooklyn, estimated that "roughly 90 percent of the credit card lawsuits are flawed" because the Plaintiff can't prove "the person owes the debt." Silver-Greenberg, Jessica, Problems Riddle Moves to Collect Credit Card Debt, NEW YORK TIMES, August 12, 2012, available http://dealbook.nytimes.com/2012/08/12/problems-riddle-moves-to-collect-credit-card-debt/?ref=business&_r=0/. Similarly, the New Economy Project noted that in 9 out of 10 cases, affidavits from debt buyers were made by persons having no connection to the original creditor. *See supra*, n. 6 at p. 4.

[8] *See* supra n. 3 (citing comments furnished to the Federal Trade Commission by consumer advocates).

[9] Federal Trade Commission, Repairing A Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration,

Todd Houslanger and Houslanger & Associates, PLLC have carved out a niche as attorneys who will initiate post-judgment collection remedies on behalf of purported assignees of the original judgment creditor. At Palisades' behest, and at the behest of other similar companies, Mr. Houslanger and other attorneys employed by him have initiated post-judgment remedies against numerous New York State residents within the past three years. As explained above, many (if not most), of these consumers had no knowledge that they have ever been sued, let alone that a judgment has been entered against them.

Mr. Houslanger's firm enforces post judgment remedies on behalf of Palisades (and other entities purporting to be the assignees of judgment creditors) without possessing documentation establishing that Palisades has any right to enforce the judgment he is executing on. Based on Plaintiff's investigation, outlined in more detail in the body of the complaint, it is clear that Mr. Houslanger's firm is initiating post-judgment remedies on behalf of creditors all over the state of New York without proper documentation, and without filing the documentation he has with the court clerk prior to initiating remedies. Mr. McCrobie is just the latest victim of Defendants' unlawful scheme.

Defendants' actions violate the Fair Debt Collection Practices Act in that they are "debt collectors" engaged in collection actions which they have no legal right to pursue. Neither Palisades, nor its attorney and agent Mr. Houslanger and his law firm Houslanger & Associates PLLC, have any right to enforce the default judgment obtained by Centurion Capital Corporation against Mr. McCrobie. More broadly however, Defendants are engaged in a deceptive and unfair business practice prescribed by New York General Business Law §349. Specifically, Defendants are initiating post judgment remedies against consumers all over the state of New York without any right to do so.

4

## JURISDICTION AND VENUE

1.  Jurisdiction of this court arises under 15 U.S.C. §1692k(d), and 28 U.S.C. § 1331.

2.  This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

3.  Venue is proper in this district under 28 U.S.C. §1391(b) in that Defendants transacts business within the Western District of New York and the conduct complained of occurred here.

## PARTIES

4.  Plaintiff, Christopher McCrobie, is a natural person residing in the County of Erie and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5.  Defendant, Palisades Acquisition XVI, LLC, (alternatively referred to as "Palisades")  is a foreign limited liability company organized and existing under the laws of the State of New Jersey and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

6.  Defendant, Palisades Acquisition XVI, LLC is a purchaser and collector of defaulted debts, regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

7.  Asta Funding, Inc. is a foreign corporation, organized and existing under the laws of the State of Delaware, and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

8.  Defendant, Asta Funding, Inc. is a purchaser and collector of defaulted debts, regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

9.     Defendant Palisades is a wholly owned subsidiary of Defendant Asta Funding, Inc.

10.     Defendant, Houslanger & Associates, PLLC is a domestic professional corporation organized and existing under the laws of the State of New York and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

11.     Defendant, Houslanger & Associates, PLLC regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

12.     Defendant Todd Houslanger is the managing attorney of Houslanger & Associates, PLLC and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).  On information and belief:

A.  Todd Houslanger is also the owner and founder of Houslanger & Associates, PLLC;

B.  Todd Houslanger personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint;

C. Todd Houslanger approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established; and

D. The tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

12.     Defendant Todd Houslanger regularly attempts to collect debts alleged to be due to another, and engages in a business in which the principal purpose is debt collection.

## FACTUAL ALLEGATIONS

13.     Plaintiff Christopher McCrobie allegedly incurred a credit card debt to Providian Financial.  This debt will be referred to as "the subject debt."

14.     The subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes.  As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

15.     Plaintiff thereafter allegedly defaulted on the subject debt.

16.     Sometime after the alleged default, Providian Financial allegedly assigned the subject debt to Centurion Capital Corporation

17.     Centurion Capital Corporation filed an action against the Plaintiff in Buffalo City Court in or about August 6, 2006.

18.     The summons and complaint commencing the action referenced in paragraph 15 was never personally served upon Plaintiff.  Instead, it was served by substitute service (posting and mailing) at an old address of Plaintiff's.

19.     That at the time of the service of the above-referenced action, Plaintiff did not reside at the address that the summons and complaint were posted and mailed to.

20.     Centurion Capital Corporation obtained a default judgment against the Plaintiff in said court on or about March 8, 2007.

21.     Plaintiff had no knowledge of the commencement of the above-reference action, or of the default judgment.  The default judgment was never reported against his credit.

22.     Before August 28, 2014, Palisades retained the services of Mr. Houslanger and his firm, Houslanger & Associates, PLLC, to proceed with post judgment enforcement against the Plaintiff on the Centurion Capital Corporation judgment.

**The Income Execution**

23.     Under CPLR 5230(b) and § 1501 of the New York Uniform City Court Act, no income execution may be issued except by the clerk of the court or by the judgment creditor's attorney.

24.     Moreover, under New York State law, a judgment creditor is not required to first apply to any court before resorting to post-judgment remedies.

25.     As can be seen from the income execution attached to this Complaint as Exhibit F, an income execution is an *order* to both the judgment debtor and to the Marshall to take certain steps to effectuate a court's judgment, and that mandate is backed up by the power of the court that handed down the judgment.

26.     In this way, a New York State income execution is similar to a federal civil subpoena, which is a command by the federal court that may be signed and issued by an attorney admitted to practice in that federal court. *See* Fed. R. Civ. P. 45.

27.     Thus, any New York State attorney who signs and issues an income execution is acting as an officer of the court, just as any attorney who signs and issues a federal civil subpoena is acting as an officer of the court. Indeed, CPLR 5230(b) states that any attorney signing and issuing an income execution is acting as "officer of the court."

28.     As an officer of the court, an attorney who signs an income execution is under a duty to take minimal steps to satisfy himself that his client is entitled to garnish a consumer's wages. *See Scott v. Weltzler*, 600 N.Y.S.2d 974, 976-77 (N.Y. App. Div. 1993).

29.     An attorney's duty to satisfy himself that his client is entitled to garnish a consumer's wages is not a burdensome one since the underlying contract dispute that resulted in the alleged debt – however messy it might have been – has already been reduced to a judgment.

30.     Thus, in order to fulfill his duty, the attorney signing an income execution must do no more than satisfy himself that a judgment exists, and that his client is entitled to execute upon it.

31.     The exact steps that the attorney must take to fulfill that duty depend on the circumstances.

32.     For example, an attorney who represents a client when the client obtains the judgment, then later signs an income execution on behalf of the same client, need not take *any* additional steps because he already has personal knowledge that the judgment exists, and that the client is entitled to execute upon it.

33.     On the other hand, an attorney who is retained after judgment is entered, would be required to look at a copy of the judgment. If the client were to produce a copy of the judgment, and the client's name appeared in the caption as the judgment creditor, that would be enough to satisfy the duty. As stated above, this duty is not burdensome – rather, it involves reviewing a single sheet of paper.

34.     Assuming, however, that the name of the client did *not* appear in the caption, the attorney would be under a duty to ask the client for a copy of the instrument(s) on which the client's authority to enforce the judgment is based, *before* signing and issuing the income execution.

35.     An attorney who signs an income execution without taking these minimal and unburdensome steps to steps to satisfy himself that a judgment exists and that his client is entitled to enforce the judgment is acting recklessly, because he could very well be helping his client to commit the crime of embezzlement.

36.     By signing an income execution, an attorney represents to the Marshall, to the judgment debtor, and to the judgment debtor's employer, that he has reviewed a copy of the judgment in the captioned case. The signature further represents that, based on his review, the attorney is satisfied that a judgment exists, and that his client is entitled to execute upon the judgment.

37.     In other words, by signing an income execution, an attorney is representing to the world that he is the attorney of record, that his client is entitled to collect on the judgment, that he is entitled to pay over the Marshall's poundage from any amounts collected, and that he has the right to issue a satisfaction of judgment in the name of the judgment creditor.

38.     On or about August 28, 2014, an attorney employed by Houslanger & Associates, PLLC signed an income execution bearing the caption of the Buffalo City Court case in which Centurion Capital Corporation obtained a default judgment against Plaintiff ("the Income Execution"). (*See* Exhibit F).

39.     The attorney employed by Houslanger & Associates, PLLC signed the Income Execution, not on behalf of Centurion Capital Corporation, but on behalf of Palisades as the purported judgment creditor.  This done despite the fact that the judgment was in favor of Centurion Capital Corporation, that no legally valid of that judgment to Palisades exists, that no assignment was ever filed with the Buffalo City Court, and that Plaintiff was not given notice of the assignment as required by law.

40.     Houslanger & Associates, PLLC then forwarded the Income Execution to the Office of the Marshall of the City of Buffalo, with the knowledge and the intent that the Marshall, in turn, would forward the income execution first to Plaintiff, and then to Plaintiff's employer.

41.     The Income Execution was a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

42.     The Income Execution stated that Palisades was "the current creditor, as assignee to whom this debt is owed."

43.     The Income Execution commanded Plaintiff to begin sending 10% of his income to the Marshall, so that the Marshall could then forward that money to Houslanger & Associates, PLLC, as attorneys for Palisades.

44.     Moreover, the Income Execution threatened that, should Plaintiff refuse to send 10% of his income to the Marshall within 20 days, the Marshall would forward the income execution to Plaintiff's employer, and that Plaintiff's employer would begin sending 10% of Plaintiff's income to the Marshall – all for the purpose of forwarding that money to Houslanger & Associates, PLLC, as attorneys for Palisades.

45.     In short, the Income Execution represented that Palisades had the right to execute upon the judgment obtained by Centurion Capital Corporation – and, specifically, that Palisades had the right to garnish Plaintiff's income and pay over poundage to the Marshall from any amounts collected.

46.     By signing the Income Execution, the attorney employed by Houslanger & Associates, PLLC represented that he had reviewed the judgment in the Buffalo City Court case as well as any other documents necessary to satisfy himself that a judgment existed, and that Palisades was entitled to execute the judgment.

47.     On information and belief, no attorney at Houslanger & Associates, PLLC reviewed the Buffalo City Court judgment before the Income Execution was signed.

48. Even assuming that an attorney reviewed the judgment, on information and belief – and based upon the facts alleged below in paragraphs 61 through 71 – Houslanger & Associates, PLLC never asked Palisades to provide it with a copy of the instrument upon which Palisades's alleged authority to execute upon the judgment was based, nor did any attorney review any such documents.

49. Thus, Houslanger & Associates, PLLC did not conduct the review of the Buffalo City Court judgment that, by signing the Income Execution, it represented that it had performed.

50. The Income Execution did not contain a disclaimer stating that no attorney had personally reviewed the particular circumstances of Plaintiff's account.

### Defendants Were Not Legally Entitled to Use Post-Judgment Remedies to Collect Upon Centurion's Judgment

51. Neither Palisades nor any of its alleged predecessors in interest, however, ever took the steps required by New York State Law to take assignment of or to enforce the judgment.

52. Specifically, CPLR 5019(c) requires anyone who takes assignment of a City Court judgment to publicly file "a copy of the instrument on which [the assignee's] authority is based, acknowledged in the form required to entitle a deed to be recorded . . . ."

53. No copy of the instrument on which Palisades' authority is based was ever filed at the Buffalo City Court, as evidenced by the fact that such copy is completely absent from Clerk's publicly available file on the case.

54. Further, under the cases of *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 639-640 (S.D.N.Y. 2013) and *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010), in order for an assignment of a judgment to take effect, the *assignor* must notify the judgment debtor of the assignment.

55.     Here, neither the assignor, Centurion Capital,Corporation, nor the assignee, Palisades, notified Plaintiff of the assignment of the judgment.

56.     Because neither Centurion Capital Corporation nor Palisades followed CPLR 5019(c), *Musah,* or *Cardello*, Palisades lacked legal authority either to execute upon the Buffalo City Court judgment – contrary to the representations made by Houslanger & Associates, PLLC in the income execution.

57.     CPLR 5019(c) and the *Cardello* rule are not mere technicalities. In *Cardello*, Judge Straniere explained why these rules are material:

> The recent experience of the Civil Court showing large numbers of default judgments being obtained in credit card cases against consumers far in excess of the default rate in regard to all other litigation, as well as studies done by independent consumer rights groups showing improper service of process in regard to credit card debt, requires that such notice be given to the defendant. The situation has been . . . . fraught with abuse . . . . Further, on a regular basis this court encounters defendants being sued on the same debt by more than one creditor alleging it is the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and find themselves filing an order to show cause to vacate a default judgment from an unknown debt purchaser for the same obligation. Without receiving such notice of the assignment, a debtor seeking to make any application to the court would not have any idea as to which alleged creditor is to be served.

> . . . It is clear . . . that due process requires that notice of the assignment be given to the debtor by the assignor and not the assignee. . . .

> Allowing the assignee to give notice would enable dishonest debt collectors to search the court records, obtain the names of judgment debtors and send the debtor a letter stating they have purchased the debt . . . and the debtor should make all payments to the third party. Requiring the assignor[] . . . to serve the notice would reduce the incidents of fraud in this regard. The Federal Fair Debt Collection Practices Act lists 16 "false, deceptive or misleading" practices, some of which would not be available by requiring a notice of assignment to be given by the assignor to the

debtor. . . . As the [New York State] Court of Appeals stated in *Tri City Roofers v. Northeastern Indus. Park*, . . . "A judgment debtor is not called upon to search the county's records every time he is served with an execution or desires to make a payment on his debt." The failure to establish that notice of the assignment was given to the debtor makes the assignment ineffective.

58.     Here, Plaintiff never knew about the 2006 Buffalo City Court case, and Centurion Capital Corporation obtained a default judgment – because the process server hired by Centurion's attorneys nailed and mailed the summons and complaint to an address that Plaintiff no longer resided at.

59.      Thus, Judge Straniere's explanation of why CPLR 5019(c) and *Cardello* are material is especially relevant to Plaintiff's situation.

60.     Defendants subsequently received $572.45 by executing on Plaintiff's income. (*See* Exhibit A).

61.     On March 23, 2015 Plaintiff, by and through his attorney, contacted Houslanger & Associates, PLLC, by and through Todd Houslanger.  Plaintiff requested that Mr. Houslanger provide a copy of the chain of title proving that Palisades had a right to enforce the default judgment obtained against Plaintiff by Centurion.  (*See* Exhibit A). Houslanger & Associates, PLLC, by and through Todd Houslanger, provided the following documents in response to that request (*See* Exhibit B):

    a.  A purported Bill of Sale (signed in duplicates) between Great Seneca Financial Corporation and Palisades Acquisition XVI, LLC dated March 5, 2007.

    b.  A purported Bill of Sale between Palisades Acquisition XV, LLC and Palisades Acquisition XVI, LLC dated March 5, 2007.

62.     None of the documents provided to Plaintiff make any reference to Plaintiff, Centurion Capital Corporation, or the default judgment obtained against Plaintiff (*See* Exhibit B).

63.     None of the documents provided to Plaintiff establish that the default judgment obtained against Plaintiff was ever assigned, much less that the default judgment was ultimately assigned to Palisades XVI, LLC (*See* Exhibit B).

64.     On April 22, 2015, Plaintiff contacted Houslanger & Associates by and through Todd Houslanger, and informed it that none of the documents purportedly showing chain of title mention Centurion Capital Corp, or identify the default judgment taken against Plaintiff by Centurion Capital Corp. (*See* Exhibit A).

65.     On May 7, 2015 Todd Houslanger responded via email.  He reiterated his belief that the documents previously provided on March 23, 2015 evidenced "the assignment."  He added that this assignment was for a "pool of matters" in which Plaintiff was apparently allegedly included.  He stated "[t]his is how they did things at the time of the assignment."  (*See* Exhibit A).

66.     Upon further investigation Plaintiff learned that the "pool of matters" referred to by Mr. Houslanger involved the "Great Seneca Portfolio" which was allegedly acquired by Palisades Acquisition XVI, LLC in March of 2007.  (*See* Exhibit H).  Further details about the "Great Seneca Portfolio" and Asta, Inc.'s business practices revealed by Plaintiff's investigation are as follows:

       a.     The sale allegedly involved the transfer of (what Asta Funding, Inc. estimated to be) $6.9 billion dollars in debt, which was advanced for a purchase price of $300 million.  Thus, Palisades Acquisition XVI, LLC paid roughly four cents

per dollar of debt allegedly acquired. The portfolio was made up of

"predominantly credit card accounts and includes accounts in collection

litigation and accounts as to which the sellers have been awarded judgments

and other traditional chargeoffs."  Despite purchasing roughly 6.9 billion

dollars in debt, Gary Stern (the President and CEO of Asta Funding at the

time), commented that "This significant portfolio purchase…will further

demonstrate our outsourcing strategy and our ability to absorb such a large

purchase without adding materially to our infrastructure." (*See* Exhibit I).

b.      The terms of the Great Seneca Portfolio purchase agreement were noted to be

as follows in Asta Funding, Inc.'s 2007 Annual Report, filed with the

Securities and Exchange Commission:

> Under the Portfolio Purchase Agreement, we assumed certain risks
> associated with the Portfolio Purchase. The representations and
> warranties with respect to the Portfolio which we received from the
> Sellers have limitations both in scope and, in certain cases,
> duration, including a limitation of our put-back rights with respect
> to certain types of claims, a requirement that certain claims be
> brought within 120 days of closing or be deemed waived, and a
> limitation with respect to the Sellers' responsibilities for acts of
> prior owners. Other than the representations contained in the
> Portfolio Purchase Agreement, the accounts were sold as is. No
> assurances can be given that we will have an adequate remedy if
> our understandings about the quality, quantity and characteristics
> of the Accounts in the Portfolio prove to be contrary to our
> expectations.

(*See* Exhibit J, p. 12).

c.      Palisades apparently did not conduct a thorough review of the quality of the

assets in the Great Seneca Portfolio, but instead only conducted an "initial

review" about which it could make "no assurances."  (*See* Exhibit J, p. 13).

16

d.      Shortly after the purchase, Palisades adopted a "current strategy of suing debtors" to avoid a "slowing of collections" which could cause it to default on its obligations to its creditors. (*See* Exhibit J, p. 13).

e.      In its August 10, 2015 quarterly statement to the Securities and Exchange Commission, Asta Funding, Inc. stated as follows:

> *Impairments*-There were no impairments in the nine month period ended June 30, 2015 as compared to 19.6 million recorded during the nine month period ended June 30, 2014. The $19.6 million of impairments in the nine month period ended June 30, 2014 was comprised of $14.0 million from the Great Seneca Portfolio…The Great Seneca portfolio was purchased in March 2007. The portfolio was purchased on the secondary market and as such accounts included in the portfolio were 5 to 6 years old at the time of purchase. Purchasing portfolios on the secondary market was not a normal course of action for us at the time, as we primarily purchased accounts from the originator of the accounts. This action of purchasing from the secondary market played a role in the determination in March 2008 that we could no longer reasonably forecast cash collections and therefore switched the portfolio over to the cost recovery portfolio. Based upon the age of the Great Seneca Portfolio in June 2014 (over seven years from our purchase date, and 12 to 13 years from the inception of the portfolio) the portfolio was clearly on the outer bounds of our collection forecasts. Based upon the significantly reduced collection forecast and the lower valuation of the judgments as they age, we determined an impairment of $14 million was necessary in June 2014.

(*See* Exhibit K).

f.      Great Seneca Financial filed formal articles of dissolution on March 25, 2009, and these articles were accepted by the state of Maryland. *See Hartman v. Great Seneca Financial Corp*, 596 F.3d 606, 617-618 (6th Cir. 2009).

g.      Currently, and on its website, Asta Funding Inc. represents that after it purchases portfolios, it will not "burden" the seller with "overwhelming

requests for documentation, or ongoing communications with debtors whose accounts have been sold."  (*See* Exhibit L).

67.     Recent court decisions confirm that many debt buyers do not possess, and cannot obtain, the evidence required to make out a prima facie case.  *See, e.g., Sykes v. Mel S. Harris and Associates LLC,* 780 F3d 70, 85 (2d Cir.2015); *Deutsche Bank Nat. Trust Co. v. Haller,* 100 A.D.3d 680, 682-283 (App. Div. 2d Dep't 2012); *Midland Funding, LLC v. Giraldo,* 39 Misc.3d 936, 961 N.Y.S.2d 743-753-754 (Dist.Ct. Nassau County 2013); *PRA III, LLC v. Gonzalez*, 54 A.D.3d 917 (App. Div. 2d Dep't 2008); *CACH, LLC v. Davidson*, 21 Misc.3d 1106(a) (Civ. Ct. N.Y. County 2008); *PRA III, LLC v. McDowell*, 15 Misc.3d 1135(A) (Civ. Ct. Richmond County 2007); *Rushmore v. Skolnick*, 15 Misc.3d 1139(A) (Dist. Ct. Nassau County 2007); *Citibank v. Martin*, 11 Misc.3d 219 (Civ. Ct. N.Y. County 2005); *Palisades Collection, LLC v. Gonzalez*, 10 Misc.3d 1058(A) (Civ. Ct. N.Y. County 2005); *Colorado Capital Investments, Inc. v. Vilar*, 06/18/09 N.Y.L.J. 20 (Civ. Ct. N.Y. County); *Palisades Collection, LLC v. Haque*, 4/13/06 N.Y.L.J. 20 (Civ. Ct. Queens County); *CACV of Colorado, LLC v. Cowdhury*, Index No. 95643/07 (Civ. Ct. Bronx County Feb. 19, 2009) (unpublished); *CACH v. Cummings*, Index No. 2274/07 (Civ. Ct. N.Y. County Nov. 10, 2008) (unpublished); *CACV of Colorado capital Investments v. Pierog*, No. 64449/05 (Civ. Ct. N.Y. County, Sept 2, 2008) (unpublished).

68.     More specifically, a review of New York and federal caselaw reveals that Defendants Todd Houslanger, Houslanger & Associates, PLLC, and Palisades are initiating and enforcing post judgment remedies against large numbers of judgment debtors based upon judgments entered many years ago, and without documentation sufficient to prove that the Defendants have any right to enforce said judgments.

a.  Defendants Todd Houslanger, Houslanger & Houslanger, and Palisades XVI, LLC have an established practice of enforcing post judgment remedies many years after the original judgment was taken.  *See Okyere v. Palisades Collection*, LLC, 961 F.Supp.2d 508, 510 (S.D.N.Y. 2013) (Noting that a default judgment was taken against the Plaintiff in 2004, and that Palisades, by and through Todd Houslanger, enforced post judgment remedies "[n]early seven years later."); *Musah v. Houslanger & Associates*, PLLC, 962 F. Supp. 2d 636, 637 (S.D.N.Y. 2013) (pursuing post judgment remedies in 2011 for a judgment from 1997).

b.  In *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345 (Civ. Ct. 2012), Palisades XVI, LLC (represented by Todd Houslanger of Houslanger & Associates) was noted to be filing assignments of "judgements" with "so many defects" and in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected." *Id*. at *4. Particularly troubling to the court were "fundamental" discrepancies between the "name of the plaintiff and designated counsel in the court file and those on the papers being submitted by [Plaintiffs, including Palisades XVI, LLC and, interestingly, Centurion]." *Id*. While the court ultimately lifted the stay it had previously issued regarding the enforcement of post judgment remedies by Palisades, it noted that any defendant who seeks to vacate a judgment obtained by Palisades would be entitled to raise the issues addressed in its opinion.  *Id*. at *8.  Upon information and belief, and based on the entirety of the other facts laid out in this complaint, Todd Houslanger was the attorney

who was filing many of the assignments of judgment noted by the court in *Centurion Capital Corp. v. Guarino*.

c.　In *Colonial Credit Corp. v. Beyers*, 46 Misc. 3d 1221(A) (N.Y. Civ. Ct. 2015), Colonial Credit Corp, an assignee of Bally's Fitness Center, took a default judgment against an alleged debtor in 2005. Roughly seven years later, "Palisades Collection LLC as successor to Great Seneca Financial Corp" filed a notice to change attorneys from Wolpoff & Abramson, LLP to "Houslanger & Associates, PLLC" in June of 2012. *Id*. at 2-3. On December 18, 2012 the court ordered Defendants, including Palisades Collection LLC and Houslanger & Associates, PLLC, to provide proof of chain of title, as well as proof that proper notice had been given to the Defendant. *Id*. at 3. Defendants apparently did not respond to this request. *Id*. Further review of the file by the court revealed that the judgment had already been satisfied in July of 2007. *Id*. The court then ordered Defendants to appear at a conference to "explain why they should not either be held in contempt or assessed costs for filing consents to change attorneys more than five years…after this matter was satisfied." *Id*. at 4. Neither of the Defendants appeared, and simply ignored the court order. *Id*. The court subsequently imposed sanctions against both Palisades, and Houslanger & Associates. *Id*. at 4-5. Defendants have provided evidence indicating that, upon making assurances to the court that steps would be taken to ensure that no further collection activity would be taken on the previously satisfied account, that the sanctions were ultimately lifted. (*See* Dkt #17, Exhibit K).

69.     Defendant Palisades Acquisition XVI, LLC and Houslanger & Associates are so notorious for initiating post judgment remedies that consumer attorneys have implemented advertising targeted specifically to his victims on their websites.  (*See* Exhibit G).

70.     Plaintiff's attorneys previously brought suit against Houslanger & Associates, PLLC for attempting to enforce post judgment remedies without any legal right to do so in the matter *of Argenteri v. Credigy Receivables Inc. et al*, (W.D.N.Y. Civil Action No. 1:14-cv-00425).

71.     In that matter, Plaintiff's June 3, 2014 complaint noted that Houslanger & Associates, PLLC attempted to enforce post judgment remedies on behalf of Credigy regarding a judgment which was taken by First Select Corporation.  (*See* Exhibit C). Mr. Houslanger was subsequently asked by Plaintiff's attorneys to produce documents establishing a chain of title between the judgment creditor and Credigy Receivables.  In that case, yet again, there were numerous deficiencies with the documents in Mr. Houslanger's possession (*See* Exhibit D):

a.     Mr. Houslanger provided counsel for Plaintiff with a purported assignment, dated on July 11, 2014.  Because Plaintiff filed his complaint alleging that Mr. Houslanger took unlawful post judgment remedies on June 3, 2014 (Exhibit E), there was absolutely no assignment on file at the time Mr. Houslanger initiated post judgment remedies. The purported assignment is signed by only one individual, a Vice President at Credigy who purported to be both a representative of Credigy and the "attorney in fact" for First Select Corporation.

b.     The assignment Mr. Houslanger provided to Plaintiff, represented that there was $0.00 due on the Judgment, including interest.  Thus, by the

assignment's own terms, the judgment had been satisfied as of July 11, 2014.

c. Accompanying the assignment were a "bill of sale" and a "purchase agreement"—neither of which mention the named Plaintiff in that case. These agreements are from 2002—some twelve years prior to the assignment provided to counsel for Plaintiff. These agreements are also not notarized as is required by Delaware Law.

d. In sum, in *Argenteri,* Mr. Houslanger failed to provide any documents demonstrating a valid assignment from First Select Corporation to Credigy, and the questionable post-hoc assignment which was self-executed by Credigy (allegedly on behalf of First Select Corporation) admitted that the judgment had been satisfied.

## CLASS ACTION ALLEGATIONS

72. Plaintiffs bring this case as a class action under Rule 23 of the Federal Rules of Civil Procedure 23. A class action is appropriate and preferable in this case because:

a. **Numerosity:** Based on the fact that Defendants' have been noted to be filing post judgment documents in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected," (*see supr*a, ¶29b) and have, since 2007 been collecting on a "pool of matters" which allegedly contains $6.9 billion in debt, the class is so numerous that joinder of all members is impractical.

b.  **Common Questions Predominate:**

    1.  There are questions of law and fact common to the class that predominates over any questions affecting only individual class members.  The principal questions exhibited in this case are whether the Defendants' initiation and enforcement of post judgment remedies violates 15 U.S.C. §1692c(b) 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(1),  NY GBL §349, and New York Judiciary Law §487.  This conduct towards Plaintiffs and all absent class members has resulted in serious harm.  These common issues predominate over any individual issues.

    2.  The only individual issues are the identification of the consumers who received post judgment legal process (i.e. the class members) initiated by Defendants.  These issues are matters capable of ministerial determination from Defendants' records.

c.  **Typicality:** The Plaintiff's claims are typical of other class members. Plaintiff and all members of the Plaintiff's classes have claims arising out of the Defendants' unlawful initiation and enforcement of post judgment remedies. The entire class will benefit from the remedial and monetary relief sought in this action.

d.  **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members.  The Plaintiff is committed to vigorously litigating this matter.  Plaintiff has also retained counsel experienced in handling consumer

lawsuits, complex legal issues, and class actions. Neither the individual

Plaintiff, nor his counsel have any interests which might cause them not to

vigorously pursue the instant class action lawsuit.

e.   **Superiority:** A class action is superior to the other available means for the

fair and efficient adjudication of this controversy because individual joinder of

all members would be impracticable. Class action treatment will permit a

large number of similarly situated persons to prosecute their common claims

in a single forum efficiently and without unnecessary duplication of effort and

expense that individual actions would engender. The members of the class are

generally unsophisticated consumers, whose rights will note be vindicated in

the absence of a class action. Prosecution of separate actions by individual

members of the class would also create the risk of inconsistent and varying

adjudications resulting in the establishment of inconsistent or varying

standards for the parties and would not be in the interests of judicial economy.

73.     If the facts are discovered to be appropriate, Plaintiff will seek to certify the class

under Rule 23(b)(1), Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

74.     Based on further discovery and further investigation (including, but no limited to,

Defendant's disclosure of class size and net worth), Plaintiff may, in addition to moving for class

certification using modified definitions of the classes, class claims, and the class periods, seek

class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

## COUNT I

## A FAIR DEBT COLLECTION PRACTICES ACT CLAIM AGAINST ALL NAMED DEFENDANTS

75.     Plaintiffs reallege and reincorporate by reference the allegations in the preceding paragraphs of this Complaint.

76.     This count is brought by Plaintiff, individually and on behalf of a class consisting of consumers with New York addresses, who:

a.     Within one year before the filing of Plaintiff's Motion to Amend in this action;

b.     Had an income execution forwarded to their employer bearing the signature of Todd Houslanger (or any other attorney employed by Houslanger & Associates); or

c.     Had their bank account restrained after a subpoena and/or restraining notice bearing Todd Houslanger's signature (or any other attorney employed by Houslanger & Associates) was forwarded to their bank; and in which

d.     Defendant Todd Houslanger represented that Palisades Acquisition XVI, LLC was the "current creditor" (or employed any other substantially similar language) by way of assignment; and

e.     Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendant Todd Houslanger.

77.     Section 1692c(b) of the FDCPA prohibits a debt collector from communicating, in connection with the collection of any debt, with any person other than a consumer, his attorney, or a consumer reporting agency, unless one of several exceptions applies.

78.     Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

79.     Specifically, FDCPA §1692e(2)(A) states that a debt collector cannot make a "false representation of the character, amount, or legal status of any debt."

80.     Furthermore, FDCPA §1692e(3) prohibits a debt collector from making a "false representation or implication that any individual is an attorney or that any communication is from an attorney."

81.     Furthermore, FDCPA §1692e(4) prohibits a debt collector from a "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

82.     Furthermore, FDCPA §1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken."

83.     Furthermore, FDCPA §1692e(10) prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt."

84.     FDCPA §1692f prohibits a debt collector from "using unfair or unconscionable means to collect or attempt to collect any debt."

85.     Specifically, FDCPA §1692f(1) prohibits a debt collector from collecting "any amount…unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

86.     The conduct of Defendants as described in this complaint violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

a.      Defendant Houslanger & Associates, PLLC and Todd Houslanger violated 15 U.S.C. § 1692c(b), §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10) , §1692f and 15 U.S.C. §1692f(1) by personally signing, forwarding, and enforcing post judgment remedies against class members without conducting even a minimal review into the factual and legal basis supporting the right of his client, Palisades Acquisition XVI, LLC, to initiate and enforce post-judgment remedies.

1.      These actions were misleading in that they gave the impression both that Palisades was entitled to use post-judgment remedies despite the facts that (1) Palisades Acquisition XVI, LLC lacked any valid assignment transferring interest in the judgments entered against class members; (2) Palisades Acquisition XVI, LLC never publicly filed in the appropriate courts copies of the instruments on which its authority was based, acknowledged in the form required to entitle a deed to be recorded; and (3) Palisades Acquisition XVI, LLC's and their alleged predecessors in interest never gave notice to class members that they were assigning their judgments.

2.      These actions were also misleading in that, by signing and enforcing income executions on class members' wages and subpoenas and restraints directed to class members' banking institutions, Todd Houslanger and/or Houslanger & Associates,

PLLC represented that they had conducted a minimal review to satisfy themselves that judgments existed, and that Palisades Acquisition XVI, LLC was entitled to execute upon those judgments against class members. However, as pled in this Complaint and upon further information and belief, Defendant Todd Houslanger and Houslanger & Associates, PLLC did not conduct even a minimal review sufficient to satisfy themselves that Palisades Acquisition XVI, LLC was entitled to enforce post judgment remedies against class members.

3. Defendants Todd Houslanger's and Houslanger & Associates, PLLC's actions were also unfair and unconscionable because they resulted in money being collected from Plaintiff, and other class members, despite the fact that Palisades had no legal right to collect from Plaintiff and other class members. Specifically, not only did Defendants lack legal authority to collect the underlying debts, but – because Defendants were not entitled to use post-judgment remedies – Defendants lacked legal authority to add the 5% poundage fee to each class member's collection account.

4. Moreover, Todd Houslanger and Houslanger & Associates, PLLC violated FDCPA § 1692c(b) by communicating with Marshalls and Sheriffs and, indirectly, with class members' employers and banks, concerning alleged debts by issuing income executions. These income executions were not "reasonably necessary to effectuate a

postjudgment judicial remedy" because, as Todd Houslanger's and/or Houslanger & Associates, PLLC's client was not entitled to use postjudgment remedies, sending the income executions was neither reasonable nor necessary.

b.      Defendant Houslanger & Associates, PLLC is vicariously liable for Defendant Todd Houslanger's violations of 15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because Defendant Todd Houslanger was acting within the scope of his employment at Houslanger & Associates, PLLC. Additionally, they are responsible for other attorneys employed by Houslanger & Associates who, within the scope of their employment, initiated and enforce post judgment remedies without conducting a good faith investigation into the legal and factual basis for doing so.

c.      Defendant Palisades Acquisition XVI, LLC is vicariously liable for Defendants Todd Houslanger and Houslanger & Associates, PLLC's violations of 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because both Todd Houslanger and Houslanger & Associates, PLLC were their attorneys and agents in-fact, who were acting within the scope of their authority. Defendant Palisades Acquisition XVI, LLC further had actual or constructive knowledge that Defendants Todd Houslanger and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades

Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

d.      Defendant Palisades' is also individually liable for violating 15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because it has actual or constructive knowledge that it lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

e.      Defendant Palisades Asta Funding, Inc. is vicariously liable for Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC's violations of 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because 1) both Todd Houslanger and Houslanger & Associates, PLLC were Palisades attorneys and agents in-fact, who were acting within the scope of their authority, 2) Asta Funding, Inc. had the right and ability to supervise Palisades, and had a direct financial interest in the manner in which Palisades managed the Great Seneca portfolio. Defendant Asta Funding, Inc. further had actual or constructive knowledge that Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

f.    Defendant Palisades' is also individually liable for violating 15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because it has actual or constructive knowledge that it lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

g.    Defendant Asta Funding, Inc. is also individually liable for violating 15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because it has actual or constructive knowledge that Palisades lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

h.    Defendant Todd Houslanger is personally liable for the tortious acts of Houslanger & Associates, PLLC because (1) he is the owner, founder, and managing attorney of of Houslanger & Associates, PLLC, (2) he personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint, (3) he approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported

assignment could be established, and (4) the tortious conduct alleged in this

complaint done in accordance with the instructions of Todd Houslanger in his

capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

87.     That as a direct and proximate result of the Defendants' FDCPA violations as

alleged herein, Plaintiffs have suffered actual damages in an amount to be determined at trial,

and are also entitled to statutory damages, attorneys' fees, and costs.


**COUNT II**

**NEW YORK GENERAL BUSINESS LAW §349 CLAIM AGAINST ALL NAMED
DEFENDANTS**

88.     Plaintiffs reallege and reincorporate by reference the allegations in the preceding

paragraphs of this Complaint.

89.     This count is brought by Plaintiff, individually and on behalf of a class consisting

of consumers with New York addresses, who:

    a.     Within three years before the filing of Plaintiff's Motion to Amend in this

       action;

    b.     Had an income execution forwarded to their employer bearing the signature of

       Todd Houslanger (or any other attorney employed by Houslanger &

       Associates, PLLC); or

    c.     Had their bank account restrained after a subpoena and/or restraining notice

       bearing Todd Houslanger's signature (or any other attorney employed by

       Houslanger & Associates, PLLC) was forwarded to their bank; and in which

    d.     Defendant Todd Houslanger and/or Houslanger & Associates, PLLC

       represented that Palisades Acquisition XVI, LLC was the "current creditor"

(or employed any other substantially similar language) by way of assignment; and

    e.    Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendants Todd Houslanger and/or Houslanger & Associates, PLLC.

90.    The Defendants' collection actions complained of herein, include making written representations to Plaintiff and other class members that were false, deceptive, and misleading in that they implied that Todd Houslanger and Houslanger & Associates, PLLC had conducted a good faith basis into the ability of Palisades Acquisition XVI, LLC to initiate and enforce post judgment remedies against Plaintiff and other class members.

91.    The Defendants' collection actions complained of herein, include making written representations to Plaintiff and other class members that were false, deceptive and misleading in that they (1) implied that Palisades Acquisition XVI, LLC was the current creditor by way of assignment from the judgment creditor, when, in fact, Palisades Acquisition XVI, LLC has no documentation to support that claim; and (2) implied that defendants Todd Houslanger and/or Houslanger & Associates, PLLC had conducted a good faith investigation into the legal and factual bases for Palisades Acquisition XVI, LLC to initiate and enforce post judgment remedies against class members when, in fact, no such good faith investigation had occurred.

92.    The Defendants' collection actions complained of herein, included the false, misleading, and deceptive practice of taking money from the wages and bank accounts of Plaintiff and other class members despite the fact that Palisades Acquisition XVI, LLC has no legal right to do so.

93.     The Defendants' actions complained of herein were committed in the conduct of business, trade, commerce or the furnishing of service in this state and constituted a violation of NY GBL §349 independent of whether it also constituted a violation of any other law.

94.     The Defendants' actions complained of herein were consumer-oriented, involving deceptive representations made in form/standardized correspondence with large numbers of consumers.  The violations alleged herein are recurring and have a broad impact upon the public.

95.     Indeed, although Plaintiff cannot say with certitude exactly how many individuals have been subjected to Defendants' false, misleading, and deceptive acts, it is virtually certain to be in the hundreds, if not thousands.

96.     Defendants' deceptive acts, by their nature, involved material misrepresentations regarding alleged obligations owed to Palisades Acquisition XVI, LLC by Plaintiff and other class members.

97.     Defendants engaged in such conduct in the course of trade and commerce.

98.     Defendants willfully, knowingly and/or recklessly disregarded the unlawful nature of the debts they sought to collect from Plaintiff and other similarly situated consumers in the State of New York.

99.     Based upon the foregoing:

        a.      Defendant Houslanger & Associates, PLLC is vicariously liable for Defendant Todd Houslanger's violations of NY GBL §349 because Defendant Todd Houslanger was acting within the scope of his employment at Houslanger & Associates, PLLC.  Additionally, they are responsible for other attorneys employed by Houslanger & Associates who, within the scope of their employment, initiated and enforce post judgment remedies without

conducting a good faith investigation into the legal and factual basis for doing so.

b.    Defendant Palisades Acquisition XVI, LLC is vicariously liable for Defendants Todd Houslanger and Houslanger & Associates, PLLC's violations of NY GBL §349 because both Todd Houslanger and Houslanger & Associates, PLLC were their attorneys and agents in-fact, who were acting within the scope of their authority. Defendant Palisades Acquisition XVI, LLC further had actual or constructive knowledge that Defendants Todd Houslanger and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

c.    Defendant Palisades' is also individually liable for violating NY GBL §349 because it has actual or constructive knowledge that it lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

d.    Defendant Palisades Asta Funding, Inc. is vicariously liable for Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC's violations of NY GBL §349 because 1) both Todd Houslanger and Houslanger & Associates, PLLC were Palisades attorneys and agents in-fact, who were acting within the scope of their authority, 2) Asta Funding, Inc. had

the right and ability to supervise Palisades, and had a direct financial interest in the manner in which Palisades managed the Great Seneca portfolio. Defendant Asta Funding, Inc. further had actual or constructive knowledge that Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

e.  Defendant Palisades' is also individually liable for violating NY GBL §349 because it has actual or constructive knowledge that it lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

f.  Defendant Asta Funding, Inc. is also individually liable for violating NY GBL §349 because it has actual or constructive knowledge that Palisades lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

g.  Defendant Todd Houslanger is personally liable for the tortious acts of Houslanger & Associates, PLLC because (1) he is the owner, founder, and managing attorney of of Houslanger & Associates, PLLC, (2) he personally

developed and was instrumental in implementing the patterns and practices of

Houslanger & Associates, PLLC with respect to the collection of consumer

debts as alleged in this complaint, (3) he approved the signing and serving of

income executions by himself and other employees of Defendant Houslanger

& Associates, PLLC on behalf of purported assignees of judgments without

first conducting an investigation to determine whether proof of the purported

assignment could be established, and (4) the tortious conduct alleged in this

complaint done in accordance with the instructions of Todd Houslanger in his

capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

100.    As a direct and proximate result of Defendants' violations of NY GBL §349,

Plaintiff and the class of consumers he seeks to represent, have suffered compensable harm and

are entitled to preliminary and permanent injunctive relief, and to recover actual and treble

damages, costs and attorney's fees.


**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendants
for:

(1)    An order certifying this case as a class action under Fed.R.Civ.P. 23;

(2)    A judgment declaring that the Defendants have committed the violations of law
alleged in this action;

(3)    An order enjoining and directing Defendants to comply with the New York Civil
Procedure in their debt collection activities, including without limitation:

A.    Directing Defendants to cease engaging in debt collection practices that
violate the FDCPA and NY GBL §349;

B.    Directing Defendants to cease the initiation and enforcement of judgments,
including those currently being enforced, unless they possess legally sufficient
assignments from all prior judgment owners, have filed said assignments with

the appropriate court of record, and have given the Plaintiffs notice of the assignment as required by *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010);

(4)    Actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

(5)    Statutory damages pursuant to the FDCPA, and NY GBL §349;

(6)    Treble damages pursuant to NY GBL §349;

(7)    Such other and further relief that may be just and proper.

## JURY DEMAND

Please take notice that Plaintiff demands trial by jury with respect to all claims and all issues in this action.

Dated: August 27, 2015

*/s/ Timothy Hiller, Esq.*
Timothy Hiller, Esq.
Seth Andrews, Esq.
Kenneth Hiller, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email:   thiller@kennethhiller.com

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906