UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

CHRISTOPHER McCROBIE,

      Plaintiff,

   v.                                                                    15-CV-18
                                                                              DECISION AND ORDER
PALISADES ACQUISITION XVI, LLC,

HOUSLANGER & ASSOCIATES, PLLC,
and

TODD HOUSLANGER,

      Defendants.

───────────────────────────────


    On January 6, 2015, the plaintiff, Christopher McCrobie, filed this action seeking

damages against defendants Palisades Acquisition XVI, LLC ("Palisades"), and

Houslanger & Associates, PLLC ("Houslanger & Associates").  Docket item 1.

McCrobie alleges that the defendants violated the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692a, et seq., by trying to collect a debt that was not theirs to

collect.  *Id.*  Before this Court is McCrobie's motion for leave to amend his complaint

and the defendants' motion to dismiss.

## PROCEDURAL BACKGROUND

    On May 19, 2015, McCrobie filed his first amended complaint ("FAC") adding

Todd Houslanger, the attorney for Palisades and Houslanger & Associates, as a

defendant.  Docket Item 7. McCrobie also added a cause of action: violation of New

York General Business Law ("GBL") § 349.  *Id.*  Finally, he added several factual allegations pertaining to events that occured after the date of the original pleading.  *Id.*

On July 28, 2015, the defendants moved to dismiss the amended complaint for failure to state a plausible claim of relief under the FDCPA or GBL and for lack of subject matter jurisdiction.  Docket Item 17.  McCrobie responded by filing a motion for leave to file a second amended complaint.  Docket Item 19.  He sought to add Palisades' corporate parent, Asta Funding, Inc., as an additional defendant.  *Id.*  He also sought to add claims for declaratory and injunctive relief and punitive damages.  *Id.*

On March 25, 2016, United States District Judge John T. Curtin dismissed the complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. Docket Item 41.  McCrobie appealed, and the United States Court of Appeals for the Second Circuit reversed Judge Curtin's decision.  Docket Item 47.  The Second Circuit remanded the case to this Court[1] to address the other arguments raised in the motions that had been pending before Judge Curtin.  *Id.*

After the Second Circuit's remand, this Court held a status conference on January 30, 2017, and permitted the parties to file supplemental briefing.  Docket Item 52.  On March 22, 2017, the defendants filed supplemental briefs in support of their motion to dismiss McCrobie's FAC and in opposition to McCrobie's motion for leave to file a second amended complaint.  Docket Items 55 and 56.  On April 24, 2017, McCrobie responded, Docket item 63, and on May 8, 2017, the defendants replied, Docket Items 66 and 67.

---

[1] Judge Curtin retired in April 2016, and this case was reassigned to this Court on July 25, 2016.

## MOTION FOR LEAVE TO AMEND

As a preliminary matter, the Court considers McCrobie's motion for leave to amend his complaint, Docket Item 19.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely given "when justice so requires."  The defendants oppose McCrobie's request to amend his complaint a second time.  Among other reasons, the defendants contend that the second amended complaint fails to comply with Local Rule 15(b), Docket Item 55 at 11-12, which provides that

> [u]nless the movant is proceeding *pro se*, the amendment(s) or supplements(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing 'redline' function or other similar markings that are visible in both electronic and paper format.

A "local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."  Fed. R. Civ. P. 83(a)(2).  In this case, the plaintiff's counsel specifically acknowledged "that the local rules generally require a 'redlined' copy of a proposed amended complaint to be submitted along with a motion to amend a complaint."  Docket Item 19-2 at 2. Nevertheless, he decided that "in light of the significant additions, subtractions, and revisions, a 'redlined' copy would not be practicable."  *Id.*

Contrary to the assertion by plaintiff's counsel that "a 'redlined' copy of a proposed amended complaint" is only "generally require[d]," *id.*, the language in Local Rule 15(b) is mandatory.  What is more, this Court can find no authority for an attorney's unilaterally deciding that the rule need not be followed because it is not "practicable."  In fact, at least one court in this district has strictly held plaintiffs who are represented by counsel to the requirements of Local Rule 15(b) when requesting leave to file complex

3

amendments to their complaints.  *Doe by and through Doe v. E. Irondequoit Cent. Sch. Dist.*, 2018 WL 2100605, at *5-*6 (May 7, 2018) (denying leave to amend because failure to comply with Local Rule 15(b) "required the Court to visually compare" the complaints "paragraph by paragraph, to identify the differences").

All that being said, this Court recognizes that "[n]arrow pleading rules should not be applied to foil an honest plaintiff's efforts to gain redress."  *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968).  Therefore, this Court denies McCrobie's request to amend his FAC for failure to comply with Local Rule 15(b) without prejudice to his filing another request to amend that complies with that rule.

## MOTION TO DISMISS

Having denied McCrobie's motion for leave to amend his complaint, this Court considers the defendants' motion to dismiss McCrobie's FAC.

## I.     FACTUAL BACKGROUND

When considering a motion to dismiss, this Court accepts "the factual allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiff['s] favor."  *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018).  The FAC tells the following story.

In 2007, Centurion Capital Corporation obtained a default judgment against McCrobie, Docket Item 7 at 1, 6, relating to credit card debt that McCrobie owed to Providian Financial.  *Id.* at 5-6.  McCrobie says that his debt to Providian Financial was "allegedly assigned" to Centurion Capital Corporation and that he did not know about the lawsuit or default judgment.  *Id.* at 5-6.

4

In 2014, defendant Houslanger & Associates—and, in particular, defendant Todd Houslanger, an attorney with the firm—represented defendant Palisades.  *Id.* at 1.  On behalf of Palisades, Houslanger forwarded an income execution to McCrobie's employer designed to garnish McCrobie's wages so as to enforce Centurion Capital Corporation's judgment against McCrobie.  *Id.* at 1, 6-7.  Centurion Capital Corporation never notified McCrobie about the alleged assignment of the judgment to Palisades, nor did it file the assignment in the City Court of Buffalo, the court where the default judgment was entered.  *Id.* at 6-7.  Such a filing may have given McCrobie constructive notice of the assignment, but that never happened.  *Id.*

In March 2015, McCrobie contacted Houslanger & Associates and asked for a copy of the chain of title that gave Palisades the right to enforce the default judgment obtained against McCrobie by Centurion Capital Corporation.  *Id.* at 7.  Houslanger and Associates sent McCrobie several documents, but none of them referred to the default judgment against him or gave Palisades any right to enforce that judgment.  *Id.* at 7-8.  McCrobie therefore claims that the defendants had no right to try to enforce the judgment and, in doing so, violated the FDCPA.  *Id.* at 13.

## II.    FDCPA STATUTORY CONTEXT

"Responding to reports of abusive practices by third-party collectors of consumer debts, Congress enacted the FDPCA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  *Sheriff v. Gillie*, 136 S. Ct. 1594, 1598 (2016) (quoting 15 U.S.C. § 1692(e)).  "Among other proscriptions,

the FDCPA prohibits debt collectors from employing 'false, deceptive, or misleading' practices.'" *Id.* (quoting § 1692e). "'Without limiting' this general ban, § 1692e enumerates [sixteen] categories of conduct that qualify as false or misleading." *Id.*

McCrobie claims that four of those categories are pertinent to the defendants' conduct:

- first, "[t]he false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt," 15 U.S.C. § 1692e(2);

- second, "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," § 1692e(5);

- third, "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval," § 1692e(9);

- fourth, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," § 1692e(10).

In addition, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." § 1692f. "[T]he term[,] 'unfair or unconscionable means' . . . refers to practices that are 'shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness.'" *Arias v. Gutman, Mintz, Baker &*

6

*Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (quoting *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 128 (2d Cir. 2016)).  Like § 1692e, § 1692f lists eight categories of conduct as examples, without limitation, of such unfair or unconscionable means. McCrobie claims that three of those categories are pertinent to the defendants' conduct:

- first, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt permitted by law," § 1692f(1);

- second, "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication" including but not limited to "collect telephone calls and telegram fees," § 1692f(5);

- third,

    > [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
    >
    > (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
    >
    > (B) there is no present intention to take possession of the property; or
    >
    > (C) the property is exempt by law from such dispossession or disablement,

    § 1692f(6).

The "least sophisticated consumer" standard determines whether a defendant "use[d] any false, deceptive, or misleading representation or means in connection with the collection of any debt" under § 1692e, *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993), and whether a defendant used unfair or unconscionable means under § 1692f, *Arias*, 875 F.3d at 135.

7

III.    **ANALYSIS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

A.    **Standing**

As a preliminary matter, the defendants contend that "[t]o the extent plaintiff bases his claim on the allegation that the assignment to Palisades is invalid and that judgment is unenforceable . . . the claim must fail because plaintiff lacks standing to challenge the validity of the assignment."  Docket Item 56 at 13-14.  But McCrobie certainly can challenge whether a debt collector used false and misleading, § 1692e, or unfair and unconscionable, § 1692f, means to collect a debt from him.  In doing so, he can challenge the defendants' "*misrepresentation of its right to*" collect the debt "because abusive debt collection—even of a debt actually owed—is a harm in itself."  *Im v. Bayview Loan Servicing LLC*, 2018 WL 840088, at *5-*6 (S.D.N.Y. Feb. 12, 2018) (emphasis in original).  So, because he has alleged an injury resulting from the defendants' conduct that can be remedied by a favorable decision in this case, McCrobie has standing.  *Id.*

Stated another way, McCrobie may not be able to challenge the fact that—as a result of the assignment's invalidity—he does not owe the debt at all: his exposure to

double collection would be purely conjectural at this point.  *See Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 85-86 (2d Cir. 2014).  But he can challenge whether the purported assignee misrepresented the legal status of the debt or threatened legal action against him that it could not take.  *Im*, *supra* at *5-*6.  In the words of the court in *Im*, that difference "is subtle but crucial."  *Id.* at *6.  And, in even simpler terms, it stands to reason that the FDCPA would preclude a debt collector from attempting to collect a debt that it had no right to collect regardless of the reason that it did not have that right.

In addition to Article III standing, McCrobie has prudential standing to sue for abusive debt collection practices.  The fact that the FDCPA permits statutory damages in addition to actual damages, 15 U.S.C. § 1692k(a)(2), suggests that even if McCrobie suffered no pecuniary damages, his interests still fall within the zone of interests that the statute was designed to protect.  For that reason, he has prudential standing to bring suit against the defendants.  *Im*, *supra* at *6-*7.

## B.   Motion to Strike Settlement Discussion Material From McCrobie's Complaint

The defendants argue that the FAC should be dismissed because of "numerous material procedural defects."  Docket Item 56 at 20-21.  Specifically, they contend that it "contained a description of various confidential conversations and documents exchanged between the parties in connection with settlement discussions that took place after the filing of the action."  *Id.* (emphasis deleted).  And they assert that the inclusion of this material violates both Fed. R. Evid. 408 and Fed. R. Civ. P. 15(d).

The material to which the defendants object suggests that they did not have the legal right to collect McCrobie's debt when they sent income executions to his employer.  It includes documentary evidence that McCrobie received in response to his request for

a chain of title proving that Palisades had the right to enforce Cenurion's default

judgment against McCrobie.  Docket Item 7 at 7.  Excluding those documents and

references would leave the complaint with only bare conclusory allegations that the

defendants had no right to enforce Centurion's default judgment—allegations that may

not "be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007).  But according to McCrobie, those documents

put the meat on the bones of his complaint.  Docket Item 7 at 7.

This Court interprets the defendants' argument as a motion under Fed. R. Civ. P.

12(f) to strike the paragraphs in the complaint that refer to evidence McCrobie obtained

during his efforts to settle the dispute.  A Rule 12(f) motion should be denied "unless it

can be shown that no evidence in support of the allegation would be admissible."

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  Contrary to

the defendants' assertions, the material at issue includes more than offers or

promises to resolve a claim or negotiations toward that end.  *See* Fed. R. Evid. 408.

Indeed, the material to which McCrobie refers to is "otherwise discoverable, and

therefore, not bared by Fed. R. Evid. 408."  *Agan v. Katzman & Korr, P.A.*, 328

F. Supp.2d 1363, 1370-71 (S.D. Fla. 2004).  For that reason, the Court denies the

defendants' motion to strike this material from the complaint.  And to the extent it is

necessary, the Court grants leave for McCrobie to include this material in his complaint

under Rule 15(d).

### C.     FDCPA Claim

#### 1.     Abstention

The defendants argue that the complaint should be dismissed based on the

doctrine of abstention—more specifically, *Colorado River* abstention.  Docket Items 55

at 14 and 56 at 17-20.  Under *Colorado River*, "the court may abstain in order to

conserve federal judicial resources only in 'exceptional circumstances,' where the

resolution of existing concurrent state-court litigation could result in 'comprehensive

disposition of litigation.'"  *Woodford v. Cmty. Action Agency of Greene Cty. Inc.*, 239

F.3d 517, 522 (2d Cir. 2001) (quoting *Colorado River Water Conservation Dist. v.

United States*, 424 U.S. 800, 813, 817 (1976)).[2]

"[A]bstention is generally disfavored, and federal courts have a 'virtually

unflagging obligation' to exercise their jurisdiction."  *Niagara Mohawk Power Corp. v.

Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012).  "The

abstention doctrine comprises a few extraordinary and narrow exceptions to a federal

court's duty to exercise its jurisdiction,' and 'in this analysis, the balance is heavily

---

[2] In determining whether [*Colorado River* abstention] is applicable, the court should consider (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction . . . (2) whether the federal forum is less inconvenient than the other for the parties . . . (3) whether staying or dismissing the federal action will avoid piecemeal litigation . . . (4) the order in which the actions were filed . . . and whether proceedings have advanced more in one forum than in the other . . . (5) whether federal law provides the rule of decision . . . and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cty. Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted).

weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Woodford*, 239 F.3d at 522).

"A finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp.2d 163, 175 (E.D.N.Y. 2013) (quoting *Dittmer v. Cty. Of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  In this case, as far as this Court is aware, there is no concurrent state-court litigation.  If the defendants mean to suggest that the state-court debt collection efforts are parallel proceedings, their argument misses the mark.  When a federal proceeding "concerns defendants' debt-collection methods, while the [state-court] collection actions involve the validity of the underlying debts," the underlying "collection actions will not resolve plaintiffs' claims, [and] abstention would not be appropriate." *Id.*

Here, as in *Fritz*, the state-court proceedings upon which the defendants seem to rely relate to the validity of McCrobie's underlying debts to Providian Financial and Centurion Capital—not whether the defendants violated the FDCPA in attempting to collect those debts.  If state-court proceedings were brought to contest whether the assignment of McCrobie's debts from Providian/Centurion to Palisades were valid, that might have required a more detailed abstention analysis.  But the defendants have not pointed to anything that indicates that this was the underlying basis of any state-court litigation, and as they have pointed out, it is unlikely that McCrobie has standing to bring

such a "direct attack" on the assignment.  On the present record, abstention is not

appropriate. [3]

### 2.    Effect of N.Y. C.P.L.R.§ 5019(c) on FDCPA Claims

The defendants contend that the alleged FDCPA violations all are premised on

violations of N.Y. C.P.L.R. § 5019(c).[4] Docket Items 55 at 12-14 and 56 at 11-13.  And

they argue that (1) because a judgment is enforceable without a § 5019(c) filing, (2)

because § 5019(c) is not intended to provide notice to judgment debtors but instead to

---

[3] The defendants have submitted a copy of McCrobie's motion to vacate the underlying judgment filed in the City Court of Buffalo on August 27, 2015.  Docket Item 25-2.  In that motion, McCrobie states that he was never served with a copy of the summons and complaint that led to the judgment.  *Id.* at 5.  He also argues that the Court lacked jurisdiction to hear his creditor's claim because of where he lived at the time of the litigation.  *Id.* at 6.

The defendants also have submitted a copy of the Buffalo City Court Decision and Order, issued on May 22, 2017, resolving McCrobie's motion.  Docket Item 68.  As that court explained, "the sole issue before [it was] whether or not the judgment should be vacated."  *Id.* at 6.  That court decided that based on the delay from when McCrobie was made aware of the default judgment against him to when he moved to vacate, he had forfeited his right to seek to vacate the judgment.  *Id.* at 7-8.

Whether the defendants in this case, as opposed to Centurion Capital Corporation or Providian Financial, had the legal right to collect McCrobie's debts was therefore never at issue in that proceeding.

[4] N.Y. C.P.L.R. § 5019(c) governs changes in judgment creditors.  It provides that

A person other than the party recovering a judgment who becomes entitled to enforce it, shall file in the office of the clerk of the court in which the judgment was entered or, in the case of a judgment of a court other than the supreme, county or a family court which has been docketed by the clerk of the county in which it was entered, in the office of such county clerk, a copy of the instrument on which his authority is based, acknowledged in the form required to entitle a deed to be recorded, or, if his authority is based on a court order, a certified copy of the order. Upon such filing the clerk shall make an appropriate entry on his docket of the judgment.

benefit the assignee, and (3) because § 5019(c) does not require notice to the judgment

debtor, McCrobie has failed to state a claim on which relief can be granted.  Docket

Items 55 at 12-14 and 56 at 11-13.

The defendants are incorrect.  The FAC does not allege that the defendants

violated the FDCPA because they violated § 5019(c).[5]  Instead, the FAC alleges that

the defendants did not own or have the right to collect Centurion Capital Corporation's

judgment because that judgment never was assigned to any other person or entity at

all, and certainly not to Palisades XVI, LLC.  *Id.* at 7-8.  Those are the facts in the FAC

sufficient to support McCrobie's claim that the defendants violated the FDCPA.  *See* 15

U.S.C. § 1692e (prohibiting "any false, deceptive, or misleading representation or

means in connection with the collection of any debt"); § 1692f (prohibiting "unfair or

unconscionable means to collect or attempt to collect any debt"); *see also Arias*, 875

F.3d 138-39 (2d Cir. 2017) (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517

(9th Cir. 1994)) (filing writ of garnishment against debtors without legal right to do so

violates § 1692e); *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 125 (4th Cir.

2014) (implicitly suggesting that representation that a debt collector owns a judgment

that it does not in fact own states a FDCPA claim);[6] *Gearing v. Check Brokerage Corp.*,

---

[5] McCrobie's proposed second amended complaint includes additional allegations that the defendants violated the FDCPA because they violated N.Y.C.P.L.R. § 5019(c)—and therefore were not legally entitled to enforce Centurion's judgment— even if discovery demonstrates that Centurion's debt was in fact assigned to the defendants at the time of their enforcement actions.  Docket Item 19-3 at 12-14.  And McCrobie makes legal arguments supporting this position in his submissions to this Court.  Docket Item 63 at 11, 14.  But because this Court has determined that McCrobie's motion for leave to amend his complaint violated Local Rule 15(b), the Court does not reach this question now.

[6] In *Powell*, the plaintiff claimed that the defendant "falsely represented that [it] was the owner of the judgment" that it tried to collect.  *Powell v. Palisades Acquisition*

233 F.3d 469, 472 (7th Cir. 2000) (affirming district court's determination that a debt collector's "false impression as to the legal status it enjoyed . . . was . . . a false representation in an attempt to collect [a] debt, in violation of" the FDCPA).

### 3.    FDCPA Material Statement Requirement

The defendants assert that the false statements alleged are insufficiently material as a matter of law to make out an FDCPA violation.  Docket Items 55 at 15-17 and 56 at 22-23.[7]  The complaint alleges that even though the defendants had no right to collect McCrobie's debt, they tried to collect that debt and sent an invalid income execution to his employer threatening to garnish his wages.  Docket Item 7 at 6-7.

As the Second Circuit has recently explained, a misrepresentation is material when a debt collector "misrepresent[s] the nature or legal status of the debt or undermine[s a consumer]'s ability to respond to debt collection."  *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 86 (2d Cir. 2018).  McCrobie contends that the defendants misrepresented their legal ownership of—and right to collect—the debt that they attempted to collect.  That surely is material.  *See Arias*, 875 F.3d at 138-39 ("filing writ of garnishment against debtors" without right to do so violates § 1692e).  *Cf. Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534-35 (6th Cir. 2014) ("[t]he least

---

*XVI, LLC*, 782 F.3d 119, 125 (4th Cir. 2014).  But the court "conclude[d] that the record clearly show[ed] that the judgment against [the plaintiff] had indeed been assigned by Platinum Financial [to the defendant] and that the defendants' representation to this fact was therefore not false."  *Id.*  If that turns out to be the case here, then the defendants will be entitled to judgment—perhaps summary judgment.

[7] The Second Circuit has recently concluded that 15 U.S.C. § 1692e's "least sophisticated consumer standard encompasses a materiality requirement."  *Cohen v. Rosicki, Rosicki & Associates, P.C.*, 897 F.3d 75, 85 (2d Cir. 2018).

sophisticated consumer, indeed most consumers, would regard filing a [procedurally unauthorized] lien on the debtor's home . . . as an 'unfair or unconscionable means to collect or attempt to collect' the debt").

### 4.    Personal Liability Under the FDCPA

Defendant Todd Houslanger argues that he may be held personally liable for FDCPA violations only if this Court pierces the corporate veil.  Docket Item 55 at 23. Houslanger frames McCrobie's claim against him as an attempt to hold him liable as the alter ego of the corporate defendant, and he argues that the claim fails because McCrobie has not pleaded facts sufficient to pierce the corporate veil.  Docket Item 55 at 23-24.

To determine the scope of liability under the FDCPA, this Court begins "with a careful examination of the statutory text."  *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).  Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt"; and § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  McCrobie's complaint contends that Houslanger himself committed those violations while acting as an agent for Houslanger and Associates.  Docket Item 7 at 1.  Thus, whether the Act reaches Houslanger himself depends on whether he was a "debt collector" when he allegedly committed the violations.

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another." § 1692a(6). "[T]here is a split of authority about whether the corporate form insulates the shareholder, officer, or director from personal liability under the FDCPA." *See Schwarm v. Craighead*, 552 F. Supp.2d 1056, 1070-71 (E.D. Cal. 2008) (describing split). The Seventh Circuit has held that the FDCPA "is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil." *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000). On the other hand, the Sixth Circuit has concluded that subjecting a member of an LLC "to individual liability for violations of the FDCPA will require proof that the individual is a 'debt collector,' but does not require piercing of the corporate veil." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 437-38 (6th Cir. 2008). "A majority of courts hold that an employee may be personally liable under the FDCPA." *Kemp v. Law Offices of Gerald E. Moore & Assocs., P.C.*, 2018 WL 4512049, at \*2 (D. Nev. Sept. 20, 2018). The Second Circuit has not addressed the issue.

This Court agrees with the majority that the definition of debt collector includes individuals. Nothing in the statutory language reflects an intent to permit only *respondeat superior* liability upon the corporation for the acts of its agents; instead, the language suggests that both corporate debt collectors and their individual agents may be jointly and severally liable for FDCPA violations. In this case, because McCrobie alleges that Houslanger himself violated the FDCPA, Houslanger may be held liable for his own violations. Docket Item 7 at 1. This Court reaches that conclusion for three reasons.

First, individual liability is consistent with the plain language of the FDCPA and the FDCPA's broad remedial purposes.  The FDCPA defines a debt collector as "*any person . . . in any business.*"  15 U.S.C. § 1692a(6) (emphasis added).  The language does not restrict liability to corporate employers when the natural person who took the actions that violated the FDCPA was a corporate employee or agent.  *See Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999); *Teng v. Metro. Retail Recovery Inc.*, 851 F. Supp. 61, 67 (E.D.N.Y. 1994).

Second, in 1988, the Federal Trade Commission ("FTC") issued formal interpretive guidance on the question of individual liability under the FDCPA. Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,102 (Dec. 13, 1988).  In that guidance, the FTC listed a number of examples of individuals and entities that would meet the statutory definition of debt collector, explicitly noting that the term encompasses "[e]mployees of a debt collection business, including a corporation, partnership, or other entity whose business is the collection of debts owed another."  *Id.*

Finally, the broad language that Congress used when defining "debt collector" in § 1692a(6) is consistent with broad language that Congress has used elsewhere when it intended to extend liability to individual agents or employees; conversely, it is inconsistent with the language Congress has used when it intended to limit liability only to employers or corporate entities.  For example, the Second Circuit (and every other circuit to address the issue[8]), has held that "an owning stockholder who manages the

---

[8] *See Schwarm v. Craighead*, 552 F. Supp.2d 1056, 1072 (E.D. Cal. 2008) (listing cases).

corporation" may be individually liable for environmental contamination cleanup costs as an "operator" under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985).  That is because, similar to the FDCPA, "[u]nder CERCLA 'owner or operator' is defined to mean '*any person* owning or operating' an onshore facility.'"  *Id.* (emphasis added) (quoting 42 U.S.C. § 9601(20)(A)); *see United States v. Ne. Pharm. and Chem. Co., Inc.*, 579 F. Supp. 823, 847-50 (W.D. Mo. 1984) (cited in *Shore Realty Corp.,* 759 F.2d at 1052) (interpreting CERLCA to require individual liability even though "corporate officers are normally not personally liable for the acts of the corporate entity"); *see also United States v. Ne. Pharm. & Chem. Co. Inc.*, 810 F.2d 726, 743 (8th Cir. 1986) ("Congress could have limited the statutory definition of 'person' [to exclude individual shareholders] but chose not to do so.").

In contrast, the Second Circuit has held "that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII" of the Civil Rights Act of 1964.  *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995). That is because the terms Congress used in that statute "indicate that Congress intended to limit liability to employer-entities with fifteen or more employees."  *Id.* at 1314.

> By contrast, the FDCPA does not limit liability to business entities or employers. Rather, under the FDCPA, liability extends to all "debt collectors," defined as "any person . . . in any business the principal purpose of which is the collection of any debts . . . ." The point of this is simply that it is much easier to read the language of Title VII and conclude that it is based upon the *respondeat superior* liability of the employer, especially given the remedies available under Title VII, than it is to conclude the same thing with the FDCPA.

*Kistner*, 518 F.3d at 437 (quoting *Brumbelow v. Law Offices of Bennett and Deloney, P.C.*, 372 F. Supp.2d 615, 622 (D. Utah 2005)).

For each and all of those reasons, Houslanger may be held liable individually for his own FDCPA violations.

### D.    New York General Business Law § 349

The defendants also contend that McCrobie has failed to state a viable claim under GBL § 349.  Docket item 55 at 18-22.  GBL § 349 provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

### 1.    Interaction Between GBL § 349 and § 601

First, the defendants argue that McCrobie's claims under GBL § 349 must be dismissed because the New York Court of Appeals has held that GBL § 601—which regulates certain practices of debt collectors—does not include a private right of action. *See Varela v. Inv'rs Ins. Holding Corp.*, 81 N.Y.2d 958, 961 (1993).  Because the conduct that McCrobie alleges may fall within the scope of conduct prohibited under § 601, the defendants argue that it cannot be the basis of a § 349 claim.  Docket Item 55 at 18-19.

A plaintiff may not rely on a § 601 violation to make out a *per se* violation of § 349.  *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).  But, as many courts have held, that does not mean that conduct prohibited under § 601 may not also fall within the scope of § 349.  *See Morales v. Kavulich & Assocs., P.C.*, 294 F. Supp.3d 193, 197 (S.D.N.Y. 2018) (and cases cited therein).  Instead, courts must make an independent determination as to whether the conduct meets the § 349 standard.  *Id.*  So

20

the fact that the conduct alleged here may violate § 601 as well as § 349 is of no

moment.

### 2.    Standing

The defendants contend that McCrobie "has no standing in this case as he is not

a consumer for the purposes of GBL § 349."  Docket Item 55 at 20.  They reason that

he lacks standing as a consumer because "it is undisputed that he never had any

business relationship with [Todd Houslanger or Houslanger & Associates, PLLC] and

was not a consumer of their legal services."  *Id.*  But § 349 "extends the right of action to

'any person who has been injured by reason of any violation of this section.'"  *H20*

*Swimwear, Ltd v. Lomas*, 560 N.Y.S.2d 19, 21 (1st Dep't 1990) (quoting § 349).  Thus,

"[i]t is not necessary that the plaintiff be a consumer or stand in the shoes of a

consumer in order to bring a [§] 349 claim."  *Int'l Design Concepts, LLC v. Saks, Inc.*,

486 F. Supp.2d 229, 238 (S.D.N.Y. 2007) (citing *Securitron Magnalock Corp. v.*

*Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)).

### 3.    Consumer-Oriented Act

"A plaintiff under [§] 349 must prove three elements: first, that the challenged act

or practice was consumer-oriented; second, that it was misleading in a material way;

and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v.*

*Chem. Bank*, 95 N.Y.2d, 24, 29 (2000).

The defendants contend that the complaint does not allege the first of these

elements—that they engaged in a consumer-oriented act or practice.  Docket Item 55 at

20-21.  More specifically, they assert that the FAC "fails to allege that defendants

directed their actions to the general public."  *Id.* at 20.  Furthermore, they argue that

McCrobie "does not allege that defendants sell, promote, or advertise goods or services to consumers." *Id.*

The defendants' arguments misconstrue the scope of the "consumer-oriented" requirement.  Section 349 on its "face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d 282, 290 (1999) (footnote omitted).  Its reach "provides needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Id.* (quoting N.Y. Dep't of Law, Mem to Governor, 1963 N.Y. Legis Ann, at 105).  "[S]ection 349 is directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995).  "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affects similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers*', 623 N.Y.2d at 27)).  In contrast to what the defendants argue, § 349 may impose liability when "a deceptive act or practice *has 'a broader impact* on consumers at large,'" *Fibermark, Inc. v. Brownville Specialty Paper Prods., Inc.*, 419 F. Supp.2d 225, 240 (N.D.N.Y. 2005) (emphasis added) (quoting *Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 344 (1999)), and not simply when a defendant has sold, promoted, or advertised goods or services directly to consumers.  "The requirement that defendants engaged in 'consumer-oriented' conduct has been construed liberally." *White v. Fein, Such and Crane, LLP*, 2015 WL 6455142, at *6 (W.D.N.Y. Oct. 26, 2015).

In this case, as a credit card consumer, McCrobie is a member of the "consuming public." *Oswego Laborers'*, 85 N.Y.2d at 24.  "In contrast to a private contract dispute"

which is not covered by § 349, *Gaidon*, 94 N.Y.2d at 344, the dispute here is consumer

oriented as pleaded because the facts alleged in the complaint are sufficient to create

the inference that the defendants buy consumer debts and judgments in bulk.  *See*

Docket Item 7 at 8 (defendants are "routinely enforcing, or attempting to enforce[,] post

judgment remedies regarding judgments entered many years ago").  One of the debts

and judgments that the defendants attempted to collect was McCrobie's, and the FAC

claims that the defendants did not in fact have the legal right to collect that debt.

Because, according to the FAC, the defendants buy consumer credit debts of the public

in bulk, if this alleged conduct is typical of their debt collection business practices, the

defendants' actions may well have a broader impact on the public at large.

The defendants cite *DirecTV, Inc. v. Rowland*, 2005 WL 189722 (W.D.N.Y. Jan.

22, 2005), for the broad proposition that as a matter of law, conduct taken by a party as

part of a legal proceeding is not consumer-oriented activity falling within § 349.  Docket

Item 55 at 20.  But that case is inapposite.  In *DirecTV*, the plaintiff, a direct broadcast

satellite service provider, alleged that the defendant purchased and used satellite-

signal-theft equipment to gain unauthorized access to its signal.  *DirecTV, Inc.*, *supra* at

*1.  The defendant counterclaimed under § 349 that the plaintiff was attempting to extort

money from individuals it believed purchased certain equipment without determining

whether the equipment was used to intercept satellite transmissions.  *Id.*  The court

found that even if the defendants' allegations were true, the communications from the

plaintiff were sent to individuals suspected to be obtaining the plaintiff's product illegally,

"not consumers legitimately looking to do business with DirecTV."  *Id.* at *3.  Therefore,

the court concluded that "there is no allegation that DirecTV's conduct is directed at consumers." *Id.*

In contrast to the defendant in *DirecTV, Inc.*, whose relationship with the plaintiff stemmed from his alleged theft of satellite signals, McCrobie's relationship with his creditors (and debt collectors) stems from his decision to sign up for a consumer credit card and his failure to pay his bill. Indeed, New York courts have explained that "[t]he kinds of trade practices which have been considered deceptive in the past include . . . deceptive collection efforts against debtors." *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 773 (2d Dep't 1995) (quoting *Goldberg v. Manhattan Ford Lincoln-Mercury*, 492 N.Y.S.2d 318, 321 (N.Y. Cty. Sup. Ct.1985)). The defendants' attempts to get McCrobie to pay that debt (whether or not those debts were owed to the defendants), including garnishing his wages, therefore is a "consumer-oriented act."

### 4. Actual Harm

The defendants contend that McCrobie cannot prove that their allegedly deceptive acts actually misled or injured him. Docket Item 55 at 21-22. The defendants rely on *Toohey v. Portfolio Recovery Assocs., LLC*, 2016 WL 4473016, at *10 (S.D.N.Y. Aug. 22, 2016), where, on facts similar to those in this case, the court determined that because a plaintiff "ha[d] not alleged that she did not owe the debt for which her wages were garnished, [she] ha[d] not alleged any 'actual' injury suffered as a result of Defendants' alleged deceptive acts" under GBL § 349.

This Court does not find *Toohey* persuasive. As the New York Court of Appeals has explained, "a plaintiff must prove 'actual' injury to recover under the statute, *though not necessarily pecuniary harm*." *Stutman*, 95 N.Y.2d at 29 (emphasis added). Indeed,

like the FDCPA, GBL § 349 includes a statutory damage provision, permitting plaintiffs to recover "actual damages or fifty dollars, whichever is greater."  § 349(h).  And "[a]ccording to one of the [principal] draftsmen of the private remedy amendment, the statutory damage provision was included precisely for the purpose of enabling plaintiffs to obtain damages in instances where there is no quantifiable economic loss."  Note, *New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor*, 48 Brook. L. Rev. 509, 551 n.180 (1982) (cited in *City of New York v. Smokes-Spirts.com, Inc.*, 12 N.Y.3d 616, 622 (2009) and *Oswego Laborers'*, 85 N.Y.2d at 24).

Unlike cases where, for example, a consumer purchased a $4,200 bottle of wine at an auction with knowledge that the wine was counterfeit, *Koch v. Christie's Int'l PLC*, 785 F.Supp.2d 105, 119 (S.D.N.Y. 2011), or where the sale of consumer information to third parties resulted only in offers that the plaintiffs were free to decline, *Smith v. Chase Manhattan Bank, USA, N.A.*, 741 N.Y.S.2d 100, 102 (2d Dep't 2002), here, as discussed above, the defendants are alleged to have misrepresented their right to garnish McCrobie's wages and to have taken significant steps toward doing just that. Abusive debt collection is "a harm in itself," *Im*, *supra* at *6, especially when misrepresentations place a consumer in immediate fear that he or she may be about to lose his home, *id.*, or her income.  Because § 349 does not require pecuniary harm or quantifiable economic loss to meet its actual-injury requirement and to recover the fifty-dollar statutory damage sum, this Court is persuaded that McCrobie has alleged facts sufficient under § 349.

### E.      New York Judiciary Law § 487

The defendants argue that McCrobie has failed to state a claim under New York

Judiciary Law § 487.  Docket Item 55 at 22-23.  But McCrobie does not allege any

violations of this statute in his FAC.[9]  The Court therefore does not address this issue.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss, Docket Item 17,

is DENIED.  McCrobie's motion for leave to amend his complaint, Docket Item 19, is

DENIED without prejudice, and his motion for leave to file supplemental authority,

Docket Item 75, is DENIED as moot.  **Within 45 days of the date of this order**,

McCrobie may seek leave to amend his complaint in a motion that complies with Local

Rule 15(b).

The defendants may not re-argue on a future motion to dismiss any argument

that has been rejected in this order, nor may the defendants raise for the first time on a

future motion to dismiss any argument that was previously available but not raised on

this motion to dismiss.

SO ORDERED.

Dated:         February 14, 2019
               Buffalo, New York


                                            *s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE

---

[9] McCrobie's proposed second amended complaint includes a brief claim of a
violation of New York Judiciary Law § 487, Docket Item 19-3 at 23, but McCrobie's
motion for leave to amend his first amended complaint is denied without prejudice.

26