UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MCCROBIE,

                                              Plaintiff,

v.                                                           1:15-cv-00018-LJV-MJR

PALISADES ACQUISITION XVI, LLC;
ASTA FUNDING, INC.;
HOUSLANGER & ASSOCIATES, PLLC;
TODD HOUSLANGER

                                              Defendants.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO AMEND HIS COMPLAINT**

### I. Preliminary Statement

On May 19, 2015, Plaintiff filed his First Amended Complaint. (FAC) (Dkt #7). This complaint was served on all named Defendants within the time allotted by Federal Rule of Civil Procedure 4(m). (Dkt #10-13). Defendant moved to dismiss Plaintiff's FAC on July 28, 2015. Upon conferring with the undersigned counsel, and upon further deliberation, Plaintiff moved for leave to file a Second Amended Complaint (SAC) on August 27, 2015, which also presented a response to Defendant's motion to dismiss. *See* Dkt#19. On February 15, 2019 Judge Villardo issued an order denying Defendant's motion to dismiss; and denying without prejudice Plaintiff's motion for leave to amend. Judge Vilardo afforded Plaintiff 45 days to re-file his motion for leave to amend. Finally, Judge Vilardo barred Defendant from raising any arguments addressed in Judge Vilardo's detailed order, and also prevented Defendant from raising any new arguments

which could have been raised earlier.  *See* Dkt#79, 80.  Plaintiff now files his motion for leave to amend the FAC and file the proposed SAC.

    II. **Absent any showing by Defendants that Plaintiff's proposed amendments are futile, Federal Rules of Civil Procedure direct a finding that Plaintiff be granted leave to amend his complaint as requested.**

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Nonetheless, leave to amend should be denied only where there is "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party ... [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir.2002).[1] The Second Circuit has characterized Rule 15 as encompassing a "liberal" amendment policy. *See, e.g., Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008). A motion to amend under Rule 15(a)(2) may be made at any stage of the litigation, *see, e.g., Laurent v. PricewaterhouseCoopers LLP*, 2012 WL 3614043, at *3 (S.D.N.Y. Aug. 15, 2012), and "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir.2010) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993)). Thus, case law holds that the "non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." *Grant v. Citibank (S.D.) N.A.*, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010) (citations omitted).

    a. <u>No reasonable arguments can be made that Plaintiff's motion to amend was made upon undue delay, or that it was made in bad faith or with a dilatory motive.</u>

Plaintiff has acted swiftly to amend his complaint in this matter.  It first received feedback regarding the FAC on July 28, 2015, when Defendants filed a motion to dismiss.  *See*

---

[1] The issue of "futility" is addressed in full detail in point "III" of this memorandum.

Dkt # 17.  Within 30 days, Plaintiff filed a motion for leave to amend.  *See* Dkt# 19.  He now re-files this motion in the allotted time frame provided by Judge Vilardo's February 15, 2019 order.

Moreover, upon the affixed affidavit it is clear that Plaintiff has not acted in bad faith or with a dilatory motive. In sum, no reasonable argument can be made that Plaintiff's motion to amend was made upon undue delay, or that it was made in bad faith or with a dilatory motive.

    b. <u>Defendants cannot demonstrate prejudice sufficient to defeat Plaintiff's motion to amend.</u>

The "most important factor" in the Rule 15(a) analysis is whether the opposing party would be prejudiced by the proposed amendment. *Roller Bearing Co. of America, Inc. v. American Software, Inc*., 570 F.Supp.2d 376, 384 (D.Conn. 2008) (*citing Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008). This inquiry is "often intertwined" with the consideration of whether there was undue delay on the part of the movant: a long delay is more likely to be found prejudicial. *See Id.* (*citing Evans v. Syracuse City School Dist*., 704 F.2d 44, 47 (2d Cir.1983)). But while the addition of a new claim or a change in theory of recovery through amendment may be a factor which contributes to the opposing party's prejudice, it does not constitute undue prejudice. *See Id.* at 385 (citing *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987) (holding that a denial of plaintiff's motion for leave to amend in order to change theories of recovery was an abuse of discretion absent a finding of futility, bad faith, or prejudice); *Arc/Connecticut v. O'Meara,* 2002 WL 31106383, at *3 (D.Conn.2002) (amended complaint filed soon after action was commenced broadening the scope of the case resulted in no prejudice); *Jenn–Air Prods. Co. v. Penn Ventilator, Inc.*, 283 F.Supp. 591, 593 (D.Pa.1968) (holding that Rule 15(a) is to be applied liberally even when the amendment adds an entirely new cause of action)). Where a party seeks to add an additional claim, evaluation of prejudice requires consideration of whether the new claim would "(i) require

the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Roller Bearing Co.*, 570 F.Supp.2d at 385 (*citing Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993). Notice to the nonmoving party of the underlying facts relied upon in the new claim or cause of action weighs against a finding of prejudice to the nonmoving party. *See Id.* (*citing Kreppein v. Celotex Corp.*, 969 F.2d 1424, 1427 (2d Cir.1992) (holding defendants were not prejudiced by the addition of a claim for damages for pain and suffering in a products liability action as defendants were on notice of the underlying facts relied on)).  It is the non-moving party's burden to demonstrate that it would be unfairly prejudiced by the proposed amendment. *See Id.* (citing Evans, 704 F.2d at 47).

Applying those factors to the present case, it is clear that the proposed amendment would not prejudice Defendants. Plaintiff's proposed amendments merely elaborate expand upon, and clarify the allegations made in the previous Complaint/.  Others are made to address misunderstandings Defendant appears to harbor about Plaintiff's complaint.  Most importantly, Plaintiff made his original motion to amend within the original one-year statute of limitations for filing this action.[2]  Defendants have been on notice of the claims in Plaintiff's proposed SAC for almost four years while this case has been tied up in motion practice.  They have had adequate time to prepare their defenses and preserve relevant evidence. No reasonable argument can be advanced that Defendants will be prejudiced by this motion to dismiss such that Plaintiff should be denied an opportunity to amend its complaint.

---

[2] As explained below, an employee-attorney of Defendant Houslanger & Associates, PLLC signed the income execution at issue in this case on August 28, 2014.

### III. Plaintiff's amendments are not futile because Plaintiff's proposed amended complaint could withstand a motion to dismiss pursuant to Rule 12(b)(6) on both counts.

A proposed amendment is futile if the proposed claim could not withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir.2002). A claim can only withstand a Rule 12(b)(6) motion if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In deciding whether a complaint meets this threshold, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868, 884–87 (2009). Because both counts of Plaintiff's proposed amended complaint can withstand this scrutiny, Plaintiff's proposed amendment is not futile.

   a. <u>Summary of Plaintiff's Proposed Second Amended Complaint.</u>

Plaintiff, Christopher McCrobie allegedly incurred a credit card debt to Providian Financial (hereinafter referred to as the "subject debt"). (*See* SAC ¶14). He allegedly defaulted on the subject debt. (*Id*. at ¶16). Sometime after the alleged default, Providian Financial allegedly assigned the subject debt to Centurion Capital Corporation. (*Id*. at ¶17). Centurion Capital Corporation initiated a lawsuit against Plaintiff regarding the subject debt. (*Id*. at 18). It served Plaintiff at an old address by substituted service (posting and mailing). (*Id*. at 19-20). As a result, Plaintiff never appeared, and a default judgment was entered in favor of Centurion Capital Corporation on or about March 8, 2007. (*Id*. at ¶21).

On August 28, 2014, more than seven years after the entry of the judgment, an attorney-employee of Houslanger & Associates, PLLC signed and forwarded an income execution to the Buffalo City Marshall's Office with instructions to execute on the judgment entered relating to

the subject debt. (PSAC ¶¶39-41; *see also* Exhibit F). This document represented that Defendant Palisades Acquisition XVI, LLC ("Palisades") was the "current creditor" by way of assignment. (*Id*.). Pursuant to Defendant Houslanger & Associates, PLLC's request, this income execution was ultimately forwarded by the Buffalo City Marshall's Office to Plaintiff's employer, and Defendants subsequently received $572.45. (*Id*. at ¶61; *see also* Exhibit A). Prior to executing on Plaintiff's income, Defendants failed to file an assignment reflecting that Palisades was the current judgment creditor. (*Id*. at ¶¶52-54). Plaintiff was also never provided with a notice of the alleged assignment. (*Id*. at ¶¶55-56).

When confronted by Plaintiff's attorneys and asked to provide documentation establishing Palisades' right to initiate post judgment remedies against Plaintiff, Defendant Todd Houslanger provided documents which failed to make any reference to Plaintiff, Centurion Capital Corporation, or the default judgment obtained against Plaintiff (PSAC ¶¶62-64; *see also* Exhibit B). Plaintiff's counsel informed Defendant Todd Houslanger of the deficiencies with these documents, to which he responded that the documents which he previously provided were "the assignment" and that the assignment was in a "pool of matters" in which he alleged that Plaintiff's account had been included. (*Id*. at ¶¶65-66; *see also* Exhibit A). He added, "[t]his is how they did things at the time of the assignment." (*Id*.).

Upon further investigation, Plaintiff learned that: (1) the "pool of matters" referenced by Defendant Todd Houslanger referred to Palisades' acquisition of the "Great Seneca Portfolio" through which Palisades, and its parent company Asta Funding, Inc., purchased $6.9 billion worth of charge off debt for $300 million (approximately four cents on the dollar) from Great Seneca Financial Corp. and other debt buyers. ((*Id.* at ¶ 67); (2) that Great Seneca Financial Corp. was, itself, a debt buyer who had acquired this portfolio from numerous parties, most of

whom were also debt buyers; (3) that Palisades plan was to service this debt through outsourcing and technology, and without adding materially to its infrastructure; (4) that it bought the debt "as is" with extremely limited put-back rights and warranties regarding collectability;[3] (5) that it had only conducted an "initial review" of the portfolio prior to purchase; (6) that shortly after the purchase, Palisades adopted a policy of litigation, rather than collection due to cash flow concerns; (7) that by June of 2014, Palisades was telling investors that given the age of its portfolio (currently 12-13 years removed from origination), and given that the portfolio consisted of debts which had already been purchased by at least one other debt buyer prior to Palisades purchase of the Great Seneca Portfolio, that it was on the "outer bounds of our collection forecasts" and that it could no longer value the portfolio according to its previous accounting methods; (8) that Palisades' parent company, Asta Funding, Inc., advertises on its website that after it purchases portfolios, it will not "burden" the seller with "overwhelming requests for documentation, or ongoing communications with debtors whose accounts have been sold" – which is virtually an invitation to unscrupulous players to serve up fraudulent or uncollectable accounts. (*Id*. at 67; *see also* Exhibits J-L).

The above facts establish that it is plausible, if not likely, that Plaintiffs can prove the allegations alleged in the proposed second amended complaint. In addition, it is well established that many third party debt buyers do not possess, and cannot obtain, documents necessary to establish a prima facie case. (PSAC ¶68) (collecting cases).[4] In fact, multiple courts have found that the Defendants in this action have on multiple occasions initiated post judgment remedies

---

[3] In other words, Palisades acquired the portfolio knowing that the debt contained in the portfolio may not be valid or provable, and declined to put any burden on Great Seneca or the other debt buyers to assist them should anyone challenge the legitimacy of any particular debt in the portfolio
[4] Keep in mind that, in this case, all of the debts contained in the Great Seneca Portfolio were purchased from other debt buyers themselves.

7

and have enforced judgments remedies against large numbers of judgment debtors based upon judgments entered many years ago in favor of other parties, and without documentation sufficient to prove that Defendants have any right to enforce said judgments.[5] (*Id*. at ¶69a-c). Finally, Plaintiff's attorneys previously brought suit against Houslanger & Associates, PLLC and Todd Houslanger for attempting to enforce post judgment remedies without any legal right to do so in the matter of *Argenteri v. Credigy Receivables Inc. et al*, (W.D.N.Y. Civil Action No. 1:14-cv-00425) (*Id*. at ¶¶71-71). In that case, as with this case, there were numerous deficiencies with the documentation allegedly enabling Mr. Houslanger's client to initiated and enforce post judgment remedies. (*Id*.).

Plaintiff alleges two classes which are identical in all respects except for the time periods in which the classes cover. The first class consists of consumers with New York addresses, who within one year prior to the filing of Plaintiff's Motion to Amend in this action;

    a.    Had an income execution forwarded to their employer bearing the signature of Todd Houslanger (or any other attorney employed by Houslanger & Associates, PLLC); or

    b.    Had their bank account restrained after a subpoena and/or restraining notice bearing Todd Houslanger's signature (or any other attorney employed by Houslanger & Associates, PLLC) was forwarded to their bank; and in which

    c.    Defendant Todd Houslanger represented that Palisades Acquisition XVI, LLC was the "current creditor" (or employed any other substantially similar language) by way of assignment; and

    d.    Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendant Todd Houslanger.

(PSAC ¶¶76-88).

---

[5] Although these cases do not implicate Asta Funding, Inc. directly, as the parent corporation of Palisades, they are vicariously liable for the co-defendant's tortious acts. *See Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1045 (N.D. Ill. 1998); *Shapiro, Bernstein & Co., Inc. v. H.L. Green Co. Inc.,* 316 F.2d 304, 307 (2d Cir.1963).

Plaintiff alleges individually, and on behalf of this class, that the actions of the Defendants described above violated 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1).  (PSAC ¶73-88).

The second class consists of consumers with New York addresses, who:

a.  Within three years before the filing of Plaintiff's Motion to Amend in this action;
b.  Had an income execution forwarded to their employer bearing the signature of Todd Houslanger (or any other attorney employed by Houslanger & Associates); or
c.  Had their bank account restrained after a subpoena and restraining notice bearing Todd Houslanger's signature (or any other attorney employed by Houslanger & Associates) was forwarded to their bank; and in which
d.  Defendant Todd Houslanger represented that Palisades Acquisition XVI, LLC was the "current creditor" (or employed any other substantially similar language) by way of assignment; and
e.  Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendant Todd Houslanger.

(PSAC ¶¶87-100).

On behalf of himself, and on behalf of this class, Plaintiff alleges (1) that all named Defendants violated New York General Business Law §349.  (*Id*. at ¶¶89-100).  Plaintiff specifically pled the numerosity, predominance, typicality, adequacy, and superiority requirements of Federal Rule of Civil Procedure 23.  (*Id*. at ¶¶73-75).  Plaintiff, individually, and on behalf of the classes, Plaintiff requests (1) a judgment declaring that the Defendants have committed the violations of the law alleged in the proposed amended complaint; (2) injunctive relief pursuant to NY GBL §349; actual and/or compensatory damages; statutory damages pursuant to the FDCPA and NY GBL §349; and treble damages pursuant to NY GBL§349. (PSAC at pp. 35-36).

b.  Plaintiff's proposed SAC is not futile

9

In his February 15, 2019 order, Judge Vilardo held that Plaintiff had standing under the FDCPA; that Defendants were not entitled to strike Todd Houslanger's admission regarding his documentation; that the doctrine of abstention did not apply; that N.Y. C.P.L.R. 5109(c) did not direct dismissal; that Defendant's misrepresentations were sufficiently material to trigger FDCPA liability; that Todd Houslanger was personally liable under the FDCPA; that Plaintiff had standing to bring a NY GBL§349 claim; that Plaintiff complained of consumer oriented conduct; and that Plaintiff alleged sufficient facts to show actual harm under NY GBL §349.  See Dkt#79.  Defendant is barred from re-litigating those claims.  Defendant is also barred from bringing any new theory as to why Plaintiff's claims are futile.  *See Id*.  Based on Plaintiff's review of the pleadings, the only unaddressed claim is whether Asta Funding may be held vicariously liable.[6]

As Plaintiff has previously argued, Asta Funding, Inc. is vicariously liable for all of the co-defendant's tortious acts because they have the right and ability to supervise its Palisades, and (2) they have a direct financial interest in the manner in which Palisades managed the Great Seneca portfolio. (SAC, ¶86(e); *Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1045 (N.D. Ill. 1998); *Shapiro, Bernstein & Co., Inc. v. H.L. Green Co. Inc.,* 316 F.2d 304, 307 (2d Cir.1963).

Finally, Plaintiff notes that one court within the Western District of New York has reasoned that it would be inappropriate to aggressively police an FDCPA Plaintiff's pleadings regarding vicarious liability given the early stage in the litigation, and the various theories

---

[6] Defendants failed to argue that his class allegations were futile.  *See* Dkt#25.  As such, Defendants are barred from any such argument in response to the present motion pursuant to Judge Vilardo's order. Plaintiff has already provided a detailed explanation as to why his class allegations are not futile.  *See* Dkt#19-1, p. 9-15.

regarding vicarious liability reflected in the FDCPA caselaw. *See Hallmark v. Cohen & Slamowitz, LLP*, 299 F.R.D. 407, 410-11 (W.D.N.Y. 2014) (*citing Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 712, n. 4 (2d Cir.1980) ( "Generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal theory or theories and statutory basis supporting the claim."). Here, Plaintiffs have given full notice to the Defendants as to the acts for which vicarious liability is asserted, and as such, has met its initial burden with respect to vicarious liability at the pleading stage.

## CONCLUSION

By reason of the foregoing, Plaintiff's motion should be granted in all respects.

Dated: March 11, 2019  /s/ Timothy Hiller
Timothy Hiller, Esq.
Law Offices of Kenneth Hiller PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: thiller@kennethhiller.com
sandrews@kennethhiller.com
khiller@kennethhiller.com