BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000
Scott E. Wortman
Hilary F. Korman

*Counsel for Palisades Acquisition XVI, LLC*


UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER MCCROBIE,

                                        Plaintiff,          Case No. 15-cv-00018-LJV-MJR

                    -against-

PALISADES ACQUISITION XVI, LLC
AND HOUSLANGER & ASSOCIATES, PLLC
AND TODD HOUSLANGER

                                        Defendants.


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S SECOND
MOTION TO AMEND FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................ 1

ABRIDGED STATEMENT OF FACTS AND PROCEDURAL HISTORY .............................. 2

POINT I      PLAINTIFF'S SECOND MOTION TO AMEND FAILS TO
COMPLY WITH MANDATORY FEDERAL AND LOCAL CIVIL
RULES ........................................................................................ 6

     A.    Local Rule 15 ............................................................................ 6

     B.    The Amended Pleadings are Incomplete and Insufficient to
Supersede the FAC ................................................................... 7

     C.    Plaintiff's Repeated Failures to Cure Deficiencies .................................. 10

POINT II    PLAINTIFF'S "SHOTGUN PLEADING" STRATEGY MAKES IT
IMPOSSIBLE TO ASCERTAIN WHICH ALLEGATIONS OF
FACT ARE INTENDED TO SUPPORT WHICH CLAIM(S) FOR
RELIEF AGAINST WHICH DEFENDANT ............................................. 12

POINT III   PLAINTIFF'S PROPOSED SAC IS FUTILE AS PLAINTIFF
DOES NOT INCLUDE ANY SPECIFIC ALLEGATIONS
AGAINST ASTA AND PLAINTIFF HAS NOT SATISFIED THE
APPLICABLE JOINDER REQUIREMENTS ........................................... 16

     A.    Futility ..................................................................................... 16

     B.    Joinder .................................................................................... 20

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alexander v. City of Syracuse,
  No. 5:17-CV-1195, 2018 WL 6591426 (N.D.N.Y. Dec. 13, 2018) .......................................13

Anderson News, L.L.C. v. American Media, Inc.,
  680 F.3d 162 (2d Cir. 2012)................................................................................................5

Ashcroft v. Iqbal ................................................................................................................5

Banff Ltd. v. Ltd., Inc.,
  869 F. Supp. 1103 (S.D.N.Y. 1994)..................................................................................18

Bilello v.1PMorgan Chase Retirement Plan,
  649 F. Supp. 2d 142 (S.D.N.Y. 2009)................................................................................5

Chapman v. YMCA of Greater Buffalo,
  161 F.R.D. 21 (W.D.N.Y. 1995)........................................................................................4

Cullen v. Verizon Commc'ns,
  No. 14-CV-464S, 2014 WL 6627494 (W.D.N.Y. Nov. 21, 2014)...........................................4

Davidson v. Canfield,
  No. 07-CV-599S SR, 2012 WL 6087486 (W.D.N.Y. Dec. 6, 2012).......................................9

Desert Empire Bank v. Insurance Co.,
  623 F.2d 1371 (9th Cir.1980) .......................................................................................6, 20

Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist.,
  No. 16-CV-6594 (CJS), 2018 WL 2100605 (W.D.N.Y. May 7, 2018)................................7, 9

Eldridge v. Rochester City Sch. Dist.,
  968 F. Supp. 2d 546 (W.D.N.Y. 2013) ...........................................................................9, 16

Fletcher v. Atex, Inc.,
  68 F.3d 1451 (2d. Cir. 1995)..........................................................................................16, 17

Foman v. Davis,
  371 U.S. 178 (1962)..........................................................................................................4

FTD Corp. v. Banker's Trust Co.,
  954 F. Supp. 106 (S.D.N.Y. 1994)..................................................................................6, 20

Goes Lithography Co. v. Banta Corp.,
  26 F. Supp. 2d 1042 (N.D. Ill. 1998) ..............................................................................17, 18

Hallmark v. Cohen & Slamowitz, LLP,
   299 F.R.D. 407 (W.D.N.Y. 2014)....................................................................................19

Hayden v. Paterson,
  594 F.3d 150 (2d Cir. 2010)..............................................................................................5

Hinson v. Norwest Financial South Carolina, Inc.,
  239 F.3d 611 (4th Cir. 2001) .........................................................................................6, 20

*McCrobie v. Palisades Acquisition XVI, LLC et al, 15-cv-00018-LJV-MJR*
152157.00601/119244489v.3

In re Bishop,
578 B.R. 158 (Bankr. W.D.N.Y. 2017) ...............................................................................12

Jaghory v. N.Y. State Delft of Educ.,
131 F.3d 326 (2d Cir. 1997) .................................................................................................5

Jones v. New York Div. of Military & Naval Affairs,
166 F.3d 45 (2d Cir. 1999) ...................................................................................................5

Jones v. Ocwen Fed. Bank,
147 F. Supp. 2d 219 (S.D.N.Y. 2001) ................................................................................15

Koppel v. 4987 Corp.,
167 F.3d 125 (2d Cir. 1999) .................................................................................................5

Link v. Wabash R. Co.,
C.A.7 (Ind.) 1961, 291 F.2d 542, certiorari granted 82 S.Ct. 242, 368 U.S.
918, 7 L.Ed.2d 134, affirmed 82 S.Ct. 1386, 370 U.S. 626, 8 L.Ed.2d 734,
rehearing denied 83 S.Ct. 115, 371 U.S. 873, 9 L.Ed.2d 112 ..................................................7

McCrobie v. Palisades Acquisition XVI, LLC,
359 F. Supp. 3d 239 (W.D.N.Y. 2019) ............................................................................4, 6

McCrobie v. Palisades Acquisition XVI, LLC,
664 F. App'x 81 (2d Cir. 2016) ...........................................................................................4

McCrobie v. Palisades Acquisition XVI, LLC,
No. 15-CV-18-JTC, 2016 WL 1178584, (W.D.N.Y. Mar. 25, 2016), overruled
on other grounds, 664 F. App'x 81 (2d Cir. 2016) ............................................................12

Monahan v. N.Y. City Dep't of Corr.,
214 F.3d 275 (2d Cir.), cert. denied, 531 U.S. 1035 (2000) ...............................................4

Moshenko v. State Univ. of New York at Buffalo,
No. 07-CV-116A, 2007 WL 4224613 (W.D.N.Y. Nov. 27, 2007) ....................................7

Oliver v. New York State Police,
No. 1:17-CV-01157 EAW, 2019 WL 453363 (W.D.N.Y. Feb. 5, 2019) ..........................14

Panther Partners Inc. v. Ikanos Commc'ns, Inc.,
681 F.3d 114 (2d Cir. 2012) .................................................................................................5

Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,
842 F.2d 1466 (3d Cir. 1988) .............................................................................................17

Ricciuti v. New York City Transit Auth.,
941 F.2d 119 (2d Cir.1991) ................................................................................................15

Ross & Cohen v. Kurtz Steel Corp.,
237 A.D.2d 172, 654 N.Y.S.2d 375 (N.Y. App. Div. 1st Dep't 1997) ................................9

Salahuddin v. Cuomo,
861 F.2d 40 (2d Cir. 1988) .................................................................................................12

Schweitzer v. Crofton,
935 F. Supp. 2d 527 (E.D.N.Y. 2013), aff'd, 560 F. App'x 6 (2d Cir. 2014) ..................10

Scone Investments, L.P. v. Am. Third Mkt. Corp., No. 97 CIV. 3802 (SAS), 1998
    WL 205338 (S.D.N.Y. Apr. 28, 1998) ............................................................15

Sechler-Hoar v. Tr. U/W of Gladys G. Hoart,
    No. 3:17-CV-01968 (JAM), 2018 WL 3715277 (D. Conn. Aug. 3, 2018) ............14

Shapiro, Bernstein & Co., Inc. v. H.L. Green Co. Inc.,
    316 F.2d 304 (2d Cir.1963)..........................................................................17, 18

Straker v. Metro. Transit Auth.,
    333 F.Supp.2d 91 (E.D.N.Y.2004) .................................................................10

Swinton v. Livingston Cty.,
    No. 15-CV-00053A(F), 2016 WL 1056608 (W.D.N.Y. Mar. 17, 2016)................10

U.S. ex rel. Chapman v. Office of Children & Family Servs. of State of New
    York,
    No. 1:04-CV-1505, 2010 WL 610730 (N.D.N.Y. Feb. 16, 2010), aff'd sub
    nom. Chapman v. Office of Children & Family Servs. of the State of New
    York, 423 F. App'x 104 (2d Cir. 2011) ..........................................................14

Weiland v. Palm Beach Cty. Sheriff's Office,
    792 F.3d 1313 (11th Cir. 2015) .....................................................................14

White v. Goodman,
    200 F.3d 1016 (7th Cir. 2000) ......................................................................20

**Statutes**

815 ILCS 505/7 ..............................................................................................18

15 U.S.C § 1692-1692(p)...............................................................13, 16, 17, 19

N.Y. Jud. Ct. Acts Law § 487 ...........................................................................9

U.C.C.A. § 213 .................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 8 .............................................................................................14

Fed. R. Civ. P. 8(a)(2).............................................................................12, 13, 14

Fed. R. Civ. P. 9(b) .........................................................................................15

Fed. R. Civ. P. 10(b) .......................................................................................15

Fed R. Civ. P. 12(b)(1)......................................................................................3

Fed. R. Civ. P. 12(b)(6)...................................................................................3, 5

Fed .R. Civ. P. 12(f) .......................................................................................12

Fed. R. Civ. P.15(a).................................................................................4, 6, 20

Fed. R. Civ. P. 15(a)(2) ....................................................................................4

Fed. R. Civ. P. 20 ..........................................................................................20

Fed. R. Civ. P. 20(a) ..................................................................................6, 20

Fed. R. Civ. P. 83 ....................................................................................................7

FTC Report, 2013 WL 419348 .................................................................................9

L. R. Civ. P. 15 ................................................................................... *passim*

L. R. Civ. P. 15(a) ....................................................................................................6

L. R. Civ. P. 15(b) ...........................................................................................4, 6, 7

L. R. Civ. P. 23(a) ..................................................................................................11

L. R. Civ. P. 23(b)(2) ...............................................................................................8

*McCrobie v. Palisades Acquisition XVI, LLC et al*, 15-cv-00018-LJV-MJR
152157.00601/119244489v.3

## INTRODUCTION

This memorandum of law is submitted on behalf of Defendant Palisades Acquisition XVI, LLC (hereinafter "Palisades" or "Defendant") in opposition to Plaintiff's 2nd motion for leave to file a second amended complaint (Plaintiff's "Motion") [Dkt. No. 82].

## PRELIMINARY STATEMENT

This is Plaintiff's second attempt to amend the complaint, and it is just as unavailing as the first.  The first attempt was denied for Plaintiff's intentional failure to comply with Local Rule 15—he chose not to file a redlined version of the proposed complaint because he unilaterally determined it was not "practical."  Nonetheless, he has <u>again</u> failed to attach a redlined copy of the proposed amendment, and, for that matter, simply refers to the proposed second amended complaint from his first motion without attaching a new proposed amended complaint.

As an initial matter, Plaintiff alleges that "Judge Vilardo barred Defendant[s] from raising any arguments addressed in Judge Vilardo's detailed order, and also prevented Defendant[s] from raising any new arguments which could have been raised earlier." <u>Plaintiff's Motion</u>, at 1-2. Likewise, Plaintiff alleges that "the Court has barred Defendant[s] from bringing any new theory as to why Plaintiff's claims are futile" (<u>Id.</u> at 10), and that "Defendants are also barred from arguing that Plaintiff's class allegations are futile." <u>Id.</u> at 10 n.6.

While it is regrettable that Palisades is compelled to needlessly expend time and monies on correcting factual mischaracterizations, this is unfortunately part of a trend, in which Plaintiff unilaterally dictates the malleability of objective reality based on convenience and subjective value. Getting back to Plaintiff's "interpretation," the Court's order actually states "[t]he defendants may not re-argue on a future *motion to dismiss* any argument that has been rejected in

this order, nor may the defendants raise for the first time on *a future motion to dismiss* any argument that was previously available but not raised on this motion to dismiss." [Dkt. No. 80] (*emphasis added*). Respectfully, the Court's unambiguous Order speaks for itself, and does not bar Palisades from advancing the arguments contained herein.

## ABRIDGED STATEMENT OF FACTS AND PROCEDURAL HISTORY

McCrobie is a judgment debtor in a state court action which was filed on August 11, 2006 in Buffalo City Court (CV-007295-06/BU). The action was filed by Centurion Capital Corporation (hereinafter "Centurion" or "assignor"), as assignee of Providian Financial, for the purpose of recovering amounts due on a debt that was not timely paid by McCrobie.[1] McCrobie defaulted in appearing, and a judgment against McCrobie was obtained on March 8, 2007.[2] Subsequent to the application for a default judgment, but prior to judgment entry, on March 5, 2007, Centurion sold a pool of accounts in accordance with the conditions of a Purchase and Sale Agreement to Palisades Acquisition, XV, LLC (*as demonstrated by the state court's records*).[3] Immediately thereafter, the account was assigned to Palisades Acquisition XVI, LLC (the current judgment creditor). Id.

On or about December 12, 2012, Houslanger & Associates, PLLC ("Houslanger") filed a substitution of counsel in Buffalo City Court, expressly providing notice of their appearance on behalf of Palisades as successor to Centurion.[4] According to McCrobie, he had no knowledge of

---

[1] Plaintiff's First Amended Complaint ("FAC"), at ¶¶ 4, 12, 14, 16.

[2] FAC, ¶ 18. A. 22.

[3] State Court filed - Bill of Sale between Centurion Capital Corporation and Palisades Acquisition XV, LLC; Bill of Sale between Palisades Acquisition XV, LLC and Palisades Acquisition XVI, LLC; Affidavit of Witness, Palisades Acquisition XVI, LLC [Dkt. No. 25-3, p. 20-25]; Consent to Change Attorney/Assignment [Dkt. No. 25-3, p. 27].

[4] Consent to Change Attorney/Assignment [Dkt. No. 25-3, p. 27].

the judgment until approximately October 7, 2014, when his employer allegedly received an income execution in connection with the aforementioned state court judgment.[5]

On January 6, 2015, Plaintiff filed the instant action [Dkt. No. 1]. Thereafter, on May 19, 2015, plaintiff filed his FAC [Dkt. No. 7]. On July 28, 2015, Defendants filed a motion to dismiss plaintiff's FAC pursuant to Fed R. Civ. P. §§ 12(b)(6) and 12(b)(1) [Dkt. No. 17]. Instead of opposing Defendants' motion to dismiss, on August 27, 2015 (one day before a response to Defendants' motion was due), Plaintiff filed his 1st Motion for leave to file a SAC, this time totaling two hundred and twenty-eight pages of circuitous and speculative allegations, purporting to add Asta Funding, Inc. ("Asta Funding") as a Defendant, while also raising putative class action claims, among other claims [Dkt. No. 19]. On the same date, Plaintiff filed a motion to vacate the judgment against McCrobie in the City Court of Buffalo.[6]

On February 2, 2016, the City Court of Buffalo granted McCrobie's motion to vacate the judgment based on a U.C.C.A. Section 213 jurisdictional decision. In response, on or about March 8, 2016, Palisades filed a motion to reargue.  That motion was granted by the City Court of Buffalo on October 6, 2016, thereby reinstating the state court judgment against McCrobie in favor of Palisades.[7]

On March 25, 2016, Judge Curtin granted Defendants' motion to dismiss and denied Plaintiff's motion to amend. Final judgment was entered on March 28, 2016, and McCrobie filed his Notice of Appeal on April 22, 2016. On appeal, the 2nd Circuit determined that the District Court erred in applying the *Rooker-Feldman* doctrine, and remanded the case back to this Court

---

[5] FAC, ¶ 18.

[6] Christopher McCrobie's Motion to Vacate Judgment and Dismiss the Action [Dkt. No. 25-2, p. 1-25].

[7] Order maintaining Judgment against McCrobie (October 6, 2016), at Dkt. No. 56-1.

"so that it can consider in the first instance the parties' remaining arguments." McCrobie v. Palisades Acquisition XVI, LLC, 664 F. App'x 81, 82 (2d Cir. 2016).

On June 23, 2017, McCrobie filed a notice of appeal with the County Court of the State of New York, County of Erie, seeking reversal of the judgment entered in Buffalo City Court. On September 5, 2018, the matter was heard by the County Court, and the appeal was dismissed for McCrobie's failure to timely perfect the appeal. See Order Dismissing Appeal, at Exhibit A.[8]

On February 15, 2019, after supplemental briefing by all parties, the Court denied Defendants' motion to dismiss and denied Plaintiff's motion for leave to amend his complaint. McCrobie v. Palisades Acquisition XVI, LLC, 359 F. Supp. 3d 239, 256 (W.D.N.Y. 2019). The Court provided 45 days for Plaintiff to seek leave to amend his complaint in a motion that complies with Local Rule 15(b). Id. In light of the Court's Order, Plaintiff filed a 2nd motion for leave to amend his complaint; however, the motion still does not comply with Local Rule 15(b).

## STANDARD OF REVIEW

As a general matter, Rule 15(a) of the Federal Rules of Civil Procedure provides that one amendment as of right may be made to a pleading within 21 days after serving it. Once a response to a complaint has been filed, however, a party may amend the pleadings "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires," (Id.), and courts have liberally construed this directive. See Foman v. Davis, 371 U.S. 178, 182 (1962); See also Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 283 (2d Cir.), cert. denied, 531 U.S. 1035 (2000); Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (noting that "[t]he stated purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the

---

[8] The Court is entitled to take judicial notice of documents filed in other courts and other public records. Cullen v. Verizon Commc'ns, No. 14-CV-464S, 2014 WL 6627494, at *2 (W.D.N.Y. Nov. 21, 2014).

merits of the claim").  Leave to amend may be properly denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted."  See Anderson News, L.L.C. v.  American Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012); Jones v. New York Div. of Military & Naval Affairs, 166 F.3d 45, 55 (2d Cir. 1999) (an amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground.").

An amendment is considered futile when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012). Thus, when a proposed amendment is challenged as "futile," the Rule 12(b)(6) standards become relevant.

In deciding the motion to amend, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Koppel v. 4987 Corp., 167 F.3d 125, 128 (2d Cir. 1999); Jaghory v. N.Y. State Delft of Educ., 131 F.3d 326, 329 (2d Cir. 1997). However, not all statements in a complaint should be assumed to be true. In Ashcroft v. lqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009), the Supreme Court proposed a two-pronged approach to evaluate pleadings in the context of a motion to dismiss: first, a court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and second, a court should determine whether those well-pleaded facts, which can be assumed to be true, "plausibly give rise to an entitlement to relief," Id., at 1949-50.  In other words, to withstand a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hayden v.  Paterson, 594 F.3d 150, 160 (2d Cir. 2010). The heightened pleading standards enunciated in Ashcroft v. Iqbal also apply when evaluating motions to amend. See Bilello v.1PMorgan Chase Retirement Plan, 649 F. Supp. 2d 142, 151-52 (S.D.N.Y. 2009).

Furthermore, in considering a motion to amend and to join additional parties, a court must consider *both* the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a). <u>Hinson v. Norwest Financial South Carolina, Inc.</u>, 239 F.3d 611, 618 (4th Cir. 2001) (citing <u>Desert Empire Bank v. Insurance</u> Co., 623 F.2d 1371, 1374 (9th Cir.1980), noting that both Rule 15 and Rule 20 standards are implicated by a motion to amend pleadings to add a new party). <u>See also</u> <u>FTD Corp. v. Banker's Trust Co.</u>, 954 F. Supp. 106 (S.D.N.Y. 1994).

## <u>POINT I</u>

### PLAINTIFF'S SECOND MOTION TO AMEND FAILS TO COMPLY WITH <u>MANDATORY FEDERAL AND LOCAL CIVIL RULES</u>

#### A.  Local Rule 15

In a Decision and Order filed February 15, 2019 [Dkt. No. 79], the Court denied without prejudice Plaintiff's 1st Motion for Leave to Amend the FAC [Dkt. No. 19] because of Plaintiff's failure to comply with the provisions of Local Rule 15, based on Plaintiff's "unilateral" determination "that [Local Rule 15] need not be followed because it is not 'practicable.'" <u>McCrobie v. Palisades Acquisition XVI, LLC</u>, 359 F. Supp. 3d 239, 245 (W.D.N.Y. 2019). Moreover, the Court provided Plaintiff an opportunity to seek leave to amend his FAC "in a motion that complies with Local Rule 15(b)."  Notwithstanding the Court's Order, Plaintiff has once again failed to comply with the provisions of Local Rule 15.

Specifically, contrary to Local Rule 15(a), Plaintiff has not attached a copy of the proposed amended pleading as an exhibit to the motion (instead relying on SAC, [Dkt. No. 19-3]). Likewise, contrary to Local Rule 15(b) and the Court's Order, Plaintiff has once again failed to identify the proposed amendments using a word processing redline function or other similar marking. Rather, Plaintiff again seeks to incorporate his proposed amendments through a chaotic

and confounding fusion of Plaintiff's original proposed SAC [Dkt. No. 19-3] and Plaintiff's

Motion [Dkt. No. 82-12].

Rule 83 of the Federal Rules of Civil Procedure grants the district courts the power to

"make and amend rules governing its practice," and the Supreme Court of the United States has

recognized the inherent power of such courts to take appropriate action to secure the just and

prompt disposition of cases. Indeed, "[c]ourt rules have the force of law." Link v. Wabash R.

Co., C.A.7 (Ind.) 1961, 291 F.2d 542, certiorari granted 82 S.Ct. 242, 368 U.S. 918, 7 L.Ed.2d

134, affirmed 82 S.Ct. 1386, 370 U.S. 626, 8 L.Ed.2d 734, rehearing denied 83 S.Ct. 115, 371

U.S. 873, 9 L.Ed.2d 112.

Here, similar to Doe by & through Doe v. E. Irondequoit Cent. Sch. Dist., No. 16-CV-

6594 (CJS), 2018 WL 2100605 (W.D.N.Y. May 7, 2018), "[i]t is crystal clear, however, that

Local Rule 15(b) applies to Plaintiffs' motion to file a Second Amended Complaint, and because

Plaintiffs did not comply with that rule, the motion may be denied for that reason alone." Id. at

*6.  That is particularly true where, as here, Plaintiff has already had one opportunity to amend

his complaint.[9]

**B.  The Amended Pleadings are Incomplete and Insufficient to Supersede the FAC**

Even if Local Rule 15 did not exist, there are too many inconsistencies and equivocations

for Defendant to concisely merge Plaintiff's proposed SAC [Dkt. No. 19-3] with Plaintiff's

instant Motion [Dkt. No. 82]. By way of limited example:

1.    Plaintiff cites to "Exhibit F" to support his claim that "an attorney-employee of

      Houslanger & Associates, PLLC signed and forwarded an income execution to the

      Buffalo City Marshall's Office…" Plaintiff's Motion, at 5 – 6. However, Exhibit F

---

[9] See Moshenko v. State Univ. of New York at Buffalo, No. 07-CV-116A, 2007 WL 4224613, at *2 (W.D.N.Y. Nov. 27, 2007),

[Dkt. No. 82-7] is marketing material from another self-proclaimed consumer attorney law firm without any connection to this allegation or matter.

2.    Plaintiff cites to his proposed SAC ¶ 14, for the allegation that "Christopher McCrobie allegedly incurred a credit card debt to Providian Financial." Plaintiff's Motion, at 5. Nonetheless, paragraph 14 of Plaintiff's proposed SAC does not allege any facts in support of this statement.

3.    In support of Plaintiff's baseless and outrageous allegation that Asta Funding advertises to attract "unscrupulous players to serve up fraudulent or uncollectable accounts," Plaintiff cites to "Exhibits J-L." Plaintiff's Motion, at 7.  Incredibly, there are no Exhibits J or L, and Exhibit K explicitly states that Asta Funding "is committed to the highest ethical standards, with the goal of protecting and enhancing our clients' reputations." Plaintiff's Motion [Dkt. No. 82-11].

4.    To support his putative class allegations, Plaintiff's proposed SAC claims that all of the "Defendants[] have been noted to be filing post judgment documents in such large numbers that the court had to intervene to determine if due process rights had been protected…" SAC, at ¶ 72.  In support of this allegation, Plaintiff cites to his proposed SAC ¶ 29b,[10] a paragraph which does not exist. So, despite the requirement of Local Rule 23(b)(2), Defendants and the Court are left without knowledge of the factual basis for Plaintiff's highly prejudicial allegations meant to justify the size and definition of the putative class.

---

[10] Paragraph 29 alleges "[a]n attorney's duty to satisfy himself that his client is entitled to garnish a consumer's wages is not a burdensome one since the underlying contract dispute that resulted in the alleged debt – however messy it might have been – has already been reduced to a judgment. SAC, at ¶ 29.

5.     Plaintiff's putative class allegations contained in his proposed SAC contend that <u>all</u> defendants violated N.Y. Jud. Ct. Acts Law § 487 (*a misdemeanor offense with punishment prescribed by the penal law)*.[11] <u>SAC</u> at ¶ 72.b.1. However, Plaintiff 's putative class allegations contained in his Motion make no mention of the Judiciary Law. It is unclear whether it is Plaintiff's intention to incorporate his apparent withdrawal of the Judiciary Law allegation into the proposed SAC.

Beyond anecdotes and broad strokes of hyperbole directed against the credit and accounts receivable industry at-large,[12] it is unclear what allegations Defendant is meant to respond to. *See* <u>Eldridge v. Rochester City Sch. Dist.</u>, 968 F. Supp. 2d 546, 554 (W.D.N.Y. 2013) ("Eldridge has failed to identify the proposed amendments she seeks to make to her original complaint through the use of a "red-line" function or similar markings. This failure is compounded by Eldridge's failure to identify all of her proposed changes in her motion papers"); <u>Davidson v. Canfield</u>, No. 07-CV-599S SR, 2012 WL 6087486, at *1–2 (W.D.N.Y. Dec. 6, 2012) ("The proposed amended pleading must be a complete pleading superseding the original pleading in all respects. No portion of the prior pleading shall be incorporated into the proposed amended pleading by reference"); <u>Doe</u>, supra at *5 ("Plaintiffs' proposed Second Amended Complaint is almost one hundred paragraphs longer than the two prior versions, but neither the electronic version nor paper version of the proposed pleading distinguishes the new allegations from the old.

---

[11] See <u>Ross & Cohen v. Kurtz Steel Corp.</u>, 237 A.D.2d 172, 654 N.Y.S.2d 375 (N.Y. App. Div. 1st Dep't 1997) (upholding a $2,500.00 sanction for attempting to raise a § 487 claim that was without merit).

[12] Plaintiff's claim that "debt buyers do not possess and cannot obtain the evidence required to make out a prima facie case," seems to be premised upon the assumption that the original creditor's charging off and then selling of a consumer's debt pursuant to applicable regulations somehow extinguishes the debt as a matter of law. Pursuant to regulations adopted by the Federal Reserve Board and the Office of the Comptroller of the Currency, 180 days after an account becomes delinquent, a lender charges off an account to profit and loss. Once a debt has been charged off, the original creditor may choose to sell the debt to a third-party purchaser at a discounted price based on the reduced likelihood of collection. <u>FTC Report</u>, 2013 WL 419348, at *18.

Consequently, the Court and opposing counsel have been required to visually compare the pleadings, which is not acceptable"); and <u>Swinton v. Livingston Cty.</u>, No. 15-CV-00053A(F), 2016 WL 1056608, at *3 (W.D.N.Y. Mar. 17, 2016) ("Plaintiff's requests to amend should be denied because Plaintiff failed to file a proposed amended complaint as required under Local Rule of Civil Procedure 15 and Plaintiff has failed to sufficiently identify the basis for his request to join the parties Plaintiff seeks to add…").

### C.  Plaintiff's Repeated Failures to Cure Deficiencies

A court may deny a motion to amend a complaint because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." <u>Schweitzer v. Crofton</u>, 935 F. Supp. 2d 527, 556 (E.D.N.Y. 2013), aff'd, 560 F. App'x 6 (2d Cir. 2014), <u>citing</u> <u>Straker v. Metro. Transit Auth.</u>, 333 F.Supp.2d 91, 102–03 (E.D.N.Y.2004).  The Court's Rules provide an agreement of understanding to the litigation, and following these Rules is a foundational necessity to avoiding gratuitous and unreasonably protracted litigation. Looking through the docket history, Plaintiff's apparent disregard for the Rules has been a running theme throughout the lifecycle of this case, to the detriment and confusion of Defendants.  Due to the multiple and repeated failures on the part of Plaintiff to comply with the requirements of the Local Rules, Plaintiff's Motion should be denied with prejudice. By way of limited example:

1.  Plaintiff's memorandum in support of his 1st Motion to Amend exceeded the Local Rules requirement that that memoranda in support of motions not be longer than 25 pages absent court order [Dkt. No. 19-1]. Subsequently, Plaintiff moved for this Court to enter an order deeming the page limit to be 32 pages, *nunc pro tunc* [Dkt. No. 20].

2. Instead of opposing Defendant's motion to dismiss within the timeframe set by the Court, on the due date, plaintiff initiated an *ex parte* telephonic communication with the Court (*without any notice to Defendants*) requesting a stay of the Court's prior Order or an enlargement of time to respond[13] [Dkt. No. 26-27].

3. Plaintiff missed the deadline set by the Court to file a reply to Defendant's opposition to Plaintiff's first motion to amend. As an alternative to requesting an extension of time prior to expiration, Plaintiff filed yet another motion seeking an order deeming his reply brief [Dkt No. 28] (filed on October 14, 2015) as having been filed on October 13, 2015 *nunc pro tunc* [Dkt. No. 29].

4. The Court directed all parties to file supplemental briefs by March 22, 2017. Dkt. No. 54. Rather than filing a timely brief, Plaintiff wrote a letter blaming Defendants for "insisting upon the need for supplemental briefing,"[14] unilaterally deciding that Plaintiff should be able to respond, having the last word and a distinct procedural advantage [Dkt. No. 58].

5. Plaintiff's proposed SAC [Dkt. No. 19-3] does not provide proper notice to the Court or Defendants that the SAC purports to commence class allegations. *See* <u>Local Rule 23(a)</u>.

---

[13] Under the Court's Rules, "Requests for enlargement of time may be brought in letter format and can be faxed to Judge Curtin. The requesting party is directed to inform the opposing party about the request and attempt to gain consent and proposed agreeable new dates before notifying the Court."

[14] In fact, it was Plaintiff that raised the concept of clarifying the issues and filing briefs. <u>Status Conference Transcript</u>: 5:10-20 [Dkt. No. 60-1]. *See also*, Court Order limiting Plaintiff's Responses to issues raised by defendants, and providing opportunity for defendants to reply [Dkt. No. 62].

## POINT II

**PLAINTIFF'S "SHOTGUN PLEADING" STRATEGY MAKES IT IMPOSSIBLE TO ASCERTAIN WHICH ALLEGATIONS OF FACT ARE INTENDED TO SUPPORT WHICH CLAIM(S) FOR RELIEF AGAINST WHICH DEFENDANT**

Even prior to the hodgepodge of scattered and inconsistent allegations comprising Plaintiff's massive proposed SAC [Dkt. No. 19-3], Judge Curtin opined that Plaintiff's FAC [Dkt. No. 7] contravened the short and plain pleading requirement under Fed. R. Civ. P. § 8(a)(2).[15] Thus, it's not surprising that in referencing the sheer volume of Plaintiff's Proposed SAC, Judge Curtin referred to Plaintiff's "factual allegations" as "replete with legal argument, case law citations, and references to unrelated reported cases involving claims brought and defended by the same attorneys involved in the present action."[16]  In essence the SAC is the antithesis of Rule 8(a)(2), which requires that a complaint "contain a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this Rule is to provide "defendant fair notice of what the claim is and the grounds upon which it rests." In re Bishop, 578 B.R. 158, 163 (Bankr. W.D.N.Y. 2017) (citations omitted).

"When a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial, see Fed.R.Civ.P. 12(f), or to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

---

[15] "As reflected in the discussion herein, the court has reached its determination… notwithstanding the pleading transgressions embodied in the First Amended Complaint (see Fed. R. Civ. P. 8(a)(2)) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief")…" McCrobie v. Palisades Acquisition XVI, LLC, No. 15-CV-18-JTC, 2016 WL 1178584, at *1 n.2. (W.D.N.Y. Mar. 25, 2016), *overruled on other grounds*, 664 F. App'x 81 (2d Cir. 2016).

[16] "Considering sheer volume alone, the Proposed Second Amended Complaint consists of 38 pages and 100 numbered paragraphs, including 58 separate "Factual Allegations" replete with legal argument, case law citations, and references to unrelated reported cases involving claims brought and defended by the same attorneys involved in the present action." Id. at *2 n.4.

Considering the statutory fee shifting provisions serving as the impetus for this purported action to protect a consumer,[17] the repercussions of a successful shotgun pleading strategy are readily apparent, especially in assessing the viability of Plaintiff's claims which are buried in hundreds of scattered pages, rendering it impossible to identify the precise nature of these claims. This type of complaint "leaves the defendants confused about which one of them has been sued (and for what).  It requires the plaintiff to explain in other filings made during the course of the litigation 'what he really meant to say' when he drafted the pleading. And most importantly, it wastes judicial resources, since the task of sorting out all this confusion always falls squarely on the Court itself." Alexander v. City of Syracuse, No. 5:17-CV-1195, 2018 WL 6591426, at *3 (N.D.N.Y. Dec. 13, 2018).

Here, Defendants and the Court are forced to scour for relevant material among the mass of verbiage from different sources.  For example, the introduction to Plaintiff's proposed SAC [Dkt. 19-3] is 4 full pages consisting of 34 sentences and 9 footnotes simultaneously containing allegations against everyone and no one.  Plaintiff's failure to comply with Rule 8(a)(2) has made it impossible to connect an allegation with the claim it is intended to support. The first 4 pages of the SAC discuss the debt buying industry in early to mid-2000s, raises allegations about small claims cases in Massachusetts, civil lawsuits in Chicago, cites to the Federal Trade Commission, the Boston Globe, the Chicago Tribune and the New Economy Project, opines on service of process, why judgment are not enforced, quotes Judge Noach Dear's interview with the NY Times, then somehow concludes that Plaintiff is the "latest victim of Defendants' unlawful scheme."

---

[17] McCrobie did not attempt to vacate the allegedly unlawful judgment in the Buffalo City Court action until August 27, 2015 -  almost 8 months after the filing of this FDCPA action. McCrobie was ultimately unsuccessful, and the judgment against McCrobie remain intact, as recently upheld by the Erie County Appellate Term, September 2018.

We apologize to the Court for the run-on sentence, but this potpourri of vague and conclusory allegations is exactly why "shotgun pleadings" are contrary to Rule 8.  See Oliver v. New York State Police, No. 1:17-CV-01157 EAW, 2019 WL 453363, at *10 (W.D.N.Y. Feb. 5, 2019) ("the Court agrees with the 2017 Defendants that Plaintiff's Complaint constitutes a shotgun pleading. Plaintiff's Complaint consists of voluminous factual allegations followed by a list of 20 causes of action, none of which are tied to any of the preceding facts"); U.S. ex rel. Chapman v. Office of Children & Family Servs. of State of New York, No. 1:04-CV-1505, 2010 WL 610730, at *4 (N.D.N.Y. Feb. 16, 2010), aff'd sub nom. Chapman v. Office of Children & Family Servs. of the State of New York, 423 F. App'x 104 (2d Cir. 2011) ("[t]hese are general allegations which fail to provide specifics as to time and place of alleged fraudulent acts and who committed such acts"); and Sechler-Hoar v. Tr. U/W of Gladys G. Hoart, No. 3:17-CV-01968 (JAM), 2018 WL 3715277, at *4 (D. Conn. Aug. 3, 2018)[18] ("describing improper 'shotgun' pleading practices including 'the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action…'").

Attempting to integrate the proposed SAC [Dkt. No. 19-3] and Plaintiff's Motion [Dkt. No. 82] is an indecipherable web of confusion, containing an array of disconcerting factual and legal allegations.  For example: (1) it raises claims about the staggering number of default judgment issued against New York residents by purchasers of distressed receivables, without even attempting to connect the allegations to Palisades or Asta (or for that matter, any Defendant in this lawsuit). SAC, p. 2-3; (2) it flippantly conflates the actions of Defendants to "embezzlement" without so much as offering a connection to any other paragraph or section of the SAC. Id., ¶ 35;[19] (3) in place of sound reasoning and with intentional disregard for Rule

---

[18] Citing to Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322–23 (11th Cir. 2015)

8(a)(2), it includes a 15 page ad hominem attack against Defendants in the form of a dubious and bizarre online advertisement, which includes the names of 83 companies on a so-called "Debt Collector List." Plaintiff's Motion, at Exhibit F [Dkt. No. 82-7]; (4) it relies on grandiose, opinion-based conclusory statements as evidence, while disregarding Rule 10(b) (which provides "[a] party must state its claims and defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed.R.Civ.P. 10[b]); (5) it lumps Asta Funding into the SAC with its co-defendants, without distinguishing which factual allegations correspond to which statutory violation (which is particularly important here since there is an overlap between the various factual allegations and the statutory violation to which they could relate);[20] (6) Plaintiff's blanket invocation of "Defendants" is based on hasty generalizations and red herrings that do not identify specific actions or actors (see SAC, at ¶ 72 – 100); and (7) Plaintiff's Motion and proposed SAC do not acknowledge McCrobie's failed attempts to vacate the underlying judgment, nor accept the existence of official state court records demonstrating that Palisades Acquisition XVI, LLC is the rightful owner/assignee of the underlying account.[21]

---

[19] "This shotgun pleading contravenes Rule 9(b)'s policy of safeguarding the reputation of individual defendants from the stain of allegations leveled with particularity against other parties." Scone Investments, L.P. v. Am. Third Mkt. Corp., No. 97 CIV. 3802 (SAS), 1998 WL 205338, at *7 (S.D.N.Y. Apr. 28, 1998) (citations omitted). Likewise, plaintiff's allegations of criminal conduct against Todd Houslanger contravenes this Court's Civility Principles and Guidelines ("We will not, absent good cause, attribute bad motives or improper conduct to other counsel.").

[20] A plaintiff must disclose sufficient information to permit the defendant "to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." Jones v. Ocwen Fed. Bank, 147 F. Supp. 2d 219, 223 (S.D.N.Y. 2001), citing, Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir.1991).

[21] State Court filed - Bill of Sale between Centurion Capital Corporation and Palisades Acquisition XV, LLC; Bill of Sale between Palisades Acquisition XV, LLC and Palisades Acquisition XVI, LLC; Affidavit of Witness, Palisades Acquisition XVI, LLC [see Dkt. No. 25-3, p. 20-25]; Consent to Change Attorney/Assignment [see Dkt. No. 25-3, p. 27].

<u>POINT III</u>

**PLAINTIFF'S PROPOSED SAC IS FUTILE AS PLAINTIFF DOES NOT INCLUDE ANY SPECIFIC ALLEGATIONS AGAINST ASTA AND PLAINTIFF HAS NOT <u>SATISFIED THE APPLICABLE JOINDER REQUIREMENTS</u>**

**A. Futility**

As stated in <u>Eldridge v. Rochester City Sch. Dist.</u>,

> Despite the ordinarily lenient standard imposed, if the amendment proposed by the moving party is futile, 'it is not an abuse of discretion to deny leave to amend.' The determination whether a proposed amendment is futile is made under the same standard as that used to determine whether a claim would be subject to a motion to dismiss. The proposed amended claim must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.' Rather, it must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion.

968 F. Supp. 2d 546, 553–54 (W.D.N.Y. 2013) (citations omitted).  McCrobie's attempt to add Asta Funding (a publicly traded company) as a defendant in this action is an attempt at pecuniary gain – *not* consumer protection.  In fact, the proposed SAC [Dkt. No. 19-3] and Plaintiff's Motion [Dkt. No. 82] do not allege that Asta independently violated the FDCPA or some other law which would expose it to liability. Instead, through a misreading of cases interpreting *vicarious copyright infringement*, Plaintiff attempts to argue that Asta Funding is vicariously liable for all the other Defendants' actions.

So, to otherwise hold Asta liable, Plaintiff must pierce Palisades' corporate veil.  Because Asta and Palisades are both Delaware entitles,[22]  Delaware law applies. *See* <u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451, 1456 (2d. Cir. 1995) (applying Delaware law).  There is a strong presumption in favor of the corporate form. <u>Fletcher</u>, 68 F.3d at 1459 ("Courts have made it clear that the

---

[22] *State of Delaware, Division of State: Division of Corporations* (Asta Funding, Inc., File Number 2525976) (Palisades Acquisition XVI, LLC, File Number 4305985).

legal entity of a corporation will not be disturbed until sufficient reason appears."). Under

Delaware law, the factors to be considered in piercing the corporate veil include: (1) whether the

corporation was adequately capitalized: (2) whether the corporation was solvent; (3) whether

officers and directors functioned properly and other corporate formalities were observed; (4)

whether dividends were paid; (5) whether corporate records were kept; (6) whether the dominant

shareholder siphoned corporate funds; and (7) whether in general the corporation simply

functioned as a façade for the dominant shareholder. *See* Fletcher, 68 F.3d at 1459; Phoenix

Canada Oil Co. Ltd. v. Texaco, Inc*.,* 842 F.2d 1466, 1476 (3d Cir. 1988).

Beyond alleging that Asta mentioned Palisades' purchase of receivables and estimated

the value in a publicly filed annual report,[23] the SAC does not allege *any* facts specific to Asta to

support piercing Palisades' corporate veil. Additionally, the SAC does not plausibly provide

content demonstrating that Asta is a debt collector under 15 U.S.C. 1692a(6).[24]  Plaintiff instead

alleges that "multiple courts have found that the Defendants in this action have on multiple

occasions initiated post judgment remedies and have enforced judgments remedies against large

numbers of judgment debtors based upon judgments entered many years ago in favor of other

parties, and without documentation sufficient to prove that Defendants have any right to enforce

said judgments." Plaintiff's Motion, at 7-8. To support this serious accusation, Plaintiff cites to

Goes Lithography Co. v. Banta Corp., 26 F. Supp. 2d 1042, 1045 (N.D. Ill. 1998) and Shapiro,

Bernstein & Co., Inc. v. H.L. Green Co. Inc., 316 F.2d 304, 307 (2d Cir.1963).

With respect to Goes Lithography Co., it does not involve or implicate any of the

defendants in the instant matter, and specifically resolves issues regarding vicarious copyright

---

[23] SAC, ¶ 66 [Dkt. No. 19-3].

[24] Id., ¶ 7.

and trademark infringement, unfair competition, and violation of Illinois Uniform Deceptive Trade Practices Act. Even so, the court dismissed the entire complaint (all 4 counts) against *Banta* (the parent company), stating "Parent corporations may be vicariously liable for the acts of their subsidiaries if it is established (1) that the parent has the right and ability to supervise its subsidiaries and (2) that the parent has a direct financial interest in the exploitation of the copyrighted materials, even in the absence of actual knowledge that the copyright is being infringed. Id. at 1045. Similar here, McCrobie's proposed SAC does not contain any allegations that, if proven, would establish either prong of this test. The only allegation concerning Asta Funding's relationship with Palisades is that the latter is Asta Funding's "indirect wholly-owned subsidiary." SAC, at 3.

Also, neither Palisades nor Asta Funding were defendants or implicated in Shapiro, where large chain and department stores established "dummy" concessions and shielded their own eyes from the possibility of copyright infringement, thus creating a buffer against liability while reaping the proceeds of infringement. Shapiro is a precedential decision on vicarious copyright infringement – *not* - vicarious liability, and does not stand for the proposition that a parent corporation is automatically liable for the infringing acts of its subsidiaries, just because of the parent-subsidiary relationship.  Shapiro has been cited and examined by many courts in this Circuit, with the common understanding that "plaintiff must show that the parent has a direct financial interest in the infringing activity, and that the parent has the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity." Banff Ltd. v. Ltd., Inc., 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994).

An even more surprising and disconcerting mischaracterization is Plaintiff's reworking of the holding in Hallmark v. Cohen & Slamowitz, LLP, 299 F.R.D. 407, 410-11 (W.D.N.Y. 2014), where he explicitly states that "[the Hallmark Court] reasoned that it would be inappropriate to aggressively police an FDCPA Plaintiff's pleadings regarding vicarious liability *given the early stage in the litigation*, and the various theories regarding vicarious liability reflected in the FDCPA caselaw." Plaintiff's Motion, at 10-11 (emphasis added).

First, it should be noted that the Hallmark Court denied Plaintiff's motion to file a third amended complaint for futility. Second, after reading (and rereading) Hallmark, there is simply no support for Plaintiff's assertion that "it would be inappropriate to police an FDCPA pleadings regarding vicarious liability given the early stage in the litigation." Considering McCrobie's attorneys were also attorneys of record in Hallmark, their awareness of the chronology is undeniable. In fact, the motion to amend at issue in Hallmark was decided almost 3 years into the litigation (Hallmark, Dkt. No. 197), with dispositive and non-dispositive motion practice already taking place—ranging from numerous discovery motions and orders, motions to quash subpoenas, motion for summary judgment, and a motion for class certification, among others. (Id., Dkt. Nos. 1 – 196). Third, the court granted class certification on September 16, 2013 (Id., Dkt. No. 110) and denied defendant's request for reconsideration on January 8, 2014 (Id., Dkt. No. 177). Yet, according to instant Plaintiff, Hallmark is about policing an FDCPA Plaintiff's pleadings regarding vicarious liability in the *early stages of litigation*.  Finally, the Hallmark court's holding is not based on a futility assessment. Instead, it is based on the legal standard for not granting leave to amend where the allegations the plaintiff seeks to add are unnecessary to support the asserted claims. Hallmark, supra, at 410.

### B. Joinder

Furthermore, in considering a motion to amend and to join additional parties, a court must consider *both* the general principles of amendments under Rule 15(a), as well as the more specific joinder provisions of Rule 20(a). Hinson v. Norwest Financial South Carolina, Inc., 239 F.3d 611, 618 (4th Cir. 2001) (citing Desert Empire Bank v. Insurance Co., 623 F.2d 1371, 1374 (9th Cir.1980), noting that both Rule 15 and Rule 20 standards are implicated by a motion to amend pleadings to add a new party). See also FTD Corp. v. Banker's Trust Co., 954 F.Supp. 106 (S.D.N.Y. 1994). Here, Plaintiff does not mention the applicable federal rules, and fails to demonstrate how the joinder of Asta comports with a Rule 20 analysis. Plaintiff has neither invoked nor properly satisfied the joinder requirements. Likewise, Plaintiff does not allege *any* facts in support of the implication that Asta exercised control over the conduct and activities of Palisades.[25] Therefore, plaintiff's attempt to join Asta should be denied.

---

[25] *See*, White v. Goodman, 200 F.3d 1016, 1019 (7th Cir. 2000) ("The joinder of these defendants illustrates the all-too-common abuse of the class action as a device for forcing the settlement of meritless claims and is thus a mirror image of the abusive tactics of debt collectors at which the statute is aimed").

## CONCLUSION

WHEREFORE, for all the reasons set forth above, Palisades prays that Plaintiff's 2nd

motion for leave to file a second amended complaint be denied with prejudice, and that the Court

award any such other and further relief, at law or in equity, that the Court deems necessary and

proper.

Dated: New York, NY
       April 25, 2019

Respectfully submitted,

/S/ Scott E. Wortman
Blank Rome LLP
By: Scott E. Wortman, Esq.
Hilary F. Korman, Esq.
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Phone: 212.885.5359
Email: swortman@blankrome.com