# Exhibit H

# Law Offices of
# Kenneth
# Hiller PLLC

Main Office: 6000 North Bailey Avenue, Suite 1A, Amherst, New York 14226
Telephone: (716) 564-3288  Facsimile: (716) 332-1884
Toll Free Number: (877) 236-7366
www.kennethhiller.com

September 3, 2015

Houslanger & Associates, PLLC
372 New York Avenue
Huntington, New York 11743

**RE:**   **Centurion Capital Corporation Assignee of Providan Financial CO**
         **v.**
         **Christopher McCrobie**
         **Index No. 007295-06**

Dear Mr. Houslanger:

Enclosed please find Defendants Motion to Vacate Judgment, Affidavit of Christopher McCrobie
with Exhibits in support of Defendant's Motion to Vacate the Judgement and Memorandum of
Law for the above mentioned matter. Returnable in front of Judge Betty Calvo-Torres September
21, 2015 at 9:30 am at City Court of the City of Buffalo.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

Seth J. Andrews

SJA/gb

CITY COURT OF THE CITY OF BUFFALO
COUNTY OF ERIE

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDAN FINANCIAL CO

                    **Plaintiff,**           Index No. 007295-06

v.

**CHRISTOPHER MCCROBIE**

                    **Defendant.**

| | |
|---|---|
| MOTION MADE BY: | Seth J. Andrews, Law Offices of Kenneth Hiller PLLC, *Attorneys for Defendant,* 6000 North Bailey, Suite 1A, Amherst, New York 14226. |
| DATE, TIME AND PLACE OF HEARING: | _____, 2015, at _____ before Honorable _____, _____Buffalo, New York. |
| SUPPORTING PAPERS: | Annexed Affidavit of Christopher Mccrobie with Exhibits in Support of Plaintiff's Motion to Vacate the Judgment, and Memorandum of Law in support thereof. |
| RELIEF REQUESTED: | An Order Vacating the Judgment against the Defendant and dismissing the complaint in its entirety. |
| GROUNDS: | CPLR §§ 317, 3211(a)(1), 3211(a)(2), 3211(a)(3), 3211(a)(8), and 5015(a)(4)) |
| ANSWERING PAPERS: | Pursuant to CPLR §2214(b), Plaintiff demands that answering papers, if any, be served upon the undersigned at least seven days before the return date of this motion. |
| ORAL ARGUMENT: | Requested. |

DATED:      Amherst, New York
            August 27, 2015

                                        Seth J. Andrews, Esq.
                                        Law Offices of Kenneth Hiller, PLLC
                                        *Attorneys for the Defendant*
                                        6000 North Bailey Ave., Suite 1A
                                        Amherst, NY 14226
                                        (716) 564-3288
                                        Email: sandrews@kennethhiller.com

TO:      Houslanger & Associates, PLLC
         Attorney for the Judgment Creditor
         P.O. Box 742
         Katonah, NY 10536
         914-666-8100

2

**CITY COURT OF THE CITY OF BUFFALO**
**COUNTY OF ERIE**

---

**CENTURION CAPITAL CORPORATION**
**ASSIGNEE OF PROVIDAN FINANCIAL CO**

                                **Plaintiff,**               **Index No. 07295-06**

v.

**CHRISTOPHER MCCROBIE**

                              **Defendant.**

---

### Affidavit of Christopher Mccrobie in support of Plaintiff's Motion to Vacate the Judgment and Dismiss Plaintiff's Complaint

Christopher Mccrobie, being duly sworn, deposes and says:

1.    I am the defendant in the above-captioned action.

2.    I am making this affidavit in support of my motion to vacate the default judgment against me and leave to file an Answer and Counterclaim.

3.    On March 9, 2007 a judgment for $982.12 was entered against me in favor of the plaintiff in the office of the Clerk of this Court. A copy of the judgment is attached to this Affidavit as Exhibit A.

4.    I was never served with a copy of the Summons and Complaint in this matter. I did not even know that this action had been commenced.

5.    I first learned that a judgment had been entered against me when I received notice in or about September 2014 from my employer that my wages were going to be garnished.

1

6.    I have reviewed the Summons and Complaint in this action, a copy of which is attached to this Affidavit as Exhibit B.

7.    I have reviewed the Affidavit of Service in this action, a copy of which is attached to this Affidavit as Exhibit C.

8.    The Affidavit of Service states that on October 20, 2006, the process server served the Summons and Complaint at 1201 Hertel Ave., Buffalo, NY 14216 by affixing the summons and complaint to the door of the afore-mentioned residence.

9.    At the time of the alleged service, I did not live at this residence. In fact, I never lived at this address as it was the home of an ex-girlfriend. At the time of the alleged service, I was residing at 6 Maple Drive, Bowmansville, NY 14026. I have lived at this address since June 28, 2006 which is when it was purchased. A copy of the deed and insurance binder for the afore-mentioned property evidencing ownership in mine and my wife's name is attached as Exhibit D.

10.    I never received a copy of the Summons and Complaint by the process server.

11.    Thus, I was never personally served with the Summons and Complaint.

12.    My attorney has informed me that I must be served with a copy of the Summons and Complaint.

13.    I was never afforded an opportunity to defend myself in the action.

14.    I was never served with a copy of the Judgment.

2

15.    Because service was never made, I respectfully suggest that the Court lacks jurisdiction. I believe that I must be served with a copy of Summons and Complaint, and be afforded an opportunity to defend myself.

16.    Furthermore, at the time this action was filed, I lived in Bowmansville which is in Lancaster NY.

17.    The Town of Lancaster is not located in the city limits of Buffalo nor is it contiguous to the City of Buffalo.

18.    N.Y. Uniform City Court Act §213 states that in money actions, either the Defendant or the Plaintiff must be a resident of the city in which the action was commenced or reside in a town contiguous to that city.

19.    Thus, this Court does not have jurisdiction to hear the Plaintiff's claim.

20.    The Court should also be aware that I do not owe any money to Centurion Capital Corp.

21.    I do not have and never have had any kind of contract or business relationship with Centurion Capital Corp.

22.    Centurion Capital Corp., in its Complaint, alleges that it acquired a Providian Financial account in which I allegedly defaulted on. The complaint alleges that I owe $780.12.

23.    I do not recall ever having any Providian account with any such balance.

24.    In sum, I request that the Court vacate the Judgment and dismiss the action in its entirety.

25.    There have been no prior applications for the relief requested herein.

3

WHEREFORE, it is respectfully requested that my motion to vacate the

default judgment and dismiss the Plaintiff's complaint in its entirety be granted,

together with such other relief as the court deems proper.

Christopher Mccrobie

Sworn to before me this

27 day of August 2015

LINDA DEDLINE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES MAY 18 2019

4

# Exhibit A

BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK                                    Index # G07295/06

CENTURION CAPITAL CORPORATION            CHRISTOPHER MCCROBIE
ASSIGNEE OF PROVIDIAN FINANCIAL          1201 HERTEL AVE
700 KING FARM BLVD.                      UPPER REAR
SUITE 503                                BUFFALO, NY 14216
ROCKVILLE, MD 20850
                                 V.      Defendant(s)
Plaintiff

## AFFIRMATION OF REGULARITY AND DEFAULT JUDGMENT

The undersigned, attorney-at-law of the State of New York and attorney of record for the Plaintiff herein affirms under penalties of perjury:

1.  The summons and verified complaint in this action was:
    ( X ) served by substitute service on the Defendant, CHRISTOPHER MCCROBIE, on October 20, 2006 with the affidavit of service filed with the clerk on October 27, 2006.
2.  The additional notice requirements as set forth in CPLR 3215(g) (3) have been complied with.
3.  The time of the Defendant(s) to appear or answer has expired and the Defendant(s) has not appeared or answered herein.
4.  The sums sought and the disbursements set forth below are true and accurate. The disbursements have been or will be made accurate. The disbursements have been or will necessarily be made or incurred herein and are reasonable in amount.

| | | |
|---|---|---|
| AMOUNT CLAIMED IN COMPLAINT $780.12 | | $780.12 |
| INTEREST at 0% from February 28, 2007 to February 28, 2007 | | $0.00 |
| **SUBTOTAL** | | **$780.12** |
| COSTS BY STATUTE | $20.00 | |
| INDEX NUMBER FEE | $45.00 | |
| TRANSCRIPTS AND DOCKETING | $16.00 | |
| SERVICE OF SUMMONS & COMPLAINT | $35.00 | |
| POSTAGE | $0.00 | |
| SHERIFF'S FEES ON EXECUTION | $86.00 | |
| **TOTAL COSTS** | **$202.00** | |
| **TOTAL JUDGMENT AMOUNT** | | **$982.12** |

5.  Wherefore, it is required that judgment be entered accordingly.

Dated: February 28, 2007

                                         _____
                                         Allen D. Friedman, Esq./Patricia A. Blair, Esq.
                                         Christa L. Muratore, Esq./Marla J. Reed, Esq.
                                         Fatimat O. Balogun, Esq.

RECEIVED
VELOCITY C____
MAR -8 PM

Now, on motion of Wolpoff & Abramson, L.L.P. an attorney for Plaintiff, 300 Canal View Blvd., 3rd Floor, Rochester, New York, it is adjudged that Plaintiff, CENTURION CAPITAL CORPORATION ASSIGNEE OF PROVIDIAN FINANCIAL at 700 KING FARM BLVD, SUITE 503, ROCKVILLE, MD 20850 do recover of the Defendant(s) CHRISTOPHER MCCROBIE, herein residing at 1201 HERTEL AVE, UPPER REAR, BUFFALO, NY 14216, the sum of $780.12 with interest of $0.00, together with costs and disbursements of $202.00, amounting in all to the sum of **$982.12** and that the Plaintiff have execution therefore.

                    MAR - 9 2007          _____
                                          Clerk
W&A# 157430917

000011

262

CONSUMER CREDIT TRANSACTION

BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK

607295

CENTURION CAPITAL CORPORATION

ASSIGNEE OF PROVIDIAN FINANCIAL
700 KING FARM BLVD
SUITE 507
ROCKVILLE MD 20850                                    SUMMONS
                        Plaintiff

-against-

CHRISTOPHER MCCROBIE
16 SUMMIT ST
LANCASTER NY  14086

                    Defendant(s)

TO THE ABOVE NAMED DEFENDANT(S):

    YOU ARE HEREBY SUMMONED and required to appear in the City Court located at
50 DELAWARE AVE

BUFFALO          NY  142020000, in the City of BUFFALO          , County of
ERIE        , and State of New York, by serving an answer* to the annexed
complaint upon Plaintiff's attorney at the address stated below, or if there is no
attorney, upon the Plaintiff at address stated above, within the time provided by law
as noted below; upon your failure to so answer, judgment will be taken against you
for the relief demanded in the complaint, together with the costs this action.

    Venue is based on the residence of the parties.

Dated:  08/02/06

                    By: _____
                        Allen D. Friedman / Patricia A. Blair / Maria J. Reed
                        Christa L. Muratore / Sandra H. Chung
                        Wolpoff & Abramson, L.L.P.
                        Attorneys in the Practice of Debt Collection
                        Attorneys for Plaintiff
                        300 Canal View Blvd., 3rd Fl., Rochester, NY  14623
                        Telephone: 1-888-241-1458 Court Inq: 1-585-413-4020

NOTE:  The law provides that:

    1.  If this summons is served by its delivery to you personally within the County
of ERIE          , you must answer within 10 days after such service; or
            SEP AUG 10 AM 3:03
    2.  If this summons is served by delivery to any person other than you personally,
or is served outside the County of ERIE          , or by publication, or by any
means other than personal delivery to you within the County of ERIE          , you
are allowed 30 days after service is complete within which to answer.

*You need not physically go to the court to serve an answer.

263

BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK

CENTURION CAPITAL CORPORATION

ASSIGNEE OF PROVIDIAN FINANCIAL
700 KING FARM BLVD
SUITE 507
ROCKVILLE MD 20850                              COMPLAINT
                        Plaintiff

-against-

CHRISTOPHER MCCROBIE
16 SUMMIT ST
LANCASTER NY  14086

                        Defendant(s)

The Plaintiff for a complaint against Defendant(s) alleges upon information and belief:
    1.    That at all times relevant to this action, the Plaintiff was and still is
A MARYLAND CORPORATION                          , having an office and place for the
regular transaction of business at the address set forth above.
    2.    Upon information and belief, at the time of the commencement of this action
the Defendant(s) resided at the address in the caption of this action in the County
of ERIE            and State of New York.

AS AND FOR A FIRST CAUSE OF ACTION:

    3.    That the Defendant(s) entered into a Credit Card Agreement, account number
4559909723108717        with
wherein credit was extended to Defendant(s) and Defendant(s) agreed to repay any
monies advanced.
    4.    During the past six years, pursuant to said agreement, Defendant(s) or
persons authorized by the Defendant(s) incurred indebtedness through the use of one
or more credit cards issued in the name of Defendant(s) under said agreement.
    5.    Plaintiff has purchased said account for value and is now the owner thereof.
    6.    That Defendant(s) has defaulted in Defendant's obligation under said
agreement and there is now justly due and owing to the Plaintiff from the Defendant(s)
as a result of said default the sum of $  780.12.

AS AND FOR A SECOND CAUSE OF ACTION:

    7.    That prior to the commencement of this action Plaintiff and/or its
predecessor on numerous occasions and on a monthly basis rendered statements of said
claim to the Defendant(s) which the Defendant(s) accepted and retained
without objection.
    WHEREFORE, Plaintiff demands judgment against the Defendant(s) for the sum of
$  780.12 with interest from JUDGMENT   together with the costs and disbursements
of this action.

Dated:  08/02/06

                        _____
                        Allen D. Friedman / Patricia A. Blair / Maria J. Reed
                        Christa L. Muratore / Sandra H. Chung
                        Wolpoff & Abramson, L.L.P.
                        Attorneys in the Practice of Debt Collection
                        Attorneys for Plaintiff
                        300 Canal View Blvd., 3rd Fl., Rochester, NY  14623
                        Telephone: 1-866-241-1458 Court Inc: 1 585 440

# Exhibit C

ATTORNEY        WA              157430917

BUFFALO CITY COURT                                    INDEX #  G07295/06

ERIE COUNTY                                           D/O/F   8/10/2006

CENTURION CAPITAL CORPORATION ASSIGNEE OF PROVIDIAN FINANCIAL

*PLAINTIFF/PETITIONER*

**AFFIDAVIT OF SERVICE**

CHRISTOPHER MCCROBIE

*DEFENDANT/RESPONDENT*

Erie County, New York State;                ROXANNE EDMISTON              being sworn,

says: Deponent is not a party herein, is over the age of 18 years and resides in the State of New York.

on   **10/20/2006**   at   **11:40 AM**   at   **1201 HERTEL AVE., UPPER REAR, BUFFALO, NY 14216**
Deponent served the within   **SUMMONS AND COMPLAINT**

On   **CHRISTOPHER MCCROBIE**                        DEFENDANT

(Herein after called the recipient) therein named.

### AFFIXING TO DOOR

By affixing a true copy of each to the door of said premesis which is defendants   actual place of residence
Deponent was unable with due diligence to find defendant or person of suitable age and discretion thereof having called there

**10/12/06 @ 7:08 PM        10/17/06 @ 7:49 AM        10/20/06 @ 11:40 AM**

### MAILING

Within 20 days of such delivery, or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at
defendant's last known residence at
**1201 HERTEL AVE., UPPER REAR, BUFFALO, NY 14216**                           On   **10/26/2006**
and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.  The
envelope bore the legend "personal and confidential" and did not indicate on the outside, thereof by return address or otherwise that the
communication was from an attorney or concerned an action against the defendant.

*The defendant was served with a copy of the summons and complaint which had the index number and the date of filing endorsed thereon.*

VERIFICATION THAT ADDRESS IS GOOD:          NAME ON MAILBOX

Upon information and belief defendant is not in the military service of the United States or the State of New York.

Sworn to before me on        **Thursday, October 26, 2006**

Jillina A. Kwiatkowski
Notary Public - State of New York
Qualified in Erie County
Reg. # 01KW6057316
My Commission Expires 04/16/07

ROXANNE EDMISTON
AFF. #   75289

000015

# Exhibit D

000016

Box 460

**THIS INDENTURE,** made the 28 Day of June , Two Thousand Six

BETWEEN

Wells Fargo Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2004-FF5, by Saxon Mortgage Services, Inc. f/k/a Meritech Mortgage Services, Inc. 4708 Mercantile Drive North, Fort Worth, TX 76137-3605, as attorney in fact

party of the first part, and

Christopher McCrobie and Diane L. McCrobie, husband and wife 16 Summit Street, Lancaster, NY 14086

party of the second part,

WITNESSETH, that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL THAT TRACT OR PARCEL OF LAND, situate in the Village of Depew in the Town of Lancaster, County of Erie and State of New York, being part of Lot Number 7, Section 12, Township 11 and Range 6 of the Holland Land Company's Survey and according to map filed under Cover Number 1189 is known as Subdivision Lot Number 5 in Block Number 1.

AND ALSO, ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Lancaster, County of Erie and State of New York, bounded and described as follows:

Being part of Farm Lot 7, Section 12, Township 11, Range 6 under Map Cover No. 1189, Genesee Villa Subdivision, known as Lot 4 in Block 1, North Street, 101.9 feet north of Main Street, 73.26 feet by 140.58 feet.

BEING the same premises conveyed to grantor herein by QuitClaim Deed of Deutsche Bank Trust Company Americas, dated April 29, 2006 and recorded in the Erie County Clerk's Office simultaneously herewith.

This transfer does not constitute all or substantially all of the assets of the corporation.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

LAND— Som.
SP - 145380 - 46 —
D 113 — 2 — 0

Book11115/Page8370

000017

MCCROCHR

# ACORD™ INSURANCE BINDER

DATE: 06/20/06

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.**

| PRODUCER | | COMPANY | |
|---|---|---|---|
| PHONE (A/C, No. Ext): 716-648-8000 FAX (A/C, No): 7166481287 | | Preferred Mutual Insuran | BINDER #: unassigned |

PRODUCER:
NiA/Guastella Group, LLC
P.O. Box 240
Athol Springs, NY 14010

| | EFFECTIVE | | | EXPIRATION | | |
|---|---|---|---|---|---|---|
| | DATE | TIME | | DATE | TIME | |
| | 06/28/06 | 12:01 | X AM / PM | 07/28/06 | X 12:01 AM / NOON | |

CODE: _____ SUB CODE: _____

AGENCY CUSTOMER ID: 158174

THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #:

INSURED:
Christopher D & Diana McCroble
6 Maple Street
Bowmansville, NY 14026

DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location):
Loc#1: 6 Maple Street;, Bowmansville, NY 14026

## COVERAGES

| TYPE OF INSURANCE | COVERAGE/FORMS | LIMITS | |
|---|---|---|---|
| **PROPERTY** | | DEDUCTIBLE | AMOUNT |
| CAUSES OF LOSS: BASIC □  BROAD □  SPEC X | Dwelling | 500 | $215,000 |
| | Other Structures | AP | $21,500 |
| | Unscheduled Personal Property | | $150,500 |
| | Loss of Use | | $43,000 |

COPY

| **GENERAL LIABILITY** | | | |
|---|---|---|---|
| COMMERCIAL GENERAL LIABILITY | | EACH OCCURRENCE | $ 300,000 |
| CLAIMS MADE □   OCCUR □ | | DAMAGE TO RENTED PREMISES | $ |
| X  Personal Liab. | | MED EXP (Any one person) | $ 1,000 |
| X  Med. Payments | | PERSONAL & ADV INJURY | $ |
| | RETRO DATE FOR CLAIMS MADE: | GENERAL AGGREGATE | $ |
| | | PRODUCTS - COMP/OP AGG | $ |
| **AUTOMOBILE LIABILITY** | | COMBINED SINGLE LIMIT | $ |
| ANY AUTO | | BODILY INJURY (Per person) | $ |
| ALL OWNED AUTOS | | BODILY INJURY (Per accident) | $ |
| SCHEDULED AUTOS | | PROPERTY DAMAGE | $ |
| HIRED AUTOS | | MEDICAL PAYMENTS | $ |
| NON-OWNED AUTOS | | PERSONAL INJURY PROT | $ |
| | | UNINSURED MOTORIST | $ |
| | | | $ |
| **AUTO PHYSICAL DAMAGE** DEDUCTIBLE | ALL VEHICLES □   SCHEDULED VEHICLES □ | ACTUAL CASH VALUE | |
| COLLISION: | | STATED AMOUNT | |
| OTHER THAN COL: | | OTHER | |
| **GARAGE LIABILITY** | | AUTO ONLY - EA ACCIDENT | $ |
| ANY AUTO | | OTHER THAN AUTO ONLY: | |
| | | EACH ACCIDENT | $ |
| | | AGGREGATE | $ |
| **EXCESS LIABILITY** | | EACH OCCURRENCE | $ |
| UMBRELLA FORM | | AGGREGATE | $ |
| OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | $ |
| **WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY** | | WC STATUTORY LIMITS | |
| | | E.L. EACH ACCIDENT | $ |
| | | E.L. DISEASE - EA EMPLOYEE | $ |
| **SPECIAL CONDITIONS/ OTHER COVERAGES** | "Disclaimer - The abbreviated outline of coverages used throughout this binder (See attached Spec Conditions/Other Covs page.) | E.L. DISEASE - POLICY LIMIT | $ |
| | | FEES | $ |
| | | TAXES | $ |
| | | ESTIMATED TOTAL PREMIUM | $ |

## NAME & ADDRESS

Lakeshore Savings Bank
Its Successors &/or Assigns
128 East Fourth Street
Dunkirk NY 14048

MORTGAGEE □   LOSS PAYEE □   ADDITIONAL INSURED □

LOAN #: _____

AUTHORIZED REPRESENTATIVE: _Edward M McNeal_

ORD 75 (2001/01) 1 of 2   #47632

000018

CITY COURT OF THE CITY OF BUFFALO
COUNTY OF ERIE

_____

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDAN FINANCIAL CO

                          **Plaintiff,**            Index No. 007295-06

v.

CHRISTOPHER MCCROBIE

                          **Defendant.**

_____

## Memorandum of Law

This Memorandum of Law is respectfully submitted in support of Defendant's motion to vacate judgment and dismiss the Plaintiff's complaint. Defendant seeks an Order under CPLR §§ 3211(a)(1), 3211(a)(2), 3211(a)(3), 3211(a)(8), and 5015(a)(4)) vacating the judgment and dismissing the action in its entirety on the grounds that (1) this Court does not have jurisdiction over Defendant, and (2) Plaintiff does not have standing.

### Argument

I.    **The Court should vacate the judgment and dismiss the complaint because defendant was not properly served**

Based upon the Defendant's affidavit and documentation, copies of which are attached as exhibits to Defendant's accompanying affidavit, sworn to on August 27, 2015, it is clear that the Defendant was never served with a copy of the Summons and Complaint. Basic fairness and Defendant's right to due process demand that Defendant have an opportunity to defend herself. Without proper service, the Court

lacks jurisdiction to enter a judgment. Therefore, the judgment should be vacated and the case dismissed.

As set forth in Defendant's accompanying affidavit, he was never served with the Summons and Complaint.[1]

According to the Affidavit of Service, the process server claims to have served the Plaintiff with a copy of the Summons and Complaint on October 20, 2006 by affixing a copy to1201 Hertel Ave., Buffalo, NY 14216.[2] However, Plaintiff never received the Summons and Complaint as he never lived at the above residence. Thus, Plaintiff failed to serve the Defendant under CPLR 308.

A.    **Without proper service the court has no jurisdiction, the judgment is void, and the complaint must be dismissed**

In *McMullen v. Arnone*, the Second Department wrote: "It is axiomatic that the failure to serve process in an action leaves the court without personal jurisdiction over the defendant, and all subsequent proceedings are thereby rendered null and void."[3] The *McMullen* Court went on to state that a judgment entered in the course of the proceedings, even though entered on default, is a nullity and binds no one."[4]

In *Citibank v. Horst*, the Second Department wrote: "If service had not been duly effected, the court would have no jurisdiction over the defendant and the

---

[1] *See* accompanying Affidavit in Support of "Mccrobie Affidavit." sworn to on August 27, 2015.
[2] *See* Exhibit C to the Mccrobie Affidavit.
[3] 79 A.D.2d 496 (2d Dept. 1981); *also see, Feinstein v. Bergner*, 48 N.Y.2d 234; *Royal Zenith Corp. v. Continental Ins. Co.* 63 N.Y.2d 976; *Mayers v. Cadman Towers*, 89 A.D.2d 844 (2d Dept. 1983).
[4] 79 A.D.2d at 499.

2

default judgments would be nullities.[5] Thus, "Once a movant demonstrates the lack

of jurisdiction, a default judgment must be unconditionally vacated."[6] Moreover,

absent jurisdiction, the Court is without authority to take any action other than to

dismiss the complaint.[7] In the alternative, the Defendant respectfully requests that

merely vacate the Judgment and allow for him to interpose an Answer.

B.      Presenting a meritorious defense is not necessary to vacate a judgment

In *Johnson v. Deas*, the First Department stated that "where there is a

defense of lack of personal jurisdiction, a defendant need not show a reasonable

excuse and meritorious defense" to vacate a default judgment.[8] In *Shaw v. Shaw*,

the Second Department wrote:

> Absent proper service, a default judgment is a nullity, and,
> once it is shown that there was not service, the judgment must
> be unconditionally vacated (see *McMullen v. Arnone*, 79 A.D.2d
> 496). Whether or not the defendant has a meritorious defense
> is irrelevant to the questions of whether the judgment should
> be vacated for lack of jurisdiction." (*Pine v. Town of Hoosick*, 56
> A.D.2d 692; *Queensborough Leasing v. Resnick*, 78 Misc. 2d
> 919.). The existence of a meritorious defense only becomes
> significant in determining whether to open a default once it is
> clear that service has been properly made (*Mayers v. Cadman
> Towers*, 89 A.D.2d 844). A judgment obtained without proper
> service of process is invalid, even when the defendant has
> actual notice of the lawsuit, because as a prophylactic measure
> such a rule is necessary to prevent "sewer service" (see
> *Feinstein v. Bergner*, 48 NY 2d 234, 239-241).[9]

In any event, Defendant sets forth in his Affidavit that he was never served with

summons and complaint; and meritorious defenses are set forth below.

---

[5] 133 A.D.2d 63 (2d Dept. 1987).

[6] *Id.* at 64.

[7] *Community State Bank v. Paul Haakonson*, 94 A.D. 2d. 838 (3d Dept. 1983).

[8] 32 A.D.3d 253, 254 (1st Dept. 2006).

[9] 97 A.D.2d 403 (2d Dept. 1983).

000021

C.   Presenting a reasonable excuse is not necessary to vacate a judgment

Plaintiff will undoubtedly claim that Defendant must show a reasonable excuse for failing to answer the complaint. But such claims are incorrect. This motion to vacate is based, *inter alia*, upon the Court's lack of personal jurisdiction due to ineffective service under CPLR 5015 (a)(4), which does not require a showing of a reasonable excuse. In *Ciprano v. Hank*, the Court stated: "Defendant's lack of a reasonable excuse, however, is obviated if the court is without personal jurisdiction over defendant, and all subsequent proceedings would be rendered null and void."[10]

Issues of excusable default are only raised on a motion under CPLR 5015(a)(1) once it is established that the Defendant has been served and the Court has jurisdiction. In *Shaw v. Shaw*, the Court noted that the legislature specifically delineated separate provisions of CPLR 5015, and that reasonable excuse is not necessary if the Court lacks jurisdiction.[11] The Court, however, further notes that a petitioner's failure to serve process would of itself likely constitute reasonable excuse, and would likely meet the requirements of CPLR 5015(a)(1) in any case.

D.   Liberal construction of CPLR 5015

The Courts have always been liberal in granting relief from judgments. The obvious reason for this is to ensure that a case be decided on the merits. In *Home Insurance Company v. Meyers Parking System*, the Court noted the "strong public

---

[10] 197 A.D.2d 295 (1st Dept. 1994) (citing *McMullen v. Arnone*, 19 A.D.2d 496).
[11] 97 A.D.2d 403 (2d Dept. 1983).

4

000022

policy favoring dispositions on the merits."[12] And the leading treatise on New York

Civil Practice expands on the liberal construction of CPLR 5015:

> New York Courts have always been extremely permissive in granting relief from judgments and orders. CPLR 5015 in no way changed this liberal approach. Like Federal Rule of Civil Procedure 60, from which much of its language is derived, CPLR 5015 is liberally construed and applied.[13]

### E. This Court lacks jurisdiction over the defendant pursuant to N.Y. Uniform City Court Act §213

Plaintiff filed this action in a court that does not have personal jurisdiction over

the Defendant.  N.Y. Uniform City Court Act §213 states that in money actions,

either the Defendant or the Plaintiff must be a resident of the city in which the

action was commenced or reside in a town contiguous to that city.

Here, neither the Plaintiff nor the Defendant resided in the City of Buffalo at the

commencement of this action. Plaintiff is a limited Liability Company whose

business address is in Rockville, MA. Defendant is an individual who at the time of

filing of the complaint, resided in Lancaster NY. Lancaster is not contiguous to the

City of Buffalo. Thus, the Defendant's filing of the action to collect on the subject

debt against Plaintiff in the City of Buffalo was improper and the Court lacks

jurisdiction over the Plaintiff.

---

[12] 186 A.D.2d 497 (1st Dept. 1992).
[13] Weinstein, Korn & Miller, *New York Civil Practice*: CPLR ¶5015.02 (David L. Ferstendig ed., LexisNexis Matthew Bender, 2d ed. 2005).

000023

II.   The Court should dismiss the complaint because the Plaintiff has no contractual or other relationship with the Defendant, and therefore lacks standing or capacity to sue.

As set forth in Defendant's accompanying affidavit, he has never had any relationship with Plaintiff and does not owe it any money.  In Citibank (South Dakota), N.A. v. Martin the court explains that an assignee has the burden of "tender[ing] proof of assignment of a particular account."  Here, Plaintiff does not offer any admissible evidence to prove liability on the alleged defaulted account Instead, Plaintiff merely recites that it purchased ownership of Defendant's alleged account with no supporting documents whatsoever.

The appellate division has made clear that mere conclusory assertions of fact, without any evidentiary basis, are insufficient to prove a claim.  Therefore, because Plaintiff's complaint contains mere conclusory assertions of fact and fails to attach any documents to support those assertions, it is of no probative value.  Thus, without privity or admissible evidence of valid assignment Plaintiff lacks standing or capacity to sue.

6

000024

## Conclusion

For the foregoing reasons, it is respectfully requested that the Court vacate the Judgment entered against the Defendant and dismiss the Plaintiff's complaint in its entirety, together with such other relief as the court deems proper

Dated:      August 27, 2015
            Amherst, New York

Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Defendant*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: sandrews@kennethhiller.com

7

CITY COURT OF THE CITY OF BUFFALO
COUNTY OF ERIE

_____

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDAN FINANCIAL CO,

                              Plaintiff,

         v.                                              **Index No. 007295-06**

CHRISTOPER MCCROBIE,

                              Defendants.

_____

## AFFIRMATION OF SERVICE

Seth J. Andrews, hereby affirms under penalties of perjury, that the following statements are true
and correct to the best of my knowledge, information and belief:

1.  That on September 3, 2015, I mailed the Defendants Motion to Vacate Judgment, Affidavit of
    Christopher McCrobie with Exhibits in support of Defendant's Motion to Vacate the
    Judgement and Memorandum of Law upon the attorney of record for Plaintiff by using Fedex
    Express overnight Services, to said attorney to the address designated by them for that
    purpose, to wit:

> Houslanger & Associates, PLLC
> Attorney for the Plaintiff
> 372 New York Avenue
> Huntington, New York 11743

Dated:  September 3, 2015

                              _____
                              Seth J. Andrews

Sworn to before me this
3rd day of September, 2015.

_____
Notary Public

LINDA DEDLINE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES MAY 18 2019



CIVIL COURT OF THE CITY OF BUFFALO
COUNTY OF ERIE: STATE OF NEW YORK

-------------------------------------------------X    Index No.: 007295-06

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDIAN FINANCIAL

                                 **Plaintiff(s)**,    **AFFIRMATION IN**
                                             **OPPOSITION TO**
      - against -    **ORDER TO**
                                             **SHOW CAUSE**

CHRISTOPHER MCCROBIE

                                 **Defendant(s)**.    **Return Date:**
                                             **September 21, 2015**

-------------------------------------------------X

      **TODD E. HOUSLANGER,** an attorney admitted to practice before the Courts of the State of New York hereby affirms the following under penalty of perjury and pursuant to CPLR 2106:

1. I am a member of the firm Houslanger & Associates, PLLC, the current attorneys for Palisades Acquisition XVI, LLC, the Assignee and Successor in Interest to Plaintiff, Centurion Capital Corporation (See Affidavit of Stephen K. Braun, Esq., Assistant Vice President of Operations and Director of Litigation of both Palisades Acquisition XV, LLC (predecessor assignor) and Palisades Acquisition XVI, LLC and the bill of sale/ chain of title annexed hereto as **Exhibit "A"**). We are not the original attorneys of record. The matter has been referred to our firm for post Judgment execution (See Consent to Change Attorney and annexed hereto as **Exhibit "B"**).

2. This Affirmation is in Opposition to Defendant's Order to Show Cause dated 8-27-2015.

3. This matter was commenced by substituted service of a Summons and Complaint, upon the Defendant, completed on or about 10-20-2006. The summons and complaint was thereafter mailed by the process server to the Defendant on October 26, 2006. A second copy of the Summons and Complaint was also mailed to the Defendant's last known address on November 30, 2006 (See Summons and Complaint and Affidavit of Service annexed hereto as **Exhibit "C"**).

4. At the time of service, an investigation was performed by the then original attorneys for the judgment creditor, who completed an affirmation in support of the filing of the default judgment. This affirmation is unique to this case as it demonstrates the extra efforts taken at that time and constitutes due diligence on the part of the plaintiff to effectuate service upon the Defendant (See affirmation annexed as **Exhibit "D"**). Said affirmation specifically set forth the good faith efforts to ascertain the then current address of the defendant. The affirmation stated that the defendant moved from their prior address of 16 Summit Street Lancaster, NY 14086 to the then current address of 1201 Hertel Avenue, Upper Rear, Buffalo, NY 14216. That was the most recent address for the defendant at that time. Service was diligently performed at the latter address and the Defendants name was still on the mailbox, as sworn to by the process server in her

affidavit of service (See Affidavit of Service of Roxanne Edmiston dated October 26, 2006, annexed hereto as **Exhibit "C"**). The Defendant failed to file an answer with the Court and failed to serve a copy of his answer on Plaintiff's attorney in a timely fashion.

5. Service was complete. Proper Affidavits and Verifications were provided to the Clerk of the Court who issued a judgment in this matter on 3-9-2007 in the sum of $982.12. Same Judgment was a public record for nearly 8.5 years (See Judgment annexed hereto as **Exhibit "E"**).

6. To date the Judgment principal of $982.12, less payments received of $572.45 with New York statutory interest from March 9, 2007 to September 10, 2015, consisting of $716.42, for a balance due of One Thousand One Hundred Twenty Six ($1,126.09) Dollars and Nine Cents. Said payments were received by way of an Income Execution filed with the Ulster County Sheriff..

7. The Judgment is almost 8.5 years old and there is no basis why the Debtor is now acting at this late stage after legal files have been disposed of to bring this Order to Show Cause. The Defendant was fully aware of this matter and could have brought an Order to Show Cause over 8.5 years ago but failed to act timely

8. The Movant, Judgment Debtor's papers are defective for failure to contain a meritorious defense and thus the requested relief should not be granted.

9. There is a presumption of regularity that accompanies the Clerk's entry of and issuance of a Judgment.

10. Upon information and belief the Defendant was properly served in this matter and the Court has obtained jurisdiction over the subject matter as well as the person of the Defendant.

11. Any and all garnishment of wages resulted from the proper execution of a Judgment of this Court lawfully obtained and issued there from. The Judgment was obtained on March 9, 20017, almost 8.5 years ago.

12. In order to obtain relief by Order to Show Cause to vacate a default judgment, pursuant to CPLR §317, the movant must indicate either a lack of service or a reasonable basis for a delay and a meritorious defense. To allow the Defendant to appear now would be in derogation of CPLR §317 (See CPLR §317, attached hereto as **Exhibit "F"**).

13. The Defendant does not state a meritorious defense. The Defendant does not deny the debt. The Defendant, in his affidavit, does not deny opening the account, having knowledge of the account or receiving statements at the Defendants address.

14. Defendant was served at 1201 Hertel Avenue, Buffalo, NY 14216, which was, at the time of service, his current address (See Affidavit of Service annexed hereto as **Exhibit "C"**).

15. As stated in Defendant's Affidavit in Support of Order to Show Cause, Defendant denies his residence at the above address and thereby contest service, stating that he was no longer living there when service was made since he purchased property on June 28, 2006. However, the purchase of property does not mean that Defendant changed his residence.

16. In cases such as this, one of the most important considerations should be whether due diligence was performed in order to ascertain the address or at least the last known address of the Defendant for service. In this matter the diligence is evident as service was attempted at 16 Summit Street in Lancaster, NY on or around August of 2006. After service was attempted, the current resident of that address advised that the Defendant had moved and that their whereabouts were unknown to them. Rather than proceed with service to that address as many would claim is a common practice, the original attorney and process server took efforts to locate a more recent address for the Mr. McCrobie. They were able to locate the 1201 Hertel address in Buffalo and proceeded to serve process there. The process server visited the residence on three separate occasions, finally affixing to the door a copy of the Summons and Complaint and then mailed a copy of same to that address. Upon information and belief, no return mail was received. Perhaps most compelling is the fact that the Defendant's name was on the mailbox of the 1201 Hertel address. Defendant admits that the service address was a previous residence of his or a place where he frequented and became his usual place of abode, as demonstrated by his characterization that the address was that of his girlfriend. Further, Mr. McCrobie claims that he had only moved from 1201 Hertel a few months before service was attempted, thus making that same address at the very least his last known address. Reality and practicality dictates that the efforts to locate the new address of the home Mr. McCrobie purchased and claimed he immediately moved into, that of 6 Maple Drive, Bowmansville, NY, as his then current address, although diligently performed, would not have turned up in any location service, credit report, online investigation or skip tracing as such services are not normally updated that quickly (and certainly were not in 2006). Upon information and belied the Defendant drove a truck and there was no readily ascertainable place of business that could be located at that time.

17. It is notable to observe in Exhibit "D" attached to the Defendants Affidavit in support of his Motion, the deed contains as the Defendants address 16 Summit Street, Lancaster, NY 14086, as the party of the second part. Thus, this was the very same address that the process server initially attempted service at, as indicated on the Summons, but discovered that the defendant did not reside there (See Deed attached hereto as **Exhibit "G"**).

18. Plaintiff argues that a presumption of regularity is attached to an Affidavit of Service which may only be overcome by affirmative evidence offered by the Defendant.

19. The Defendant fails to provide the address which he has on record with the NY DMV as his legal residence at the time of service and fails to state with specificity the actual address he was living at during the period before and during service.

20. A presumption is a rule of law which requires that the existence of a fact be taken as established, unless and until…the opposing party comes forward with proof [to the contrary]. New York Bench Book for Trial Judges § 39.A.1. A presumption of regularity attaches to official acts, which provides that no official or person will do anything contrary to his official duty. General Acci. Ins. Co. v. City Ins. Co., 149 A.D.2d 322, 539 N.Y.S.2d 370 (1989). It is therefore presumed that a person acting under oath will not do anything which is contrary to his official duties. People v. Dominique, 90 N.Y.2d 880 (1997). This presumption places a burden on the defendant (People v. Richetti, 302 N.Y. 290) which may only be overcome by the presentation of affirmative evidence. People v. Murphy, 6 N.Y.2d 238; People v. Means, 14 Misc.2d 552).

21. NY CPLR 4351 clearly states that an Affidavit of Service is *prima facie* evidence of service which cannot be rebutted by a mere denial. Francis v. Francis, 48 A.D.3d 512, 852 N.Y.S.2d 259 (2d Dept. 2008); See also Scarano v. Scarano, 63 A.D.3d 716, 880 N.Y.S.2d 682 (2d Dept. 2009). Defendant's affidavit must deny specific facts in server's affidavit); *Geico v. Roth*, 56AD3d 1244, 867 NYS2d 622 (4th Dept., 2008) ("I don't remember receiving it" doesn't suffice).

22. In the present case, the Defendant was served by a process server who affirmed under oath that service was completed on 10-20-2006 (See attached **Exhibit "C"**), thus raising a presumption of proper service which cannot be rebutted by mere denial. The entry of default judgment by the Clerk carries a similar presumption of regularity, in this case that judgment would not have been entered unless service was proper. These presumptions must be overcome by the Defendant's presentation of affirmative evidence. The Defendant does not submit any affirmative evidence to rebut the presumption of valid service. The Defendant has not provided any evidence to show where he was actually residing and being responsible for the payment of such as fuel or electric or telephone or cable bills. The Defendant has not provided proof of when or ever changed his address with the US Postal service at the time of service,

23. According to case law interpreting the provisions of Vehicle Traffic Law § 505(5), a party who fails to notify NYS DMV of a change in residence, within 10 days after such occurrence, are estopped from challenging the propriety of service made to that address (*see Sherrill v. Pettiford*, 127 A.D.2d 512, 513, 567 N.Y.S.2d 859; *Lavery v. Lopez*, 131 A.D.2d 820, 571 N.Y.S.2d 182). Defendant's general allegations are insufficient to rebut the presumption of good service afforded to the process server's affidavit. *See Bossuk*, 58 N.Y.2d at 918; *see also Granite Mgmt. & Disposition v. Sun*, 221 A.D.2d 186 (N.Y. App. Div. 1st Dep't 1995).

24. The Courts have held that the presumption of validity attaches to an address which is on record with the NY DMV. The Appellate Division held in Burke v. Zorba Diner, that defendants are estopped from denying the propriety of their address as recorded with the DMV. Burke v. Zorba Diner Inc., 623 N.Y.S.2d 932; 213 A.D.2d 577 (1995). In Burke, the plaintiff was hit by a chair thrown by the defendant and served the summons and complaint upon the defendant by leaving a copy with his mother and mailing another copy to that same address because it was the defendant's address on record with the NY DMV. *Id.* When the defendant contested service by saying that he did not reside there anymore, the Court clearly applied the Pettiford precedent and held that the defendant

was estopped from contesting service. *Id.* This legal presumption is even recognized in the Chief Clerk's Memorandum for the Civil Court of the City of New York (attached hereto as **Exhibit "H"**), which states as its directive regarding this matter "The judgment clerk will accept as a valid address the address of the defendant(s) on a Certified abstract of Driving Record issued from the New York Department of Motor Vehicle…". NY Civil CCM-184.

25. Also with regard to public records, Courts have held that they may properly take judicial notice of state records. Associated General Contractors of America v. Lapardo Bros. Excavating Contractors, Inc. 43 Misc2.d 825, 252 NYS2d 486 (1964). Therefore, there is no basis to grant the Order to Show Cause. There was no change of address filed at the time of service or when Judgment was entered. The public record *Accurint* shows 1201 Hertel Avenue, Buffalo, NY 14216 as the Defendant address from August 2006 through November 2007, the address for the defendant at the time of service (See *Accurint* profile annexed hereto as **Exhibit "I"**).

26. The burden shifts to the Defendant to affirmatively show he did not live at 1201 Hertel Avenue, or that is was not his usual place of abode. Arguably, even if the Defendant moved, his mail and the additional mailing of the Summons and Complaint would have been forwarded to him. The Defendants claim that he purchased the residence of 6 Maple Street Bowmansville, NY 14026 on June 28, 2006, just over 3 months prior to service is not proof that he no longer maintained his residence at the address of service 1201 Hertel Avenue, Buffalo, NY 14216. Certainly, his mail would have been forwarded and he still would have received mail at the address service.

27. Thus, the Defendant was likely aware of this lawsuit and the judgment, but failed to act expeditiously, which prejudiced the Plaintiff, as documents evidencing the underlying obligation may have been disposed of.

28. It is extremely prejudicial for the Court to vacate a Judgment entered almost 8.5 years ago based solely on an uncorroborated statement of the Judgment Debtor. The statute of limitations on a Judgment is 20 years (See CPLR §211 annexed hereto as **Exhibit "J"**). To vacate a Judgment based on scant evidence would leave the Creditor without legal redress or any redress for that matter. The granting of same would abrogate our judicial system entirely and would be against public policy. To insure against this, the assembly passed the law as set forth in CPLR §317 (See annexed hereto as **Exhibit "E"**). This statute secures fairness to all parties. The Defendant sets forth no reasonable basis for a delay.

WHEREFORE, the undersigned respectfully requests this Court deny the Order to Show Cause with costs thereof and allow execution of the Judgment.

Dated: September 14, 2015
      Huntington, New York

                **Todd E. Houslanger, Esq.**
                **HOUSLANGER & ASSOCIATES, PLLC**
                *Attorneys for current Judgment Creditor*
                **PALISADES ACQUISITION XVI, LLC**
                **Assignee and Successor in Interest to Plaintiff**
                **CENTURION CAPITAL CORPORATION**
                *372 New York Avenue*
                *Huntington, New York 11743*
                *(631) 427-1140*
                *(631) 427-1143 Fax*
                *Our file no.: 168100*

TO:    **SETH ANDREWS, ESQ.**
        *Attorney for Defendant*
        **LAW OFFICES OF KENNETH HILLER**
        **6000 North Bailey Avenue, Suite 1A**
        **Amherst, NY  14226**

Z:\LAWSUIT\168100 McCrobie.v.Houslanger.Affirmaton in Oppostion.docx

CITY COURT OF THE CITY OF BUFFALO
COUNTY OF ERIE

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDIAN FINANCIAL CO.,

                               Plaintiff,

            -against-

CHRISTOPHER MCCROBIE

                              Defendant.

Index No. 007295-06

## MEMORANDUM OF LAW

     This Memorandum of Law is respectfully submitted on behalf of plaintiff Palisades Acquisition XVI (assignee of Centurion Capital Corporation) in opposition to defendant's Motion to Vacate the Judgment entered in this Court on March 9, 2007 returnable on September 21, 2015.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### The State Court Action

     On August 11, 2006 the instant lawsuit was filed against defendant McCrobie to recover amounts due on a debt that was not timely paid. Thereafter, on March 9, 2007, judgment was obtained in favor of predecessor assignor Centurion Capital Corporation against McCrobie in the amount of $982.12.[1] Judgment creditor Centurion Capital Corporation assigned the underlying account and judgment against McCrobie to Palisades Acquisition XV, which then transferred the account to Palisades Acquisition XVI ("Palisades" or "current judgment creditor").[2] On or about 12/12/2012, Houslanger & Associates, PLLC ("Houslanger & Associates") filed a substitution of counsel, expressly noticing their appearance on behalf of Palisades.[3]

---

[1] *See Judgment*, at **Exhibit E.**
[2] *See Chain of Title* and *Affidavit of Stephen K. Braun, Esq.* at **Exhibit A.**
[3] *See Consent to Change Attorney*, at **Exhibit B.**

The Federal Action

Rather than McCrobie and his team of attorneys filing an appropriate motion before this Court, on January 6, 2015, almost 9 years after the instant lawsuit was filed and approximately 8 years after judgment was obtained, McCrobie filed a federal lawsuit in the U.S. District Court, Western District of New York against Palisades and Houslanger & Associates, asserting claims under the Fair Debt collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA" or "the Act"), specifically alleging that Palisades and Houslanger & Associates violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), 1692f(5) and 1692f(6). Additionally, McCrobie alleged that Palisades and Houslanger & Associates violated N.Y. Gen. Bus. Law § 349 ("GBL").[4] Plaintiff's entire foundation for the federal lawsuit was a baseless assertion that Palisades is not the proper judgment creditor, thereby reaching a self-serving non-judicial determination that Palisades and Houslanger & Associates did not have the legal right to enforce the judgment currently entered in the instant Court against McCrobie.

After Todd Houslanger entered a Notice of Appearance[5] on behalf of Palisades and Houslanger & Associates, plaintiff tactically amended the complaint to personally name Todd Houslanger as defendant in the federal action.[6] In light of this, Palisades, Houslanger and Associates and Todd Houslanger personally (hereinafter "defendants in the federal action") were forced to expend significant monies retaining counsel to defend the wholly unjustifiable federal action.

---

[4] See *McCrobie's Complaint*, at **Exhibit K**. See also, *McCrobie v. Palisades Acquisition XVI, LLC et al*, Docket 15-cv-00018-JTC.
[5] See *Notice of Appearance*, at **Exhibit L**.
[6] See *Amended Complaint*, at **Exhibit M (without exhibits).**

On July 28, 2015, defendants in the federal action filed a motion to dismiss McCrobie's first amended complaint pursuant to Fed. R. Civ. P. §§ 12(b)(6) and 12(b)(1).[7] Defendants in the federal action submitted that McCrobie's complaint should be dismissed for the following legal reasons: **(1)** McCrobie's claims are time barred by the applicable statute of limitations; **(2)** N.Y.C.P.L.R. § 5019(c) does not require an assignment to be recorded in order for an assignment to be deemed valid; **(3)** McCrobie's implications that defendants lack standing do not rise to the level of a material statement under the FDCPA; **(4)** the Rooker-Feldman doctrine bars McCrobie's collateral attack on the state court judgment; **(5)** the doctrine of Abstention precludes McCrobie from re-litigating issues in the instant Court that could have been raised in the intertwined state court matter; **(6)** McCrobie does not even attempt to demonstrate a basis for piercing the corporate veil, and thus all allegations against Todd Houslanger in his individual capacity must be dismissed; **(7)** mere recitations of the elements of various FDCPA claims are insufficient to withstand a motion for failure to state a claim; and **(8)** since McCrobie has failed to state a claim under the FDCPA, the court should choose to decline to exercise jurisdiction over plaintiff's state law claim.

On August 4, 2015, Hon. John T. Curtin directed McCrobie to file a response to the motion to dismiss on or before August 28, 2015. Thereafter, on August 17, 2015 defendants in the federal action served a Letter pursuant to Fed. R. Civ. P. 11, as a formal demand to Plaintiff that he (1) dismiss all claims in McCrobie's amended complaint against Todd Houslanger; and (2) withdraw all claims arising under 15 U.S.C. §§ 1692e(9), 1692f(5) and 1692f(6).[8] This letter was sent in good faith in order to provide McCrobie and his team of attorneys a chance to comply with Rule 11 of the Federal Rules of Civil Procedure.

---

[7] *See Motion to Dismiss*, at **Exhibit N**.

[8] *See Rule 11 Letter*, at **Exhibit O**.

Instead of taking steps to comply with the Rule 11 letter or opposing the motion to dismiss, on August 27, 2015, McCrobie filed a Motion to once again amend the complaint, this time attempting to turn plaintiff's individualized allegations into a putative class, while also expanding the universe of Defendants to include Asta Funding, a publicly traded company that has no discernible link to this action.[9] Around the same time, plaintiff filed the instant motion to vacate the judgment entered in this Court, specifically requesting, "leave to file an Answer and Counterclaim."[10]

## WHY IS PLAINTIFF FIRST NOW FILING A MOTION TO VACATE THE JUDGMENT ENTERED IN 2007?

The primary impetus driving McCrobie's motion to vacate the instant judgment is the exact same motivation behind his attempt to add a publicly traded company as a defendant in the federal action – an attempt at objectively frivolous pecuniary gain - and *not* consumer protection. It should be noted that under the fee shifting provision of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k, a successful plaintiff (notwithstanding the extent of the success) is entitled to the cost of the action, together with reasonable attorney's fees. In fact, irrespective of whether a FDCPA plaintiff is successful or whether the case is entirely frivolous, due to the disproportionate costs and substantial fees in defending a FDCPA action brought by an experienced "consumer attorney," there is inordinate and hydraulic pressure to settle the case early for a large sum of money, thereby mitigating an even larger sum of money in order to defend a frivolous case through protracted litigation. In the federal action, McCrobie's team of five attorneys are very familiar with the substantial costs involved with defending a federal action (notwithstanding merit) and they are continually adding or attempting to add defendants to the action. These strategic maneuverings increase the value of the baseless action by way of inequitable leverage and unwarranted settlement pressure.

---

[9] *See McCrobie's Motion to Amend the Complaint,* at **Exhibit P**
[10] See instant Plaintiff's Motion to Vacate the Judgment, Affidavit of Christopher McCrobie, at ¶ 2.

It should be noted that even though the federal action was filed back on January 6, 2015, McCrobie simply excludes mentioning this federal lawsuit anywhere in the instant motion to vacate the judgment. Considering McCrobie is attempting to gain the unfettered assistance and acquiescence from this Court in order to move forward with his federal action, it is not surprising that he strategically chooses not to mention the actual genesis of his motion. Based on his conduct, it is axiomatic that McCrobie previously disregarded the import or effect of the instant state court judgment and believed he could prevail in the related federal action despite his lack of success in the instant Court. However, once McCrobie's team of attorneys reviewed the motion to dismiss the federal action (**Exhibit G**), they *finally acknowledged* the catastrophe they created by filing a federal suit related to state court litigation conduct where a valid and enforceable judgment was already entered. However, rather than withdrawing the related federal action, or opting to attempt to further challenge the state court results *prior* to filing in federal court, McCrobie's team of five attorneys are now trying to "clean up the mess" (to help pave the way for possible monetary gain or forced settlement) in federal court by way of additional state court motion practice.

The Rooker-Feldman Doctrine

The rationale behind McCrobie filing the instant motion to vacate while strategically delaying a response to the motion to dismiss in the federal action is that McCrobie's federal causes of action are barred by the *Rooker-Feldman* doctrine, as they effectively seek to have the federal court operate as an appellate panel as to this Court's judgment. It is well settled law that federal courts other than the Supreme Court of the United States lack jurisdiction to review state court decisions. See *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482, 75 L.Ed. 2d 206, 103 S. Ct. 1303 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 68 L. Ed. 362 44 S. Ct. 149

(1923); *Doctor's Assocs., v. Distajo*, 107 F. 33 126, 138 (2nd Cir. 1997). Accordingly, the federal court would lack subject matter jurisdiction to consider the state court judgment, as the federal action effectively constitutes a collateral attack on this Court by way of the instant judgment at issue. Thus, McCrobie is attempting to do an end-run around this Court's decision by bringing this ill-conceived motion to vacate to mitigate the inextricably intertwined cases. Most importantly in furthering this point, under the holding of *Hense v. Martin* 417 Fed. Appx. 83 (2nd Cir. 2011), McCrobie's federal action was brought after the judgment was rendered.

Additionally, the case of *Exxon Mobil Corp., v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) demonstrates that the *Rooker-Feldman* doctrine is distinct from the question of whether claims preclusion (*res judicata)* or issue preclusion *(collateral estoppel)* will defeat a federal plaintiff's suit. In fact, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to accord state judgments the same preclusive effect those judgment would have in the courts of the rendering state. Additionally, *res judicata* precludes the parties from relitigating issues that were or could have been raised in that action. See *Kiryas Joel Alliance v. Vill. Of Kiryas Joel*, 2012 U.S. App. Lexis 18946 (2nd Cir. 2012).

<u>The Proper Context for McCrobie's Instant Motion to Vacate</u>

As an initial matter, it is important for this Court to understand the context of defendant's motion to vacate the judgment and his thinly veiled attempts to leverage an outcome in this court to benefit the related federal action and/or settlement of the related federal action. As referenced in a 2013 decision[11] by District Judge Glasser (in citing a previous decision by him on a similar issue):

> "Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled. The cottage industry that has

---

[11] *Majerowitz v. Stephen Einstein & Assocs., P.C.*, 2013 U.S. Dist. LEXIS 115664 at *12 (E.D.N.Y. Aug. 15, 2013).

emerged does not bring suits to remedy the 'widespread and serious national problem' of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.' Id. Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs. . . .It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ('LSC') makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims 'This clearly runs afoul of the FDCPA!' and — rather than simply pay what he owes — repairs to his lawyer's office to vindicate a perceived 'wrong.' '[T]here comes a point where this Court should not be ignorant as judges of what we know as men.' *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S. Ct. 1347, 93 L. Ed. 1801 (1949)."

Likewise, in the recently decided case of *Huebner v. Midland Credit Mgmt.*,[12] the court

found that:

"The majority of cases that I see under the [FDCPA] are brought by a handful of the same lawyers, based on complaints that read much more like legal briefs than complaints. Frequently, these cases are brought on behalf of the same debtor-plaintiffs, who seize on the most technical alleged defects in collection notices or telephone communications, often raising claims of 'confusion' or 'deception' regarding practices as to which no one, not even the least sophisticated consumer, could reasonably be confused or misled. These cases are often brought for the non-salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company, which it will often find cheaper to pay than to litigate. A cottage industry among limited players — plaintiffs' lawyers, debtors, and even defendants' lawyers — appears to be the primary progeny of the statute."

Similar to the above cases, the single catalyst for McCrobie's motion to vacate the instant judgment is not couched in merit, but in a quest for money... specifically the fee shifting provision found in 15 U.S.C. § 1692k. There is no place in our legal system for such questionable motivations and there is no just cause to vacate the instant judgment.

---

[12] 2015 U.S. Dist. LEXIS 16677, *1-3 (E.D.N.Y. Feb. 11, 2015)

## MCCROBIE'S DEFAULT WAS NOT EXCUSABLE AND HE HAS LONG WAIVED ANY PERSONAL JURISDICTION DEFENSE

Simply put, a defendant cannot wait nine years to come forward, after receiving a plethora of legal papers, and vaguely feign ignorance, conveniently for the first time in order to bolster his position in a related federal lawsuit. To that point, a court's discretion to relieve a party from a judgment should not be exercised where that party has demonstrated a lack of good faith or has been dilatory in asserting his or her rights. *See Leibowitz v. Obsessively Clean II, Inc.*, 268 A.D.2d 565 (2nd Dept. 2000); *Spodek v. Feibusch*, 687 N.Y.S.2d 171 (2nd Dept.1999); *Greenwich Sav. Bank v JAJ Carpet Mart*, 126 A.D.2d 451, 452 (1st Dept. 1987); *Whitaker v. McGee*, 95 A.D.2d 938 (3rd Dept.1983). In addition, an objection to jurisdiction based on any ground other than lack of jurisdiction of the subject matter, such as lack of jurisdiction of the person, is usually waived by failure to raise the objection at the first opportunity, or in due or reasonable time. *See Revona Realty Corp. v. Wasserman*, 4 A.D. 2d 444, 448 (3rd Dept. 1957); *Matter of Parkside Limited Liability Company*, 294 A.D.2d 582, 742 N.Y.S.2d 580 (2nd Dept.2002).

Ordinarily, in order to obtain an order vacating a default judgment, a defaulting party must establish that the default is excusable and allege facts showing a meritorious defense. (*E.g., Time Warner City Cable v. Tri State Auto*, 5 AD3d 153 (1st Dept. 2004), lv denied 3 NY3d 656); *Wall vs. Bennett*, 33 A.D.2d 827, 305 NYS 2d 728 (3rd Dept. 1969). The process server's affidavit constitutes prima facie evidence of good and proper service. *Simonds v Grobman*, 277 AD3d 369 (2000); *Sando Realty Corp. vs Aris*, 619 NYS2d 140 (2nd Dept. 1994). Mere denials

of receipt of summons and complaint are insufficient to establish excusable default, contest jurisdiction, or raise any issues of fact. *KPG Inc. v Salinas Group Ltd.*, 11 AD3d 338 (1st Dept. 2004); *Roseboro vs Roseboro*, 131 AD2d 557 (1987); *Cavalry Portfolio Services, LLC v. Reisman*, 55 A.D.3d 524, 865 N.Y.S.2d 286 (2nd Dept. 2008). It has been held that "assuming the plaintiff complies with the statutory requirements, service will be valid even in the *rare* case in which the defendant does not actually receive the papers." *See Bossuk v. Steinberg*, 58 N.Y.2d 916, 918, 460 N.Y.S. 2d 509, 510 (1983)(emphasis added); *see also Granite Management & Disposition, Inc. v. Sun*, 221 A.D.2d 186, 634 N.Y.S.2d 48 (1st Dept. 1995). These facts, in addition to the demonstrated acts of waiver of the personal jurisdiction defense, sufficiently overcome defendant's bare bones attempts to question service as a matter of law, or to establish an excusable default for failing to respond to the summons and complaint.

CPLR § 317

Pursuant to CPLR Section 317, a party moving to vacate a default judgment must demonstrate that he or she has met four requirements: (1) that service was made by another method other than personal delivery to the party or agent; and (2) that the party did not receive actual notice of the process in time to defend the action (see, *Maines Paper and Food Service, Inc. v. Farmington Food, Inc.*, 233 A.D. 2d 595 (3d Dep't 1966); *Aloi v. Firebird Freight Service Corp.*, 251 A.D.2d 608, 675 N.Y.S.2d 107 (2d Dep't 1998); *Caba v. Rai*, 63 A.D.3d 578, 581, 882 N.Y.S.2d 56, 59 (1st Dep't 2009); (3) that the party has a meritorious defense to the action; and (4) that the motion to vacate be made within one year after the party learns of entry of the judgment but no later than five years.

Here: (1) service was made via substitute service; (2) defendant has had notice of this action since no later than 2007 when judgment was entered; (3) as described below, defendant

does not have a meritorious defense; and (4) this motion is being made more than a year since defendant would have learned of this case and judgment, and either way, it has been far more than five years. Thus, defendant's motion to vacate the judgment returnable 9/25/2014, filed over eight years after entry of judgment is improper under the CPLR.

Laches

Further, the Court must consider the issue of laches with regard to the late commencement of the motion to vacate herein. The motion to vacate should be denied on the basis alone of such exceedingly gross laches, insofar as the defendant has by action and/or inaction, by conduct, waived any jurisdictional defense. The principle of laches may serve to limit any viability of defendant's motion to vacate the judgment for lack of jurisdiction. See Roosevelt Hardware v. Green, 72 A.D.2d 261, 424 N.Y.S.2d 276, 1980 N.Y. App. Div. LEXIS 9680 (N.Y. App. Div. 2d Dep't 1980). Here, McCrobie knew or should have known about the legal action and judgment and has thus waived any jurisdictional defenses.

Even more importantly, defendant does not provide a cognizable explanation for the lapse of time in dealing with this legal action. Therefore, even if there were to be, on paper, jurisdictional issues, defendant has effectively waived them by his failure to address the legal action and/or judgment going back a period of over eight years.

**MCCROBIE HAS FAILED TO ESTABLISH A MERITORIOUS DEFENSE**

It has been held that where a defendant has failed to demonstrate a reasonable excuse for their default, the court does not need to consider whether the defendant has established the existence of a meritorious defense. *See Phillips, Nizer, Benjamin, Krim & Ballon v. Matteo*, 2000 N.Y. App. Div. LEXIS 3785 (2nd Dept. 2000); *Star Industries, Inc. v. Innovative Beverages Inc.*, 55 Ad3d 903 (2nd Dept. 2008). Furthermore the court in *Woodson v. Mendon Leasing Corp.*,

held that defaulters are deemed to have admitted all factual allegations that are contained in the complaint and all reasonable inferences that flow from them. *Woodson*, 100 N.Y.2d 62, 71 (2003), *citing Rokina Opt. Co. v. Camera King*, 63 N.Y.2d 728, 730 (1984). However, here, even if the court were to analyze whether defendant demonstrates a meritorious defense, despite his lack of showing as to excuse for waiting so long to challenge the judgment, the court would find defendant's demonstration lacking. Courts have held that conclusory allegations have no legal merit and fall short of stating a meritorious defense. *See Barretta Realty Skyline v. A+ Abstract, Inc.*, 32 Misc. 3d 133(A) (N.Y. App. Term 2011); *Palisades Collection, LLC v. Latchman*, 21 Misc. 3d 142(A) (N.Y. App. Term 2008); *Todd Rotwein, D.P.M., P.C. v. Goodson*, 23 Misc. 3d 135(A) (N.Y. App. Term 2009).

Here, the only thing defendant offers in defense of the underlying claim is that "I do not recall ever having any Providian account with any such balance." However, this is inconsistent with McCrobie's statement in the federal action that "[T]he subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and household purposes."[13] Therefore, McCrobie acknowledges possessing, using and benefiting from the underlying account.

Generally denying owing a debt, without knowing which debt you are denying or the details surrounding the denial, falls far short of offering enough facts to state a legitimate meritorious defense sufficient to overturn an eight-year-old judgment.

## CONCLUSION

As referenced above, McCrobie is only now approaching this Court to challenge the judgment because of his separate motivation to succeed in the related federal action. McCrobie has been intentionally dilatory in exercising his legal remedies regarding the instant judgment,

---

[13] *See McCrobie's Motion to Amend the Complaint*, at 14, **Exhibit P.**

and McCrobie has not offered sound justification to warrant this Court to exercise its discretion in relieving him of a judgment entered in 2007. In conclusion, based on the foregoing, plaintiff requests that McCrobie's motion to vacate the judgment be denied in all respects, and that the judgment remains intact, together with any such other appropriate and further relief the Court deems necessary and proper.

Dated: New York, NY
      September 14, 2015

Respectfully submitted,

Houslanger & Associates, PLLC
By: Todd E. Houslanger
372 New York Avenue
Huntington, NY 11743
teh@toddlaw.com


 //S// Scott E. Wortman
Warshaw Burstein, LLP
By: Scott E. Wortman, Esq.
555 Fifth Avenue
New York, NY 10017
swortman@wbcsk.com

# EXHIBIT "A"

**AFFIDAVIT OF WITNESS**
**OF PLAINTIFF/JUDGMENT CREDITOR**

State of _Pennsylvania_ County of _Montgomery_ .

_Stephen K. Braun_ being duly sworn, deposes and says:

1. I am over 18 and not a party to this action. I am the _Assistant VP of operations/Director of Litigation_ (title) of both Palisades Acquisition XV, LLC (predecessor assignor) and Palisades Acquisition XVI, LLC (plaintiff). In that position I am the custodian of the books and records and am aware of the procedures used for the import and storage of records and the assignment of electronically stored business records.

2. Based upon the attached Bill of Sale, on March 5, 2007 Centurion Capital Corporation sold a pool of accounts under the conditions of a Purchase and Sale Agreement to Palisades Acquisition XV, LLC. As part of that sale, electronic records of individual accounts kept in the in the ordinary course of business of Centurion Capital Corporation were transferred to Palisades Acquisition XV.

3. Christopher McCrobie's Providian Financial account, which is the subject of this lawsuit and judgment was included in the purchase, and Palisades Acquisition XV, LLC received account records of Christopher McCrobie.

4. Based upon the attached Bill of Sale, Christopher McCrobie's Providian Financial account, which is the subject of this lawsuit and judgment was then assigned by Palisades Acquisition XV, LLC to Palisades Acquisition XVI, LLC.

5. As part of that sale, electronic records specific to Christopher McCrobie's Providian Financial account were provided to Palisades Acquisition XVI, LLC. These records were incorporated into Palisades Acquisition XVI, LLC's records and kept in the regular course of business.

The above statements are true to the best of my knowledge.

Signed this ___14___ day of _September_ , _2015_ .

_____
(Name of Affiant)

Sworn before me this ___14th___ day of _September_ , _2015_ .

_____
(Notary Stamp)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
MARIA C DAVIDSON
Notary Public
CONSHOHOCKEN BORO, MONTGOMERY COUNTY
My Commission Expires Oct 16, 2018

{903924.1 }

**CITY COURT OF BUFFALO**
**COUNTY OF ERIE**
-------------------------------------------------------------X

**CENTURION CAPITAL CORPORATION**           **INDEX NO.: CV-007295-06/BU**
**ASSIGNEE OF PROVIDIAN FINANCIAL CO,**

                           **Plaintiff(s),**          **CERTIFICATE OF**
                                                      **CONFORMITY**

          **-against-**

**CHRISTOPHER MCCROBIE,**

                           **Defendant(s).**
-------------------------------------------------------------X

    I, JEFFREY M. PARRELLA, ESQ., an attorney-at-law admitted in both the State of New York and the Commonwealth of Pennsylvania, am fully acquainted with the laws of the Commonwealth Pennsylvania, pertaining to the acknowledgement or proof of deeds of real property to be recorded therein, do hereby certify that I am duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York and hereby certify that the acknowledgement or proof upon the foregoing document was taken by MARIA C. DAVIDSON, ESQ., a notary public in the Commonwealth of Pennsylvania , in the manner prescribed by the laws of the Commonwealth of Pennsylvania and conforms to the laws thereof in all respects.

    IN WITNESS WHEREOF, I have hereunto set my signature, this **14**[th] day of **September, 2015**.

 

By:     Jeffrey M. Parrella, Esq.
          Attorney at Law
          State of New York and
          Commonwealth of Pennsylvania

## BILL OF SALE

THIS BILL OF SALE is dated as of March 5, 2007 between CENTURION CAPITAL CORPORATION organized under the laws of the State of Maryland, located at 700 King Farm Blvd, Rockville, MD 20850 ("Seller") and PALISADES ACQUISITION XV, LLC, a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 ("Buyer").

For value received and subject to the terms and conditions of the Purchase and Sale Agreement (the "Agreement") dated February 5, 2007, between Buyer and the Sellers (as defined in the Agreement), Seller does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, all of the accounts of Seller included in the Accounts described in Section 1.2 of the Agreement, attached hereto as Schedule I.

This Bill of Sale is executed without recourse and without representations or warranties including, without limitation, any warranties as to collectibility, except as set forth in the Agreement.

CENTURION CAPITAL CORPORATION,
Seller

By: _Daniel Varner_____
      (Signature)
Name: _Daniel Varner_____
Title: _President_____

PALISADES ACQUISITION XV, LLC
Buyer

By: _____
      (Signature)
Name: _____
Title: _____

## BILL OF SALE

THIS BILL OF SALE is dated as of March 5 , 2007 between CENTURION CAPITAL CORPORATION organized under the laws of the State of Maryland, located at 700 King Farm Blvd, Rockville, MD 20850 ("Seller") and PALISADES ACQUISITION XV, LLC, a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 ("Buyer")

For value received and subject to the terms and conditions of the Purchase and Sale Agreement (the "Agreement") dated February 5, 2007, between Buyer and the Sellers (as defined in the Agreement), Seller does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, all of the accounts of Seller included in the Accounts described in Section 1.2 of the Agreement, attached hereto as Schedule 1

This Bill of Sale is executed without recourse and without representations or warranties including, without limitation, any warranties as to collectibility, except as set forth in the Agreement.

CENTURION CAPITAL CORPORATION,
Seller

PALISADES ACQUISITION XV, LLC
Buyer

By: _____
          (Signature)
Name: _____
Title: _____

By: _____
          (Signature)
Name: _MitchLH GL_____
Title: _Manager_____

## BILL OF SALE

Subject to the terms and conditions of that certain Sale Agreement, dated as of March __5__, 2007 (the "Agreement"), between PALISADES ACQUISITION XV, LLC ("Seller"), a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 and PALISADES ACQUISITION XVI, LLC ("Buyer"), a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, and for the consideration set forth in the Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller does hereby sell, convey, assign, transfer, set over and deliver to Buyer all of Seller's right, title and interest in all of the Receivable Assets, which such Receivable Assets are more fully described in the Agreement:

This Bill of Sale is being delivered pursuant to the Agreement and is subject to each of the terms set forth therein.

This Bill of Sale shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

*[signature page follows]*

10024/81
03/01/2007 2112999.81

000051

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed on its behalf by its duly authorized officer as of this _5_ day of March, 2007.

PALISADES ACQUISITION XV, LLC

By: _____

Name: Mitchell Sh__

Title: Manager

-2-

# EXHIBIT "B"

CITY COURT OF FALO
ERIE COUNTY
-------------------------------------------------------------------X

CENTURION CAPITAL CORPORATION
                                    Plaintiff(s)

            - against -

CHRISTOPHER MCCROBIE
        15068776
                                    Defendant(s).
-------------------------------------------------------------------X

Index no: G07295/06

CONSENT TO
CHANGE
ATTORNEY

Client ref #

IT IS HEREBY CONSENTED THAT, Houslanger & Associates, PLLC, with offices located at 372 New York Avenue, Huntington, NY 11743 (631) 427-1140 file #168100 be substituted as attorney(s) of record for the Plaintiff/Judgment Creditor in the above entitled action in place and stead of the undersigned attorney(s) as of the dated thereof:

Dated:

_Cheryl E. Rose_

Outgoing Attorney – _____

CHERYL E. ROSE, ESQ RECEIVER MANN BRACKEN
. as agent
for WOLPOFF& ABRAMSON
GAITHERSBURG,MD 20878
12154 Darnestown Rd, BOX 623

_[signature]_

Incoming Attorney -Todd E. Houslanger, Esq.
Houslanger & Associates, PLLC
P.O. Box 742
Katonah, NY 10549
(914) 666-8100

_[signature]_

CURRENT CREDITOR

_Palisades Acquisition XVI_ as successor to CENTURION CAPITAL
CORPORATION- 9341284

UNIFORM ACKNOWLEDGEMENT

State of New Jersey        }
                           }   ss:
County of Bergen           }

On the 12 day of December in the year 2012 before me, the undersigned, a Notary Public in and for said State, personally appeared _____Susan Kohn____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Sworn to before me on 12/12/2012

_[signature]_

JUDITH JOSEPH STONE
NOTARY PUBLIC STATE OF NEW JERSEY
MY COMMISSION EXPIRES JAN 20 2017

# EXHIBIT "C"

202

CONSUMER CREDIT TRANSACTION

BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK

607295

CENTURION CAPITAL CORPORATION

ASSIGNEE OF PROVIDIAN FINANCIAL
700 KING FARM BLVD
SUITE 507
ROCKVILLE MD 20850                          Plaintiff

SUMMONS

-against-

CHRISTOPHER MCCROBIE
16 SUMMIT ST
LANCASTER NY 14086

Defendant(s)

TO THE ABOVE NAMED DEFENDANT(S):

    YOU ARE HEREBY SUMMONED and required to appear in the City Court located at
50 DELAWARE AVE

BUFFALO          NY 142020000, in the City of BUFFALO        , County of
ERIE        , and State of New York, by serving an answer* to the annexed
complaint upon Plaintiff's attorney at the address stated below, or if there is no
attorney, upon the Plaintiff at address stated above, within the time provided by law
as noted below; upon your failure to so answer, judgment will be taken against you
for the relief demanded in the complaint, together with the costs this action.

    Venue is based on the residence of the parties.

Dated:  08/02/06

                    By:
                            Allen D. Friedman / Patricia A. Blair / Maria J. Reed
                            Christa L. Muratore / Sandra H. Chung
                            Wolpoff & Abramson, L.L.P.
                            Attorneys in the Practice of Debt Collection
                            Attorneys for Plaintiff
                            300 Canal View Blvd., 3rd Fl., Rochester, NY 14623
                            Telephone: 1-866-241-1458 Court Inq: 1-585-413-4020

NOTE:  The law provides that:

    1.  If this summons is served by its delivery to you personally within the County
of ERIE          , you must answer within 10 days after such service; or

    2.  If this summons is served by delivery to any person other than you personally,
or is served outside the County of ERIE          , or by publication, or by any
means other than personal delivery to you within the County of ERIE          , you
are allowed 30 days after service is complete within which to answer.

*You need not physically go to the court to serve an answer.

000056

263

BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK

---

CENTURION CAPITAL CORPORATION

ASSIGNEE OF PROVIDIAN FINANCIAL
700 KING FARM BLVD
SUITE 507
ROCKVILLE MD 20850                                         COMPLAINT
                          Plaintiff

-against-

CHRISTOPHER MCCROBIE
16 SUMMIT ST
LANCASTER NY  14086

                          Defendant(s)

---

The Plaintiff for a complaint against Defendant(s) alleges upon information and belief:
    1.    That at all times relevant to this action, the Plaintiff was and still is
A MARYLAND CORPORATION                           , having an office and place for the
regular transaction of business at the address set forth above.
    2.   Upon information and belief, at the time of the commencement of this action
the Defendant(s) resided at the address in the caption of this action in the County
of ERIE            and State of New York.

AS AND FOR A FIRST CAUSE OF ACTION:

    3.    That the Defendant(s) entered into a Credit Card Agreement, account number
4559909723108717        with
wherein credit was extended to Defendant(s) and Defendant(s) agreed to repay any
monies advanced.
    4.   During the past six years, pursuant to said agreement, Defendant(s) or
persons authorized by the Defendant(s) incurred indebtedness through the use of one
or more credit cards issued in the name of Defendant(s) under said agreement.
    5.   Plaintiff has purchased said account for value and is now the owner thereof.
    6.   That Defendant(s) has defaulted in Defendant's obligation under said
agreement and there is now justly due and owing to the Plaintiff from the Defendant(s)
as a result of said default the sum of $   780.12.

AS AND FOR A SECOND CAUSE OF ACTION:

    7.   That prior to the commencement of this action Plaintiff and/or its
predecessor on numerous occasions and on a monthly basis rendered statements of said
claim to the Defendant(s) which the Defendant(s) accepted and retained
without objection.
    WHEREFORE, Plaintiff demands judgment against the Defendant(s) for the sum of
$   780.12 with interest from JUDGMENT   together with the costs and disbursements
of this action.

Dated:  08/02/06

                          By:
                          Allen D. Friedman / Patricia A. Blair / Maria J. Reed
                          Christa L. Muratore / Sandra H. Chung
                          Wolpoff & Abramson, L.L.P.
                          Attorneys in the Practice of Debt Collection
                          Attorneys for Plaintiff
                          300 Canal View Blvd., 3rd Fl., Rochester, NY  14623
                          Telephone: 1-866-241-1468 Court Inc: 1 595 440  000057

VERIFICATION

STATE OF MARYLAND            )
COUNTY OF MONTGOMERY         )  SS.:

Beverly Berry, being duly sworn, deposes and says:

    I am the ASSISTANT VICE PRESIDENT of the plaintiff herein, CENTURION CAPITAL CORPORATION, I have read the foregoing complaint and know the contents thereof; the same is true to my knowledge, except as to the matters therein states to be alleged upon information and belief and as to those matters I believe it to be true. The books and records maintained by plaintiff are the source of deponent's information and belief.

_____

Sworn to before me this

13 day of _____Aug_____, 2006.

_____
Notary Public

**Peony Charles**
**Notary Public-Maryland**
**Prince Georges County**
**My Comm. Exp. Aug. 18, 2009**

0

ATTORNEY      WA                    157430917

**BUFFALO CITY COURT**                    RECEIVED            INDEX #  G07295/06
                                          BUFFALO CITY COURT
**ERIE COUNTY**                                               D/O/F   8/10/2006

                                          2006 DEC 27 PM 12: 17

CENTURION CAPITAL CORPORATION ASSIGNEE OF PROVISIAN FINANCIAL

                              *PLAINTIFF/PETITIONER*                    **AFFIDAVIT**
                                                                            **OF**
                                                                         **SERVICE**

**CHRISTOPHER MCCROBIE**

                              *DEFENDANT/RESPONDENT*

Erie County, New York State:                **ROXANNE EDMISTON**              being sworn.
  says: Deponent is not a party herein, is over the age of 18 years and resides in the State of New York.
on      **10/20/2006**       at      **11:40 AM**   at   **1201 HERTEL AVE., UPPER REAR, BUFFALO, NY 14216**
Deponent served the within      **SUMMONS AND COMPLAINT**

On   **CHRISTOPHER MCCROBIE**                              **DEFENDANT**
                                              (Herein after called the recipient) therein named.

## AFFIXING TO DOOR

By affixing a true copy of each to the door of said premesis which is defendants   actual place of residence
Deponent was unable with due diligence to find defendant or person of suitable age and discretion thereat having called there

**10/12/06 @ 7:08 PM        10/17/06 @ 7:49 AM        10/20/06 @ 11:40 AM**

## MAILING

Within 20 days of such delivery, or affixing, deponent  enclosed a copy of same in a postpaid envelope properly addressed to defendant at
defendant's last known residence at                                               On      **10/26/2006**
**1201 HERTEL AVE., UPPER REAR, BUFFALO, NY 14216**
and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.  The
envelope bore the legend "personal and confidential" and did not indicate on the outside, thereof by return address or otherwise that the
communication was from an attorney or concerned an action against the defendant.

*The defendant was served with a copy of the summons and complaint which had the index number and the date of filing endorsed thereon.*

**VERIFICATION THAT ADDRESS IS GOOD:**           **NAME ON MAILBOX**

Upon information and belief defendant is not in the military service of the United States or the State of New York.

Sworn to before me on      **Thursday, October 26, 2006**

              Jillina A. Kwiatkowski                    ROXANNE EDMISTON
            Notary Public - State of New York
               Qualified in Erie County               **AFF. #   75289**
              Reg. # 01KW6057316
            My Commission Expires 04/16/07

                                                                                    000059

BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK

Index # G07295/06

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDIAN FINANCIAL
700 KING FARM BLVD.
SUITE 503
ROCKVILLE, MD 20850

                                 Plaintiff,

                                                        AFFIDAVIT OF MAILING

        -against-

CHRISTOPHER MCCROBIE
1201 HERTEL AVE
UPPER REAR
BUFFALO, NY 14216

                                 Defendant(s).

STATE OF NEW YORK )
COUNTY OF MONROE )

Sonja Holmes, being duly sworn deposes and says:

I am over 18 years of age and am employed by the attorney for the Plaintiff herein.

On or about November 30, 2006, in accordance with the additional notice provisions of the CPLR, I enclosed a copy of the Summons & Complaint in a properly addressed stamped envelope directed to the Defendant at:

CHRISTOPHER MCCROBIE
1201 HERTEL AVE
UPPER REAR
BUFFALO, NY 14216

The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or that it concerned a debt.

More than twenty days have elapsed since the Summons & Complaint have been mailed and Plaintiff is in compliance with C.P.L.R. 3215(g)(3)(i).

Dated: February 28, 2007

                                                        _____
                                                             Sonja Holmes

Sworn to before me on
28th day of February, 2007

                                                        W&A# 157430917

# EXHIBIT "D"

000061

BUFFALO CITY COURT
COUNTY OF ERIE
STATE OF NEW YORK                                    Index no. G07295/06

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDIAN FINANCIAL
700 KING FARM BLVD.
SUITE 503
ROCKVILLE, MD 20850

                                        Plaintiff,

            -against-

CHRISTOPHER MCCROBIE
1201 HERTEL AVE
UPPER REAR
BUFFALO, NY 14216

                            Defendant(s).

---

### AFFIRMATION IN SUPPORT
### OF FILING DEFAULT JUDGMENT

Allen D. Friedman, Esq./Patricia A. Blair, Esq./Christa L. Muratore, Esq./Maria J. Reed, Esq./Fatimat O. Balogun, Esq., as attorney for Plaintiff, affirms as follows:

1.    I am the attorney for Plaintiff in this action and as such, I am familiar with the facts of this case. I make this affirmation in support of Plaintiff's application for a default judgment.

2.    This is an action to recover the balance due from Defendant to Plaintiff resulting from Defendant's use of a credit card.

3.    On August 10, 2006, my office commenced suit on behalf of Plaintiff against Defendant by filing a summons and complaint with the Buffalo City Court.

4.    That said summons and complaint listed Defendant's address as 16 SUMMIT ST, `, LANCASTER, NY 14086.

5.    That thereafter said pleading was sent to our process server to effectuate service upon Defendant.

6.    That while attempting to effectuate service, Plaintiff's process server discovered that Defendant did not reside at 16 SUMMIT ST, `, LANCASTER, NY 14086 and that according to current resident, Defendant is unknown.

7.    That deponent's office utilized available skip tracing tools including online resources and credit reports to ascertain a new home address for Defendant of 1201 HERTEL AVE, UPPER REAR, BUFFALO, NY 14216.

RECEIVED
BUFFALO CITY COURT
2012 MAR -8 PM 3:11

8.     That the process server proceeded to 1201 HERTEL AVE, UPPER REAR, BUFFALO, NY 14216 and made contact with an adult of suitable age and discretion thereat who confirmed that Defendant did reside at 1201 HERTEL AVE, UPPER REAR, BUFFALO, NY 14216.

9.     That said process server thereafter effectuated service upon Defendant by Substitute Service at 1201 HERTEL AVE, UPPER REAR, BUFFALO, NY 14216.

10.    That deponent's office was advised that in order to proceed with entry of a default judgment an affirmation confirming the address discrepancy and re-direction was required.

**Wherefore**, Plaintiff requests leave to proceed with Plaintiff's application for a default judgment.

Dated:   February 28, 2007

Allen D. Friedman, Esq.
Patricia A. Blair, Esq.
Christa L. Muratore, Esq.
Maria J. Reed, Esq.
Fatimat O. Balogun, Esq.
Wolpoff & Abramson, L.L.P.
Attorneys for Plaintiff
300 Canal View Blvd., Third Floor
Rochester, New York 14623
(585) 413-4020

*W&A File Number: 157430917*

RECEIVED
BUFFALO CITY COURT
2007 MAR -8 PM 3: 13

000063

# EXHIBIT "E"

**BUFFALO CITY COURT**
**COUNTY OF ERIE**
**STATE OF NEW YORK**                    **Index # G07295/06**

# COPY

| | |
|---|---|
| **CENTURION CAPITAL CORPORATION** | **CHRISTOPHER MCCROBIE** |
| **ASSIGNEE OF PROVIDIAN FINANCIAL** | **1201 HERTEL AVE** |
| **700 KING FARM BLVD.** | **UPPER REAR** |
| **SUITE 503** | **BUFFALO, NY 14216** |
| **ROCKVILLE, MD 20850** | |
| | V.          Defendant(s) |
| Plaintiff | |

## AFFIRMATION OF REGULARITY AND DEFAULT JUDGMENT

The undersigned, attorney-at-law of the State of New York and attorney of record for the Plaintiff herein affirms under penalties of perjury:

1.  The summons and verified complaint in this action was:
    ( X ) served by substitute service on the Defendant, CHRISTOPHER MCCROBIE, on October 20, 2006 with the affidavit of service filed with the clerk on October 27, 2006.

2.  The additional notice requirements as set forth in CPLR 3215(g) (3) have been complied with.

3.  The time of the Defendant(s) to appear or answer has expired and the Defendant(s) has not appeared or answered herein.

4.  The sums sought and the disbursements set forth below are true and accurate. The disbursements have been or will be made accurate. The disbursements have been or will necessarily be made or incurred herein and are reasonable in amount.

| | | |
|---|---|---|
| AMOUNT CLAIMED IN COMPLAINT $780.12 | | $780.12 |
| INTEREST at 0% from February 28, 2007 to February 28, 2007 | | $0.00 |
| SUBTOTAL | | $780.12 |
| COSTS BY STATUTE | $20.00 | |
| INDEX NUMBER FEE | $45.00 | |
| TRANSCRIPTS AND DOCKETING | $16.00 | |
| SERVICE OF SUMMONS & COMPLAINT | $35.00 | |
| POSTAGE | $0.00 | |
| SHERIFF'S FEES ON EXECUTION | $86.00 | |
| TOTAL COSTS | $202.00 | |
| TOTAL JUDGMENT AMOUNT | | $982.12 |

5.  Wherefore, it is required that judgment be entered accordingly.

Dated: February 28, 2007

_____
/S

Allen D. Friedman, Esq./Patricia A. Blair, Esq.
Christa L. Muratore, Esq./Maria J. Reed, Esq.
Fatimat O. Balogun, Esq.

Now, on motion of Wolpoff & Abramson, L.L.P. an attorney for Plaintiff, 300 Canal View Blvd., 3rd Floor, Rochester, New York, it is adjudged that Plaintiff, CENTURION CAPITAL CORPORATION ASSIGNEE OF PROVIDIAN FINANCIAL at 700 KING FARM BLVD, SUITE 503, ROCKVILLE, MD 20850 do recover of the Defendant(s) **CHRISTOPHER MCCROBIE**, herein residing at 1201 HERTEL AVE, UPPER REAR, BUFFALO, NY 14216, the sum of $780.12 with interest of $0.00, together with costs and disbursements of $202.00, amounting in all to the sum of **$982.12** and that the Plaintiff have execution therefore.

W&A# 157430917         MAR - 9 2007

_Sharon Thomas_

_____
Clerk

000065

# EXHIBIT "F"

§ 317. Defense by person to whom summons not personally delivered. A person served with a summons other than by personal delivery to him or to his agent for service designated under rule 318, within or without the state, who does not appear may be allowed to defend the action within one year after he obtains knowledge of entry of the judgment, but in no event more than five years after such entry, upon a finding of the court that he did not personally receive notice of the summons in time to defend and has a meritorious defense. If the defense is successful, the court may direct and enforce restitution in the same manner and subject to the same conditions as where a judgment is reversed or modified on appeal. This section does not apply to an action for divorce, annulment or partition.

# EXHIBIT "G"

000068

Box 460

THIS INDENTURE, made the 28 Day of June, Two Thousand Six

BETWEEN

Wells Fargo Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2004-FF5, by Saxon Mortgage Services, Inc. f/k/a Meritech Mortgage Services, Inc. 4708 Mercantile Drive North, Fort Worth, TX 76137-3605, as attorney in fact

party of the first part, and

Christopher McCrobie and Diane McCrobie, husband and wife
16 Summit Street, Lancaster, NY 14086

party of the second part,

WITNESSETH, that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL THAT TRACT OR PARCEL OF LAND, situate in the Village of Cheektowaga Town of Lancaster, County of Erie and State of New York, being part of Lot Number 7, Section 12, Township 11 and Range 6 of the Holland Land Company's Survey and according to map filed under Cover Number 1189 is known as Subdivision Lot Number 5 in Block Number 1.

AND ALSO, ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Lancaster, County of Erie and State of New York, bounded and described as follows:

Being part of Farm Lot 7, Section 12, Township 11, Range 6 under Map Cover No. 1189, Genesee Villa Subdivision, known as Lot 4 in Block 1, North Street, 101.9 feet north of Main Street, 73.26 feet by 140.58 feet.

BEING the same premises conveyed to grantor herein by QuitClaim Deed of Deutsche Bank Trust Company Americas, dated April 29, 2006 and recorded in the Erie County Clerk's Office simultaneously herewith.

This transfer does not constitute all or substantially all of the assets of the corporation.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

LAND - Som.
SP - 145380 - 46
D 113 - 2 - 0

000069

# EXHIBIT "H"

000070

## CIVIL COURT OF THE CITY OF NEW YORK

**CHIEF CLERK'S MEMORANDUM**                      Class:      CCM- 184
Subject: NYSDMV Report Used to Validate Address    Category:  GP-20
                                                   Eff. Date:  April 21, 2009

====================================================

### BACKGROUND

Recently we have received a number of calls from plaintiffs and process servers on how to proceed when a 208.6 (h) notice is returned to the court by the United States Post Office, as undeliverable. Our current practice is to reject the request for entry of a default judgment and advise the plaintiff's attorney to move by motion or file a notice of inquest so that the court can make a determination as to whether the defendant's address was sufficient. It has been brought to our attention that many envelopes returned as undeliverable are in fact addressed to the same address on record with the New York State Department of Motor Vehicles (NYSDMV). Vehicle and Traffic Law § 505 (5) requires that every Motor Vehicle licensee notify the Commissioner of Motor Vehicles of any change in residence within 10 days of the occurrence of this change. A party who fails to comply with this provision is estopped from challenging the propriety of service made to that address (*see, Sherrill v. Pettiford,* 172 A.D,2d 512, 513, 567, N.Y.S.2d 859; *Lavery v. Lopez,* 131 A.D.2d 820, 571 N.Y.S.2d 182). To allow for the processing of a default judgment after a 208.6 (h) notice is returned to the court as undeliverable we are instituting the following procedure.

### DIRECTIVE

The judgment clerk will accept as a valid address the address of the defendant(s) on a Certified Abstract of Driving Record issued from the New York State Department of Motor Vehicles when the 208.6 (h) notice has been returned by the Post Office as undeliverable. A Certified Abstract of Driving Record is accessible using a Dial-in Search Account, available via the NYSDMV website.

When the judgment clerk receives notice of the defendant's address on the Certified Abstract of Driving Record, and that address matches the defendant's address on the returned envelope, if visible, or on the summons and/or affidavit of service, the clerk will disregard the returned 208.6 (h) notice and process the request for default judgment as per CPLR § 3215.

| | |
|---|---|
| 4/21/09 | /s/ |
| Date | Jack Baer |
| | Chief Clerk |

000071

# EXHIBIT "I"

9/10/2015

Person Search Plus

24/7 Search and Technical Assistance 1-866-277-8407
HOME | PRINT | CONTACT US | LIVE CHAT | HELP | SIGN OUT



## Contact & Locate

People   Business   Phones   Decisioning

Person Search Plus    Contact Plus    Workplace Locator    More Searches ▼

**My Account**
Security Center
Preferences
Account Credentials
Report Manager
Person Alerts
Batch Output
**Address & Phone Comments**
Frequently Asked Questions

NON-FCRA Recent   FCRA Recent

Person Sea...
Person Sea...
Person Sea...
Person Sea...
Person Sea...
Person Sea...
Person Sea...
Person Sea...

All Recent Searches »
Use of Recent Searches is subject to
your Permissible Use selections.

---

## Person Search Plus Results – Contact & Locate

Records: 1 to 1 of 1

**Search Terms Used - SSN:** ████-9111;

★ RATE THIS PAGE  ✎ Edit Search  ▣ New Search  ▣ Print Results  ▣ Export to Excel

| Subject Results | Household Results | | | | |
| All | Full Name | SSN | Address | Phone | Next Steps |

1. CHRISTOPHER D MCCROBIE
   CHRISTOPHER E MCCROBIE
   CHRISTOPHER MCCROBIE
   CHRISTOPHER D MCCROBIE
   CHRIS MCCROBIE
   CD MCCROBIE
   C D MCCROBIE
   W MCCROBIE
   CHRISTOPHER MC
   CHRISTOPHER MC CROBIE
   DOB: ██ 1874
   Age: 41
   Gender - Male
   ▼View Sources (~5)
   🔔 Setup Alert

   SSN: ████-9111
   LexID: 1661321957
   Jul 2013 - Sep 2015

   3830 CYPRESS ST A
   METAIRIE LA 70001-4933
   Jul 2013 - Sep 2015

   504-273-8851 - CDT
   Aug 15 - Sep 15
   Current DA
   A LOT A BOUNCE
   (Current Listing Name)
   ✆ phone number is a mobile number.
   ✆ phone number and zip code combination is invalid.
   ✆ phone area code is changing.

   **Next Steps**
   Relatives
   Neighbors
   Associates
   Relatives, Neighbors & Associates
   People at Work Locator
   Expert Searches ▼

   We Also Found:  □ Phones Plus  □ Email Address

   Comprehensive Report
   Other Reports
   Finder Report
   Address Report
   Contact Card Report
   Learn how Contact & Locate Reports can assist you:See Examples

   6 MAPLE DR
   BOWMANSVILLE NY 14026-1030
   Sep 2001 - Sep 2015

   716-563-3148 - EDT
   Mar 12
   Possible Cell Phone
   C D MCCROBIE
   (Current Listing Name)

   716-563-6294 - EDT
   Nov 12 - Jul 15
   Possible Cell Phone
   CHRISTOPHER MCCROBIE
   (Current Listing Name)

   2201 SEVERN AVE APT F204
   METAIRIE LA 70001-7618
   Jan 2011 - Jul 2013

   1141 HERTEL AVE
   BUFFALO NY 14216-2701
   Dec 2007 - Jul 2010

   6 MAPLE AVE
   LANCASTER NY 14086-2209
   2008 - Aug 2009

   716-563-6294 - EDT
   Nov 12 - Jul 15
   Possible Cell Phone
   CHRISTOPHER MCCROBIE
   (Current Listing Name)

   716-563-3148 - EDT
   Mar 12
   Possible Cell Phone
   C D MCCROBIE
   (Current Listing Name)

   1201 HERTEL AVE APT
   BUFFALO NY 14216-2749
   Aug 2005 - Nov 2007

   6 N MAPLE DR
   BUFFALO NY 14221-7221
   Sep 2007

   716-563-6294 - EDT
   Nov 12 - Jul 15
   Possible Cell Phone
   CHRISTOPHER MCCROBIE
   (Current Listing Name)

9/10/2015                              Person Search Plus

716-563-3148 - EDT
Mar 12
🔵Possible Cell Phone
C D MCCROBIE
(Current Listing Name)

16 SUMMIT ST                          716-563-6294 - EDT
LANCASTER NY 14086-1251               Jun 10
Apr 2000 - Sep 2006                   🔵Possible Cell Phone
██████                                CHRISTOPHER MCCROBIE
                                      (Current Listing Name)

236 DEAN RD
DEPEW NY 14043-1310
Dec 1994 - Jan 2003
██████

189 LAVERACK AVE APT
DEPEW NY 14043-3426
Oct 1996 - Jan 2000
██████

PO BOX 1464
BUFFALO NY 14226-8464
Aug 1965 - Jan 2000
██████

189 LEDERACK AVE
DEPEW NY 14043
Nov 1999
██████

202 ARGUS DR
DEPEW NY 14043-1850
Nov 1999
██████

40 GLENWOOD CT APT B
BUFFALO NY 14226-5615
Jan 1997
██████

51 SEMINOLE PKWY
BUFFALO NY 14210-1812
Jan 1997
██████

                                                              Records: 1 to 1 of 1

⭐ RATE THIS PAGE   📝 Edit Search   📄 New Search   📊 Print Results   📊 Export to Excel

Your DPPA Permissible Use: Use in the Normal Course of Business
Your GLBA Permissible Use: Persons Holding a Legal or Beneficial Interest Relating to the Consumer
Your DMF Permissible Use: No Permissible Purpose

Copyright © 2015 LexisNexis. All rights Reserved.   Terms & Conditions | Privacy & Security

# EXHIBIT "J"

000075

§ 211. Actions to be commenced within twenty years. (a) On a bond. An action to recover principal or interest upon a written instrument evidencing an indebtedness of the state of New York or of any person, association or public or private corporation, originally sold by the issuer after publication of an advertisement for bids for the issue in a newspaper of general circulation and secured only by a pledge of the faith and credit of the issuer, regardless of whether a sinking fund is or may be established for its redemption, must be commenced within twenty years after the cause of action accrues. This subdivision does not apply to actions upon written instruments evidencing an indebtedness of any corporation, association or person under the jurisdiction of the public service commission, the commissioner of transportation, the interstate commerce commission, the federal communications commission, the civil aeronautics board, the federal power commission, or any other regulatory commission or board of a state or of the federal government. This subdivision applies to all causes of action, including those barred on April eighteenth, nineteen hundred fifty, by the provisions of the civil practice act then effective.

(b) On a money judgment. A money judgment is presumed to be paid and satisfied after the expiration of twenty years from the time when the party recovering it was first entitled to enforce it. This presumption is conclusive, except as against a person who within the twenty years acknowledges an indebtedness, or makes a payment, of all or part of the amount recovered by the judgment, or his heir or personal representative, or a person whom he otherwise represents. Such an acknowledgment must be in writing and signed by the person to be charged. Property acquired by an enforcement order or by levy upon an execution is a payment, unless the person to be charged shows that it did not include property claimed by him. If such an acknowledgment or payment is made, the judgment is conclusively presumed to be paid and satisfied as against any person after the expiration of twenty years after the last acknowledgment or payment made by him. The presumption created by this subdivision may be availed of under an allegation that the action was not commenced within the time limited.

(c) By state for real property. The state will not sue a person for or with respect to real property, or the rents or profits thereof, by reason of the right or title of the state to the same, unless the cause of action accrued, or the state, or those from whom it claims, have received the rents and profits of the real property or of some part thereof, within twenty years before the commencement of the action.

(d) By grantee of state for real property. An action shall not be commenced for or with respect to real property by a person claiming by virtue of letters patent or a grant from the state, unless it might have been maintained by the state, as prescribed in this section, if the patent or grant had not been issued or made.

(e) For support, alimony or maintenance. An action or proceeding to enforce any temporary order, permanent order or judgment of any court of competent jurisdiction which awards support, alimony or maintenance, regardless of whether or not arrears have been reduced to a money judgment, must be commenced within twenty years from the date of a default in payment. This section shall only apply to orders which have been entered subsequent to the date upon which this section shall become effective.

000076

# EXHIBIT "K"

AO 440 (Rev. 02/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Western District of New York

| | |
|---|---|
| CHRISTOPHER MCCROBIE | ) |
| _Plaintiff_ | ) |
| | ) |
| v. | ) |
| PALISADES ACQUSITION XVI, LLC AND | ) |
| HOUSLANGER & ASSOCIATES, PLLC | ) |
| _Defendant_ | ) |

Civil Action No. 1:15-cv-18C

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_

HOUSLANGER & ASSOCIATES, PLLC
372 NEW YORK AVENUE
HUNTINGTON, NEW YORK 11743

SERVED BY
SERVICO
SINCE 1924
WWW.SERVICO.COM
SPECIALISTS IN ALL LEGAL PAPERS

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: The Law Offices of Kenneth Hiller, PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, New York, 14226

(716)564-3288

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date:    1/12/15

_Signature of Clerk or Deputy Clerk_

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER MCCROBIE

                                         Plaintiff,

         v.                                                 Civil Action No. _____

PALISADES ACQUISITION XVI, LLC AND
HOUSLANGER & ASSOCIATES, PLLC,

                                         Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1. This is an action for actual and statutory damages brought in response to Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA") which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

### II. JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

3. Venue is proper in this district under 28 U.S.C. §1391(b) in that the Defendant transacts business here and the conduct complained of occurred here.

### III. PARTIES

4. Plaintiff, Christopher McCrobie, is a natural person residing in the County of Erie and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5. Defendant, Palisades Acquisition XVI, LLC, ("Palisades") is a foreign limited liability company organized and existing under the laws of the State of New Jersey and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

6. Defendant, Palisades Acquisition XVI, LLC regularly attempts to collect debts alleged to be due another.

1

000079

7. Defendant, Houslanger & Associates, PLLC is a domestic professional corporation organized and existing under the laws of the State of New York and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

8. Defendant, Houslanger & Associates, PLLC regularly attempts to collect debts alleged to be due another.

9. The acts of the Defendants alleged hereinafter were performed by its employees acting within the scope of their actual or apparent authority.

10. All references to "Defendant" herein shall mean the Defendant or an employee of the Defendant.

## IV. FACTUAL ALLEGATIONS

11. That Plaintiff allegedly incurred a credit card debt to Providian Financial. This debt will be referred to as "the subject debt."

12. That the subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

13. That Plaintiff thereafter allegedly defaulted on the subject debt.

14. That sometime after the alleged default, Providian Financial assigned the subject debt to Centurion Capital Corporation

15. That Centurion Capital Corporation filed an action against the Plaintiff in Buffalo City Court in or about August 6, 2006.

16. That Centurion Capital Corporation obtained a default judgment against the Plaintiff in said court on or about March, 2007.

17. That on or before October, 2014, Palisades retained the services of Houslanger & Associates to proceed with post judgment enforcement against the Plaintiff on the Centurion Capital Corporation judgment

18. That on or about October 7, 2014, Houslanger & Associates forwarded an income execution on behalf of Palisades to Plaintiff's place of employment pursuant to the judgment obtained in the City Court for the City of Buffalo in favor of Centurion Capital Corporation.

19. That prior to the Plaintiff's employer receiving the aforementioned income execution, no assignment was filed in the City Court of Buffalo by Centurion Capital Corporation as judgment creditor to Defendant Palisades.

000080

20. That prior to the Plaintiff's employer receiving the aforementioned income execution, Plaintiff was never provided of any notice of an assignment of the Centurion Capital Corporation judgment to Defendant Palisades.

21. That Defendant Palisades had no legal right to restrain and garnish Plaintiff's wages.

22. At all times relevant herein, Houslanger & Associates was Palisades's agent-in-fact.

23. That as a result of Defendants' acts Plaintiff became nervous, upset, anxious, and suffered from emotional distress.

## V. CAUSE OF ACTION

24. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 23 above.

25. The conduct of Defendants as described in this complaint violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

    A. Defendants violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(2), 15 U.S.C. §1692e(5), 15 U.S.C. §1692e(9), U.S.C. §1692e(10), 15 U.S.C. §1692f, 15 U.S.C. §1692f(1), 15 U.S.C. §1692f(5) and 15 U.S.C. §1692f(6) by sending an income execution to Plaintiff's place of employment when they were not the proper judgment creditor.

    B. Defendants violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(5), 15 U.S.C. §1692e(10), 15 U.S.C. §1692f (1), 15 U.S.C. §1692f(1), 15 U.S.C. §1692f (5) and 15 U.S.C. §1692f(6) by improperly trying to garnish Plaintiff's wages.

26. That as a result of the Defendants' FDCPA violations as alleged herein, Plaintiff became nervous, upset, anxious and suffered from emotional distress.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendants for:

    (a) Actual damages;

    (b) Statutory damages for pursuant to 15 U.S.C. § 1692k.

    (c) Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    (d) For such other and further relief as may be just and proper.

3

000081

## VI. JURY DEMAND

Please take notice that Plaintiff demands trial by jury in this action.

Dated: January 6, 2014

/s/ Seth J. Andrews
Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: sandrews@kennethhiller.com

4

000082

# EXHIBIT "L"

000083

AO 458 (Rev. 06/09)  Appearance of Counsel

# UNITED STATES DISTRICT COURT

for the

Western District of New York

| | | |
|---|---|---|
| CHRISTOPHER MCCROBIE | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No.   1:15-cv-00018-JTC |
| PALISADES ACQUISITION XVI, LLC, ET. AL. | ) | |
| *Defendant* | ) | |

## APPEARANCE OF COUNSEL

To:      The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

PALISADES ACQUISITION XVI, LLC and HOUSLANGER & ASSOCIATES, PLLC

Date:     02/20/2015

*Attorney's signature*

TODD E. HOUSLANGER, ESQ. (TH0066)
*Printed name and bar number*

HOUSLANGER & ASSOCIATES, PLLC
372 NEW YORK AVENUE
HUNTINGTON, NY 11743

*Address*

TEH@TODDLAW.COM
*E-mail address*

(631) 427-1140
*Telephone number*

(631) 427-1143
*FAX number*

# EXHIBIT "M"

000085

AO 440 (Rev. 02/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of New York

CHRISTOPHER MCCROBIE

_Plaintiff_

v.

Palisades Acquisition XVI, LLC & Houslanger and
Associates, PLLC and Todd Houslanger

_Defendant_

)
)
)
)
)
)
)
)

Civil Action No.   1:15-CV-00018

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_   TODD HOUSLANGER
372 NEW YORK AVENUE
HUNTINGTON, NEW YORK 11743

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   The Law Offices of Kenneth Hiller, PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, New York, 14226
(716)564-3288

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

_Michael J. Roemer_

Date:   5/21/2015

_Signature of Clerk or Deputy Clerk_

000086

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER MCCROBIE

                                        Plaintiff,

        v.                                              Civil Action No. _15-CV-18_

PALISADES ACQUISITION XVI, LLC AND
HOUSLANGER & ASSOCIATES, PLLC AND
TODD HOUSLANGER

                                        Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

In 2007, a company called Centurion Capital Corporation obtained a default judgment

against Christopher McCrobie. Mr. McCrobie had no knowledge of the lawsuit, or the default

judgment, as service was achieved by posting to an old address. Seven and a half years later,

Todd Houslanger ("Mr. Houslanger"), an attorney acting on behalf of Palisades Acquisition XV,

LLC ("Palisades"), forwarded an income execution to Mr. McCrobie's employer.

Beginning in the early to mid-2000's debt buyers and creditors began flooding state

courts with lawsuits that the courts were ill equipped to efficiently supervise.[1] For instance,

according to the Boston Globe more than 60 percent of the 120,000 small claims cases filed in

Massachusetts in 2005 were filed by debt collectors.[2] As of June 2008, there were 119,000 civil

---

[1] FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE – A WORKSHOP REPORT
(2009), p. 55, available at https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf (last visited April 22, 2015).

[2] *Id.* (citing Beth Healy, A Debtor's Hell: Part 2, A Court System Compromised, BOSTON GLOBE, July 31, 2006, available at
http://www.boston.com/news/special/spotlight_debt/part2/page1.html.).

1

lawsuits against alleged debtors pending in Chicago's Cook County Circuit Court.[3]  12,000 such suits were assigned to a single judge in that circuit—roughly twice the number of debt collection lawsuits on that judge's docket one year previously.  Judges and consumer reasonably expressed concern to the FTC that the sheer number of collection lawsuits posed a threat to the judicial system's ability to handle not only the collection cases themselves, but to attentively handle other matters.

A staggering number of the flood of collection suits ended in default.  In 2007, 60,699 out of the 130,000 collection lawsuits filed in Cook County, Illinois ended in default judgment. [4] A 2013 study by the New Economy Project concluded that 62 percent of lawsuits initiated by debt buyers in the state of New York end in default judgments being entered against consumers.[5] That same study found that in Buffalo City Court, 54 percent of all collection lawsuits filed in 2011 resulted in default judgments being entered, and answers were filed in only 568 of 11,747 cases.[6]

The unusually high default rates should not be interpreted to mean that the flood of lawsuits which debt buyers have initiated in state court have merit.[7]  Instead, a large driver for

---

[3] *Id.* at 55-56 (citing . Ameet Sachdev, Debt Collectors Pushing To Get Their Day In Court, CHICAGO TRIBUNE, June 8, 2008, available
at http://www.chicagotribune.com/news/nationworld/chi-sun-debtchasers-jun08,0,2426495,print.story.)

[4] *See supra,* n. 3.

[5] The New Economy Project, *The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality,* NEWECONOMYNYC.ORG, p.6, http://www.neweconomynyc.org/wp-content/uploads/2014/08/DebtCollectionRacketUpdated.pdf (last visited April 22, 2015).
[6] *Id.* It was noted that collection industry representatives disputed this claim. *Id.*

[7] Speaking in the New York Times, Noach Dear, a civil court judge in Brooklyn, estimated that "roughly 90 percent of the credit card lawsuits are flawed" because the Plaintiff can't prove "the person owes the debt." Silver-Greenberg, Jessica, Problems Riddle Moves to Collect Credit Card Debt, NEW YORK TIMES, August 12, 2012, available http://dealbook.nytimes.com/2012/08/12/problems-riddle-moves-to-collect-credit-card-debt/?ref=business&_r=0/. Similarly, the New Economy Project noted that in 9 out of 10 cases, affidavits from debt buyers were made by persons having no connection to the original creditor. *See supra,* n. 6 at p. 4.

000088

the unusual default rate in state court collection actions is the fact that consumers are often not served properly. In 2009 the FTC noted that consumer groups reported that consumers "often are not properly served with notice of the debt collection lawsuit."[8] A 2010 follow up to that report noted that, "[m]any consumer advocate and judges who adjudicate debt collection cases stated that inadequate service or improper service occurs frequently."[9]

In any case, a staggering number of default judgments have been issued against New York residents in recent years as a result of suits brought by debt buyers and debt collectors. For a variety of reasons, some of these judgments are never enforced by the judgment creditor.

Palisades buys the rights to judgments, sometimes times years later (and upon information and belief, for pennies on the dollar). Mr. Houslanger has carved out a niche as an attorney who will initiate post judgment remedies on behalf of purported assignees of the original judgment creditor. At Palisades' behest, and at the behest of other similar companies, Mr. Houslanger has initiated post judgment remedies against numerous New York State residents within the past three years. As laid out above, many (if not most), of these people had no knowledge that they have ever been sued, let alone that a judgment has been entered against them.

Mr. Houslanger enforces post judgment remedies on behalf of Palisades (and other entities purporting to be the assignees of judgment creditors) without possessing documentation establishing that Palisades has any right to enforce the judgement he is executing on. Based on Plaintiff's investigation, outlined in more detail in the body of the complaint, it appears as though Mr. Houslanger is initiating post-judgment remedies on behalf of creditors all over the

---

[8] *See* supra n. 3 (citing comments furnished to the Federal Trade Commission by consumer advocates).

[9] Federal Trade Commission, Repairing A Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration,

3

000089

state of New York without proper documentation, and without filing the documentation he has with the court clerk prior to initiating remedies. Mr. McCrobie is just the latest victim of Defendants' unlawful scheme.

Defendants' actions violate the Fair Debt Collection Practices Act in that they are "debt collectors" engaged in collection actions which they have no legal right to pursue. Neither Palisades, nor its attorney and agent Mr. Houslanger and his law firm Houslanger & Associates PLLC, have any right to enforce the default judgment obtained by Centurion Capital Corporation against Mr. McCrobie. More broadly however, Defendants are engaged in an unfair business practice prescribed by New York General Business Law §349. Specifically, Defendants' are initiating post judgment remedies against consumers all over the state of New York without any right to do so.

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

3. Venue is proper in this district under 28 U.S.C. §1391(b) in that Defendants transacts business within the Western District of New York and the conduct complained of occurred here.

## PARTIES

4. Plaintiff, Christopher McCrobie, is a natural person residing in the County of Erie and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

4

5. Defendant, Palisades Acquisition XVI, LLC, (alternatively referred to as "Palisades") is a foreign limited liability company organized and existing under the laws of the State of New Jersey and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

6. Defendant, Palisades Acquisition XVI, LLC regularly attempts to collect debts alleged to be due another.

7. Defendant, Houslanger & Associates, PLLC is a domestic professional corporation organized and existing under the laws of the State of New York and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

8. Defendant, Houslanger & Associates, PLLC regularly attempts to collect debts alleged to be due another.

9. Defendant Todd Houslanger is an attorney who is employed by Houslanger & Associates, PLLC. On information and belief he is also the owner of Houslanger & Associates PLLC

10. The acts of the Defendants alleged hereinafter were performed by its employees acting within the scope of their actual or apparent authority.

11. All references to "Defendant" herein shall mean the Defendant or an employee of the Defendant(s).

## FACTUAL ALLEGATIONS

12. Plaintiff allegedly incurred a credit card debt to Providian Financial. This debt will be referred to as "the subject debt."

13. The subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

14. Plaintiff thereafter allegedly defaulted on the subject debt.

5

15. Sometime after the alleged default, Providian Financial allegedly assigned the subject debt to Centurion Capital Corporation

16. Centurion Capital Corporation filed an action against the Plaintiff in Buffalo City Court in or about August 6, 2006.

17. The action referenced in paragraph 15 was never personally served upon Plaintiff. Instead, it was served by substitute service (posting and mailing) at an old address of Plaintiff's.

18. Centurion Capital Corporation obtained a default judgment against the Plaintiff in said court on or about March 8, 2007.

19. Plaintiff had no knowledge of the default judgment. The default judgment was never reported against his credit.

20. On or before October, 2014, Palisades retained the services of Houslanger & Associates, PLLC to proceed with post judgment enforcement against the Plaintiff on the Centurion Capital Corporation judgment

21. On or about October 7, 2014, Houslanger & Associates, PLLC forwarded an income execution on behalf of Palisades to Plaintiff's place of employment pursuant to the judgment obtained in the City Court for the City of Buffalo in favor of Centurion Capital Corporation.

22. Prior to the Plaintiff's employer receiving the aforementioned income execution, no assignment was filed in the City Court of Buffalo by Centurion Capital Corporation as judgment creditor to Defendant Palisades.

6

23. Prior to the Plaintiff's employer receiving the aforementioned income execution, Plaintiff was never provided of any notice of an assignment of the Centurion Capital Corporation judgment to Defendant Palisades.

24. On March 23, 2015 Plaintiff, by and through its attorney, contacted Houslanger & Associates, PLLC, by and through Todd Houslanger. Plaintiff requested that Mr. Houslanger provide a copy of the chain of title proving that Palisades had a right to enforce the default judgment obtained against Plaintiff by Centurion. (*See* Exhibit A). Houslanger & Associates, by and through Todd Houslanger, provided the following documents in response to that request (*See* Exhibit B):

   a. A purported Bill of Sale (signed in duplicates) between Great Seneca Financial Corporation and Palisades Acquisition XV, LLC.

   b. A purported Bill of Sale between Palisades Acquisition XV, LLC and Palisades Acquisition XVI, LLC.

25. None of the documents provided to Plaintiff make any reference to the default judgment obtained against Plaintiff (*See* Exhibit B).

26. None of the documents provided to Plaintiff establish that the default judgment obtained against Plaintiff was ever assigned, much less that the default judgment was ultimately assigned to Palisades XVI, LLC (*See* Exhibit B).

27. On April 22, 2015 Plaintiff contacted Houslanger & Associates by and through Todd Houslanger; and informed it that none of the documents purportedly showing chain of title mention Centurion Capital Corp, or identify the default judgment taken against Plaintiff by Centurion Capital Corp. (*See* Exhibit A).

7

28. On May 7, 2015 Todd Houslanger responded via email. He reiterated his belief that the documents previously provided on March 23, 2015 was "the assignment." He added that this assignment was for a "pool of matters" in which Plaintiff was apparently included. He stated "[t]his is how they did things at the time of the assignment." (*See* Exhibit A).

29. As a result of the foregoing, it is clear that Defendant Palisades had no legal right to restrain and garnish Plaintiff's wages. There is simply no proof that Palisades ever acquired the judgment which Centurion obtained against Plaintiff in March of 2007.

30. At all times relevant herein, Todd Houslanger and Houslanger & Associates, PLLC were Palisades' agent-in-fact.

31. As a result of Defendants' acts Plaintiff became nervous, upset, anxious, and suffered from emotional distress.

32. Defendants Todd Houslanger, Houslanger & Associates, PLLC, and Palisades are routinely enforcing, or attempting to enforce post judgment remedies regarding judgements entered many years ago, and without documentation sufficient to prove that the Defendants have any right to enforce said judgments.

    a.    Defendants Todd Houslanger, Houslanger & Houslanger, and Palisades XVI, LLC have an established practice of enforcing post judgment remedies many years after the original judgment was taken. *See Okyere v. Palisades Collection*, LLC, 961 F.Supp.2d 508, 510 (S.D.N.Y. 2013) (Noting that a default judgment was taken against the Plaintiff in 2004, and that Palisades, by and through Todd Houslanger, enforced post judgment remedies "[n]early seven years later."); *Musah v. Houslanger & Associates*, PLLC, 962 F. Supp.

8

2d 636, 637 (S.D.N.Y. 2013) (pursuing post judgment remedies in 2011 for a

judgment from 1997).

b.   In *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 966 N.Y.S.2d

345 (Civ. Ct. 2012), Palisades XVI, LLC (represented by Todd Houslanger of

Houslanger & Associates) was noted to be filing assignments of "judgements"

with "so many defects" and in such "large number[s]" that the court "had to

intervene" to determine if "due process rights had been protected." *Id.* at *4.

Particularly troubling to the court were "fundamental" discrepancies between

the "name of the plaintiff and designated counsel in the court file and those on

the papers being submitted by [Plaintiffs, including Palisades XVI, LLC and,

interestingly, Centurion]." *Id.* While the court ultimately lifted the stay it had

previously issued regarding the enforcement of post judgment remedies by

Palisades, it noted that any defendant who seeks to vacate a judgment

obtained by Palisades or Todd Houslanger, would be entitled to raise the

issues addressed in its opinion. *Id.* at *8.

c.   In *Colonial Credit Corp. v. Beyers*, 46 Misc. 3d 1221(A) (N.Y. Civ. Ct. 2015),

Colonial Credit Corp, an assignee of Bally's Fitness Center, took a default

judgment against the defendant in 2005.  Roughly seven years later,

"Palisades Collection LLC as successor to Great Seneca Financial Corp" filed

a notice to change attorneys from Wolpoff & Abramson, LLP to "Houslanger

& Associates, PLLC" in June of 2012. *Id.* at 2-3.  On December 18, 2012 the

court ordered Defendants, including Palisades Collection LLC and

Houslanger & Associates, PLLC to provide proof of chain of title, as well as

9

notice being given to the Defendant. *Id.* at 3. Defendants apparently did not respond to this request. *Id.* Further review of the file by the court revealed that the judgment had already been satisfied in July of 2007. *Id.* The court then ordered Defendants to appear at a Rule 56 conference to "explain why they should not either be held in contempt or assessed costs for filing consents to change attorneys more than five years…after this matter was satisfied." *Id.* at 4. Neither of the Defendants appeared, and simply ignored the court order. *Id.* The court subsequently imposed sanctions against both Palisades, and Houslanger & Associates. *Id.* at 4-5.

d. In sum, these cases show that Defendants have routinely engaged in an attempt to collect debts (often including an attempt to enforce post judgment remedies) without documentation sufficient to prove they have any right to collect on the subject debts.

33. Defendant Todd Houslanger's May 7, 2015 email adds further support to the allegation that all named Defendants routinely attempt to enforce judgments many years after the fact, and without documents sufficient proving chain of title from the judgment creditor to Palisades Acquisition XVI, LLC. When confronted with the absence of chain of title any from Centurion to Palisades, Mr. Houslanger simply responded "[t]his is how they did things at the time of the assignment." (*See* Exhibit A). Mr. Houslanger's response is an admission that he is aware that Palisades Acquisition XVI, LLC does not have standing to pursue any post judgment remedies as they cannot produce a proper chain of title for Mr. McCrobie's judgment.

10

34. Despite such awareness and lack of documentary evidence entitling Defendants to proceed with post judgement collections and utilizing the powers of the Court for post judgment remedies, Mr. Houslanger and Palisades are currently enforcing these judgments anyways.

35. Plaintiff's attorneys previously brought suit against Houslanger & Associates and Todd Houslanger for attempting to enforce post judgment remedies without any legal right to do so in the matter of *Argenteri v. Credigy Receivables Inc. et al*, Civil Action No. 1:14-cv-00425.

36. In that matter, Plaintiff's June 3, 2014 complaint noted that Mr. Houslanger attempted to enforce post judgment remedies on behalf of Credigy, regarding a judgment which was taken by First Select Corporation. (*See* Exhibit C). Mr. Houslanger was subsequently asked by Plaintiff's attorneys to produce documents establishing a chain of title between the judgment creditor and Credigy Receivable. In that case, yet again, there were numerous deficiencies with the documents in Mr. Houslanger's possession (*See* Exhibit D):

    a.    Mr. Houslanger provided counsel for Plaintiff with a purported assignment, dated on July 11, 2014. Because Plaintiff filed his complaint alleging that Mr. Houslanger took unlawful postjudgment remedies on June 3, 2014 (Exhibit E), there was absolutely no assignment on file at the time Mr. Houslanger initiated post judgment remedies.

        The purported assignment is signed by only one individual, a Vice President at Credigy who purported to be both a representative of Credigy and the "attorney in fact" for First Select Corporation.

11

000097

b.  The assignment Mr. Houslanger provided to Plaintiff, represented that there was $0.00 due on the Judgment, including interest. Thus, by the assignment's own terms, the judgment had been satisfied as of July 11, 2014.

c.  Accompanying the assignment are a "bill of sale" and a "purchase agreement"—neither of which mention the named Plaintiff in that case. These agreements are from 2002—some twelve years prior to the assignment provided to counsel for Plaintiff. These agreements are also not notarized as is required by Delaware Law.

d.  In sum, in *Argenteri* Mr. Houslanger failed to provide any documents demonstrating a valid assignment from First Select Corporation to Credigy, and the questionable post-hoc assignment which was self-executed by Credigy (allegedly on behalf of First Select Corporation) admitted that the judgment had been satisfied.

37. Relying on the facts alleged in Plaintiff's complaint, the facts alleged in *Argenteri,* as well as years of knowledge on the part of Plaintiff's attorneys as to the inner workings of the practices of third party debt buyers, Plaintiff alleges that the named Defendants have an established business practice of attempting to enforce post judgment remedies without documentation to prove that they have any legal right to do so.

## COUNT I: A FAIR DEBT COLLECTION PRACTICES ACT CLAIM AGAINST ALL NAMED DEFENDANTS

38. Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 37 above.

000098

39. The conduct of Defendants as described in this complaint violated the Fair Debt Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

    A.  Defendants violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(2), 15 U.S.C. §1692e(5), 15 U.S.C. §1692e(9), U.S.C. §1692e(10), 15 U.S.C. §1692f, 15 U.S.C. §1692f(1), 15 U.S.C. §1692f(5) and 15 U.S.C. §1692f(6) by sending an income execution to Plaintiff's place of employment when they were not the proper judgment creditor.

    B.  Defendants violated 15 U.S.C. §1692e, 15 U.S.C. §1692e(5), 15 U.S.C. §1692e(10), 15 U.S.C. §1692f (1), 15 U.S.C. §1692f(1), 15 U.S.C. §1692f (5) and 15 U.S.C. §1692f(6) by improperly trying to garnish Plaintiff's wages.

    C.  Defendants violated 15 U.S.C. §1692e, §1692e(2), §1692e(5), §1692e(10) and 15 U.S.C. §1692f(1) by representing that Plaintiff owed Palisades Acquisitions XVI, LLC an obligation despite actual or constructive knowledge that this statement was not true, and without any meaningful investigation by Defendants Todd Houslanger and Defendant Houslanger & Associates as to whether Palisades Acquisitions XVI, LLC actually had any right to enforce a judgment against Plaintiff.

40. That as a result of the Defendants' FDCPA violations as alleged herein, Plaintiff became nervous, upset, anxious and suffered from emotional distress.

## COUNT II: A NEW YORK GENERAL BUSINESS LAW §349 CLAIM AGAINST ALL NAMED DEFENDANTS

41. Plaintiff realleges and reincorporates paragraphs 1-40 of its complaint, as if fully laid out herein.

13

42. Defendants' actions as alleged in paragraphs 1-40 of this complaint demonstrate broad, consumer oriented conduct because the Defendants have, on more than one occasion, enforced post judgment remedies against consumers without proper documentation. In fact, as alleged in paragraph 33, Defendants apparently know that they lack the proper documentation, but enforce the judgments anyways.

43. Defendants' business practice of enforcing judgments despite the lack of any documentation proving its ability to enforce said judgments is deceptive and fraudulent.

44. Defendants' fraudulent conduct has caused economic and emotional damages to Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendants for:

(a) Actual damages;

(b) Statutory damages for pursuant to 15 U.S.C. § 1692k.

(c) Costs, disbursements and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

(d) Actual and punitive damages pursuant to N.Y. Gen. Bus. §349.

(e) For such other and further relief as may be just and proper.

## VI. JURY DEMAND

Please take notice that Plaintiff demands trial by jury in this action.

Dated: May 12, 2015

/s/ Timothy Hiller, Esq.
Timothy Hiller, Esq.
Seth Andrews, Esq.
Kenneth Hiller, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Plaintiff*

14

6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email:    thiller@kennethhiller.com

15

# EXHIBIT "N"

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHRISTOPHER MCCROBIE,

                                        Plaintiff,

           -against-

PALISADES ACQUISITION XVI, LLC
AND HOUSLANGER & ASSOCIATES, PLLC
AND TODD HOUSLANGER

                                        Defendants.

**NOTICE OF MOTION**

Civil Action No. 15-cv-00018-JTC

**PLEASE TAKE NOTICE** that upon the accompanying Declaration of Scott E. Wortman, Esq., and annexed Exhibits thereto, supporting Memorandum of Law, and upon the pleadings filed herein, the undersigned attorneys for defendants Palisades Acquisition XVI, LLC ("Palisades"), Houslanger & Associates, PLLC ("Houslanger & Associates") and Todd Houslanger (collectively, "defendants"), shall move, on a date to be set by the Court or as soon thereafter as counsel may be heard, before the Hon. John T. Curtin U.S.D.J. in the United States District Court for the Western District of New York, Niagara Square, Buffalo, New York 14202 for an Order pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure dismissing this action with prejudice, and for other such relief that the Court may deem necessary and proper.

     **PLEASE TAKE FURTHER NOTICE** that in support of the within motion, Defendants shall rely upon the Declaration of Scott E. Wortman, Esq., and Exhibits annexed thereto, Memorandum of Law, together with all pleadings and proceedings to date filed herein, and together with all pleadings and proceedings filed in related matters of public record.

     **PLEASE TAKE FURTHER NOTICE** that, pursuant to L.R.Civ.P. 7(b), if the court does not set a deadline for plaintiff's opposition and defendants' reply by Order, the following

000103

schedule shall apply: Plaintiff shall have fourteen (14) days after service of the motion to file and

serve responding papers, and defendants shall have seven (7) days after service of the responding

papers to file and serve reply papers.

Dated: New York, NY
      July 28, 2015

                                Respectfully submitted,

                                /S/ Scott E. Wortman
                                Warshaw Burstein, LLP
                                By: Scott E. Wortman, Esq.
                                555 Fifth Avenue
                                New York, NY 10017
                                (212) 984-7723
                                swortman@wbcsk.com

                            **ATTORNEYS FOR DEFENDANTS**

**ON NOTICE TO:**

Seth Andrews
Law Offices of Kenneth Hiller, PPLC
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226
Email: sandrews@kennethhiller.com

Timothy Hiller
Law Offices of Kenneth Hiller
6000 N. Bailey Avenue, Suite 1A
Amherst, NY 14226
Email: thiller@kennethhiller.com

000104

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER MCCROBIE,<br><br>                                    Plaintiff,<br><br>         -against-<br><br>PALISADES ACQUISITION XVI, LLC<br>AND HOUSLANGER & ASSOCIATES, PLLC<br>AND TODD HOUSLANGER<br><br>                                    Defendants. | Civil Action No. 15-cv-00018-JTC |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Warshaw Burstein, LLP
Scott E. Wortman, Esq.
555 Fifth Avenue
New York, NY 10017
Direct Dial: (212) 984-7723
E-mail: swortman@wbcsk.com

Attorneys for Defendants

# TABLE OF CONTENTS

**Section**

Preliminary Statement ................................................................................................................... 1

Statement of Facts .......................................................................................................................... 2
        The Underlying State Court Lawsuit ................................................................................ 3

Standard of Review ........................................................................................................................ 4
        The FDCPA ........................................................................................................................ 5

**Point I**: Plaintiff's Claims are Time Barred by the Applicable Statute of Limitations ................... 6

**Point II:** NY CPLR 5019(C) does not Require an Assignments to be Recorded in Order for an Assignment to be Deemed Valid ................................................................................................. 9

**Point III:** Plaintiff's Implication that Defendants Lack Standing does not Rise to the Level of a Material Statement Under the FDCPA ...................................................................................... 13

**Point IV:** The Rooker-Feldman Doctrine Bars Plaintiff's Collateral Attack on the State Court Judgment ................................................................................................................................... 14

**Point V:** The Doctrine of Abstention Precludes Plaintiff from Re-Litigating Issues in the Instant Court that could have been Raised in the Intertwined State Court Matter ........................................ 16

**Point VI:** All Allegations Against Todd Houslanger in his Individual Capacity Must be Dismissed ................................................................................................................................................. 17

**Point VII:** Mere Recitations of the Elements of Various FDCPA Claims are Insufficient to Withstand a Motion for Failure to State a Claim ......................................................................... 19

**Point VIII:** Since Plaintiff has Failed to State a Claim under the FDCPA, the Court Should Choose to Decline to Exercise Jurisdiction over Plaintiff's State Law Claim .................................. 21

Conclusion ................................................................................................................................. 24

000106

## TABLE OF AUTHORITIES

**Federal Cases**

Adv. Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11 (2d Cir. 1997) .............................................. 11

Allison v. Whitman & Meyers, L.L.C., No. 13-CV-696-JTC, 2015 U.S. Dist. LEXIS 24050 (W.D.N.Y. Feb. 25, 2015) .............................................. 18

Ashcroft v. Iqbal, 556 U.S. 662 (2009) .............................................. 5

Ashcroft v. Iqbal, 129 S. Ct. 1937, 556 U.S. 662, 173 L. Ed. 2d 868 (2009) .............................................. 4

Atuahene v. City of Hartford, 10 F. App'x 33 (2d Cir. 2001) .............................................. 20

Avgerinos v. Palmyra-Macedon Cent. Sch. Dist., 690 F. Supp. 2d 115 (W.D.N.Y. 2010) .............................................. 4

Bank of N.Y. Mellon v. Sakala, No. CV. NO. 11-00618 DAE-BMK (Foreclosure), 2012 U.S. Dist. LEXIS 57343, 2012 WL 1424665 (D. Haw. Apr. 24, 2012) .............................................. 12

Banque Arabe et Internationale D'Investissement v. Bulk Oil, Inc., 726 F. Supp. 1411 (S.D.N.Y. 1989) ... 9

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .............................................. 4, 5

Birch v. Pioneer Credit Recovery, Inc., 2007 U.S. Dist. LEXIS 41834 (W.D.N.Y. June 8, 2007) .............................................. 21

Bullock v. Credit Bureau of Greater Indianapolis, 272 F. Supp. 2d 780 (S.D. Ind. 2003) .............................................. 15

Cal. Pub. Emples.' Ret. Sys. v. N.Y. Stock Exch., Inc. (In re NYSE Specialists Sec. Litig.), 503 F.3d 89 (2d Cir. 2007) .............................................. 19

Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C., 701 F. Supp. 2d 340 (E.D.N.Y. 2010) .............................................. 16

Church of Holy Trinity v. United States, 143 U.S. 457, 12 S. Ct. 511, 36 L. Ed. 226 (1892) .............................................. 12

Colo. River Water Conserv. Dist. v. United States, 424 U.S. 800 (1976) .............................................. 16, 17

DirecTV, Inc. v. Rowland, No. 04-CV-297S, 2005 U.S. Dist. LEXIS 2454, 2005 WL 189722 (W.D.N.Y. Jan. 22, 2005) .............................................. 22

Donohue v. Quick Collect, Inc., 592 F.3d 1027 (9th Cir. 2009) .............................................. 13

Eckhaus v. Blauner, No. 94 Civ. 5635 (CSH), 1997 U.S. Dist. LEXIS 9043, 1997 WL 362166 (S.D.N.Y. June 25, 1997) .............................................. 10

Gabriele v. Am. Home Mortg. Servicing, 503 F. App'x 89, No. 12-985-cv, 2012 U.S. App. LEXIS 24478, 2012 WL 5908601 (2d Cir. Nov. 27, 2012) .............................................. 13

Gomez v. Pfizer, Inc., 675 F. Supp. 2d 1159 (S.D. Fla. 2009) .............................................. 20

Gregory v. Daly, 243 F.3d 687 (2d Cir. 2001) .............................................. 17

Hahn v. Triumph P'ships L.L.C., 557 F.3d 755 (7th Cir. 2009) .............................................. 14

Harold v. Steel, 773 F.3d 884 (7th Cir. 2014) .............................................. 15

Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) .............................................. 4

Hasbrouck v. Arrow Fin. Servs. L.L.C., No. 1:09-CV-748, 2011 U.S. Dist. LEXIS 53928 (N.D.N.Y. May 19, 2011) .............................................. 13

Hayrioglu v. Granite Capital Funding, L.L.C., 794 F. Supp. 2d 405 (E.D.N.Y. 2011) .............................................. 21

In re Merrill Lynch Ltd., 7 F. Supp. 2d 256 (S.D.N.Y. 1997) .............................................. 8

000107

In re Schubert, No. 91 Civ. 7423 (RLC), 1992 U.S. Dist. LEXIS 6891, 1992 WL 112351 (S.D.N.Y. May 13, 1992) ........................................................................................................................................ 10

Kelley v. Med-1 Solutions, L.L.C., 548 F.3d 600 (7th Cir. 2008) ................................................. 14

Klein v. Solomon & Solomon, P.C., No. 3:10cv1800 (WWE), 2011 U.S. Dist. LEXIS 127606 (D. Conn. Oct. 27, 2011) ........................................................................................................................ 13

Lane v. Fein, Such & Crane, L.L.P., 767 F. Supp. 2d 382 (E.D.N.Y. 2011) ............................... 13

Lanza v. Merrill Lynch & Co., 154 F.3d 56 (2d Cir. 1998) ........................................................... 8

Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc., 498 F.2d 836 (2d Cir. 1974) ............... 10

Lindbergh v. Transworld Sys., 846 F. Supp. 175 (D. Conn. 1994) ............................................... 12

Litle v. Arab Bank, Public Ltd., 507 F. Supp. 2d 267 (E.D.N.Y. 2007) ....................................... 7

Majerowitz v. Stephen Einstein & Assocs., No. 12 Civ. 4592 (ILG) (RLM), 2013 U.S. Dist. LEXIS 115664, 2013 WL 4432240 (E.D.N.Y. Aug. 15, 2013) ............................................................. 12

McKithen v. Brown, 626 F.3d 143 (2d Cir. 2010) ........................................................................ 15

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) .......................................................................................................................................... 16

Musah v. Houslanger & Assocs., P.L.L.C., 962 F. Supp. 2d 636, No. 12 Civ. 3207, 2013 U.S. Dist. LEXIS 121152, 2013 WL 4516786 (S.D.N.Y. Aug. 17, 2013) .......................................... 9, 23

Musah v. Houslanger & Assocs., P.L.L.C., No. 12 Civ. 3207, 2012 U.S. Dist. LEXIS 164292 (S.D.N.Y. Nov. 16, 2012) ................................................................................................................ 9

New York v. Hendrickson Bros., 840 F.2d 1065 (2d Cir. 1988) .................................................... 8

Niagara Mohawk Power Corp. v. Black River, 673 F.3d 84 (2d Cir. 2012) ......................... 16, 17

Ochre L.L.C. v. Rockwell, No. 12 CIV. 2837 (KBF), 2012 U.S. Dist. LEXIS 172208 (S.D.N.Y. Nov. 28, 2012) .......................................................................................................................................... 20

Okyere v. Palisades Collection, L.L.C., 961 F. Supp. 2d 508 (S.D.N.Y. 2013) .......................... 23

Pearl v. City of Long Beach, 296 F.3d 76 (2d Cir. 2002) ............................................................... 7

Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057 (7th Cir. 2000) ..................... 18

Rhulen Agency, Inc. v. Alabama, 896 F.2d 674 (2d Cir. 1990) .................................................... 14

Richardson v. AllianceOne Receivables Mgmt., No. 03 Civ. 5519 (DLC), 2004 U.S. Dist. LEXIS 6943 (S.D.N.Y. Apr. 23, 2004) ............................................................................................................ 11

Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir. 1995) ...................................... 21

Sheehy v. New Century Mortg. Corp., 690 F. Supp. 2d 51 (E.D.N.Y. 2010) .............................. 22

Simmons v. Abruzzo, 49 F.3d 83 (2d Cir. 1995) .......................................................................... 20

Spagnola v. Chubb Corp., 574 F.3d 64 (2d Cir. 2009) ................................................................. 21

Staehr v. Hartford Fin. Servs. Group, 547 F.3d 406 (2d Cir. 2008) .............................................. 6

Strobel v. RJM Acqs. L.L.C., No. 13-CV-2467(JS)(AKT), 2014 U.S. Dist. LEXIS 14936 (E.D.N.Y. Feb. 6, 2014) .......................................................................................................................................... 10

United Republic Ins. Co. v. Chase Manhattan Bank, 315 F.3d 168 (2d Cir. 2003) ..................... 14

United States v. Eilberg, 507 F. Supp. 267 (E.D. Pa. 1980) .......................................................... 8

000108

Wade v. Rosenthal, No. CV-11-5672 (FB)(VVP), 2012 U.S. Dist. LEXIS 123182 (E.D.N.Y. Aug. 29, 2012) .......................................................................................................................................................... 7

Wahl v. Midland, 556 F.3d 643 (7th Cir. 2009) ....................................................................................... 14

Wallace v. Wash., 683 F.3d 323 (6th Cir. 2012) ..................................................................................... 14

Walsh v. Law Offices of Howard Lee Schiff, P.C., No. 3:11-cv-1111 (SRU), 2012 U.S. Dist. LEXIS 136408 (D. Conn. Sept. 24, 2012) .......................................................................................................... 14

Warren v. Sessoms & Rogers, P.A., 676 F.3d 365 (4th Cir. 2012) ......................................................... 14

Wayee v. Recovery's Unlimited, Inc., No. 09 Civ. 3809 (AKH), 2009 U.S. Dist. LEXIS 96087 (S.D.N.Y. Oct. 15, 2009) ........................................................................................................................................... 12

White v. Goodman, 200 F.3d 1016 (7th Cir. 2000) .................................................................................. 17

Woodford v. Action Agency, 239 F.3d 517 (2d Cir. 2001) ...................................................................... 16

**Federal Statutes**

15 U.S.C. § 5 (2012) .................................................................................................................................. 9

15 U.S.C. § 349 (2012) ......................................................................................................................... 21, 22

15 U.S.C. § 1692 (2012) ............................................................................................................................ 1

15 U.S.C. § 1692e (2012) .................................................................................................................... 12, 13

15 U.S.C. § 1692(e) (2012) ....................................................................................................................... 6

15 U.S.C. § 1692a(6) (2012) ..................................................................................................................... 19

15 U.S.C. § 1692e(3) (2012) ..................................................................................................................... 9

15 U.S.C. § 1692e(9) (2012) ..................................................................................................................... 19

15 U.S.C. § 1692f(5) (2012) ...................................................................................................................... 19

15 U.S.C. § 1692f(6) (2012) ...................................................................................................................... 19

15 U.S.C. § 1692g(a) (2012) ..................................................................................................................... 11

15 U.S.C. § 1692k(d) (2012) ..................................................................................................................... 6, 8

15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), 1692f(5), 1692f(6) (2012) ................................................................................................................................................. 1, 12, 13

Fed. R. Civ. P. 8(a)(2) ............................................................................................................................... 5

Fed. R. Civ. P. 12(b)(1) ............................................................................................................................. 14

Fed. R. Civ. P. 12(h)(3) ............................................................................................................................. 14

**State Court Opinions**

Centurion Capital Corp. v. Guarino, 38 Misc. 3d 1216 ........................................................................... 23

Colonial Credit Corp. v. Beyers, 46 Misc. 3d 1221 ................................................................................. 23

Fleet Mech. Serv. Corp. v. Romaz Props., 54 A.D.3d 995 (2d Dep't 2008) ............................................ 22

In re Rouss, 221 N.Y. 81, 116 N.E. 782 (1917) ....................................................................................... 12

Ladino v. Bank of Am., 52 A.D.3d 571 (2d Dep't 2008) .......................................................................... 22

Landau, P.C. v. LaRossa, Mitchell & Ross, 11 N.Y.3d 8, 892 N.E. 380, 862 N.Y.S.2d 316 (2008) ......... 11

000109

N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995) .................................................... 22

Small v. Lorillard Tobacco Co., 94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999) .................................................. 22

**State Statutes**

N.Y. C.P.L.R. 3025 ................................................................................................................................. 11

N.Y. C.P.L.R. 5019 ................................................................................................................................. 10

N.Y. C.P.L.R. 5019(C) ............................................................................................................................. 9

N.Y. C.P.L.R. 5019(c) ................................................................................................................. 2, 3, 4, 10

N.Y. Gen. Bus. Law § 349 ................................................................................................................... 1, 21

**Other**

16 C.F.R. pt. 349 (2014) ........................................................................................................................ 22

16 C.F.R. pt. 600 (2014) ........................................................................................................................ 22

John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387 (2003) ............................................. 12

000110

## PRELIMINARY STATEMENT

This memorandum of law is submitted on behalf of defendants Palisades Acquisition XVI, LLC ("Palisades"), Houslanger & Associates, PLLC ("Houslanger & Associates") and Todd Houslanger (collectively, "defendants"), in support of their motion to dismiss plaintiff's amended complaint (hereinafter "complaint") pursuant to Fed. R. Civ. P. §§ 12(b)(6) and 12(b)(1). The complaint asserts claims against the defendants under the Fair Debt collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA" or "the Act"), specifically alleging that defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), 1692f(5) and 1692f(6). Additionally, plaintiff alleges that defendants violated N.Y. Gen. Bus. Law § 349 ("GBL").

In this action, plaintiff attempts to conjure legal conclusions merely through the naming of statutes without attaching substance. In fact, plaintiff's entire basis for this lawsuit is a shot in the dark conclusion that Palisades is not the proper judgment creditor, thereby reaching a self-serving non-judicial determination that defendants, as a joint and inseverable group, do not have the legal right to enforce a valid judgment currently entered in state court against Plaintiff.[1] Plaintiff supports this uninformed and ill-conceived legal conclusion as against all defendants on **(1)** informal email correspondence and attachments consisting of confidential settlement dialogue between the parties,[2] and **(2)** plaintiff's reliance on his own attorneys as expert witnesses, speaking to their "years of knowledge on the part of plaintiff's attorneys as to the inner working of the practices of third party debt buyers…"[3]

As a threshold matter, the entire complaint against the defendants must be dismissed because plaintiff's factual allegations do not plausibly suggest an entitlement to relief under the FDCPA or GBL. Furthermore, defendants respectfully submit that plaintiff's complaint should be dismissed as against the defendants due to the following: **(1)** plaintiff's claims are time barred by the applicable statute of

---

[1] See Plaintiff's Complaint, ¶ 39.
[2] Id., Complaint Exhibit A-B.
[3] Id., ¶ 37.

000111

limitations; **(2)** N.Y.C.P.L.R. § 5019(c) does not require an assignments to be recorded in order for an assignment to be deemed valid; **(3)** plaintiff's implications that defendants lack standing do not rise to the level of a material statement under the FDCPA; **(4)** the Rooker-Feldman doctrine bars plaintiff's collateral attack on the state court judgment; **(5)** the doctrine of Abstention precludes Plaintiff from re-litigating issues in the instant Court that could have been raised in the intertwined state court matter; **(6)** plaintiff does not even attempt to demonstrate a basis for piercing the corporate veil, and thus all allegations against Todd Houslanger in his individual capacity must be dismissed; **(7)** mere recitations of the elements of various FDCPA claims are insufficient to withstand a motion for failure to state a claim; and **(8)** since plaintiff has failed to state a claim under the FDCPA, the Court should choose to decline to exercise jurisdiction over plaintiff's state law claim.

## STATEMENT OF FACTS

Plaintiff is a defendant and judgment debtor in a state court matter (Buffalo City Court, CV-007295-06/BU) that was brought to recover amounts due on a debt that was not timely paid.[4] Judgment on plaintiff's debt was originally obtained in favor of predecessor assignor Centurion Capital Corporation against Plaintiff on or about March 8, 2007.[5] Defendant Palisades purchased the judgment against Plaintiff and is the valid assignee and current owner of plaintiff's debt.[6] Palisades is a company that is alleged to be in the business of attempting to collect debts.[7] Defendant Houslanger & Associates is a law firm allegedly specializing in collections and is Palisades' attorney

---

[4] Id., ¶¶ 4,12, 14.

[5] Id., ¶ 18.

[6] Id., at Complaint Exhibits A-B. *In defendants' view, the informal email correspondence and attachments (at Complaint Exhibit A-B) consisting of confidential settlement dialogue between the parties is palpably improper for inclusion in the complaint and has no evidentiary value. It should also be noted, that judgment creditor Palisades is in possession of a complete bill of sale and chain of title consistent with the CPLR and rules of the City Court. Though for purposes of this Rule 12 motion, defendants will not be goaded by plaintiff into engaging in non-judicial and unsupportable post-judgment discovery in the state court matter. Furthermore, consistent with Rule 12, defendants will accept the factual allegations in the complaint – since even though inaccurate, they do not plausibly suggest an entitlement to relief.*

[7] Id., ¶ 6.

000112

in the state court matter against instant plaintiff.[8] The remaining defendant, Todd Houslanger, is alleged to be both an employee and owner of defendant Houslanger & Associates.[9]

**The Underlying State Court Lawsuit**

On 8/11/2006 a collection action was filed against plaintiff in Buffalo City Court under Index No. Cv-007295-06/BU.[10] On or about March 8, 2007 a default judgment was obtained against instant plaintiff,[11] but plaintiff allegedly had no knowledge of the judgment until around October 7, 2014 when plaintiff's employer allegedly received an income execution on behalf of Palisades pursuant to the aforementioned state court judgment.[12] Plaintiff claims that because he is not in possession of proof that defendant Palisades is the proper judgment creditor, that therefore, defendants have no right to enforce the judgment.[13]

Plaintiff alleges that as a result of defendant's acts, which allegedly amount to not filing a proper notice of assignment with the state court, plaintiff is nervous, upset, and anxious and suffers from emotional distress.[14] Surprisingly, plaintiff and his counsel have made *no* effort to vacate the state court judgment or dismiss the state court action. Presumably plaintiff is aware that if a genuine issue exists as to standing, or whether plaintiff was served or had knowledge of the lawsuit instituted in the City Court of Buffalo, the dispute would be resolved through (1) filing a motion to vacate the judgment; (2) issuing an order to show cause, or (3) through requesting a traverse hearing – *and not by suing the judgment creditor and their counsel in federal court.*

The allegations contained in the complaint stand in sharp contrast with what the complaint does not allege, and what this action apparently does not involve. In particular, the complaint does

---

[8] Id., ¶ 8 and Complaint Exhibit A.
[9] Id., ¶ 9.
[10] Id., ¶ 16.
[11] Id., ¶ 18.
[12] Id., ¶ 21
[13] Id., ¶ 29
[14] Id., ¶ 31

000113

not allege that defendants committed any abusive or deceptive practices or that plaintiff does not owe the debt to Palisades, much less that any entity other than Palisades asserts that it is entitled to plaintiff's payments on the debt/judgment. Thus, given what is not alleged, the gist of the complaint is that plaintiff questions whether Palisades was validly transferred the debt, which is based not on any conflicting claims by entities seeking payments, but rather, the "years of knowledge on the part of Plaintiff's attorneys as to the inner working of the practices of third party debt buyers..."[15]

### STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss is intended to test the legal sufficiency of a complaint. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Avgerinos v. Palmyra Macedon Cent. Sch. Dist., 690 F. Supp. 2d 115, 125 (W.D.N.Y. 2010) (Telesca, J.) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). A claim is facially plausible when the plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 126. However, pleadings that are no more than conclusions are not entitled to the assumption of truth. *Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.,* 690 F. Supp. 2d 115, 125 (W.D.N.Y. 2010).

In *Twombly*[16] and *Iqbal*[17], the United States Supreme Court held that a plaintiff is required to plead factual allegations sufficient to state a plausible claim. It is not enough to plead the elements of a cause of action in a conclusory fashion, and then attempt to obtain discovery to fill in the blanks. *Iqbal,* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Thus, neither "a formulaic recitation of the elements of a cause of action,"

---

[15] Id., ¶ 37.
[16] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (U.S. 2007)
[17] Ashcroft v. Iqbal, 129 S. Ct. 1937, 556 U.S. 662, 173 L. Ed. 2d 868 (U.S. 2009)

nor "'naked assertion[s]' devoid of 'further factual enhancement,'" will suffice to satisfy the requirements of Rule 8. *Twombly*, 550 U.S. at 555.

Rule 8 directs that a "pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. Rule 8(a)(2). In spite of Rule 8, plaintiff begins his complaint with a 3 ½ page soliloquy[18] asking this Court to ascribe factual and legal conclusions to defendants' actions based on unconnected news articles from the Boston Globe, the New York Times, the Chicago Tribune, as well as an unrelated study by the New Economy Project and comments furnished by consumer advocates.[19] In contrast to plaintiff's misguided speculation in assuming what he seeks to establish, in *Twombly* and *Iqbal*, Supra, the Supreme Court articulated a two-pronged approach to be used as a means of determining whether a pleading meets the Rule 8 standard. A District Court evaluating a motion to dismiss under Rule 12(b)(6) is guided to first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Second, with what remains of the pleading after this first step, the District Court should "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681. Here, plaintiff fails to include sufficient factual allegations to cross the line "between possibility and plausibility of entitle to relief." *Twombly*, 550 U.S. at 557.

## The FDCPA

The FDCPA was enacted to provide a remedy to consumers against abusive debt collection practices and to provide parity to the collection industry. The FDCPA expressly states: "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not

---

[18] See Plaintiff's Complaint, pages 1 – 4.
[19] Id.

competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

### POINT I
### PLAINTIFF'S CLAIMS ARE TIME BARRED BY THE
### APPLICABLE STATUTE OF LIMITATIONS

When a defendant raises a statute of limitations defense in a pre-answer motion to dismiss, dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)). Dismissal under Rule 12(b)(6) of time barred claims is proper because "[t]imeliness is 'material when testing the sufficiency of a pleading.'" *Staehr*, 547 F.3d at 426 (quoting Fed. R. Civ. P. 9(f)).

Under 15 U.S.C. § 1692k(d), "[t]o enforce a violation of the FDCPA, an action 'may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within one year from the date on which the violation occurs*." Here, the court should not read the FDCPA to allow plaintiff to usher in an untimely claim premised on a different set of activities and parties. As plaintiff asserts, on 8/11/2006, a collection action was filed against plaintiff in Buffalo City Court under Index No. Cv-007295-06/BU.[20] On or about March 8, 2007 a default judgment was obtained against instant plaintiff,[21] but plaintiff conveniently alleges that he had no knowledge of the judgment until around October 7, 2014.[22] However, while plaintiff affirmatively alleges that service of process was effectuated on an old mailing address, plaintiff does not actually claim that he was unaware of the Buffalo City Court action, which was filed by Palisades' predecessor in-interest back in 2006. What's more, although

---

[20] Id., ¶ 16.
[21] Id., ¶ 18.
[22] Id., ¶ 21

000116

plaintiff ineffectively questions the efficacy of the assignment of judgment to defendant Palisades (which took place in the year 2007), plaintiff does not deny having knowledge of the assignment, or deny any other debt collection activities related to the Buffalo City Court action – **spanning the length of *nine full years*.**

Plaintiff makes a half-hearted attempt to salvage any claims based on an assignment of judgment from 2007 (that somehow has manifested into a federal lawsuit), by seeming to argue that equitable tolling applies wholesale to any FDCPA claim. However, plaintiff has not alleged merely enough to demonstrate that equitable tolling - although not even expressly raised - is warranted in this action. As summarized in *Wade v. Rosenthal*, 2012 U.S. Dist. LEXIS 123182 (E.D.N.Y. Aug. 29, 2012):[23] "Equitable tolling applies only in the rare and exceptional circumstance," and the "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff," ... In the Second Circuit, the doctrine will be applied "as a matter of fairness where a plaintiff has been prevented in some extraordinary way from exercising his rights," Pearl v. City of Long Beach, 296 F.3d 76, 85 (2d Cir. 2004) (internal quotations omitted), which means "a situation where a plaintiff 'could show that it would have been impossible for a reasonably prudent person to learn' about his or her cause of action." Id. (quoting Miller v. Int'l Telephone & Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985) (emphasis in original)); see Litle v. Arab Bank, PLC, 507 F. Supp. 2d 267, 276 (E.D.N.Y. 2007). Where fraudulent concealment is offered as the basis for equitable tolling, as the plaintiff may be attempting here, the plaintiff is required to establish that **(1)** the defendant wrongfully concealed material facts relating to its wrongdoing; **(2)** the concealment prevented plaintiffs' discovery of the nature of the claim within the limitations period; and **(3)** the plaintiffs exercised due diligence in pursuing the discovery of the claim during the period they seek to have

---

[23] See Defendants' Exhibit A

tolled. Litle, 507 F. Supp. at 276, citing Corcoran v. New York Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) and State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1083 (2d Cir. 1988). The facts that establish each of these three elements must be pleaded with particularity. E.g., In re Merrill Lynch Ltd. Partnerships Litig., 7 F. Supp. 2d 256, 274 (S.D.N.Y. 1997) [9] aff'd, 154 F.3d 56 (2d Cir. 1998)."

Here, Plaintiff can never allege that it was "impossible" for him to learn about this action or judgment filed in Buffalo City Court, because he voluntarily admits that he was aware of the underlying debt.[24] Moreover, as discussed above, plaintiff does not actually claim that he was unaware of the underlying Buffalo City Court collection action, and plaintiff does not deny having knowledge of the assignment or any other debt collection activities related to the Buffalo City Court action. Plaintiff's attempt to create a whole new equitable standard by impliedly arguing that tolling implies because of alleged improper service – without alleging more - ignores that plaintiff must demonstrate that he exercised due diligence in discovering the facts concerning his claim before any tolling will come into play. Plaintiff does not allege any efforts undertaken to discover the facts concerning his claims, let alone with the particularity required by the courts for equitable tolling to apply.

Plaintiff's contention that the FDCPA allows recovery for all acts relating to the same debt and debt-collection activities regardless of the passage of time or discrete quality of the act is unpersuasive. Even reading all inferences in favor of plaintiff, his pleadings demonstrate that plaintiff's claims against defendants arose many years prior to the filing of the instant action and are barred by operation of 15 U.S.C. § 1692k(d).

---

[24] See Plaintiff's Complaint, ¶¶ 12-14.

**POINT II**
**N.Y.C.P.L.R. § 5019(C) DOES NOT REQUIRE AN ASSIGNMENTS TO BE RECORDED IN
ORDER FOR AN ASSIGNMENTS TO BE DEEMED VALID**

There are no magic words or phrases that are required to effectuate a valid assignment under New York law. Rather, "[u]nder New York law, an assignment is valid only where the assignor retains no control over the funds, no authority to collect and no power to revoke. The use of the word 'assign' is not essential to effect a valid assignment. In fact, "[A]ny act or words are sufficient which show an intention of transferring the chose in action to the assignee, when the assignor is divested of all control and right to cause of action and the assignee is entitled to control it and receive its fruits." *Banque Arabe et Internationale D'Investissement v. Bulk Oil (USA), Inc.*, 726 F. Supp. 1411, 1417 (S.D.N.Y. 1989), citing *Advance Trading Corp. v. Nydegger & Co. Inc.*, 127 N.Y.S.2d 800, 801 (Sup. Ct. 1953).

It is worth noting, that instant defendants faced a similar issue in the case of Musah *v. Houslanger & Assocs., PLLC*, 2012 U.S. Dist. LEXIS 164292 (S.D.N.Y. Nov. 16, 2012),[25] where some of the FDCPA violations alleged by Plaintiff were grounded on the premise that the assignment of the Judgment to Palisades was not legally effective, and therefore that Houslanger had no right to collect the Judgment on behalf of Palisades. *Id.*, at 5. Much like the plaintiff in *Musah*, Plaintiff's case in the present instance hinges on the allegation that "prior to the Plaintiff's employer receiving the aforementioned income execution, no assignment was filed in the City Court of Buffalo."[26] As demonstrated by the court in *Musah*, the basis for such a contention is erroneously

---

[25] See Defendants' Exhibit B. See also, *Musah v. Houslanger & Assocs., PLLC* (*Musah II*), 962 F. Supp. 2d 636, 2013 U.S. Dist. LEXIS 121152, 2013 WL 4516786 (S.D.N.Y. 2013) (Upholding *Musah I*, finding that §5019(c) does not require that an assignment be filed with the court in order for the assignee to be entitled to enforce a judgment issued against a judgment debtor, but also finding that plaintiff adequately plead a claim under 15 U.S.C. §1692e(3) with regards to meaningful attorney review of the notice of assignment). *In the instant matter, plaintiff does not allege that defendants violated 15 U.S.C. §1692e(3).*

[26] See Plaintiff's Complaint, ¶ 22.

---

extrapolated from the provision of CPLR which requires "[a] person other than the party recovering a judgment who becomes entitled to enforce it, [to] file in the office of the clerk of the court in which the judgment was entered...a copy of the instrument on which his authority is based, acknowledged in the form required to entitle a deed to be recorded, or, if his authority is based on a court order, a certified copy of the order." *See* N.Y.C.P.L.R. § 5019(c). However, complying with § 5019(c) is not a necessary requirement to effectuate a valid assignment in NY. As held by the court in *Musah,*[27] "...5019(c) is 'not meant to benefit the debtor, should the assignment not be recorded,' *Eckhaus v. Blauner*, No. 94 Civ. 5635(CSH), 1997 U.S. Dist. LEXIS 9043, 1997 WL 362166, at *4 (S.D.N.Y. June 26, 1997), but rather 'is clearly intended for the benefit of the assignee, being designed to protect him against payment of the judgment to the wrong party.' *Law Research Serv., Inc. v. Martin Lutz Appellate Printers, Inc.*, 498 F.2d 836, 840 (2d Cir. 1974). As such, 'section 5019(c) does not require assignments to be recorded' in order for those assignments to be deemed valid, *Schubert v. Ostano,* No. 91 Civ. 7423(RLC), 1992 U.S. Dist. LEXIS 6891, 1992 WL 112351, at *5 (S.D.N.Y. May 13, 1992), and the assignee of a judgment may attempt to enforce that judgment and collect from the debtor even if the filing requirement of 5019(c) has not been satisfied. *See Law Research,* 498 F.2d at 839 (holding that an assignment of judgment was 'valid when executed' despite not being filed at that time, and further stating that '[w]e hold that filing [pursuant to 5019(c)] was not in any event necessary to perfect the assignment of the judgment')." See also, *Strobel v. RJM Acquisitions LLC*, 2014 U.S. Dist. LEXIS 14936 (E.D.N.Y. Feb. 6, 2014)[28] - holding that (1) any perceived deception regarding receipt, or lack thereof, of the notice of assignment would not be material; and (2) that CPLR Section 5019 does not require assignments to be recorded in order for those assignments to be deemed valid).

---

[27] Supra, at 6 -7.
[28] See Defendants' Exhibit C

No matter how artfully plaintiff drafts the pleadings, he cannot escape the fact that there are no connections between the laws of the State of New York and the FDCPA governing a notice of assignment. In fact, the FDCPA does have its own provision governing notice under 15 U.S.C. § 1692g(a) (detailing the content of the notice of debt provided that must be provided by the debt collector within five days after the initial communication with a debtor). And here, plaintiff does not deny receiving proper notice from defendants as expressly governed by the FDCPA, which would include, *inter alia*, the name of the current creditor and law firm.

While plaintiff's foundational premise regarding the assignment is baseless and unsubstantiated, even if the assignment was technically defective, such a defect should neither result in the dismissal of the state court action nor be the predicate of an FDCPA claim. Instead, if appropriate, the underlying state court collection complaint would simply be amended. Under CPLR § 3025 amendments to pleadings are liberally granted. Where an assignee is found to lack standing because of some defect in the formal assignment, the defect is curable. *See, e.g., Advanced Magnetics, Inc. v. Bayfront Partners*, 106 F.3d 11, 20-21 (2d Cir. 1997). Additionally, if the state court dismissed the collection actions on lack of standing grounds those dismissals would be without prejudice. See *Landau, P.C. v. LaRossa, Mitchell & Ross*, 11 N.Y.3d 8, 892 N.E. 380, 862 N.Y.S.2d 316 (2008) (noting that dismissal on lack of standing grounds or other forms of procedural inadequacy is not intended to have a determinative effect on the merits of the action).

What's more, an alleged violation of state or local law does not necessarily rise to the level of stating a claim under the FDCPA." *Richardson v. AllianceOne Receivables Mgmt.*, 2004 U.S. Dist. LEXIS 6943, *5 (S.D.N.Y. Apr. 23, 2004).[29] Similarly, in *Wayee v. Recovery's Unlimited, Inc.* plaintiff alleged that he received a debt collection letter from Defendant containing an expired New

---

[29] See Defendants' Exhibit D

York City Department of Consumer Affairs ("DCA") License Number. 2009 U.S. Dist. LEXIS 96087, *1-2 (S.D.N.Y. Oct. 15, 2009).[30] Plaintiff did not allege that defendant was unlicensed when it sent the letter, but rather that it was licensed under a different number. *Id.* As a result, plaintiff alleged that consumers were not able to gain any information concerning Defendant from the DCA. *Id.* The court held that "Plaintiff points to no authority suggesting that the use of an expired license number by a licensed debt collector constitutes a violation of § 1692e."*Id.* at *3. Correspondingly, as the Honorable Jose A. Cabranes explained, the contention that every violation of state law raises a federal claim under the FDCPA "reflects a false, narrow, and overly mechanical reading" of the statute. *Lindbergh v. Transworld Sys.,* 846 F. Supp. 175, 181, (D. Conn. 1994)

In addition, to the extent plaintiff bases his claim on the allegation that the assignment to Palisades is invalid, the claim must fail because plaintiff lacks standing to challenge the validity of the assignment. *See Bank of New York Mellon v. Sakala, 2012 U.S. Dist. LEXIS 57343, 2012 WL 1424665, at *5 (D. Haw. Apr. 24, 2012)* (dismissing FDCPA claim for lack of standing where claim was based on violation of the Pooling and Services Agreement to which the borrower was not a party).

In essence, Plaintiff is asking this court to find a violation of the FDCPA that would protect plaintiff's acknowledged default on a debt against compliant debt collectors through a bizarre and idiosyncratic construction of the FDCPA. See, *Majerowitz v. Stephen Einstein & Assocs., P.C.,* 2013 U.S. Dist. LEXIS 115664, 2013 WL 4432240 (E.D.N.Y. Aug. 15, 2013).[31]

---

[30] See Defendants' Exhibit E

[31] "To find a violation of the [FDCPA] here would be protecting a known defaulting debtor against a compliant debt collector by a bizarre and idiosyncratic construction of it. 'Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided.' In re Rouss, 221 N.Y. 81, 91, 116 N.E. 782 (1917) (Cardozo, J.); see also Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S. Ct. 511, 36 L. Ed. 226 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers."); John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387 (2003)."

## POINT III
## PLAINTIFF'S IMPLICATION THAT DEFENDANTS LACK STANDING DOES NOT RISE TO THE LEVEL OF A MATERIAL STATEMENT UNDER THE FDCPA

The FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. However, even if a statement is false in some technical sense, it does not violate the statute unless it would mislead the unsophisticated consumer. *Hasbrouck v. Arrow Fin. Servs. LLC*, 2011 U.S. Dist. LEXIS 53928, *at 11-12 (N.D.N.Y. May 19, 2011).[32] Courts considering an FDCPA violation have looked to whether a statement is materially false or misleading. *Gabriele v. Am. Home Mortg. Servicing*, 503 Fed. Appx. 89, 2012 U.S. App. LEXIS 24478, 2012 WL 5908601 (2d Cir. 2012); *Lane v. Fein, Such and Crane, LLP*, 767 F. Supp.2d 382, 389 (E.D.N.Y. 2011). Statements are materially false and misleading if they influence a consumer's decision or ability to pay or challenge a debt. *Hasbrouck*, 2011 U.S. Dist. LEXIS 53928, at *11. Complaints that allege "procedural defects in connection with state court litigation" without "allegations of false representation that could be construed as material so as to mislead plaintiff in his repayment of or challenge to the debt" are insufficient as a matter of law. *Klein v. Solomon and Solomon, P.C.*, 2011 U.S. Dist. LEXIS 127606, at *4-5 (D. Conn. 2011).[33] In other words, "[i]n assessing FDCPA liability, [courts] are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010); *see also Walsh v. Law Offices of Howard Lee Schiff, P.C.*, 2012 U.S. Dist. LEXIS 136408, at *14 (D. Conn. Sept. 24, 2012) ("Imposing liability for technical falsehoods that have no bearing on the debt or the ability to dispute it furthers no conceivable consumer interest under the FDCPA and only increases the cost of credit by subjecting debt

---

[32] See Defendants' Exhibit F
[33] See Defendants' Exhibit G

collectors to frivolous claims.");[34] *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) ("Although Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in 'false representations' must rest on material misrepresentations."); *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) ("[A] statement must be materially false or misleading to violate Section 1692e."); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA – even if it is false in some technical sense").

In the instant matter, plaintiff does not plausibly allege that defendants impeded his ability to pay or challenge the debt that he incurred.

## POINT IV
## THE ROOKER-FELDMAN DOCTRINE BARS PLAINTIFF'S COLLATERAL ATTACK ON THE STATE COURT JUDGMENT

A challenge pursuant to the *Rooker-Feldman* Doctrine is for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and should be considered as a threshold issue because "if [the court] must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *United Republic Ins. v. Chase Manhattan Bank*, 315 F.3d 168, 170 (2d Cir. 2003); Fed R. Civ. P. 12(h)(3). Plaintiff cannot credibly argue that *Rooker-Feldman* is inapplicable as Plaintiff's federal action effectively constitutes a collateral attack on the state court by way of the state court judgment against plaintiff. In fact, a state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. Ind. 2008).

---

[34] See Defendants' Exhibit H

As stated by Hon. Judge Easterbrook of the Court of Appeals for the Seventh Circuit in applying the *Rooker-Feldman* doctrine to a similar FDCPA claim, "garnishment orders enforcing a judgment are final and appealable [in state court]." *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. Ind. 2014). Likewise, here, plaintiff cannot credibly argue that he is not asking this Court to hear and decide a case that has already been fully decided in state court. As appropriately expressed in *Bullock v. Credit Bureau of Greater Indianapolis*, 272 F. Supp. 2d 780 (S.D. Ind. 2003), the problem here is that plaintiff's theory is that defendants violated the FDCPA by seeking exactly what the state awarded. In other words, plaintiff cannot avoid *Rooker-Feldman* by simply framing his claim in a way that feigns an imaginary universe wherein a state court did not already determine the legitimacy of the state court action. Even assuming, *arguendo* that all the state court's decisions throughout the case leading to the judgment and garnishment against plaintiff were completely erroneous and without any basis in law, this federal Court would still lack subject matter jurisdiction. Here, all of the conduct is specifically related to the state court judgment and defendants' standing to enforce the judgment.

*Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: **(1)** the plaintiff lost in state court; **(2)** the plaintiff complains of injuries caused by the state court judgment; **(3)** the plaintiff invites district court review of that judgment; and **(4)** the state court judgment was entered before the plaintiff's federal suit commenced. *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). In the instant case, **(1)** plaintiff lost in state court; **(2)** plaintiff expressly complains of injuries (wage garnishment) directly related to and intertwined with the state court judgment; **(3)** plaintiff is impliedly inviting this Court to review the state court judgment; and **(4)** the state court judgment against plaintiff was entered many years before plaintiff's federal suit commenced. Therefore, such scrutiny by this Court would amount to post hoc federal court review of an already concluded state court litigation. Accordingly, since plaintiff is seeking

all the relief that would result if the state court judgment were overturned, this amounts to an attack on final dispositive determinations made by the state court in every manner except in name[35]. As follows, this Court should dismiss the plaintiff's complaint for lack of subject matter jurisdiction.

<div style="text-align:center">

**POINT V**
**THE DOCTRINE OF ABSTENTION PRECLUDES PLAINTIFF FROM RE-LITIGATING**
**ISSUES IN THE INSTANT COURT THAT COULD HAVE BEEN RAISED IN THE**
**INTERTWINED STATE COURT MATTER**

</div>

As stated by the Second Circuit in *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) "[T]he abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction," and "in this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction." *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal quotation marks and brackets omitted). Additionally, as stated in *Niagara Mohawk Power, Supra,* "in *Colorado River,*[36] in evaluating whether *Colorado River* abstention is appropriate, federal district courts are to consider six factors, 'with the balance heavily weighted in favor of the exercise of jurisdiction,' Moses H. Cone, 460 U.S. at 16:[37] **(1)** whether the controversy involves a res over which one of the courts has assumed jurisdiction; **(2)** whether the federal forum is less inconvenient than the other for the parties; **(3)** whether staying or dismissing the federal action will avoid piecemeal litigation; **(4)** the order in which the actions were filed, and whether proceedings have

---

[35] See, *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.,* 701 F. Supp. 2d 340 (E.D.N.Y. 2010) ("Here, read as a whole, the complaint appears to allege that defendants have engaged in a pattern of vexatious litigation and harassment of plaintiffs since approximately 2001 and that, because of this pattern of litigation and harassment, plaintiffs have suffered emotional and financial injury...The 2007 civil court judgment was clearly one of the main events in this pattern, and the complaint can be construed as alleging injuries that occurred as a result of the judgment... Additionally, the complaint alleges that plaintiffs have suffered financial and emotional distress as a result of defendants' conduct. Construed this way, the civil court judgment was a cause of plaintiffs' injuries, and this Court would necessarily have to review the state-court judgment to decide plaintiffs' claims.") Id. 348 -349.

[36] *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)

[37] *Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

000126

advanced more in one forum than in the other; **(5)**whether federal law provides the rule of decision; and **(6)** whether the state procedures are adequate to protect the plaintiff's federal rights..."

The Supreme Court has explained that none of these factors alone is necessarily determinative, but, instead, a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. *Niagara Mohawk Power, Supra*, at 101. Considering plaintiff's claims against defendants go to the very heart of the state court matter, there is undoubtedly the potential for parallel litigation being carried out in state court to determine the rights of the parties with respect to the same questions of law (*the alleged questions of standing; proper assignment; the integrity of the state court judgment; and the enforceability of the judgment*). Thus, under the doctrine of Abstention, the state court is the appropriate jurisdiction for issuing a final ruling on this matter. See *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976); and *Gregory v. Daly*, 243 F.3d 687, 702 (2d Cir. 2001).

Since the state court action was filed many years prior to the federal action and dismissing the federal action will avoid piecemeal litigation, this matter should be dismissed. Moreover, state law provides the rule of decision and the state procedures are more than adequate to protect plaintiff's rights.

### POINT VI
### ALL ALLEGATIONS AGAINST TODD HOUSLANGER
### IN HIS INDIVIDUAL CAPACITY MUST BE DISMISSED

"The Fair Debt Collection Practices Act is not aimed at the shareholders of debt collectors operating in the corporate form unless some basis is shown for piercing the corporate veil...." *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000) (citation omitted) (holding that the FDCPA filed against the shareholder was frivolous); see also *Pettit v. Retrieval Masters Creditor Bureau, Inc.,*

211 F.3d 1057 (7th Cir. 2000) (holding that the president and largest shareholder was not personally liable: "the extent of control exercised by the officer or shareholder is irrelevant to determining his liability under the FDCPA.") Generally, the law of the state of incorporation governs corporate veil-piercing analysis.[38]

Recently, in February of 2015, this Court refused to pierce the veil to hold an individual liable for an alleged FDCPA violation. *See Allison v. Whitman & Meyers, LLC,* 2015 U.S. Dist. LEXIS 24050 (W.D.N.Y. Feb. 25, 2015).[39] As this Court explained - under New York law, to pierce the corporate veil, a party must establish that **(1)** the owners exercised complete domination of the corporation in respect to the transaction attacked; and **(2)** that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury. *Id.* With respect to the first of these requirements, New York courts consider a variety of factors, including: the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors. *Id.* at *6-7.

In *Allison,* plaintiff failed to satisfy this first prong because the plaintiff pleaded no facts to support her theory that the individual defendant should be individually liable as the alter ego of the corporate defendant. The complaint alleged only that the individual defendant was a "member-manager and/or shareholder" of the corporate defendant and that the individual defendant "oversees its day-to-day operations." Likewise, in the instant matter, plaintiff does not plead any facts to support his theory that Todd Houslanger should be individually liable as the alter ego of Houslanger

---

[38] Houslanger and Associates, PLLC is a New York State Domestic Professional Service Limited Liability Company, See NYS Department of State, Division of Corporations Entity Information (http://www.dos.ny.gov/corps/bus_entity_search.html), DOS ID# 3285901.
[39] See Defendants' Exhibit l

and Associates.

What's more, in addition to not pleading or even implying that Todd Houslanger failed to comply with corporate formalities, or that he exercised complete domination of the corporation in respect to committing a wrong against plaintiff, plaintiff does not even allege that Todd Houslanger is a debt collector as defined by 15 U.S.C. § 1692a(6). Thus, even viewing the allegations in the light most favorable to the plaintiff, there is no support for piercing the corporate veil.

## POINT VII
## MERE RECITATIONS OF THE ELEMENTS OF VARIOUS FDCPA CLAIMS ARE INSUFFICIENT TO WITHSTAND A MOTION FOR FAILURE TO STATE A CLAIM

Rather than assert facts in support of legal conclusions, plaintiff simply alleges elements of various claims. However, these mere recitations of the elements of various FDCPA claims are insufficient to withstand a motion for failure to state a claim. This Court may dismiss these ill advised FDCPA allegations for a failure to state a claim when the pleadings lack any cognizable basis in law. *See e.g., In re NYSE Specialists Sec. Litig.,* 503 F.3d 89 95 (2d Cir. 2007) (court may disregard a plaintiff's legal conclusions, deductions or opinions couched as factual allegations). Plaintiff's complaint contains no specific facts beyond conjecture to support Plaintiff's claims.

Just by way of example, plaintiff alleges a violation of 15 U.S.C. § 1692e(9), but plaintiff does not elaborate how or what notice created a false impression as to its source. Similarly, plaintiff alleges a violation of 15 U.S.C. § 1692f(5), but has not pleaded any details of any such charges, any concealment, nor any alternative/misleading purpose to any communication regulated by this section. Correspondingly, it is entirely unclear what non-judicial threats to effect dispossession or disablement of property plaintiff refers to in raising a claim under 15 U.S.C. § 1692f(6). Considering enforcement of a judgment through a wage garnishment is a judicial remedy, the alleged action necessarily refers to judicial rather than to non-judicial.

These are a few pertinent examples of how plaintiff is attempting to subject defendants to FDCPA liability simply for exercising their professional obligations, and it is manifest that the facts stated by plaintiff in the complaint are insufficient to state a claim under the FDCPA.

Furthermore, lumping all defendants together without any elaboration or distinction of activity for each alleged violation is fatal to plaintiff's claims asserted in every single cause of action. Rule 8(a) requires, at a minimum, that a complaint give each individual defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford,* 10 F. App'x. 33, 34 (2d Cir. 2001) citing *Ferro v. Ry Express Agency, Inc.,* 296 F.2d 847, 851 (2d Cir 1961) and *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir 1995). Where multiple defendants have been sued, the complaint "must provide a plausible factual basis to distinguish the conduct of each of the defendants" in order for the pleading to meet the Rule 8 standard. *Ochre LLC v. Rockwell Architecture Planning & Design,* No. 12-CV-2837, 2012 U.S. Dist. LEXIS 172208, at *16 (S.D.N.Y. Nov. 28, 2012).[40] A plaintiff cannot merely "lump[ ] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct." *Atuahene,* 10 Fed. Appx. at 34.

This superficial method of pleading is insufficient to place the instant defendants on notice of the claims plaintiff is asserting against each of them individually, and thereby fails to meet the minimum standards under Rule 8. *See, e.g., Gomez v. Pfizer,* 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009) (plaintiffs failed to explain each defendant's duty "as well [as] their individual breaches of that duty;" thus, dismissal of plaintiff's claim was appropriate).

---

[40] See Defendants' Exhibit J

<u>**POINT VIII**</u>
<u>**SINCE PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER THE FDCPA, THE**</u>
<u>**COURT SHOULD CHOOSE TO DECLINE TO EXERCISE JURISDICTION OVER**</u>
<u>**PLAINTIFF'S STATE LAW CLAIM**</u>

In addition to bringing claims under the FDCPA, Plaintiff additionally alleges that

Defendants, through the same course of conduct, violated N.Y. Gen. Bus. Law § 349, *et seq.*

("GBL"). Though in the interest of comity, the Second Circuit instructs that absent exceptional

circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6), courts should

abstain from exercising pendent jurisdiction. *Birch v. Pioneer Credit Recovery, Inc.,* 2007 U.S.

Dist. LEXIS 41834 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44,

52 (2d Cir.1986). Since Plaintiff has failed to state a claim under the FDCPA, Plaintiff's state law

claim should also be dismissed. *See, Spagnola v. Chubb Corp.,* 574 F.3d 64, 2009 U.S. App. LEXIS

16679 (2d Cir. N.Y. 2009). Likewise, this Court should decline to exercise jurisdiction over these

state law claims.

However, should this Court choose to exercise jurisdiction over the state cause of action, it

is evident that Plaintiff has failed to state a claim under the GBL. In order to state a claim under

GBL § 349, a plaintiff must allege: "**(1)** the act or practice was consumer-oriented; **(2)** the act or

practice was misleading in a material respect; and **(3)** the plaintiff was injured as a result." *Spagnola*

*v. Chubb,* 574 F.3d 64.74 (2d Cir. 2009) (citing *Maurizio v. Goldsmith,* 230 F.3d 518,521 (2d Cir.

2000) (per curiam)). "[T]he gravamen of [a GBL § 349] must be consumer injury or harm to the

public interest." *Securitron Magnalock Com. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir. 1995).

Here, plaintiffs has failed to plead that defendants were engaged in a "consumer-orientated"

act or affirmatively sought transactions with consumers. *See, e.g., Hayrioglu v. Granite Capital*

*Funding, LLC,* 794 F. Supp.2d 405, 410 (E.D.N.Y. 2011); *Sheehy v. New Century Mortg. Corp.,*

690 F. Supp.2d 51 (E.D.N.Y. 2010); *Small v Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615 (1999). Indeed, the complaint fails to allege that defendants directed their actions to the general public. Further, the Complaint does not allege that defendants sell, promote, or advertise goods or services to consumers. And despite plaintiff's attacks on defendants' conduct in the collection action, conduct by a party in the course of litigation (or any other legal proceeding) as a matter of law is not consumer-oriented activity within the ambit of GBL §349. *DirecTV, Inc. v. Rowland*, 2005 U.S. Dist. LEXIS 2454, 2005 WL 189722 at *8 (W.D.N.Y. Jan. 22, 2005) (holding that defendants' alleged mailing of letters threatening litigations fell outside the scope of § 349 because such conduct was not consumer-oriented). As the Federal Trade Commission has stated, in the context of the Fair Credit Reporting Act, "*litigation is not a 'business transaction' involving the consumer.*" 16 C.F.R. Part 600, 1990 WL 342991, at 26 (May 4, 1990) (emphasis supplied). A defendant in a collections lawsuit (such as the instant plaintiff) is a party to a private contract – and New York law is clear that "private contract disputes which are unique to the parties do not fall within the ambit of [GBL §349(b)]." *Flax*, 54 A.D.3d at 995 (*quoting Oswego*, 85 N.Y.2d at 25); *see also New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 321, 639 N.Y.S.2d 283 (1995) (striking §349 claim over policy coverage and processing of an insurance claim); *Ladino*, 52 A.D.3d at 574 (finding that issuing a loan to a third party without knowledge of the Plaintiff did not constitute a violation of § 349).

In order to develop and enhance his GBL claim, plaintiff boldly alleges that "Defendants have routinely engaged in an attempt to collect debts (often including an attempt to enforce post-judgment remedies) without documentation sufficient to prove they have any right to collect on the

subject debts."[41] To support these frivolous and defamatory allegations, plaintiff manufactures and distorts the results of four unrelated cases.[42]

1. In the case of *Musah v. Houslanger & Assocs., PLLC,* the case settled and a stipulation of dismissal was filed with the court on 5/30/2014. There were no adverse findings of fact - or for that matter - any findings of fact by the court prior to settlement and dismissal of the action.

2. Similarly, in *Okyere v. Palisades Collection,* plaintiff's citation to a decision on a motion to dismiss is not equivalent to a factual finding by a court. In fact, despite plaintiff's mischaracterization, there were no factual findings made by the court prior to settlement and dismissal of the action.

3. With regards to *Centurion Capital Corp. v Guarino,* 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345, 2012 N.Y. Misc. LEXIS 6001, 2012 NY Slip Op 52435(U), 2012 WL 6950269 (N.Y. Civ. Ct. 2012), the court expressly concluded in favor of Palisades, holding that "based on the submission from Palisades Acquisition XVI, all stays on maintaining litigation brought by these five plaintiffs and enforcement of the judgments entered in their favor in Richmond County are lifted. Palisades Acquisition XVI, may take steps to enforce these judgments and litigate any of the matters brought by these five plaintiffs not yet reduced to judgment." Furthermore, the discrepancies alluded to by the court, did not involve instant defendants. Instead the genesis of the issues stemmed from an unconnected debt collection law firm shutting its doors and subsequently entering into receivership.

---

[41] See Plaintiff's Complaint, ¶ 32.

[42] *See Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 508, 510 (S.D.N.Y. 2013); *Musah v. Houslanger & Assocs., PLLC,* 962 F. Supp. 2d 636, 2013 U.S. Dist. LEXIS 121152, 2013 WL 4516786 (S.D.N.Y. 2013); *Centurion Capital Corp. v. Guarino,* 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345 (Civ. Ct. 2012); *Colonial Credit Corp. v. Beyers,* 46 Misc. 3d 1221(A) (N.Y. Civ. Ct. 2015). Plaintiff's Complaint, ¶ 32.

**4.** Likewise, plaintiff cavalierly misinformed this Court by alleging that defendants were sanctioned in *Colonial Credit Corp. v. Beyers*. However, it appears that plaintiff selectively chose to leave out the subsequent case history, including the final decision order from Hon. Philip S. Straniere, in which he expressly ordered "the sanctions assessed by order dated February 19, 2015... are cancelled and vacated."[43]

Because plaintiff fails to plead facts sufficient to support a GBL violation, the § 349 claims must be dismissed.

## **CONCLUSION**

This entire lawsuit against defendants is based on plaintiff's implausible purported unfamiliarity with collection activities related to the Buffalo City Court action against plaintiff – spanning the length of <u>nine full years,</u> as well as **(1)** informal email correspondence improperly attached to this complaint, consisting of mischaracterized confidential settlement dialogue between the parties; **(2)** plaintiff's attorneys alleged years of knowledge as to the inner working of the practices of third party debt buyer; and **(3)** a 3 ½ page introductory soliloquy by plaintiff, which asks this court to ascribe factual and legal conclusions against defendants based on completely unconnected news articles from the <u>Boston Globe,</u> the <u>New York Times</u>, the <u>Chicago Tribune,</u> as well as an unrelated study by the <u>New Economy Project</u> and <u>comments furnished by consumer advocates</u>. Based on this and for all the reasons set forth above, defendants respectfully request that the Court dismiss the claims asserted in plaintiff's Amended Complaint with prejudice, and any such other and further relief that the Court deems necessary and proper.

---

[43] See *Colonial Credit Corp. v. Beyers*, at Defendants' Exhibit <u>K</u>

Dated: New York, NY
      July 28, 2015

                                      Respectfully submitted,

                                      /S/ Scott E. Wortman
                                      Warshaw Burstein, LLP
                                      By: Scott E. Wortman, Esq.
                                      555 Fifth Avenue
                                      New York, NY 10017
                                      (212) 984-7723
                                      swortman@wbcsk.com

**EXHIBIT "O"**

**WARSHAW BURSTEIN, LLP**
555, Fifth Avenue
New York, NY 10017
Telephone: 212-984-7700
www.wbcsk.com



Scott E. Wortman
Partner
212-984-7723
swortman@wbcsk.com

September 14, 2015

Via Email: sandrews@kennethhiller.com; thiller@kennethhiller.com

Law Offices of Kenneth Hiller, PPLC
Attn: Seth Andrews and Timothy Hiller
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

Re:     **McCrobie v. Palisades Acquisition XVI, LLC et al (15-cv-00018-JTC)**
        **Letter/Motion Pursuant to Fed. R. Civ. P. 11**

Dear Mr. Andrews and Mr. Hiller,

        This firm is counsel to defendants Palisades Acquisition XVI, LLC ("Palisades"), Houslanger

& Associates, PLLC ("Houslanger & Associates") and Todd Houslanger (collectively, "defendants") in

the above captioned matter. On behalf of defendants, please accept this correspondence as a formal

demand that you dismiss all claims in plaintiff's amended complaint (hereinafter "complaint")

against Todd Houslanger and withdraw all claims arising under 15 U.S.C. §§ 1692e(9), 1692f(5) and

1692f(6) as against all defendants. This correspondence is being sent to you in good faith in order

to provide you with a chance to comply with *Rule 11* of the Federal Rules of Civil Procedure and to

avoid having to file a motion for monetary sanctions against plaintiff and your law firm.

### RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

        The purpose of *Rule 11* sanctions is to give attorneys pause before they file baseless papers.

*Rule* 11 authorizes sanctions for litigation practices that are frivolous or brought for any improper

purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

{900277.1}

*See Rule 11(b)(1). Rule 11* similarly authorizes the imposition of sanction upon an attorney or client who, after reasonable inquiry, presents signed papers that contain "claims defenses, and other legal contentions" not "warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.,* See *also United States v. Seltzer,* 227 F.3d 36, 42 (2d Cir. 2000).

In the Second Circuit, "liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers. *ATSI Communs., Inc. v. Shaar Fund, Ltd.,* 579 F.3d 143, 2009 U.S. App. LEXIS 19753 (2d Cir. N.Y. 2009).   Rule 11(b)(3) requires an attorney to certify that the allegations and other factual contention have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity to further investigation or discovery. Rule 11 makes it clear that sanctions may be based on a single invalid legal or factual theory, even if other asserted theories are valid. *See Antonious v. Spalding & Evenflo Cos.,* 275 F.3d 1066, 2002 U.S. App. LEXIS 165, 61 U.S.P.Q.2D (BNA) 1245, 51 Fed. R. Serv. 3d (Callaghan) 1192 (Fed. Cir. 2002).

### OBJECTIVELY FRIVOLOUS CLAIMS AGAINST TODD HOUSLANGER

Plaintiff's complaint raises serious allegations of unlawful and unethical conduct against Todd Houslanger without factual and legal support and any meaningful analysis. Just a few examples of plaintiff manufacturing allegations against Todd Houslanger not supported by plaintiff's complaint or existing law, include but are not limited to the following:

1. Falsely alleging that courts have found that Todd Houslanger has an established practice of enforcing post judgment remedies many years after the original judgment was taken without sufficient documentation;[1]

---

[1] See Plaintiff's Complaint, ¶ 32

000138

2. Falsely alleging that Todd Houslanger filed assignments of judgment with so many defects and in such large numbers that a court was forced to intervene on the basis of due process protections;[2]

3. Falsely alleging that Todd Houslanger (a) ignored court orders, (b) did not respond to requests by a court, (c) and that sanctions were imposed due to unlawful and unethical actions by Todd Houslanger;[3]

4. Falsely alleging that Todd Houslanger admitted that his client did not have standing to pursue any post judgment remedies in the instant matter;[4]

5. Creating legal contentions not supported by any existing law that Todd Houslanger is somehow personally responsible for a plethora of violations under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1), 1692f(5), 1692f(6) and N.Y. Gen. Bus. Law § 349;

6. Falsely alleging that Todd Houslanger has personally committed fraud;[5]

7. Falsely alleging that Todd Houslanger's fraudulent conduct has caused economic and emotional damages to Plaintiff;[6]

8. Wholly ignoring the facts of certain cases in an attempt to make it appear that Todd Houslanger has been found liable for misconduct, which is a completely specious allegation;[7] and

9. Casting dispersions against Todd Houslanger that grossly mischaracterize facts and the law to further support an unsupportable complaint against Todd Houslanger.

As I'm sure you can appreciate, alleging in pleadings that an attorney has committed unlawful and unethical acts without any factual support other than mere conclusory statements hits

---

[2] Id., at 32(b)
[3] Id., at 32(c).
[4] Id., at 33
[5] Id., at 43
[6] Id., at 44
[7] Id., at 32

000139

at the very heart and essence of Rule 11 safeguards. In fact, based on plaintiff's own allegations, you are very familiar with the substantial costs involved with defending a federal action (notwithstanding merit), and you are similarly aware that adding Todd Houslanger as an individual defendant has no basis in law other than strategically increasing the value of this action by way of inequitable leverage and intense emotional pressure on the individual. In other words, plaintiff flatly fails to support any of these vicious attacks against Todd Houslanger and merely continues to unfairly tax the resources of defendants and the court.

As clearly articulated by this court, under New York law, to pierce the corporate veil, a party must establish that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury. *See Allison v. Whitman & Meyers, LLC*, 2015 U.S. Dist. LEXIS 24050 (W.D.N.Y. Feb. 25, 2015). Here, plaintiff does not plead any facts to support any theory that Todd Houslanger should be individually liable as the alter ego of Houslanger and Associates. What's more, in addition to not pleading or even implying that Todd Houslanger failed to comply with corporate formalities, or that he exercised complete domination of the corporation in respect to committing a wrong against plaintiff, plaintiff does not even allege that Todd Houslanger is a debt collector as defined by 15 U.S.C. § 1692a(6).

As attorneys, you are unequivocally obligated to comply with Rule 11. In determining whether an attorney has violated Rule 11, courts determine whether the attorney's conduct meets "an objective standard of reasonableness." See *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995). This objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'" *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (quoting Fed. R. Civ. P. 11 Advisory Committee Note to 1993 amendments). Here, considering the discrepancy between the legal conclusions and the facts pleaded in the complaint, it appears that plaintiff did not conduct a reasonable and competent

000140

inquiry prior to filing the lawsuit and that the allegations against Todd Houslanger are factually baseless from an objective perspective. Alternatively if plaintiff did conduct a reasonable and competent inquiry, it appears that the purpose behind these frivolous allegations against Todd Houslanger is harassment and to increase the cost of litigation.

### OBJECTIVELY FRIVOLOUS CLAIMS UNDER 15 U.S.C. §§ 1692e(9), 1692f(5) AND 1692f(6)

Under Rule 11, upon filing this threatened complaint you are certifying that it was filed to the best of your knowledge, information and belief, and that the factual contentions have evidentiary support. To that point, it appears that you have intentionally brought claims without any support, including the following:

1. The complaint flippantly alleges a violation of 15 U.S.C. § 1692f(6) without stating any non-judicial threats to effect dispossession or disablement of property. Considering your own factual allegations specifically and solely refer to enforcement of a judgment through a judicial remedy (wage garnishment), there is no possible connection between your factual allegations and a legal claim for non-judicial threats under 15 U.S.C. § 1692f(6).

2. Without any analysis of the statute, you misrepresent that defendants violated 15 U.S.C. § 1692e(9). However, plaintiff does not state how or what notice created a false impression as to its source. Based on your own factual allegations, this is an entirely manufactured claim.

3. The complaint alleges a violation of 15 U.S.C. § 1692f(5) without even attempting to justify this unsupportable legal claim. It is axiomatic that there is no possible connection between plaintiff's factual allegations and any charges, concealment, or alternative/misleading purpose to any communication by defendants regulated under this section of law.

### CONCLUSION

Similar to *Majerowitz v. Stephen Einstein & Assocs., P.C.*, 2013 U.S. Dist. LEXIS 115664 (E.D.N.Y. Aug. 15, 2013), the instant grievances at issue are not merely meritless, they are frivolous. In fact, the FDCPA was not passed in order to sprout a cottage industry for lawyers who self-

000141

interestedly battle over attorney's fees in federal court." *Cohen v. Am. Credit Bureau,* No. 10-5512, 2012 U.S. Dist. LEXIS 33687, at *5 (D.N.J. Mar. 13, 2012) (citing *Lee v. Thomas & Thomas,* 109 F.3d 302, 306-07 (6th Cir. 1997)). Just as "[c]ounsel should not reap financial rewards for prolonging litigation unnecessarily" in FDCPA cases, *Lee,* 109 F.3d at 306-07, so too should counsel not reap financial rewards by engineering a previously non-existent FDCPA violation. This is not the intent of the FDCPA, and by filing the above-mentioned frivolous claims, you are causing defendants to incur costs and fees with defending these manufactured allegations.

We are confident that you will agree to dismiss all claims in the complaint against Todd Houslanger and withdraw all claims arising under 15 U.S.C. §§ 1692e(9), 1692f(5) and 1692f(6) as against all defendants. However; if you choose to move forward with these claims, we ask that you take the necessary steps to ensure that you and plaintiff preserve all potentially relevant material concerning this matter. The type of material to be preserved includes all paper documents and electronically stored information including, but not limited to, email, voicemail, faxes, instant messages and files that are in your or plaintiff's possession, custody or control, whether stored on computers or other storage media (e.g., hard disks, backup tapes, Zip cartridges, cloud storage, CDs, DVDs, etc.). Additionally, if any potentially relevant material is not in your or plaintiff's possession or control, we respectfully request that you notify the current custodian of their duty to preserve information. Furthermore, you should have already initiated a litigation hold for potentially relevant material, and we ask that you act in good faith to secure and audit compliance with the litigation hold.

In light of the foregoing, I expect that you will immediately abandon these objectively frivolous claims. Alternatively, should you choose to move forward with these claims, we will pursue all rights and remedies allowable under the law, including but not limited to sanctions under Fed. R. Civ. P. 11.

000142

Thank you for your attention to the foregoing.

Dated:   New York, New York
        September 14, 2015

                               Very truly yours,

                               **WARSHAW BURSTEIN, LLP**
                               555 Fifth Avenue
                               New York, New York 10017

                               By: /S/  Scott E. Wortman
                                     Scott E. Wortman
                               *Attorneys for Defendants*

000143

# EXHIBIT "P"

000144

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER MCCROBIE,

                                    Plaintiff,

v.                                                    1:15-cv-00018-JTC

PALISADES ACQUISITION XVI, LLC;
HOUSLANGER & ASSOCIATES, PLLC;
TODD HAUSLANGER

                                    Defendants.

---

### NOTICE OF PLAINTIFF'S FIRST MOTION TO AMEND PLAINTIFF'S COMPLAINT

PLEASE TAKE NOTICE, that upon the affirmation of Timothy Hiller, Esq. and

upon all of the other papers and proceedings had herein, Plaintiff will move this Court,

pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for

1. An order granting Plaintiff permission to file and serve Plaintiff's
   proposed second amended complaint (attached hereto along with
   Exhibit A-K) upon Defendants Palisades Acquisition XVI, LLC,
   Houslanger & Associates, PLLC, and Todd Houslanger.

2. An order granting Plaintiff's motion to add Defendant Asta Funding,
   Inc. as a Defendant, and granting Plaintiff permission to serve
   Defendant Asta Funding, Inc. with a copy of Plaintiff's propose
   second amended complaint.

3. Any such other and further relief as the Court may deem just and
   equitable.

To the extent Plaintiff's motion is opposed, Plaintiff intends to file a reply brief.

Dated: August 27, 2015

                                    /s/ Timothy Hiller
                                    Timothy Hiller, Esq.
                                    Law Offices of Kenneth Hiller PLLC

*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: thiller@kennethhiller.com
        sandrews@kennethhiller.com
        khiller@kennethhiller.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER MCCROBIE,

         Plaintiff,

v.              1:15-cv-00018-JTC

PALISADES ACQUISITION XVI, LLC;
ASTA FUNDING, INC.;
HOUSLANGER & ASSOCIATES, PLLC;
TODD HOUSLANGER

        Defendants.

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO AMEND HIS COMPLAINT

### I.  Preliminary Statement

On May 19, 2015, Plaintiff filed his First Amended Complaint.  (Dkt #7).  This complaint was served on all named Defendants within the time allotted by Federal Rule of Civil Procedure 4(m).  (Dkt #10-13).  Upon conferring with the undersigned counsel, and upon further deliberation, Plaintiff now moves to amend his complaint.  He seeks permission to file and serve a copy of the Proposed Second Amended Complaint on all Defendants named therein.

### II. Absent any showing by Defendants that Plaintiff's proposed amendments are futile, Federal Rules of Civil Procedure direct a finding that Plaintiff be granted leave to amend his complaint as requested.

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Nonetheless, leave to amend should be denied only where there is "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party ... [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *accord*

1

000147

*Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir.2002).[1] The Second Circuit has

characterized Rule 15 as encompassing a "liberal" amendment policy. *See, e.g., Ruotolo v. City*

*of New York*, 514 F.3d 184, 191 (2d Cir.2008). A motion to amend under Rule 15(a)(2) may be

made at any stage of the litigation, *see, e.g., Laurent v. PricewaterhouseCoopers LLP*, 2012 WL

3614043, at *3 (S.D.N.Y. Aug. 15, 2012), and "[t]he rule in this Circuit has been to allow a party

to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir.2010)

(quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir.1993)). Thus, case law holds

that the "non-movant bears the burden of showing prejudice, bad faith and futility of the

amendment." *Grant v. Citibank (S.D.) N.A.*, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010)

(citations omitted).

   a.   <u>No reasonable arguments can be made that Plaintiff's motion to amend was made
        upon undue delay, or that it was made in bad faith or with a dilatory motive.</u>

Plaintiff has acted swiftly to amend his complaint in this matter. It first received

feedback on its complaint on July 28, 2015, when Defendants filed a motion to dismiss. (Dkt #

17). Moreover, upon the affixed affidavit it is clear that Plaintiff has not acted in bad faith or

with a dilatory motive. Rather, the purpose of Plaintiff's motion for an amended complaint is to

respond to the motion to dismiss made by Defendant, and hone in on its cause of action with

more clarity. In sum, no reasonable argument can be made that Plaintiff's motion to amend was

made upon undue delay, or that it was made in bad faith or with a dilatory motive.

   b.   <u>Defendants cannot demonstrate prejudice sufficient to defeat Plaintiff's motion to
        amend.</u>

---

[1] The issue of "futility" is addressed in full detail in point "III" of this memorandum.

000148

The "most important factor" in the Rule 15(a) analysis is whether the opposing party would be prejudiced by the proposed amendment. *Roller Bearing Co. of America, Inc. v. American Software, Inc.*, 570 F.Supp.2d 376, 384 (D.Conn. 2008) (*citing Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008). This inquiry is "often intertwined" with the consideration of whether there was undue delay on the part of the movant: a long delay is more likely to be found prejudicial. *See Id.* (*citing Evans v. Syracuse City School Dist.*, 704 F.2d 44, 47 (2d Cir.1983)). But while the addition of a new claim or a change in theory of recovery through amendment may be a factor which contributes to the opposing party's prejudice, it does not constitute undue prejudice. *See Id.* at 385 (citing *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987) (holding that a denial of plaintiff's motion for leave to amend in order to change theories of recovery was an abuse of discretion absent a finding of futility, bad faith, or prejudice); *Arc/Connecticut v. O'Meara*, 2002 WL 31106383, at *3 (D.Conn.2002) (amended complaint filed soon after action was commenced broadening the scope of the case resulted in no prejudice); *Jenn–Air Prods. Co. v. Penn Ventilator, Inc.*, 283 F.Supp. 591, 593 (D.Pa.1968) (holding that Rule 15(a) is to be applied liberally even when the amendment adds an entirely new cause of action)). Where a party seeks to add an additional claim, evaluation of prejudice requires consideration of whether the new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Roller Bearing Co.*, 570 F.Supp.2d at 385 (*citing Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993). Notice to the nonmoving party of the underlying facts relied upon in the new claim or cause of action weighs against a finding of prejudice to the nonmoving party. *See Id.* (*citing Kreppein v. Celotex Corp.*, 969 F.2d

3

1424, 1427 (2d Cir.1992) (holding defendants were not prejudiced by the addition of a claim for

damages for pain and suffering in a products liability action as defendants were on notice of the

underlying facts relied on)). It is the non-moving party's burden to demonstrate that it would be

unfairly prejudiced by the proposed amendment. *See Id.* (citing Evans, 704 F.2d at 47).

Applying those factors to the present case, it is clear that the proposed amendment would

not prejudice Defendants. Plaintiff's proposed amendments merely elaborate, expand upon, and

clarify the allegations made in the previous Complaint and, indeed, many of the changes made in

this proposed amended complaint are made upon Defendant's insistence. Others are made to

address misunderstandings Defendant appears to harbor about Plaintiff's complaint. Defendant

first gave Plaintiff feedback regarding its complaint less than thirty days ago when it filed its

Motion to Dismiss. (Dkt #17). Most importantly, Plaintiff is making this Motion to Amend

within the original one-year statute of limitations for filing this action.[2] No reasonable argument

can be advanced that Defendants will be prejudiced by this motion to dismiss such that Plaintiff

should be denied an opportunity to amend its complaint.

### III. Plaintiff's amendments are not futile because Plaintiff's proposed amended complaint could withstand a motion to dismiss pursuant to Rule 12(b)(6) on both counts.

A proposed amendment is futile if the proposed claim could not withstand a Fed.R.Civ.P.

12(b)(6) motion to dismiss. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir.2002). A claim can

only withstand a Rule 12(b)(6) motion if it does not contain enough allegations of fact to state a

claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007). In deciding whether a complaint meets this threshold, the

---

[2] As explained below, an employee-attorney of Defendant Houslanger & Associates, PLLC
signed the income execution at issue in this case on August 28, 2014.

000150

Court is required to accept the material facts alleged in the complaint as true and draw all

reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,

1949–50, 173 L.Ed.2d 868, 884–87 (2009). Because both counts of Plaintiff's proposed amended

complaint can withstand this scrutiny, Plaintiff's proposed amendment is not futile.

    a.  Summary of Plaintiff's Proposed Second Amended Complaint.

        Plaintiff, Christopher McCrobie allegedly incurred a credit card debt to Providian

Financial (hereinafter referred to as the "subject debt"). (*See* PSAC ¶14).[3] He allegedly

defaulted on the subject debt. (*Id.* at ¶16). Sometime after the alleged default, Providian

Financial allegedly assigned the subject debt to Centurion Capital Corporation. (*Id.* at ¶17).

Centurion Capital Corporation initiated a lawsuit against Plaintiff regarding the subject debt. (*Id.*

at 18). It served Plaintiff at an old address by substituted service (posting and mailing). (*Id.* at

19-20). As a result, Plaintiff never appeared, and a default judgment was entered in favor of

Centurion Capital Corporation on or about March 8, 2007. (*Id.* at ¶21).

        On August 28, 2014, more than seven years after the entry of the judgment, an attorney-

employee of Houslanger & Associates, PLLC signed and forwarded an income execution to the

Buffalo City Marshall's Office with instructions to execute on the judgment entered relating to

the subject debt. (PSAC ¶¶39-41; *see also* Exhibit F). This document represented that

Defendant Palisades Acquisition XVI, LLC ("Palisades") was the "current creditor" by way of

assignment. (*Id.*). Pursuant to Defendant Houslanger & Associates, PLLC's request, this income

execution was ultimately forwarded by the Buffalo City Marshall's Office to Plaintiff's

employer, and Defendants subsequently received $572.45. (*Id.* at ¶61; *see also* Exhibit A). Prior

to executing on Plaintiff's income, Defendants failed to file an assignment reflecting that

---

[3] All references to Plaintiff's Proposed Second Amended Complaint will be made in the
following format (PSAC ¶"_____")

000151

Palisades was the current judgment creditor. (*Id*. at ¶¶52-54). Plaintiff was also never provided

with a notice of the alleged assignment. (*Id*. at ¶¶55-56).

When confronted by Plaintiff's attorneys and asked to provide documentation

establishing Palisades' right to initiate post judgment remedies against Plaintiff, Defendant Todd

Houslanger provided documents which failed to make any reference to Plaintiff, Centurion

Capital Corporation, or the default judgment obtained against Plaintiff (PSAC ¶¶62-64; *see also*

Exhibit B). Plaintiff's counsel informed Defendant Todd Houslanger of the deficiencies with

these documents, to which he responded that the documents which he previously provided were

"the assignment" and that the assignment was in a "pool of matters" in which he alleged that

Plaintiff's account had been included. (*Id*. at ¶¶65-66; *see also* Exhibit A). He added, "[t]his is

how they did things at the time of the assignment." (*Id*.).

Upon further investigation, Plaintiff learned that: (1) the "pool of matters" referenced by

Defendant Todd Houslanger referred to Palisades' acquisition of the "Great Seneca Portfolio"

through which Palisades, and its parent company Asta Funding, Inc., purchased $6.9 billion

worth of charge off debt for $300 million (approximately four cents on the dollar) from Great

Seneca Financial Corp. and other debt buyers. ((*Id*. at ¶ 67); (2) that Great Seneca Financial

Corp. was, itself, a debt buyer who had acquired this portfolio from numerous parties, most of

whom were also debt buyers; (3) that Palisades plan was to service this debt through outsourcing

and technology, and without adding materially to its infrastructure; (4) that it bought the debt "as

is" with extremely limited put-back rights and warranties regarding collectability;[4] (5) that it had

only conducted an "initial review" of the portfolio prior to purchase; (6) that shortly after the

---

[4] In other words, Palisades acquired the portfolio knowing that the debt contained in the portfolio
may not be valid or provable, and declined to put any burden on Great Seneca or the other debt
buyers to assist them should anyone challenge the legitimacy of any particular debt in the
portfolio

6

purchase, Palisades adopted a policy of litigation, rather than collection due to cash flow concerns; (7) that by June of 2014, Palisades was telling investors that given the age of its portfolio (currently 12-13 years removed from origination), and given that the portfolio consisted of debts which had already been purchased by at least one other debt buyer prior to Palisades purchase of the Great Seneca Portfolio, that it was on the "outer bounds of our collection forecasts" and that it could no longer value the portfolio according to its previous accounting methods; (8) that Palisades' parent company, Asta Funding, Inc., advertises on its website that after it purchases portfolios, it will not "burden" the seller with "overwhelming requests for documentation, or ongoing communications with debtors whose accounts have been sold" – which is virtually an invitation to unscrupulous players to serve up fraudulent or uncollectable accounts. (*Id.* at 67; *see also* Exhibits J-L).

The above facts establish that it is plausible, if not likely, that Plaintiffs can prove the allegations alleged in the proposed second amended complaint. In addition, it is well established that many third party debt buyers do not possess, and cannot obtain, documents necessary to establish a prima facie case. (PSAC ¶68) (collecting cases).[5] In fact, multiple courts have found that the Defendants in this action have on multiple occasions initiated post judgment remedies and have enforced judgments remedies against large numbers of judgment debtors based upon judgments entered many years ago in favor of other parties, and without documentation sufficient to prove that Defendants have any right to enforce said judgments.[6] (*Id.* at ¶69a-c). Finally, Plaintiff's attorneys previously brought suit against Houslanger & Associates, PLLC

---

[5] Keep in mind that, in this case, all of the debts contained in the Great Seneca Portfolio were purchased from other debt buyers themselves.

[6] Although these cases do not implicate Asta Funding, Inc. directly, as the parent corporation of Palisades, they are vicariously liable for the co-defendant's tortious acts. *See Goes Lithography*

000153

and Todd Houslanger for attempting to enforce post judgment remedies without any legal right

to do so in the matter of *Argenteri v. Credigy Receivables Inc. et al*, (W.D.N.Y. Civil Action No.

1:14-cv-00425) (*Id.* at ¶¶71-71). In that case, as with this case, there were numerous deficiencies

with the documentation allegedly enabling Mr. Houslanger's client to initiated and enforce post

judgment remedies. (*Id.*).

Plaintiff alleges two classes which are identical in all respects except for the time periods

in which the classes cover. The first class consists of consumers with New York addresses, who

within one year prior to the filing of Plaintiff's Motion to Amend in this action;

> a. Had an income execution forwarded to their employer bearing the
> signature of Todd Houslanger (or any other attorney employed by
> Houslanger & Associates, PLLC); or
> b. Had their bank account restrained after a subpoena and/or restraining
> notice bearing Todd Houslanger's signature (or any other attorney
> employed by Houslanger & Associates, PLLC) was forwarded to their
> bank; and in which
> c. Defendant Todd Houslanger represented that Palisades Acquisition
> XVI, LLC was the "current creditor" (or employed any other
> substantially similar language) by way of assignment; and
> d. Subsequently had their wages garnished, or had money taken from
> their bank accounts pursuant to post judgment remedies initiated and
> enforced against them by Defendant Todd Houslanger.

(PSAC ¶¶76-88).

Plaintiff alleges individually, and on behalf of this class, that the actions of the

Defendants described above violated 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4),

§1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1). (PSAC ¶73-88).

The second class consists of consumers with New York addresses, who:

> a. Within three years before the filing of Plaintiff's Motion to Amend in
> this action;

---

*Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1045 (N.D. Ill. 1998); *Shapiro, Bernstein & Co., Inc. v. H.L. Green Co. Inc.*, 316 F.2d 304, 307 (2d Cir.1963).

8

  b. Had an income execution forwarded to their employer bearing the
signature of Todd Houslanger (or any other attorney employed by
Houslanger & Associates); or

  c. Had their bank account restrained after a subpoena and restraining
notice bearing Todd Houslanger's signature (or any other attorney
employed by Houslanger & Associates) was forwarded to their bank;
and in which

  d. Defendant Todd Houslanger represented that Palisades Acquisition
XVI, LLC was the "current creditor" (or employed any other
substantially similar language) by way of assignment; and

  e. Subsequently had their wages garnished, or had money taken from
their bank accounts pursuant to post judgment remedies initiated and
enforced against them by Defendant Todd Houslanger.

(PSAC ¶¶87-100).

On behalf of himself, and on behalf of this class, Plaintiff alleges (1) that all named

Defendants violated New York General Business Law §349. (*Id.* at ¶¶89-100). Plaintiff

specifically pled the numerosity, predominance, typicality, adequacy, and superiority

requirements of Federal Rule of Civil Procedure 23. (*Id.* at ¶¶73-75). Plaintiff, individually, and

on behalf of the classes, Plaintiff requests (1) a judgment declaring that the Defendants have

committed the violations of the law alleged in the proposed amended complaint; (2) injunctive

relief pursuant to NY GBL §349; actual and/or compensatory damages; statutory damages

pursuant to the FDCPA and NY GBL §349; and treble damages pursuant to NY GBL§349.

(PSAC at pp. 35-36).

  b. <u>Plaintiff's Class Allegations are not futile</u>

This is not a motion for class certification. As a result, in determining whether Plaintiff's

proposed amendment is futile, Plaintiff it is not necessary to evaluate the likelihood that the

proposed class will be certified under Fed.R.Civ.P. 23(c). *Hallmark v. Cohen & Slamowitz, LLP*,

283 F.R.D. 136, 141 (W.D.N.Y.,2012) (*citing Presser v. Key Food Stores Cooperative, Inc.*, 218

F.R.D. 53, 56 (E.D.N.Y.2003)). In determining whether the proposed amendment containing

9

class allegations is futile, the court considers the likelihood that the proposed class will be certified under Fed. R. Civ. P. 23. *Id.* However, where as here, the proposed amendment concerns the assertion of a new claim on behalf of a class, the certification of which will occur at a later date, rather than an amendment that would redefine an already-certified class, the court's inquiry into the class action requirements at the pleadings amendment stage is limited. *Id.* ((citing Presser, 218 F.R.D. at 57) (*citing Academy of Ambulatory Foot Surgery (AAFS) v. American Podiatry Ass'n*, 516 F.Supp. 378, 383 (S.D.N.Y.1981)).

Rule 23(a) of the Federal Rules of Civil procedure provides that a class may be certified only if four pre-requisites are met: numerosity, commonality, typicality, and adequacy of representation. *See Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (Citing Dukes, 131 S.Ct. at 2550; *accord In re Nassau Cnty Strip Search Cases*, 461 F.3d 219, 225). Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority. *Id* at 81 (citing Fed.R.Civ.P. 23(b)(3)). Reviewing these criteria in light of Plaintiff's limited burden at the pleading stage, it is clear that Plaintiff has put forward plausible class allegations.

*1. Numerosity*

While a plaintiff may not have precise information supporting a specific class size, a " 'court may make common sense assumptions to support a finding of numerosity.' " *Hallmark v. Cohen & Slamowitz, LLP*, 283 F.R.D. 136, 141 (W.D.N.Y.,2012) (*citing Harrison v. Great Springwaters of America, Inc.*, 1997 WL 469996, *3 (E.D.N.Y. June 18, 1997) (*quoting In re Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y.1997)). In *Harrison*, given the nature of defendant's high volume collection business, the court found it "reasonable to assume" that the proposed class would satisfy the numerosity requirement of Rule 23(a)(1). *Id.*

10

Here, Defendants are collection efforts against Plaintiffs are, at least in part, in an attempt to collect on an alleged $6.9 billion dollar "pool" of charged off debt. (PSAC ¶29). Defendants are so notorious for collecting debt in the state of New York that consumer attorneys have put up targeted advertisements directed to the victims of their debt collection schemes. (PSAC ¶32; *see also* Exhibit G). One New York state court noted that Defendants were filing assignments of "judgements" with "so many defects" and in such "large number[s]" that it "had to intervene" to determine if "due process rights had been protected." *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345, 2012 WL 6950269, at *4 (N.Y. Civ. Ct. 2012). As such, this court can easily make the sort of reasonable assumptions regarding numerosity that the courts in *Harrison* and *Hallmark* did, especially in light of Plaintiff's limited burden at the pleading stage.

### 2. *Commonality and Typicality*

The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3). *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (C.A.2 (N.Y.),1997) (*citing General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982); *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2d Cir.1986); 7 Wright & Miller, Federal Practice and Procedure § 1764 (1972)). The crux of both requirements is to ensure that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* (*citing Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13).

In *Sykes v. Mel S. Harris and Associates LLC*, the Second Circuit held that where the cause of the injury is the same for all plaintiffs, the commonality and typicality determination is

000157

satisfied. *Sykes*, 780 F.3d at 84 ("The district court thus determined that the common injury in this case, which was the same for all plaintiffs, is a fraudulently procured default judgment. We conclude that this commonality determination was not an abuse of discretion."). Here, in all three causes of action, Plaintiffs' injuries derive from Defendants' unitary course of conduct of (1) fraudulently initiating and enforcing post judgment remedies; (2) misrepresenting to plaintiffs' that an attorney had conducted even a minimal review of Palisades's right to initiate and enforce post judgment remedies against Plaintiffs. (PSAC ¶35; 48; 53; 64).   As such, and pursuant to *Sykes*, because Plaintiff's proposed amended complaint alleges that the cause of injury for all plaintiffs stems from the same collection conduct, it is therefore plausible under Rule 23(a)'s commonality requirement.

### 3. *Predominance*

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (C.A.2 (N.Y.),2002) (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). While Rule 23(b)(3) also speaks in terms of commonality, it imposes a "far more demanding" inquiry. *Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 87 (C.A.2,2015) (*citing Amchem*, 521 U.S. at 623–24, 117 S.Ct. 2231).  By its terms, it anticipates the existence of individual issues: the class may only be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members." *Id.* (citing Fed.R.Civ.P. 23(b)(3)). The mere existence of individual issues will not be sufficient to defeat certification.  Rather, the balance must tip such that these individual issues predominate. But the district court must establish that a class action is superior to "other available methods for fairly and efficiently adjudicating the controversy." *Id.*

12

Here, as in *Sykes*, Plaintiffs' claims arise out of Defendants' uniform widespread practice. In *Sykes*, the practice was the practice of filing baseless automatically-generated, form affidavits of merit based on "personal knowledge" and, in many instances, fraudulent affidavits of services, to obtain default judgments against Debtors in state courts. *See Sykes v. Mel Harris and Associates*, LLC, 285 F.R.D. 279, 293 (S.D.N.Y. 2012) (*affirmed by* 780 F.3d 70). Here, Plaintiff's complaint alleges that Defendants' had a practice of initiating post judgment remedies, and enforcing judgments against consumers despite the fact that, 1) Defendants Todd Houslanger and Houslanger & Associates, PLLC had not conducted a meaningful and good faith investigation into the legal and factual bases supporting Palisades right to initiate and enforce post judgment remedies against Plaintiffs; 2) Defendants did not possess documentation establishing that Palisades had properly acquired the underlying judgment that was being enforced; 3) Defendants had not filed documentation establishing that the judgments had been legally assigned to Palisades with the court that had issued the judgment prior to initiating and enforcing post judgment remedies against Plaintiffs, and 4) that no notice had been given to Plaintiff of the alleged assignment as required by all of the Plaintiffs, and have given the Plaintiffs notice of the alleged assignment as required by *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 639-640 (S.D.N.Y. 2013) and *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010). (PSAC ¶¶48-64). Whether these practices violate the FDCPA and NY GBL §349 does not depend on individualized considerations. Moreover, while some individual issues may exist as to causation and damages—in light of the number of management tools available to address individualized issues which might arise in a class action, including *inter alia*, appointing a magistrate judge or special master to preside over individual damages proceedings, decertifying the class after the liability trial and providing notice to class

13

members concerning how they may proceed to prove damages, creating sub classes, or altering

and amending the class," any such individual issues are predominated by the common question

of whether Defendants are engaged in business practices which violate federal law. *See Sykes*,

285 F.R.D at 293-294, (*citing In re Visa Check*, 280 F.3d at 139-141).

To say the least, it is plausible that Defendants are engaged in business practices, as

alleged in Plaintiff's complaint, which violate the FDCPA and NY GBL §349. This is especially

the case in light of Plaintiff's limited burden at the pleading stage with regards to its class

allegations. Plaintiff's class allegations are therefore not futile.

### 4. *Superiority*

As it relates to consumer litigation, class actions are generally superior methods of

resolving litigation. *See Sykes v. Mel Harris and Associates, LLC*, 285 F.R.D. 279, 294-295

(S.D.N.Y. 2012) (*affirmed by* 780 F.3d 70) (*In re Risk Mgmt. Alternatives, Inc.*, 208 F.R.D. at

507 ("Suits brought under the FDCPA such as this case [concerning the use of standardized

documents] regularly satisfy the superiority requirement of Rule 23."). It is, "without question,

more efficient than requiring thousands of debtors to sue individually." *Id.* "Indeed, the class

members' interests in litigating separate actions is likely minimal given their potentially limited

means with which to do so and the prospect of relatively small recovery in individual actions."

*Id.* Moreover, the Second Circuit has stated that just because litigation misconduct which forms

the gravamen of a consumer class action occurred in state court, it does not follow that the state

courts are a superior forum for adjudicating class claims arising from the litigation misconduct.

*See Sykes v. Mel S. Harris and Associates LLC*, 780 F.3d 70, 92-93 (C.A.2,2015). In sum, no

reasonable argument can be made that forcing class members to litigate individual claims against

the defendants is superior to a class action.

14

*5. Conclusion*

In sum, Plaintiff's Proposed Second Amended Complaint sets forth plausible class

allegations that satisfy all of the requirements of Rule 23. This is especially true in light of

Plaintiff's limited burden at the pleading stage with regards to its class allegations. As such,

Plaintiff's Proposed Amended Complaint cannot be dismissed as futile simply because of the

class allegations raised therein. It is therefore necessary to evaluate Defendants' actions to

determine if Plaintiff has pled sufficient acts to demonstrate that Defendants have violated the

FDCPA, and New York General Business Law §349.

c.  Plaintiffs have put forward sufficient facts to render their claims that Defendants violated
    15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10),
    and §1692f plausible.

Plaintiffs' first cause of action is brought under the Fair Debt Collection Practices Act,

§1692, *et seq.* (PSAC ¶76-78). The gravamen of Plaintiff's complaint is that the Defendants

violated the act because (1) they had initiated and enforced post judgment remedies as the

purported assignee of a judgment despite the fact that they could not establish that any such

purported assignment was legally sufficient, (2) Defendants misled the class members into

believing that an attorney employed by Houslanger & Associates, PLLC had conducted at least a

minimal review of whether Palisades was entitled to initiate and enforce post judgment remedies

against Plaintiffs, (3) they had not filed documentation establishing that the judgments had been

legally assigned to Palisades with the court that had issued the judgment prior to initiating and

enforcing post judgment remedies against Plaintiffs, and 4) no notice had been given to Plaintiff

of the alleged assignment as required by *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp.

2d 636, 639-640 (S.D.N.Y. 2013) and *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y.

15

Civ. Ct. 2010).  With regard to each theory, Plaintiff has clearly pled a plausible set of facts
which, if proven true, would demonstrate a violation of the FDCPA.

> 1.  *Defendants' practice of initiating and enforcing post judgment remedies against*
> *Plaintiffs as the purported assignee of the judgment creditors was false, deceptive, unfair,*
> *and unconscionable as contemplated by 15 U.S.C. §1692e, §1692e(2), §1692e (3),*
> *§1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1).*

Under applicable New York law it is the assignee's burden to prove the assignment. *See*

*Citibank (South Dakota), N.A. v. Martin*, 807 N.Y.S.2d 284, 291, 11 Misc.3d 219, 226 (N.Y.City

Civ.Ct.,2005) (citing *Copelco Capital, Inc. v. Packaging Plus Services, Inc.*, 243 A.D.2d 534,

535, 663 N.Y.S.2d 104 (N.Y.A.D. 1 Dept. 1997); *T & G Medical Supplies, Inc. v. State Farm*

*Mut. Auto. Ins. Co.*, 7 Misc.3d 1017(A), 801 N.Y.S.2d 243, 2005 WL 1021510, 2005 N.Y. Slip

Op. 50636 [U] (Civ.Ct. N.Y. Co. 2005, Billings, J.) (collecting cases*)); Palisades Collection,*

*LLC v. Kedik*, 890 N.Y.S.2d 230, 231, 67 A.D.3d 1329, 1330 (N.Y.A.D. 4 Dept.,2009) ("To

establish standing to sue, plaintiff was required to submit admissible evidence that Discover

assigned its interest in defendant's debt to plaintiff."); *Klein v. Carey Printing Co.*, 199 N.Y.S.

19, 20, 120 Misc. 548, 550 (N.Y.Sup. 1923) ("the plaintiff will be required to show as part of her

affirmative case that the cause of action has been assigned to her.").  For an assignment of

judgment to be valid, it must refer specifically to the Defendant's account, and must be

accompanied by an affidavit of an individual with personal knowledge of the account to verify

the accuracy of the information. *See Palisades Collection, LLC v. Kedik*, 890 N.Y.S.2d 230,

231, 67 A.D.3d 1329, 1330 (N.Y.A.D. 4 Dept.,2009) (noting that Palisades failed to produce

even an ounce of evidence that Defendant's particular account was included in the assignment,

and holding that any statement that a particular account is included in an assignment by means of

relying on a spreadsheet must comport with applicable business record foundational

requirements); *see also Midland Funding LLC v. Loreto*, 2012 WL 638807, at *2 (N.Y.City

16

Civ.Ct.,2012) ("...the document cannot be accepted to establish the assignment of the

defendant's account to the plaintiff. Neither the Bill of Sale and Assignment nor the Asset

Schedule specifically refer to the defendant's account. Further, there is no affidavit from

someone with personal knowledge of the account to verify as to the accuracy of this information.

The document is merely signed by an employee of Citibank (South Dakota), NA. There is no

indication that Midland Funding LLC accepted the assignment"). An assignment is perfected as

of the date of its execution, not of its filing. *See Musah v. Houslanger & Associates, PLLC,*

2012 WL 5835293, at \*3 (S.D.N.Y.,2012) (*citing Law Research,* 498 F.2d 836, 839 (2d Cir.

1974)).

Plaintiff's complaint clearly sets forth adequate facts which demonstrate that despite

initiating post judgment remedies against class members, Defendants have absolutely no proof

that they were entitled to use post-judgment remedies against class members. At the outset, one

has to consider the nature of the "Great Seneca Portfolio" purchase itself. Defendants'

purchased billions of dollars' worth of charged off debt, for pennies on the dollar. (PSCA ¶67a).

This debt was not purchased directly from the originator, but was purchased from other debt

buyers (PSAC ¶67e). Debt buyers often are unable to produce documents establishing a prima

facie case in collection lawsuits. (PSAC¶68). Thus, it is exceedingly likely that with respect to a

great number of the accounts allegedly purchased by Palisades, the debt buyer did not possess

sufficient documentation, and as such, could not possibly provide Palisades with sufficient

documentation to enable it to legally collect on the accounts.

Even if the debt buyers selling accounts to Palisades possessed sufficient documents to

pass along in some cases, there are compelling reasons to believe that Palisades did not acquire

the necessary documentation from the debt buyers it purchased from in the "Great Seneca

000163

Portfolio" deal. First, there is Mr. Houslanger's admission that Palisades could not prove the existence of a valid assignment in this and other cases. (*See* PSAC ¶¶62-66; *see also* Exhibit A) (when confronted with the obvious deficiencies in the documentation he believed supported Palisades right to initiated post judgment remedies against Plaintiff, Mr. Houslanger responded that the documents he provided were "the assignment" that it was contained in a "pool of matters" and that "[t]his is how they did things at the time of the assignment."). Second, Palisades itself advertises that it will not burden those who sell it portfolios of debt with "overwhelming requests for documentation" (PSAC ¶67g); this reckless statement is virtually an invitation to unscrupulous players to dump fraudulent or otherwise uncollectable accounts with Palisades. Moreover, Palisades has publicly admitted that it purchased the debts contained in the "Great Seneca Portfolio" "as is," with limited warranties and put back rights, and only with a limited "initial review" into the validity of the underlying debts, which led it to caution investors that the "Accounts in the Portfolio" could "prove to be contrary to our expectations." (PSAC ¶67b-c; *see also* Exhibit J). A third indication that Palisades did not acquire the documents necessary to make a prima facie case is that, despite acquiring 6.9 billion dollars' worth of debt, it publicly boasted that it would not materially increase its infrastructure. (PSAC ¶67a).[7]

Even if it were found that Palisades did, by accident, acquire sufficient documentation regarding some of the accounts in the "Great Seneca Portfolio" purchase, there are strong indications from Asta Funding, Inc. that those counts have long since been liquidated, and that it does not possess sufficient documentation to prove that it has any right to collect on the remaining accounts (i.e. the accounts of class members). In its recent August 10, 2015 quarterly

---

[7] Even with technological advances, a company prepared to legitimately service and collect upon a 6.9 billion dollars' worth of debt (and manage the documents necessary to prove the collectability of each individual account in that portfolio) would presumably need to materially increase its infrastructure costs.

000164

statement to the Security and Exchange Commission, Asta Funding Inc. acknowledged that as of June 2014, due to the age of the portfolio at the time of purchase (5 to 6 years old), the fact that it was purchased on the secondary market (i.e. from other "debt buyers" and not from original creditors), and because 6 to 7 years had passed since the purchase, that it could "no longer reasonably forecast cash collections" and that the "portfolio was clearly on the outer bounds of our collection forecasts." (PSAC ¶67e; *see also* Exhibit K). Recent court cases confirm Palisades warnings to investors regarding its ability to collect upon the accounts remaining in the Great Seneca Portfolio. For instance, in *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345 (Civ. Ct. 2012), Palisades XVI, LLC (represented by Todd Houslanger of Houslanger & Associates) was noted to be filing assignments of "judgements" with "so many defects" and in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected." (PSAC ¶69b). In *Colonial Credit Corp v. Beyers*, 3d 1221(A) (N.Y. Civ. Ct. 2015), Palisades was noted to be initiating post judgment collection efforts with regards to a judgment that had been previously satisfied, and was unable (or unwilling) to prove chain of title indicating that it had any interest in the judgment in the first place. (PSAC ¶69c). In sum, ample evidence has been put forward that, at least as it relates to the class members, Defendants had no idea whether the portfolio they purchased contained legally enforceable debt to which the assignors had title to – nor could they be bothered to ask for the paperwork that would have allowed them to determine whether they were genuine. Essentially, Defendants were willfully blind at every step of the process to the very real possibility that they might be executing upon fraudulent, non-existent judgments.

      Fair Debt Collection Practices Act, 15 U.S.C. §1692e prohibits false and misleading conduct, and reads as follows in its relevant part.

000165

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of –

(A) the character, amount, or legal status of any debt;

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

"Whether a collection letter is false, deceptive, or misleading under the FDCPA is determined from the perspective of the objective least sophisticated consumer." *Eades v. Kennedy, PC Law Offices*, 2015 WL 3498784, at *7 (2d Cir. 2015) (*citing Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir.2012) (quotation marks omitted). "Under this standard, collection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Id.* (quotation marks omitted). However, "FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice[,] and courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices." *Id.*

Because Defendants had no idea whether the judgments they were purchasing were genuine *and* never bothered to ask for the paperwork that would have enabled them to verify the judgments, Defendants' collection actions were misleading as contemplated by FDCPA §1692e, e(2), e(4), e(5), and e(10). *See e.g,. Sykes v. Mel Harris and Associates, LLC*, 757 F.Supp.2d 413, 424 (S.D.N.Y.,2010) (holding that debt-buyers' false affidavit of merit, used in attempt to collect debt, violated FDCPA because it effectively served to validate debt to reader, whether

20

consumer or court); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 801-802

(S.D.Ohio,2006) (Defendants who regularly initiated post judgment remedies based on legally

defective assignments, and without legal capacity, violated §1692e); *Pak v. Unifund CCR*

*Partners*, 2014 WL 238543, at *6 (E.D.N.C.,2014) (*citing Cox v. Hilco Receivables, L.L.C.*, 726

F.Supp.2d 659, 666 (N.D.Tex.2010); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th

Cir.2000) (a debt collector's misrepresentation that it was subrogated to another party "gave a

false impression as to the legal status it enjoyed," which constituted a violation of 15 U.S.C. §

1692e(2)(A) and (10)). Nor does the fact that Defendants' false or misleading actions were

undertaken in an effort to enforce legal remedies shield them from FDCPA liability. *See e.g.,*

*Gabriele v. American Home Mortg. Servicing, Inc.*, 503 Fed.Appx. 89, 95, 2012 WL 5908601, at

*4 (2d Cir. 2012) (noting that there is no exemption for actions undertaken in an effort to enforce

legal remedies); *Williams v. Javitch, Block & Rathbone, LLP*, 480 F.Supp.2d 1016, 1022–24

(S.D.Ohio 2007) (finding actionable FDCPA claim against debt collector's law firm that

prepared and filed debt collection suits including affidavits of creditor employee whom

defendant "knew or should have known" lacked specific knowledge of the original debt));

*Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir.2000); *Grant–Hall v. Cavalry*

*Portfolio Serv., LLC*, 856 F.Supp.2d 929, 944 (N.D. Ill.2012) ( "The filing of a legally defective

debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has

legal recourse to collect the debt.").

Additionally, section 1692f of the FDCPA prohibits "unfair or unconscionable" means to

collect a debt. Examples provided in the statute include collecting an amount not expressly

authorized by the original debt instrument, or communicating with a debtor using a postcard.

This section has been described as a "backstop" in the statute, intended to cover actionable debt

000167

collection practices that may not be expressly addressed in Sections 1692d and 1692e. *See, e.g., Kistner v. Law Offices of Michael P. Margelefsky*, 2007 WL 120150, at \*5, 2007 U.S. Dist. LEXIS 1925, at \*15 (N.D.Ohio, Jan. 10, 2007) (citing *Edwards v. McCormick*, 136 F.Supp.2d 795, 806 (S.D.Ohio 2001)). It is clear that Defendants' initiation and enforcement of post judgment remedies on a large scale without sufficient documentation to establish an ability to undertake said post judgment remedies is unfair and unconscionable. *See generally Curto v. Palisades Collection LLC*, 2011 WL 5196708, at \*5 (W.D.N.Y. 2011) (noting that courts have held that a collector who knowingly garnishes exempt funds violates §1692f).

2. *In the alternative, Defendants Todd Houslanger's and/or Houslanger & Associates, PLLC's practice of signing income executions and restraints of bank accounts, without any meaningful and good faith review into Palisades ability to initiate and enforce those remedies against class members, violates §1692e, e(3), and §1692f. The remaining defendants are vicariously liable for Houslanger & Associates, PLLC's and Todd Houslanger's actions.*

As previously stated, §1692e of the FDCPA forbids deceptive and misleading debt collection practices. Relevant to this argument, it also further clarifies that debt collection practices which falsely represent or imply "that any individual is an attorney or that any communication from an attorney" is actionable. §1692e(3). The Second Circuit has long held that the use of an attorney's signature on a collection letter implies that the collection letter is "from" the attorney who signed it. *See Greco v. Trauner, Cohen & Thomas*, L.L.P. 412 F.3d 360, 363-364 (2d Cir. 2005) (*citing Cloman v. Jackson*, 988 F.2d 1314, 1321 (2d Cir.1993). Additionally, the Second Circuit has held that where collection letters are sent out on law firm letterhead, without any review of the recipient's individual case, that such letters misrepresent the level of attorney involvement pursuant to §1692e. *Id.* at 364 (*citing Miller v. Wolpoff &*

22

000168

*Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003)).[8] Even prior review of an individual

debtor's file by another, including co-counsel, is no substitute for an independent review by the

attorney signing and issuing that debt collection letter. *Miller v. Upton, Cohen & Slamowitz*, 687

F.Supp.2d 86, 101 (E.D.N.Y.,2009) (*citing Miller II*, 471 F.Supp.2d at 251 (*citing Val–Land*

*Farms, Inc. v. Third Nat'l Bank in Knoxville*, 937 F.2d 1110, 1117 (6th Cir.1991) (Rule 11 case

holding that an attorney may not delegate his professional responsibility to co-counsel))). As in

the analogous Rule 11 context, an attorney responsible for issuing and executing a legal

document "must make a reasonable inquiry personally." *Id.* (*citing Garr v. U.S. Healthcare, Inc.*,

22 F.3d 1274, 1280 (3d Cir.1994) (emphasis added)). Thus, in FDCPA cases, the attorney

bearing the conclusive responsibility for issuing collection letters "may not simply substitute the

judgment of that other party for his or her own." *Id.* (*citing Miller II*, 471 F.Supp.2d at 251).[9]

Applying this body of law to the facts pled in Plaintiff's complaint, it is clear that

Plaintiff has pled actionable §1692e, and e(3) claims. First, as previously noted, Plaintiff has

demonstrated that Palisades does not possess, and cannot possess documentation sufficient to

enforce post judgment remedies against class members. Despite this knowledge, attorney Todd

Houslanger and/or Housianger & Associates, PLLC is not insisting that Palisades provide him

---

[8] In *Greco*, the Second Circuit provided a "safe harbor" in which law firms could explicitly note
in their letters that there was no attorney involvement. *Greco*, 412 F.3d at 365-366.

[9] The necessity for close scrutiny of attorney debt collection letters was articulated in the Seventh
Circuit's decision in *Avila v. Rubin*, 84 F.3d 222 (7th Cir.1996), where the court stated:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price
> of poker has just gone up. And that clearly is the reason why the ... [collection
> process] escalates from the collection agency, which might not strike fear in the
> consumer, to the attorney, who is better positioned to get the debtor's knees
> knocking.

*Avila*, 84 F.3d at 229.

000169

with proof of such documentation before initiating post judgement remedies against class members, and instead just accepts the legal deficiencies with regards to Palisades documentation as the way "it did things at the time of the assignment." (*See* PSAC ¶¶62-66; *see also* Exhibit A). Additionally, courts have noted that Houslanger & Associates, PLLC and/or Mr. Houslanger have filed "assignments of "judgements" with "so many defects" and in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected." *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345 (Civ. Ct. 2012) (*see also* PSAC ¶69b). In one other case, Houslanger & Associates, PLLC (where Mr. Houslanger is a managing partner) was noted to be enforcing post judgment remedies with regards to a judgment which had already been satisfied, and Houslanger & Associates, PLLC could not, or would not, provide proof that its client Palisades had standing to enforce the judgment (even if it had not been satisfied). Finally, Mr. Houslanger's and/or Houslanger & Associates, PLLC's actions in the *Argenteri* matter (although he was not acting on behalf of Defendant Palisades in that matter) further indicate that he does not conduct even the most cursory review into the underlying documentation allegedly supporting his clients' abilities to initiate and enforce post judgment remedies. (*See* PSAC ¶¶71-72; *see also* Exhibits C, D) (Demonstrating that Todd Houslanger and/or Houslanger & Associates, PLLC initiated post judgment remedies despite the fact that no written assignment existed at the time he initiated post judgment remedies, and then when called out on his behavior, attempted to concoct a post hoc assignment which was replete with glaring deficiencies). At the very least, the facts pled in Plaintiff's complaint set forward that it is plausible that Mr. Houslanger and/or Houslanger & Associates, PLLC are initiating post judgment remedies against class members without any meaningful investigation into his client's ability to initiate and enforce such remedies. As such,

24

the signature of an attorney-employee that appears on all income executions and bank restraints

issued by Houselanger & Associates, PLLC mislead class members regarding the level of

attorney review. The mere fact that this representation was contained in the course of pursuing

legal remedies, as opposed to in a collection letter, is insignificant. *See e.g, Gabriele v.*

*American Home Mortg. Servicing, Inc.,* 503 Fed.Appx. 89, 95, 2012 WL 5908601, at *4 (2d Cir.

2012) (noting that there is no exemption for actions undertaken in an effort to enforce legal

remedies)

Additionally, where state law requires an attorney to sign a document in order to

effectuate legal process, if the attorney signs that document with either a false basis, or no basis,

the attorney's signature amounts to unfair and unconscionable conduct pursuant to 15 U.S.C.

§1692f. *See Lee v. Javitch, Block & Rathbone, LLP,* 484 F.Supp.2d 816, 820-21

(S.D.Ohio,2007). Pursuant to New York CPLR §5222, a judgment creditor who wishes to serve

a restraining notice without obtaining a court order, or without utilizing a "support collection unit

designated by the appropriate social services district" must obtain an attorney to sign and issue

the restraining notice. *See Id.* ("A restraining notice may be issued by the clerk of the court or

the attorney for the judgment creditor as officer of the court, or by the support collection unit

designated by the appropriate social services district....and it shall contain an original signature

or copy of the original signature of the clerk of the court or attorney or the name of the support

collection unit which issued it."). Similarly, under New York CPLR §5230(b) a purported

judgment creditor who wishes to execute on a consumer's income must either obtain a court

order, or hire an attorney to issue the income execution. *Id.* ("At any time before a judgment or

order is satisfied or vacated, an execution may be issued from the supreme court, county court or

a family court, in the county in which the judgment was first docketed, by the clerk of the court

25

or the attorney for the judgment creditor as officer of the court, to the sheriffs of one or more counties of the state, directing each of them to satisfy the judgment or order out of the real and personal property of the judgment debtor or obligor and the debts due to him or her."). As such, Defendant Todd Houslanger's and/or Houslanger & Associates, PLLC's practice of failing to conduct even a minimal review before signing income executions and bank restraints against class members amounts to unfair and unconscionable conduct pursuant to §1692f.

15 U.S.C.§1692c(b) of the FDCPA prohibits a debt collector from communicating, in connection with the collection of any debt, with any person other than a consumer, his attorney, or a consumer reporting agency, unless one of several exceptions applies. In this case, it is alleged that Defendants communicated with Marshalls and Sheriffs, banks, and consumer's employers when forwarding income and property executions to them. These income and property executions were not "reasonably necessary to effectuate a postjudgment judicial remedy" because, as Todd Houslanger's and/or Houslanger & Associates, PLLC's client was not entitled to use postjudgment remedies.

Todd Houslanger managed and personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint, approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established, and because the tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of Defendant Houslanger & Associates, PLLC. *Allison v. Whitman & Myers, LLC*, 2015 WL 860757, at *2 (W.D.N.Y.2015) ("many courts have

26

recognized that "individual liability may be imposed where the defendant sought to be held liable personally engaged in the prohibited conduct." (internal citations omitted)..

Defendant Todd Houslanger is a managing attorney at Houslanger & Associates, PLLC and at all times relevant to Plaintiffs' complaint was acting within the scope of his employment at Houslanger & Associates, PLLC. (PSAC ¶ 9; 48b). Professional service corporations and professional limited liability companies are vicariously liable for the torts of their servants." *Dixon-Gales v. Brooklyn Hosp. Center,* 941 N.Y.S.2d 468, 472, 35 Misc.3d 676, 681 (N.Y.Sup.,2012); *Poplawski v. Gross,* 81 A.D.3d 801, 917 N.Y.S.2d 247 (2d Dept.2011); *Connell v. Hayden,* 83 A.D.2d 30, 46, 443 N.Y.S.2d 383 (1981); *see Keitel v. Kurtz,* 54 A.D.3d 387, 392, 866 N.Y.S.2d 195 (2008); *Monir v. Khandakar,* 30 A.D.3d 487, 489, 818 N.Y.S.2d 224 (2006); *see also, Cashman v. Ricigliano,* 2004 WL 1920798, at *1 (D.Conn.,2004) (*citing Bartlett v. Heibl,* 128 F.3d 497, 499–500 (7th Cir.1997) ("If [defendant] were being sued for conduct within the scope of his agency or employment as a partner or an associate of a law firm, the firm could be named along with him as a defendant, because it would be liable jointly with him for that conduct.")). As such, it is clear that Defendant Houslanger & Associates, PLLC is vicariously liable for the acts of its managing partner, committed within the scope of his employment at the PLLC, as well as any other employees acting within the scope of their employment.

With regards to Defendant Palisades, because the nature of an attorney client relationship itself reflects that the client has the power to "control" its agent in material respects if the client wishes to do so, an FDCPA plaintiff is not required to show that a debt collector client exercised control over its attorney to be vicariously liable for the actions of the attorney. *See Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 508, 516-517 (S.D.N.Y. 2013) (discussing cases and

000173

finding that Palisades could be vicariously liable for the actions of Houslanger & Associates,

PLLC without any showing that Palisades had the right to control Houslanger's actions).

Instead, "traditional vicarious liability rules" ordinarily make principles liable for acts of their

agents merely when the agents act "in the scope of their authority." See Id at 517 (*citing Meyer*

*v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003); *accord Security. Pacific*

*Mortg. & Real Estate Servs., Inc. v. Herald Ctr., Ltd.*, 891 F.2d 447, 448 (2d Cir.1989)).  Here,

Mr. Houslanger was acting within the scope of his authority.  (PSAC ¶48c).[10]

Asta Funding, Inc. is vicariously liable for all of the co-defendant's tortious acts because

they have the right and ability to supervise its Palisades, and (2) they have a direct financial

interest in the manner in which Palisades managed the Great Seneca portfolio. (PSAC, ¶86(e);

*Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1045 (N.D. Ill. 1998); *Shapiro,*

*Bernstein & Co., Inc. v. H.L. Green Co. Inc.*, 316 F.2d 304, 307 (2d Cir.1963).

Finally, Plaintiff notes that one court within the Western District of New York has

reasoned that it would be inappropriate to aggressively police an FDCPA Plaintiff's pleadings

regarding vicarious liability given the early stage in the litigation, and the various theories

regarding vicarious liability reflected in the FDCPA caselaw. *See Hallmark v. Cohen &*

*Slamowitz, LLP*, 299 F.R.D. 407, 410-11 (W.D.N.Y. 2014) (*citing Marbury Management, Inc. v.*

*Kohn*, 629 F.2d 705, 712, n. 4 (2d Cir.1980) ( "Generally a complaint that gives full notice of the

circumstances giving rise to the plaintiff's claim for relief need not also correctly plead the legal

theory or theories and statutory basis supporting the claim.").  Here, Plaintiffs have given full

---

[10] Moreover, Palisades was far from a passive participant in this scheme.  Instead, and as plead in Plaintiff's complaint, Palisades was a sophisticated debt buyer, backed by a Russel 2000 Index company, engaged in massive and experimental debt collection schemes, and had actual or constructive knowledge regarding the widespread deficiencies in its ability to collect on the accounts contained in the "Great Seneca Portfolio." (*See supra*, p. 17-19).

000174

notice to the Defendants as to the acts for which vicarious liability is asserted, and as such, has

met its initial burden with respect to vicarious liability at the pleading stage.

   3. *Conclusion*

   In sum, Plaintiffs have plead sufficient facts which demonstrate that the Defendants (1)

initiated and enforced post judgment remedies as the purported assignee of a judgment despite

the fact that they could not establish that any such purported assignment was legally sufficient,

(2) misled the class members into believing that an attorney employed by Houslanger &

Associates, PLLC had conducted at least a minimal review of whether Palisades was entitled to

initiate and enforce post judgment remedies against Plaintiffs, (3) had not filed documentation

establishing that the judgments had been legally assigned to Palisades with the court that had

issued the judgment prior to initiating and enforcing post judgment remedies against Plaintiffs,

and 4) provided no notice to Plaintiffs of the alleged assignment as required by *Musah v.*

*Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 639-640 (S.D.N.Y. 2013) and *Chase*

*Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010).  Moreover, as laid out above,

these actions clearly violate the FDCPA in multiple respects.  As such, Plaintiffs FDCPA claims

against all named Defendants are not futile.

   d.  Defendants' debt collection practices violate NY GBL §349.

   General Business Law § 349 (a) broadly declares that "[d]eceptive acts or practices in the

conduct of any business" in New York State are "unlawful."  Under GBL § 349, a plaintiff must

show that: (1) the defendant's conduct is "consumer-oriented"; (2) the defendant is engaged in a

"deceptive act or practice"; (3) the plaintiff was injured by this practice; and (4) "the acts or

practices have a broader impact on consumers at large." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d

000175

54, 64 (2d Cir.2010) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–27, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)).

If an assigned debt lawsuit is commenced and contains factual allegations attesting to the defendant's liability, and if evidence to support the claim does not exist or is not readily available, it has been held that such conduct violates General Business Law § 349 because a defendant receiving the complaint could reasonably be deceived, and conclude that the debt buyer either possesses evidentiary proof of the claim, or can easily obtain the necessary proof. Deceptive conduct, like this, falls squarely within the broad ambit of General Business Law § 349. *Mayfield v. Asta Funding, Inc.*, 2015 WL 1501100, at *10 (S.D.N.Y. Mar. 31, 2015); *Midland Funding, LLC v. Giraldo*, 39 Misc. 3d 936, 937, 961 N.Y.S.2d 743 (Dist. Ct. 2013).

The basis for finding GBL §349 applicable in the *Mayfield* and *Midland Funding* cases has equal applicability here. Defendants' practice of restraining and executing against Plaintiffs income and property based upon judgments that they could not prove they owned was fraudulent, misleading, deceptive, unfair, and unconscionable. *Mayfield*, at *7 (citing *Sykes v. Mel Harris & Associates LLC*, 780 F.3d 70, 83-87 (2d Cir.2015). Moreover, the Defendants' practice of initiating and enforcing post judgment remedies against Plaintiffs as the purported assignee of the judgment creditors was deceptive and misleading. By signing the income executions, Houslanger & Associates, PPLC and Todd Houslanger were representing that, after a meaningful and good faith investigation, they were satisfied both that a judgment existed and that its client Palisades was entitled to execute on that judgment. And the least sophisticated or reasonable consumer would believe that representation, concluding that, since a New York State attorney had reviewed those matters, the judgment must be valid. *See Midland Funding, LLC v. Giraldo*, 39 Misc.3d, at 949.

30

By reason of the above, Plaintiffs have alleged sufficient facts to establish a plausible NY GBL §349 claim against Defendants.

e.   Plaintiff Meets the Requirements of Rule 23(b)(2) for Injunctive Relief

In addition to monetary relief, Plaintiffs seek injunctive relief against Defendants relative to their GBL §349. Injunctive relief is appropriate if "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed.R.Civ.P. 23(b)(2). The Supreme Court has clarified that certification of a class for injunctive relief is only appropriate where "a single injunction ... would provide relief to each member of the class." *Dukes*, 131 S.Ct. at 2557; *Amara v. CIGNA Corp.*, 775 F.3d 510, 522 (2d Cir.2014) (noting that the Supreme Court in *Dukes* "simply emphasized that in a class action certified under Rule 23(b)(2), 'each individual class member' is not 'entitled to a *different* injunction' " (emphasis in original) (quoting *Dukes*, 131 S.Ct. at 2557)). However, "[R]elief to each member of the class," does not require that the relief to each member of the class be identical, only that it be beneficial. *Sykes*, 780 F.3d at 97 (*citing Dukes*, 131 S.Ct. at 2557–58.).

In this case, all class members will receive a benefit from the injunctive relief sought. Many will benefit by the requirement that Defendants cease with the enforcement of judgments against them. However, *all* of the Plaintiffs are at risk of being subjected to future judgment enforcement proceedings commenced by Defendants. As such, the injunction prohibiting Defendants from initiating and seeking to enforce judgments unless they possess legally sufficient assignments from all prior judgment owners, have filed said assignments with the appropriate court of record benefits all of the Plaintiffs, and have given the Plaintiffs notice of the alleged assignment as required by *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 639-640 (S.D.N.Y. 2013) and *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y.

31

Civ. Ct. 2010). This has been held to meet the requirements established in *Dukes. Sykes,* 780 F.3d at 97-98.

## CONCLUSION

By reason of the foregoing, Plaintiff's motion should be granted in all respects.

Dated: August 27, 2015

<div style="margin-left:50%">

/s/ Timothy Hiller
Timothy Hiller, Esq.
Law Offices of Kenneth Hiller PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: thiller@kennethhiller.com
    sandrews@kennethhiller.com
    khiller@kennethhiller.com

</div>

000178

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER MCCROBIE, individually, and
on behalf of all others similarly situated,

                                Plaintiff,

    v.                                      Civil Action No. 15-cv-0018 JTC

PALISADES ACQUISITION XVI, LLC;
ASTA FUNDING, INC.;
HOUSLANGER & ASSOCIATES, PLLC;
TODD HOUSLANGER

                                Defendants.

---

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

This is a consumer class action brought on behalf of consumers subjected to Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692, and New York General Business Law §349 (GBL §349). The FDCPA prohibits debt collectors from engaging in abusive, deceptive, unfair, and illegal collection practices. GBL §349 prohibits deceptive acts or practices in the conduct of any business.

In 2007, a company called Centurion Capital Corporation obtained a default judgment against Christopher McCrobie. Mr. McCrobie had no knowledge of the lawsuit or the default judgment, as service appears to have been achieved by mailing the pleadings to an old address at which he no longer resided. More than seven years later, Houslanger & Associates, PLLC, a law firm acting on behalf of Palisades Acquisition XV, LLC ("Palisades"), forwarded an income execution to the Buffalo City Marshall's Office, who pursuant to their instructions, forwarded it to Mr. McCrobie's employer.

1

Beginning in the early to mid-2000's debt buyers and creditors began flooding state courts with lawsuits that the courts were ill equipped to efficiently supervise.[1]  For instance, according to the Boston Globe more than 60 percent of the 120,000 small claims cases filed in Massachusetts in 2005 were filed by debt collectors.[2]  As of June 2008, there were 119,000 civil lawsuits against alleged debtors pending in Chicago's Cook County Circuit Court.[3]

Approximately 12,000 such suits were assigned to a single judge in that circuit—roughly twice the number of debt collection lawsuits on that judge's docket one year previously.  Judges and consumer reasonably expressed concern to the FTC that the sheer number of collection lawsuits posed a threat to the judicial system's ability to handle not only the collection cases themselves, but to attentively handle other matters.

A staggering number of the flood of collection suits ended in default.  In 2007, 60,699 out of the 130,000 collection lawsuits filed in Cook County, Illinois ended in default judgment.[4]  A 2013 study by the New Economy Project concluded that 62 percent of lawsuits initiated by debt buyers in the state of New York end in default judgments being entered against consumers.[5]  That same study found that in Buffalo City Court, 54 percent of all collection lawsuits filed in

---

[1] FEDERAL TRADE COMMISSION, COLLECTING CONSUMER DEBTS: THE CHALLENGES OF CHANGE – A WORKSHOP REPORT (2009), p. 55, available at https://www.ftc.gov/sites/default/files/documents/reports/collecting-consumer-debts-challenges-change-federal-trade-commission-workshop-report/dcwr.pdf (last visited April 22, 2015).

[2] Id. (citing Beth Healy, A Debtor's Hell: Part 2, A Court System Compromised, BOSTON GLOBE, July 31, 2006, available at http://www.boston.com/news/special/spotlight_debt/part2/page1.html.).

[3] Id. at 55-56 (citing Ameet Sachdev, Debt Collectors Pushing To Get Their Day In Court, CHICAGO TRIBUNE, June 8, 2008, available At http://articles.chicagotribune.com/2008-06-08/news/0806080066_1_debt-collectors-court-papers-pushing

[4] See supra, n. 3.

[5] The New Economy Project, The Debt Collection Racket in New York: How the Industry Violates Due Process and Perpetuates Economic Inequality, NEWECONOMYNYC.ORG, p.6, http://www.neweconomynyc.org/wp-content/uploads/2014/08/DebtCollectionRacketUpdated.pdf (last visited April 22, 2015).

2

2011 resulted in default judgments being entered, and answers were filed in only 568 of 11,747 cases.[6]

The unusually high default rates should not be interpreted to mean that the flood of lawsuits which debt buyers have initiated in state court have merit.[7] Instead, a large driver for the unusual default rate in state court collection actions is the fact that consumers are often not served properly. In 2009 the FTC noted that consumer groups reported that consumers "often are not properly served with notice of the debt collection lawsuit."[8] A 2010 follow up to that report noted that, "[m]any consumer advocate and judges who adjudicate debt collection cases stated that inadequate service or improper service occurs frequently."[9]

In any case, a staggering number of default judgments have been issued against New York residents in recent years as a result of suits brought by debt buyers and debt collectors. For a variety of reasons, many of these judgments are never enforced by the judgment creditor.

Palisades Acquisition XVI, LLC (an indirect wholly owned subsidiary of Asta Funding, Inc.) purports to buy "pools of matters" or "portfolios" which purportedly contain these judgments. Often times, Palisades buys these "pools of matters" or "portfolios" not from the judgment creditor, but from some other entity who purports to have purchased the "pool of matters."

---

[6] *Id.* It was noted that collection industry representatives disputed this claim. *Id.*

[7] Speaking in the New York Times, Noach Dear, a civil court judge in Brooklyn, estimated that "roughly 90 percent of the credit card lawsuits are flawed" because the Plaintiff can't prove "the person owes the debt." Silver-Greenberg, Jessica, Problems Riddle Moves to Collect Credit Card Debt, NEW YORK TIMES, August 12, 2012, available http://dealbook.nytimes.com/2012/08/12/problems-riddle-moves-to-collect-credit-card-debt/?ref=business&_r=0/. Similarly, the New Economy Project noted that in 9 out of 10 cases, affidavits from debt buyers were made by persons having no connection to the original creditor. *See supra*, n. 6 at p. 4.

[8] *See supra* n. 3 (citing comments furnished to the Federal Trade Commission by consumer advocates).

[9] Federal Trade Commission, Repairing A Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration,

3

Todd Houslanger and Houslanger & Associates, PLLC have carved out a niche as attorneys who will initiate post-judgment collection remedies on behalf of purported assignees of the original judgment creditor. At Palisades' behest, and at the behest of other similar companies, Mr. Houslanger and other attorneys employed by him have initiated post-judgment remedies against numerous New York State residents within the past three years. As explained above, many (if not most), of these consumers had no knowledge that they have ever been sued, let alone that a judgment has been entered against them.

Mr. Houslanger's firm enforces post judgment remedies on behalf of Palisades (and other entities purporting to be the assignees of judgment creditors) without possessing documentation establishing that Palisades has any right to enforce the judgment he is executing on. Based on Plaintiff's investigation, outlined in more detail in the body of the complaint, it is clear that Mr. Houslanger's firm is initiating post-judgment remedies on behalf of creditors all over the state of New York without proper documentation, and without filing the documentation he has with the court clerk prior to initiating remedies. Mr. McCrobie is just the latest victim of Defendants' unlawful scheme.

Defendants' actions violate the Fair Debt Collection Practices Act in that they are "debt collectors" engaged in collection actions which they have no legal right to pursue. Neither Palisades, nor its attorney and agent Mr. Houslanger and his law firm Houslanger & Associates PLLC, have any right to enforce the default judgment obtained by Centurion Capital Corporation against Mr. McCrobie. More broadly however, Defendants are engaged in a deceptive and unfair business practice prescribed by New York General Business Law §349. Specifically, Defendants are initiating post judgment remedies against consumers all over the state of New York without any right to do so.

4

**JURISDICTION AND VENUE**

1.     Jurisdiction of this court arises under 15 U.S.C. §1692k(d), and 28 U.S.C. § 1331.

2.     This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

3.     Venue is proper in this district under 28 U.S.C. §1391(b) in that Defendants transacts business within the Western District of New York and the conduct complained of occurred here.

**PARTIES**

4.     Plaintiff, Christopher McCrobie, is a natural person residing in the County of Erie and State of New York and is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

5.     Defendant, Palisades Acquisition XVI, LLC, (alternatively referred to as "Palisades") is a foreign limited liability company organized and existing under the laws of the State of New Jersey and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

6.     Defendant, Palisades Acquisition XVI, LLC is a purchaser and collector of defaulted debts, regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

7.     Asta Funding, Inc. is a foreign corporation, organized and existing under the laws of the State of Delaware, and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

8.     Defendant, Asta Funding, Inc. is a purchaser and collector of defaulted debts, regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

5

9.      Defendant Palisades is a wholly owned subsidiary of Defendant Asta Funding, Inc.

10.     Defendant, Houslanger & Associates, PLLC is a domestic professional corporation organized and existing under the laws of the State of New York and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

11.     Defendant, Houslanger & Associates, PLLC regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

12.     Defendant Todd Houslanger is the managing attorney of Houslanger & Associates, PLLC and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).  On information and belief:

A. Todd Houslanger is also the owner and founder of Houslanger & Associates, PLLC;

B. Todd Houslanger personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint;

C. Todd Houslanger approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established; and

D. The tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

12.     Defendant Todd Houslanger regularly attempts to collect debts alleged to be due to another, and engages in a business in which the principal purpose is debt collection.

6

000184

## FACTUAL ALLEGATIONS

13.  Plaintiff Christopher McCrobie allegedly incurred a credit card debt to Providian Financial.  This debt will be referred to as "the subject debt."

14.  The subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes.  As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

15.  Plaintiff thereafter allegedly defaulted on the subject debt.

16.  Sometime after the alleged default, Providian Financial allegedly assigned the subject debt to Centurion Capital Corporation

17.  Centurion Capital Corporation filed an action against the Plaintiff in Buffalo City Court in or about August 6, 2006.

18.  The summons and complaint commencing the action referenced in paragraph 15 was never personally served upon Plaintiff.  Instead, it was served by substitute service (posting and mailing) at an old address of Plaintiff's.

19.  That at the time of the service of the above-referenced action, Plaintiff did not reside at the address that the summons and complaint were posted and mailed to.

20.  Centurion Capital Corporation obtained a default judgment against the Plaintiff in said court on or about March 8, 2007.

21.  Plaintiff had no knowledge of the commencement of the above-reference action, or of the default judgment.  The default judgment was never reported against his credit.

22.  Before August 28, 2014, Palisades retained the services of Mr. Houslanger and his firm, Houslanger & Associates, PLLC, to proceed with post judgment enforcement against the Plaintiff on the Centurion Capital Corporation judgment.

7

## The Income Execution

23. Under CPLR 5230(b) and § 1501 of the New York Uniform City Court Act, no income execution may be issued except by the clerk of the court or by the judgment creditor's attorney.

24. Moreover, under New York State law, a judgment creditor is not required to first apply to any court before resorting to post-judgment remedies.

25. As can be seen from the income execution attached to this Complaint as Exhibit F, an income execution is an *order* to both the judgment debtor and to the Marshall to take certain steps to effectuate a court's judgment, and that mandate is backed up by the power of the court that handed down the judgment.

26. In this way, a New York State income execution is similar to a federal civil subpoena, which is a command by the federal court that may be signed and issued by an attorney admitted to practice in that federal court. *See* Fed. R. Civ. P. 45.

27. Thus, any New York State attorney who signs and issues an income execution is acting as an officer of the court, just as any attorney who signs and issues a federal civil subpoena is acting as an officer of the court. Indeed, CPLR 5230(b) states that any attorney signing and issuing an income execution is acting as "officer of the court."

28. As an officer of the court, an attorney who signs an income execution is under a duty to take minimal steps to satisfy himself that his client is entitled to garnish a consumer's wages. *See Scott v. Weltzler*, 600 N.Y.S.2d 974, 976-77 (N.Y. App. Div. 1993).

29. An attorney's duty to satisfy himself that his client is entitled to garnish a consumer's wages is not a burdensome one since the underlying contract dispute that resulted in the alleged debt – however messy it might have been – has already been reduced to a judgment.

8

000186

30. Thus, in order to fulfill his duty, the attorney signing an income execution must do no more than satisfy himself that a judgment exists, and that his client is entitled to execute upon it.

31. The exact steps that the attorney must take to fulfill that duty depend on the circumstances.

32. For example, an attorney who represents a client when the client obtains the judgment, then later signs an income execution on behalf of the same client, need not take *any* additional steps because he already has personal knowledge that the judgment exists, and that the client is entitled to execute upon it.

33. On the other hand, an attorney who is retained after judgment is entered, would be required to look at a copy of the judgment. If the client were to produce a copy of the judgment, and the client's name appeared in the caption as the judgment creditor, that would be enough to satisfy the duty. As stated above, this duty is not burdensome – rather, it involves reviewing a single sheet of paper.

34. Assuming, however, that the name of the client did *not* appear in the caption, the attorney would be under a duty to ask the client for a copy of the instrument(s) on which the client's authority to enforce the judgment is based, *before* signing and issuing the income execution.

35. An attorney who signs an income execution without taking these minimal and unburdensome steps to steps to satisfy himself that a judgment exists and that his client is entitled to enforce the judgment is acting recklessly, because he could very well be helping his client to commit the crime of embezzlement.

9

36.     By signing an income execution, an attorney represents to the Marshall, to the judgment debtor, and to the judgment debtor's employer, that he has reviewed a copy of the judgment in the captioned case. The signature further represents that, based on his review, the attorney is satisfied that a judgment exists, and that his client is entitled to execute upon the judgment.

37.     In other words, by signing an income execution, an attorney is representing to the world that he is the attorney of record, that his client is entitled to collect on the judgment, that he is entitled to pay over the Marshall's poundage from any amounts collected, and that he has the right to issue a satisfaction of judgment in the name of the judgment creditor.

38.     On or about August 28, 2014, an attorney employed by Houslanger & Associates, PLLC signed an income execution bearing the caption of the Buffalo City Court case in which Centurion Capital Corporation obtained a default judgment against Plaintiff ("the Income Execution"). (*See* Exhibit F).

39.     The attorney employed by Houslanger & Associates, PLLC signed the Income Execution, not on behalf of Centurion Capital Corporation, but on behalf of Palisades as the purported judgment creditor.  This done despite the fact that the judgment was in favor of Centurion Capital Corporation, that no legally valid of that judgment to Palisades exists, that no assignment was ever filed with the Buffalo City Court, and that Plaintiff was not given notice of the assignment as required by law.

40.     Houslanger & Associates, PLLC then forwarded the Income Execution to the Office of the Marshall of the City of Buffalo, with the knowledge and the intent that the Marshall, in turn, would forward the income execution first to Plaintiff, and then to Plaintiff's employer.

10

000188

41.     The Income Execution was a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

42.     The Income Execution stated that Palisades was "the current creditor, as assignee to whom this debt is owed."

43.     The Income Execution commanded Plaintiff to begin sending 10% of his income to the Marshall, so that the Marshall could then forward that money to Houslanger & Associates, PLLC, as attorneys for Palisades.

44.     Moreover, the Income Execution threatened that, should Plaintiff refuse to send 10% of his income to the Marshall within 20 days, the Marshall would forward the income execution to Plaintiff's employer, and that Plaintiff's employer would begin sending 10% of Plaintiff's income to the Marshall – all for the purpose of forwarding that money to Houslanger & Associates, PLLC, as attorneys for Palisades.

45.     In short, the Income Execution represented that Palisades had the right to execute upon the judgment obtained by Centurion Capital Corporation – and, specifically, that Palisades had the right to garnish Plaintiff's income and pay over poundage to the Marshall from any amounts collected.

46.     By signing the Income Execution, the attorney employed by Houslanger & Associates, PLLC represented that he had reviewed the judgment in the Buffalo City Court case as well as any other documents necessary to satisfy himself that a judgment existed, and that Palisades was entitled to execute the judgment.

47.     On information and belief, no attorney at Houslanger & Associates, PLLC reviewed the Buffalo City Court judgment before the Income Execution was signed.

11

48. Even assuming that an attorney reviewed the judgment, on information and belief – and based upon the facts alleged below in paragraphs 61 through 71 – Houslanger & Associates, PLLC never asked Palisades to provide it with a copy of the instrument upon which Palisades's alleged authority to execute upon the judgment was based, nor did any attorney review any such documents.

49. Thus, Houslanger & Associates, PLLC did not conduct the review of the Buffalo City Court judgment that, by signing the Income Execution, it represented that it had performed.

50. The Income Execution did not contain a disclaimer stating that no attorney had personally reviewed the particular circumstances of Plaintiff's account.

### Defendants Were Not Legally Entitled to Use Post-Judgment Remedies to Collect Upon Centurion's Judgment

51. Neither Palisades nor any of its alleged predecessors in interest, however, ever took the steps required by New York State Law to take assignment of or to enforce the judgment.

52. Specifically, CPLR 5019(c) requires anyone who takes assignment of a City Court judgment to publicly file "a copy of the instrument on which [the assignee's] authority is based, acknowledged in the form required to entitle a deed to be recorded . . . ."

53. No copy of the instrument on which Palisades' authority is based was ever filed at the Buffalo City Court, as evidenced by the fact that such copy is completely absent from Clerk's publicly available file on the case.

54. Further, under the cases of *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 639-640 (S.D.N.Y. 2013) and *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010), in order for an assignment of a judgment to take effect, the *assignor* must notify the judgment debtor of the assignment.

12

55.     Here, neither the assignor, Centurion Capital,Corporation, nor the assignee,

Palisades, notified Plaintiff of the assignment of the judgment.

56.     Because neither Centurion Capital Corporation nor Palisades followed CPLR

5019(c), *Musah,* or *Cardello,* Palisades lacked legal authority either to execute upon the Buffalo

City Court judgment – contrary to the representations made by Houslanger & Associates, PLLC

in the income execution.

57.     CPLR 5019(c) and the *Cardello* rule are not mere technicalities. In *Cardello,*

Judge Straniere explained why these rules are material:

> The recent experience of the Civil Court showing large numbers of
> default judgments being obtained in credit card cases against
> consumers far in excess of the default rate in regard to all other
> litigation, as well as studies done by independent consumer rights
> groups showing improper service of process in regard to credit
> card debt, requires that such notice be given to the defendant. The
> situation has been . . . fraught with abuse . . . . Further, on a regular
> basis this court encounters defendants being sued on the same debt
> by more than one creditor alleging it is the assignee of the original
> credit card obligation. Often these consumers have already entered
> into stipulations to pay off the outstanding balance due the credit
> card issuer and find themselves filing an order to show cause to
> vacate a default judgment from an unknown debt purchaser for the
> same obligation. Without receiving such notice of the assignment,
> a debtor seeking to make any application to the court would not
> have any idea as to which alleged creditor is to be served.
>
> . . . It is clear . . . that due process requires that notice of the
> assignment be given to the debtor by the assignor and not the
> assignee. . . .
>
> Allowing the assignee to give notice would enable dishonest debt
> collectors to search the court records, obtain the names of
> judgment debtors and send the debtor a letter stating they have
> purchased the debt . . . and the debtor should make all payments to
> the third party. Requiring the assignor[] . . . to serve the notice
> would reduce the incidents of fraud in this regard. The Federal Fair
> Debt Collection Practices Act lists 16 "false, deceptive or
> misleading" practices, some of which would not be available by
> requiring a notice of assignment to be given by the assignor to the

13

> debtor. . . . As the [New York State] Court of Appeals stated in *Tri
> City Roofers v. Northeastern Indus. Park*, . . . "A judgment debtor
> is not called upon to search the county's records every time he is
> served with an execution or desires to make a payment on his
> debt." The failure to establish that notice of the assignment was
> given to the debtor makes the assignment ineffective.

58.     Here, Plaintiff never knew about the 2006 Buffalo City Court case, and Centurion

Capital Corporation obtained a default judgment – because the process server hired by

Centurion's attorneys nailed and mailed the summons and complaint to an address that Plaintiff

no longer resided at.

59.     Thus, Judge Straniere's explanation of why CPLR 5019(c) and *Cardello* are

material is especially relevant to Plaintiff's situation.

60.     Defendants subsequently received $572.45 by executing on Plaintiff's income.

(*See* Exhibit A).

61.     On March 23, 2015 Plaintiff, by and through his attorney, contacted Houslanger

& Associates, PLLC, by and through Todd Houslanger.  Plaintiff requested that Mr. Houslanger

provide a copy of the chain of title proving that Palisades had a right to enforce the default

judgment obtained against Plaintiff by Centurion.  (*See* Exhibit A). Houslanger & Associates,

PLLC, by and through Todd Houslanger, provided the following documents in response to that

request (*See* Exhibit B):

  a.  A purported Bill of Sale (signed in duplicates) between Great Seneca Financial

      Corporation and Palisades Acquisition XVI, LLC dated March 5, 2007.

  b.  A purported Bill of Sale between Palisades Acquisition XV, LLC and Palisades

      Acquisition XVI, LLC dated March 5, 2007.

14

62.     None of the documents provided to Plaintiff make any reference to Plaintiff, Centurion Capital Corporation, or the default judgment obtained against Plaintiff (*See* Exhibit B).

63.     None of the documents provided to Plaintiff establish that the default judgment obtained against Plaintiff was ever assigned, much less that the default judgment was ultimately assigned to Palisades XVI, LLC (*See* Exhibit B).

64.     On April 22, 2015, Plaintiff contacted Houslanger & Associates by and through Todd Houslanger, and informed it that none of the documents purportedly showing chain of title mention Centurion Capital Corp, or identify the default judgment taken against Plaintiff by Centurion Capital Corp. (*See* Exhibit A).

65.     On May 7, 2015 Todd Houslanger responded via email. He reiterated his belief that the documents previously provided on March 23, 2015 evidenced "the assignment." He added that this assignment was for a "pool of matters" in which Plaintiff was apparently allegedly included. He stated "[t]his is how they did things at the time of the assignment." (*See* Exhibit A).

66.     Upon further investigation Plaintiff learned that the "pool of matters" referred to by Mr. Houslanger involved the "Great Seneca Portfolio" which was allegedly acquired by Palisades Acquisition XVI, LLC in March of 2007. (*See* Exhibit H). Further details about the "Great Seneca Portfolio" and Asta, Inc.'s business practices revealed by Plaintiff's investigation are as follows:

    a.     The sale allegedly involved the transfer of (what Asta Funding, Inc. estimated to be) $6.9 billion dollars in debt, which was advanced for a purchase price of $300 million. Thus, Palisades Acquisition XVI, LLC paid roughly four cents

15

per dollar of debt allegedly acquired. The portfolio was made up of "predominantly credit card accounts and includes accounts in collection litigation and accounts as to which the sellers have been awarded judgments and other traditional chargeoffs." Despite purchasing roughly 6.9 billion dollars in debt, Gary Stern (the President and CEO of Asta Funding at the time), commented that "This significant portfolio purchase…will further demonstrate our outsourcing strategy and our ability to absorb such a large purchase without adding materially to our infrastructure." (*See* Exhibit I).

b.     The terms of the Great Seneca Portfolio purchase agreement were noted to be as follows in Asta Funding, Inc.'s 2007 Annual Report, filed with the Securities and Exchange Commission:

> Under the Portfolio Purchase Agreement, we assumed certain risks associated with the Portfolio Purchase. The representations and warranties with respect to the Portfolio which we received from the Sellers have limitations both in scope and, in certain cases, duration, including a limitation of our put-back rights with respect to certain types of claims, a requirement that certain claims be brought within 120 days of closing or be deemed waived, and a limitation with respect to the Sellers' responsibilities for acts of prior owners. Other than the representations contained in the Portfolio Purchase Agreement, the accounts were sold as is. No assurances can be given that we will have an adequate remedy if our understandings about the quality, quantity and characteristics of the Accounts in the Portfolio prove to be contrary to our expectations.

(*See* Exhibit J, p. 12).

c.     Palisades apparently did not conduct a thorough review of the quality of the assets in the Great Seneca Portfolio, but instead only conducted an "initial review" about which it could make "no assurances." (*See* Exhibit J, p. 13).

16

d.    Shortly after the purchase, Palisades adopted a "current strategy of suing

debtors" to avoid a "slowing of collections" which could cause it to default on

its obligations to its creditors. (*See* Exhibit J, p. 13).

e.    In its August 10, 2015 quarterly statement to the Securities and Exchange

Commission, Asta Funding, Inc. stated as follows:

> *Impairments*-There were no impairments in the nine month period
> ended June 30, 2015 as compared to 19.6 million recorded during
> the nine month period ended June 30, 2014. The $19.6 million of
> impairments in the nine month period ended June 30, 2014 was
> comprised of $14.0 million from the Great Seneca Portfolio…The
> Great Seneca portfolio was purchased in March 2007. The
> portfolio was purchased on the secondary market and as such
> accounts included in the portfolio were 5 to 6 years old at the time
> of purchase. Purchasing portfolios on the secondary market was
> not a normal course of action for us at the time, as we primarily
> purchased accounts from the originator of the accounts. This
> action of purchasing from the secondary market played a role in
> the determination in March 2008 that we could no longer
> reasonably forecast cash collections and therefore switched the
> portfolio over to the cost recovery portfolio. Based upon the age
> of the Great Seneca Portfolio in June 2014 (over seven years from
> our purchase date, and 12 to 13 years from the inception of the
> portfolio) the portfolio was clearly on the outer bounds of our
> collection forecasts. Based upon the significantly reduced
> collection forecast and the lower valuation of the judgments as
> they age, we determined an impairment of $14 million was
> necessary in June 2014.

(*See* Exhibit K).

f.    Great Seneca Financial filed formal articles of dissolution on March 25, 2009,

and these articles were accepted by the state of Maryland. *See Hartman v.*

*Great Seneca Financial Corp*, 596 F.3d 606, 617-618 (6th Cir. 2009).

g.    Currently, and on its website, Asta Funding Inc. represents that after it

purchases portfolios, it will not "burden" the seller with "overwhelming

17

requests for documentation, or ongoing communications with debtors whose accounts have been sold." (*See* Exhibit L).

67.    Recent court decisions confirm that many debt buyers do not possess, and cannot obtain, the evidence required to make out a prima facie case. *See, e.g., Sykes v. Mel S. Harris and Associates LLC,* 780 F3d 70, 85 (2d Cir.2015); *Deutsche Bank Nat. Trust Co. v. Haller,* 100 A.D.3d 680, 682-283 (App. Div. 2d Dep't 2012); *Midland Funding, LLC v. Giraldo,* 39 Misc.3d 936, 961 N.Y.S.2d 743-753-754 (Dist.Ct. Nassau County 2013); *PRA III, LLC v. Gonzalez,* 54 A.D.3d 917 (App. Div. 2d Dep't 2008); *CACH, LLC v. Davidson,* 21 Misc.3d 1106(a) (Civ. Ct. N.Y. County 2008); *PRA III, LLC v. McDowell,* 15 Misc.3d 1135(A) (Civ. Ct. Richmond County 2007); *Rushmore v. Skolnick,* 15 Misc.3d 1139(A) (Dist. Ct. Nassau County 2007); *Citibank v. Martin,* 11 Misc.3d 219 (Civ. Ct. N.Y. County 2005); *Palisades Collection, LLC v. Gonzalez,* 10 Misc.3d 1058(A) (Civ. Ct. N.Y. County 2005); *Colorado Capital Investments, Inc. v. Vilar,* 06/18/09 N.Y.L.J. 20 (Civ. Ct. N.Y. County); *Palisades Collection, LLC v. Haque,* 4/13/06 N.Y.L.J. 20 (Civ. Ct. Queens County); *CACV of Colorado, LLC v. Cowdhury,* Index No. 95643/07 (Civ. Ct. Bronx County Feb. 19, 2009) (unpublished); *CACH v. Cummings,* Index No. 2274/07 (Civ. Ct. N.Y. County Nov. 10, 2008) (unpublished); *CACV of Colorado capital Investments v. Pierog,* No. 64449/05 (Civ. Ct. N.Y. County, Sept 2, 2008) (unpublished).

68.    More specifically, a review of New York and federal caselaw reveals that Defendants Todd Houslanger, Houslanger & Associates, PLLC, and Palisades are initiating and enforcing post judgment remedies against large numbers of judgment debtors based upon judgments entered many years ago, and without documentation sufficient to prove that the Defendants have any right to enforce said judgments.

18

a.   Defendants Todd Houslanger, Houslanger & Houslanger, and Palisades XVI,
LLC have an established practice of enforcing post judgment remedies many
years after the original judgment was taken. *See Okyere v. Palisades
Collection, LLC,* 961 F.Supp.2d 508, 510 (S.D.N.Y. 2013) (Noting that a
default judgment was taken against the Plaintiff in 2004, and that Palisades,
by and through Todd Houslanger, enforced post judgment remedies "[n]early
seven years later."); *Musah v. Houslanger & Associates,* PLLC, 962 F. Supp.
2d 636, 637 (S.D.N.Y. 2013) (pursuing post judgment remedies in 2011 for a
judgment from 1997).

b.   In *Centurion Capital Corp. v. Guarino,* 38 Misc. 3d 1216(A), 966 N.Y.S.2d
345 (Civ. Ct. 2012), Palisades XVI, LLC (represented by Todd Houslanger of
Houslanger & Associates) was noted to be filing assignments of "judgements"
with "so many defects" and in such "large number[s]" that the court "had to
intervene" to determine if "due process rights had been protected." *Id.* at *4.
Particularly troubling to the court were "fundamental" discrepancies between
the "name of the plaintiff and designated counsel in the court file and those on
the papers being submitted by [Plaintiffs, including Palisades XVI, LLC and,
interestingly, Centurion]." *Id.* While the court ultimately lifted the stay it had
previously issued regarding the enforcement of post judgment remedies by
Palisades, it noted that any defendant who seeks to vacate a judgment
obtained by Palisades would be entitled to raise the issues addressed in its
opinion. *Id.* at *8.  Upon information and belief, and based on the entirety of
the other facts laid out in this complaint, Todd Houslanger was the attorney

19

who was filing many of the assignments of judgment noted by the court in
*Centurion Capital Corp. v. Guarino.*

c.  In *Colonial Credit Corp. v. Beyers*, 46 Misc. 3d 1221(A) (N.Y. Civ. Ct. 2015),
Colonial Credit Corp, an assignee of Bally's Fitness Center, took a default
judgment against an alleged debtor in 2005. Roughly seven years later,
"Palisades Collection LLC as successor to Great Seneca Financial Corp" filed
a notice to change attorneys from Wolpoff & Abramson, LLP to "Houslanger
& Associates, PLLC" in June of 2012. *Id.* at 2-3. On December 18, 2012 the
court ordered Defendants, including Palisades Collection LLC and
Houslanger & Associates, PLLC, to provide proof of chain of title, as well as
proof that proper notice had been given to the Defendant. *Id.* at 3.
Defendants apparently did not respond to this request. *Id.* Further review of
the file by the court revealed that the judgment had already been satisfied in
July of 2007. *Id.* The court then ordered Defendants to appear at a
conference to "explain why they should not either be held in contempt or
assessed costs for filing consents to change attorneys more than five
years...after this matter was satisfied." *Id.* at 4. Neither of the Defendants
appeared, and simply ignored the court order. *Id.* The court subsequently
imposed sanctions against both Palisades, and Houslanger & Associates. *Id.*
at 4-5. Defendants have provided evidence indicating that, upon making
assurances to the court that steps would be taken to ensure that no further
collection activity would be taken on the previously satisfied account, that the
sanctions were ultimately lifted. (*See* Dkt #17, Exhibit K).

20

69.     Defendant Palisades Acquisition XVI, LLC and Houslanger & Associates are so notorious for initiating post judgment remedies that consumer attorneys have implemented advertising targeted specifically to his victims on their websites. (*See* Exhibit G).

70.     Plaintiff's attorneys previously brought suit against Houslanger & Associates, PLLC for attempting to enforce post judgment remedies without any legal right to do so in the matter of *Argenteri v. Credigy Receivables Inc. et al*, (W.D.N.Y. Civil Action No. 1:14-cv-00425).

71.     In that matter, Plaintiff's June 3, 2014 complaint noted that Houslanger & Associates, PLLC attempted to enforce post judgment remedies on behalf of Credigy regarding a judgment which was taken by First Select Corporation. (*See* Exhibit C). Mr. Houslanger was subsequently asked by Plaintiff's attorneys to produce documents establishing a chain of title between the judgment creditor and Credigy Receivables. In that case, yet again, there were numerous deficiencies with the documents in Mr. Houslanger's possession (*See* Exhibit D):

a.      Mr. Houslanger provided counsel for Plaintiff with a purported assignment, dated on July 11, 2014. Because Plaintiff filed his complaint alleging that Mr. Houslanger took unlawful post judgment remedies on June 3, 2014 (Exhibit E), there was absolutely no assignment on file at the time Mr. Houslanger initiated post judgment remedies.
The purported assignment is signed by only one individual, a Vice President at Credigy who purported to be both a representative of Credigy and the "attorney in fact" for First Select Corporation.

b.      The assignment Mr. Houslanger provided to Plaintiff, represented that there was $0.00 due on the Judgment, including interest. Thus, by the

21

assignment's own terms, the judgment had been satisfied as of July 11, 2014.

c.      Accompanying the assignment were a "bill of sale" and a "purchase agreement"—neither of which mention the named Plaintiff in that case. These agreements are from 2002—some twelve years prior to the assignment provided to counsel for Plaintiff. These agreements are also not notarized as is required by Delaware Law.

d.      In sum, in *Argenteri,* Mr. Houslanger failed to provide any documents demonstrating a valid assignment from First Select Corporation to Credigy, and the questionable post-hoc assignment which was self-executed by Credigy (allegedly on behalf of First Select Corporation) admitted that the judgment had been satisfied.

## CLASS ACTION ALLEGATIONS

72.      Plaintiffs bring this case as a class action under Rule 23 of the Federal Rules of Civil Procedure 23. A class action is appropriate and preferable in this case because:

a.      **Numerosity:** Based on the fact that Defendants' have been noted to be filing post judgment documents in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected," (*see supr*a, ¶29b) and have, since 2007 been collecting on a "pool of matters" which allegedly contains $6.9 billion in debt, the class is so numerous that joinder of all members is impractical.

22

b.  **Common Questions Predominate:**

    1.  There are questions of law and fact common to the class that predominates over any questions affecting only individual class members.  The principal questions exhibited in this case are whether the Defendants' initiation and enforcement of post judgment remedies violates 15 U.S.C. §1692c(b) 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(1),  NY GBL §349, and New York Judiciary Law §487.  This conduct towards Plaintiffs and all absent class members has resulted in serious harm.  These common issues predominate over any individual issues.

    2.  The only individual issues are the identification of the consumers who received post judgment legal process (i.e. the class members) initiated by Defendants.  These issues are matters capable of ministerial determination from Defendants' records.

c.  **Typicality:** The Plaintiff's claims are typical of other class members.  Plaintiff and all members of the Plaintiff's classes have claims arising out of the Defendants' unlawful initiation and enforcement of post judgment remedies. The entire class will benefit from the remedial and monetary relief sought in this action.

d.  **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members.  The Plaintiff is committed to vigorously litigating this matter.  Plaintiff has also retained counsel experienced in handling consumer

23

lawsuits, complex legal issues, and class actions. Neither the individual Plaintiff, nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

e. **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. The members of the class are generally unsophisticated consumers, whose rights will note be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the class would also create the risk of inconsistent and varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interests of judicial economy.

73. If the facts are discovered to be appropriate, Plaintiff will seek to certify the class under Rule 23(b)(1), Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure.

74. Based on further discovery and further investigation (including, but no limited to, Defendant's disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the classes, class claims, and the class periods, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

24

## COUNT I

## A FAIR DEBT COLLECTION PRACTICES ACT CLAIM AGAINST ALL NAMED DEFENDANTS

75.     Plaintiffs reallege and reincorporate by reference the allegations in the preceding paragraphs of this Complaint.

76.     This count is brought by Plaintiff, individually and on behalf of a class consisting of consumers with New York addresses, who:

a.     Within one year before the filing of Plaintiff's Motion to Amend in this action;

b.     Had an income execution forwarded to their employer bearing the signature of Todd Houslanger (or any other attorney employed by Houslanger & Associates); or

c.     Had their bank account restrained after a subpoena and/or restraining notice bearing Todd Houslanger's signature (or any other attorney employed by Houslanger & Associates) was forwarded to their bank; and in which

d.     Defendant Todd Houslanger represented that Palisades Acquisition XVI, LLC was the "current creditor" (or employed any other substantially similar language) by way of assignment; and

e.     Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendant Todd Houslanger.

000203

77.     Section 1692c(b) of the FDCPA prohibits a debt collector from communicating, in connection with the collection of any debt, with any person other than a consumer, his attorney, or a consumer reporting agency, unless one of several exceptions applies.

78.     Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

79.     Specifically, FDCPA §1692e(2)(A) states that a debt collector cannot make a "false representation of the character, amount, or legal status of any debt."

80.     Furthermore, FDCPA §1692e(3) prohibits a debt collector from making a "false representation or implication that any individual is an attorney or that any communication is from an attorney."

81.     Furthermore, FDCPA §1692e(4) prohibits a debt collector from a "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

82.     Furthermore, FDCPA §1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken."

83.     Furthermore, FDCPA §1692e(10) prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt."

84.     FDCPA §1692f prohibits a debt collector from "using unfair or unconscionable means to collect or attempt to collect any debt."

85.     Specifically, FDCPA §1692f(1) prohibits a debt collector from collecting "any amount...unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

26

86.     The conduct of Defendants as described in this complaint violated the Fair Debt

Collection Practices Act (15 U.S.C. §1692 et seq.) as follows:

a.      Defendant Houslanger & Associates, PLLC and Todd Houslanger violated 15

U.S.C. § 1692c(b), §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5),

§1692e(10) , §1692f and 15 U.S.C. §1692f(1) by personally signing,

forwarding, and enforcing post judgment remedies against class members

without conducting even a minimal review into the factual and legal basis

supporting the right of his client, Palisades Acquisition XVI, LLC, to initiate

and enforce post-judgment remedies.

1.  These actions were misleading in that they gave the impression

both that Palisades was entitled to use post-judgment remedies

despite the facts that (1) Palisades Acquisition XVI, LLC lacked

any valid assignment transferring interest in the judgments entered

against class members; (2) Palisades Acquisition XVI, LLC never

publicly filed in the appropriate courts copies of the instruments on

which its authority was based, acknowledged in the form required

to entitle a deed to be recorded; and (3) Palisades Acquisition XVI,

LLC's and their alleged predecessors in interest never gave notice

to class members that they were assigning their judgments.

2.  These actions were also misleading in that, by signing and

enforcing income executions on class members' wages and

subpoenas and restraints directed to class members' banking

institutions, Todd Houslanger and/or Houslanger & Associates,

27

000205

PLLC represented that they had conducted a minimal review to satisfy themselves that judgments existed, and that Palisades Acquisition XVI, LLC was entitled to execute upon those judgments against class members.  However, as pled in this Complaint and upon further information and belief, Defendant Todd Houslanger and Houslanger & Associates, PLLC did not conduct even a minimal review sufficient to satisfy themselves that Palisades Acquisition XVI, LLC was entitled to enforce post judgment remedies against class members.

3. Defendants Todd Houslanger's and Houslanger & Associates, PLLC's actions were also unfair and unconscionable because they resulted in money being collected from Plaintiff, and other class members, despite the fact that Palisades had no legal right to collect from Plaintiff and other class members. Specifically, not only did Defendants lack legal authority to collect the underlying debts, but – because Defendants were not entitled to use post-judgment remedies – Defendants lacked legal authority to add the 5% poundage fee to each class member's collection account.

4. Moreover, Todd Houslanger and Houslanger & Associates, PLLC violated FDCPA § 1692c(b) by communicating with Marshalls and Sheriffs and, indirectly, with class members' employers and banks, concerning alleged debts by issuing income executions. These income executions were not "reasonably necessary to effectuate a

28

000206

postjudgment judicial remedy" because, as Todd Houslanger's

and/or Houslanger & Associates, PLLC's client was not entitled to

use postjudgment remedies, sending the income executions was

neither reasonable nor necessary.

b.    Defendant Houslanger & Associates, PLLC is vicariously liable for Defendant

Todd Houslanger's violations of 15 U.S.C. §1692c(b), §1692e, §1692e(2),

§1692e (3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C.

§1692f(1) because Defendant Todd Houslanger was acting within the scope of

his employment at Houslanger & Associates, PLLC. Additionally, they are

responsible for other attorneys employed by Houslanger & Associates who,

within the scope of their employment, initiated and enforce post judgment

remedies without conducting a good faith investigation into the legal and

factual basis for doing so.

c.    Defendant Palisades Acquisition XVI, LLC is vicariously liable for

Defendants Todd Houslanger and Houslanger & Associates, PLLC's

violations of 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5),

§1692e(10), §1692f and 15 U.S.C. §1692f(1) because both Todd Houslanger

and Houslanger & Associates, PLLC were their attorneys and agents in-fact,

who were acting within the scope of their authority. Defendant Palisades

Acquisition XVI, LLC further had actual or constructive knowledge that

Defendants Todd Houslanger and Houslanger & Associates, PLLC were not

conducting a meaningful investigation into the underlying documents prior to

initiating and enforcing post judgment remedies which certified that Palisades

000207

Acquisition XVI, LLC was the current creditor as assignee of the judgment
creditor.

d.  Defendant Palisades' is also individually liable for violating 15 U.S.C.
§1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10),
§1692f and 15 U.S.C. §1692f(1) because it has actual or constructive
knowledge that it lacked standing to enforce post judgment remedies against
Plaintiff and other class members, but employed Todd Houslanger and
Houslanger & Associates, PLLC to initiate and enforce post judgment
remedies against Plaintiff and other class members anyways.

e.  Defendant Palisades Asta Funding, Inc. is vicariously liable for Defendants
Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC's
violations of 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5),
§1692e(10), §1692f and 15 U.S.C. §1692f(1) because 1) both Todd
Houslanger and Houslanger & Associates, PLLC were Palisades attorneys and
agents in-fact, who were acting within the scope of their authority, 2) Asta
Funding, Inc. had the right and ability to supervise Palisades, and had a direct
financial interest in the manner in which Palisades managed the Great Seneca
portfolio. Defendant Asta Funding, Inc. further had actual or constructive
knowledge that Defendants Palisades, Todd Houslanger's, and Houslanger &
Associates, PLLC were not conducting a meaningful investigation into the
underlying documents prior to initiating and enforcing post judgment
remedies which certified that Palisades Acquisition XVI, LLC was the current
creditor as assignee of the judgment creditor.

30

000208

f.    Defendant Palisades' is also individually liable for violating 15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because it has actual or constructive knowledge that it lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

g.    Defendant Asta Funding, Inc. is also individually liable for violating 15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because it has actual or constructive knowledge that Palisades lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

h.    Defendant Todd Houslanger is personally liable for the tortious acts of Houslanger & Associates, PLLC because (1) he is the owner, founder, and managing attorney of of Houslanger & Associates, PLLC, (2) he personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint, (3) he approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported

000209

assignment could be established, and (4) the tortious conduct alleged in this

complaint done in accordance with the instructions of Todd Houslanger in his

capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

87.     That as a direct and proximate result of the Defendants' FDCPA violations as

alleged herein, Plaintiffs have suffered actual damages in an amount to be determined at trial,

and are also entitled to statutory damages, attorneys' fees, and costs.

## COUNT II

### NEW YORK GENERAL BUSINESS LAW §349 CLAIM AGAINST ALL NAMED DEFENDANTS

88.     Plaintiffs reallege and reincorporate by reference the allegations in the preceding

paragraphs of this Complaint.

89.     This count is brought by Plaintiff, individually and on behalf of a class consisting

of consumers with New York addresses, who:

a.      Within three years before the filing of Plaintiff's Motion to Amend in this

action;

b.      Had an income execution forwarded to their employer bearing the signature of

Todd Houslanger (or any other attorney employed by Houslanger &

Associates, PLLC); or

c.      Had their bank account restrained after a subpoena and/or restraining notice

bearing Todd Houslanger's signature (or any other attorney employed by

Houslanger & Associates, PLLC) was forwarded to their bank; and in which

d.      Defendant Todd Houslanger and/or Houslanger & Associates, PLLC

represented that Palisades Acquisition XVI, LLC was the "current creditor"

32

(or employed any other substantially similar language) by way of assignment; and

e.     Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendants Todd Houslanger and/or Houslanger & Associates, PLLC.

90.     The Defendants' collection actions complained of herein, include making written representations to Plaintiff and other class members that were false, deceptive, and misleading in that they implied that Todd Houslanger and Houslanger & Associates, PLLC had conducted a good faith basis into the ability of Palisades Acquisition XVI, LLC to initiate and enforce post judgment remedies against Plaintiff and other class members.

91.     The Defendants' collection actions complained of herein, include making written representations to Plaintiff and other class members that were false, deceptive and misleading in that they (1) implied that Palisades Acquisition XVI, LLC was the current creditor by way of assignment from the judgment creditor, when, in fact, Palisades Acquisition XVI, LLC has no documentation to support that claim; and (2) implied that defendants Todd Houslanger and/or Houslanger & Associates, PLLC had conducted a good faith investigation into the legal and factual bases for Palisades Acquisition XVI, LLC to initiate and enforce post judgment remedies against class members when, in fact, no such good faith investigation had occurred.

92.     The Defendants' collection actions complained of herein, included the false, misleading, and deceptive practice of taking money from the wages and bank accounts of Plaintiff and other class members despite the fact that Palisades Acquisition XVI, LLC has no legal right to do so.

33

000211

93.     The Defendants' actions complained of herein were committed in the conduct of

business, trade, commerce or the furnishing of service in this state and constituted a violation of

NY GBL §349 independent of whether it also constituted a violation of any other law.

94.     The Defendants' actions complained of herein were consumer-oriented, involving

deceptive representations made in form/standardized correspondence with large numbers of

consumers.  The violations alleged herein are recurring and have a broad impact upon the public.

95.     Indeed, although Plaintiff cannot say with certitude exactly how many individuals

have been subjected to Defendants' false, misleading, and deceptive acts, it is virtually certain to

be in the hundreds, if not thousands.

96.     Defendants' deceptive acts, by their nature, involved material misrepresentations

regarding alleged obligations owed to Palisades Acquisition XVI, LLC by Plaintiff and other

class members.

97.     Defendants engaged in such conduct in the course of trade and commerce.

98.     Defendants willfully, knowingly and/or recklessly disregarded the unlawful

nature of the debts they sought to collect from Plaintiff and other similarly situated consumers in

the State of New York.

99.     Based upon the foregoing:

a.      Defendant Houslanger & Associates, PLLC is vicariously liable for Defendant

        Todd Houslanger's violations of NY GBL §349 because Defendant Todd

        Houslanger was acting within the scope of his employment at Houslanger &

        Associates, PLLC.  Additionally, they are responsible for other attorneys

        employed by Houslanger & Associates who, within the scope of their

        employment, initiated and enforce post judgment remedies without

34

conducting a good faith investigation into the legal and factual basis for doing so.

b.      Defendant Palisades Acquisition XVI, LLC is vicariously liable for Defendants Todd Houslanger and Houslanger & Associates, PLLC's violations of NY GBL §349 because both Todd Houslanger and Houslanger & Associates, PLLC were their attorneys and agents in-fact, who were acting within the scope of their authority.  Defendant Palisades Acquisition XVI, LLC further had actual or constructive knowledge that Defendants Todd Houslanger and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

c.      Defendant Palisades' is also individually liable for violating NY GBL §349 because it has actual or constructive knowledge that it lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyways.

d.      Defendant Palisades Asta Funding, Inc. is vicariously liable for Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC's violations of NY GBL §349 because 1) both Todd Houslanger and Houslanger & Associates, PLLC were Palisades attorneys and agents in-fact, who were acting within the scope of their authority, 2) Asta Funding, Inc. had

35

000213

the right and ability to supervise Palisades, and had a direct financial interest

in the manner in which Palisades managed the Great Seneca portfolio.

Defendant Asta Funding, Inc. further had actual or constructive knowledge

that Defendants Palisades, Todd Houslanger's, and Houslanger & Associates,

PLLC were not conducting a meaningful investigation into the underlying

documents prior to initiating and enforcing post judgment remedies which

certified that Palisades Acquisition XVI, LLC was the current creditor as

assignee of the judgment creditor.

e.   Defendant Palisades' is also individually liable for violating NY GBL §349

because it has actual or constructive knowledge that it lacked standing to

enforce post judgment remedies against Plaintiff and other class members, but

employed Todd Houslanger and Houslanger & Associates, PLLC to initiate

and enforce post judgment remedies against Plaintiff and other class members

anyways.

f.   Defendant Asta Funding, Inc. is also individually liable for violating NY GBL

§349 because it has actual or constructive knowledge that Palisades lacked

standing to enforce post judgment remedies against Plaintiff and other class

members, but employed Todd Houslanger and Houslanger & Associates,

PLLC to initiate and enforce post judgment remedies against Plaintiff and

other class members anyways.

g.   Defendant Todd Houslanger is personally liable for the tortious acts of

Houslanger & Associates, PLLC because (1) he is the owner, founder, and

managing attorney of of Houslanger & Associates, PLLC, (2) he personally

36

developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint, (3) he approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established, and (4) the tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

100.   As a direct and proximate result of Defendants' violations of NY GBL §349, Plaintiff and the class of consumers he seeks to represent, have suffered compensable harm and are entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against the Defendants for:

(1)   An order certifying this case as a class action under Fed.R.Civ.P. 23;

(2)   A judgment declaring that the Defendants have committed the violations of law alleged in this action;

(3)   An order enjoining and directing Defendants to comply with the New York Civil Procedure in their debt collection activities, including without limitation:

   A. Directing Defendants to cease engaging in debt collection practices that violate the FDCPA and NY GBL §349;

   B. Directing Defendants to cease the initiation and enforcement of judgments, including those currently being enforced, unless they possess legally sufficient assignments from all prior judgment owners, have filed said assignments with

37

the appropriate court of record, and have given the Plaintiffs notice of the assignment as required by *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010);

(4)    Actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

(5)    Statutory damages pursuant to the FDCPA, and NY GBL §349;

(6)    Treble damages pursuant to NY GBL §349;

(7)    Such other and further relief that may be just and proper.

## JURY DEMAND

Please take notice that Plaintiff demands trial by jury with respect to all claims and all issues in this action.

Dated: August 27, 2015

/s/ *Timothy Hiller, Esq.*
Timothy Hiller, Esq.
Seth Andrews, Esq.
Kenneth Hiller, Esq.
Law Offices of Kenneth Hiller, PLLC
*Attorneys for the Plaintiff*
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email:  thiller@kennethhiller.com

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906

38

CITY COURT OF BUFFALO
COUNTY OF ERIE
--------------------------------------------------------------X

CENTURION CAPITAL CORPORATION                    INDEX NO.: CV-007295-06/BU
ASSIGNEE OF PROVIDIAN FINANCIAL CO,

Plaintiff(s),

-against-

CHRISTOPHER MCCROBIE,

Defendant(s).
--------------------------------------------------------------X

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK     ]
                      ] ss.:
COUNTY OF SUFFOLK     ]

SOLITA TAYLOR-WASHINGTON deposes and says:

Deponent is not a party to this action, is over 18 years of age and resides in HAUPPAUGE, NY 11788.

On the _14th_ day of **September, 2015,** deponent served the within

## AFFIRMATION IN OPPOSITION and MEMORANDUM OF LAW

upon the following attorney(s):

TO:   Seth J. Andrews, Esq.
      Law Offices of Kenneth Hiller, PLLC
      6000 North Bailey Avenue, Suite 1A
      Amherst, NY 14226
      (716) 564-3288

the address designated by said attorneys for that purpose by depositing a true copy of same enclosed in a first class regular mail wrapper in an official depository under the exclusive care and custody of the United States Postal Service within New York State.

Solita Taylor-Washington

*Sworn to before me this*
_14th_ *day of* **September, 2015**

NOTARY PUBLIC

SARA MUSTAFA
NOTARY PUBLIC-STATE OF NEW YORK
No. 02MU6314224
Qualified in Suffolk County
My Commission Expires November 10, 2018

EP14F



UNITED STATES POSTAGE
$ 005.75⁰
PITNEY BOWES
02 1P 000168569
0001685693 SEP 14 2015
MAILED FROM ZIP CODE 11743

Schedule package pickup right from your home or office at usps.com/pickup

Print postage online - Go to usps.com/postageonline

**PLEASE PRESS FIRMLY**

PLEA:



## Flat Rate
## Mailing Envelope

*For Domestic and International Use*

*Visit us at usps.com*

**PRIORITY MAIL** ®
*For Domestic and International Use*

UNITE~

From

Houslanger & Associates
Attorneys At Law
372 New York Avenue
Huntington, NY 11743



TC Law Offices of Kenneth Hiller, PLLC
6000 North Bailey Avenue
Suite 1A
Amherst, NY 14226

Label 228, January 21

*Country of Destination/Pays de destination:*

**PRIORITY MAIL** ®
FED STATES POSTAL SERVICE

nt of mailable material may be enclosed, as long
is not modified, and the contents are
within the envelope with the adhesive
e of closure.

RESTRICTIONS APPLY:

...TION

...the

...sps.gov

INDEX NO.: CV-007295-06/BU

**CITY COURT OF BUFFALO**
**COUNTY OF ERIE**
---------------------------------------------------------------X
**CENTURION CAPITAL CORPORATION**
**ASSIGNEE OF PROVIDIAN FINANCIAL CO,**

Plaintiff(s),

-against-

**CHRISTOPHER MCCROBIE,**

Defendant(s).

---

**AFFIRMATION IN OPPOSITION and MEMORANDUM OF LAW**

---

**HOUSLANGER & ASSOCIATES, PLLC**
*Attorney for Plaintiff/Judgment Creditor*
**PALISADES ACQUISITION XVI, LLC**
**Assignee and Successor in Interest to**
**CENTURION CAPITAL CORPORATION**
**372 New York Avenue**
**Huntington, NY 11743**
**Tel. (631) 427-1140**
**Fax. (631) 427-1143**
**Our File No.: 168100**

---

**Service of a copy of the within is hereby admitted**

**Dated:**

**To:**

**Attorney(s) for**

**CITY COURT OF THE CITY OF BUFFALO**
**COUNTY OF ERIE**

---

**CENTURION CAPITAL CORPORATION**
**ASSIGNEE OF PROVIDAN FINANCIAL CO**

|  |  |
|---|---|
| **Plaintiff,** | **Index No. 007295-06** |

v.

**CHRISTOPHER MCCROBIE**

**Defendant.**

---

### Reply Affirmation of Seth J. Andrews, Esq.
### in support of Defendant's Motion
### to Vacate the Judgment

Seth J. Andrews, an attorney at law, affirms that the following statements are true and correct to the best of his knowledge, information and belief under penalties of perjury:

1.      I am an attorney at law duly licensed to practice in the State of New York and I am associated with the Law Offices of Kenneth Hiller PLLC, attorneys for the Defendant. As such, I am fully familiar with the facts and proceedings pertaining to this motion.

2.      I am making this Reply affirmation in support of Defendant's motion to vacate the default judgment and to dismiss the complaint in its entirety.

3.      First, the Court should not even consider Plaintiff's opposition papers as it was not timely served in accordance with CPLR 2103(b)2 and 2214b. Mr. Houslanger's office was served with Defendant's motion on September 3, 2015. A copy of the proof of service is attached as **Exhibit A**. As such, Plaintiff was required to serve its opposition at least seven (7) days prior to the return date for the motion. The motion is returnable September 21, 2015, so Plaintiff would have had to serve

1

000220

the Defendant by September 14, 2015. There is no affidavit of service contained in Plaintiff's opposition papers. My office received the opposition papers on Friday, September 18, 2015. It does not take 5 days to receive mail from Long Island, NY (Plaintiff's counsel's office) to Amherst NY (Defendant counsel's office). Hence, it is clear that the opposition was not served timely based on when the opposition papers were received at my office

4.     However, even if the Court sees fit to overlook the Plaintiff's neglect in timely service of its opposition papers, the Court still must grant the Defendant's motion because the Court lacks jurisdiction over the Defendant on two separate grounds.

5.     The first is that service was never properly effectuated under CPLR 308. Plaintiff's arguments never address this pivotal issue. Under section 308 of the CPLR, service can be made by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state"

6.     "The 'nail and mail' provision of the CPLR permits a plaintiff to mail duplicate process to the defendant at his last known residence, but clearly requires that the 'nailing' be done at the defendant's "'actual place of business, dwelling place or usual place of abode'. While there may be some question as to whether there is a distinction between 'dwelling place' and "usual place of abode', there has never been any serious doubt that neither term may be equated with the 'last known residence' of the defendant." <u>Feinstein v. Bergner</u>, 48 N.Y.2d 234, (1979)

7.     In <u>Ferstein</u>, the Court of Appeals held that service was "ineffective, since the plaintiff failed to comply with the specific mandates of CPLR 308. The

2

summons here was affixed to the door of defendant's last known residence rather than his actual abode." Feinstein at 241.

8.     Here, the Defendant was not living at the address where the process server affixed the summons. He never lived at that address. See Affidavit of Christopher Mccrobie, para, 9.  At the date of service, he was living at 6 Maple Drive, Bowmansville NY.  He purchased this home 3 months prior to the date of service. Id.

9.     Thus, service like in Ferstein was ineffective as the summons was never affixed to Defendant's residence.

10.     The second issue that the Plaintiff conveniently fails to respond to is that this Court lacks jurisdiction over Defendant pursuant to N.Y. Uniform City Court Act §213.

11.     Defendant's home and is located in Lancaster not the City of Buffalo. It is undisputable that this address is nowhere near the city limits of Buffalo.

12.     The rest of the Plaintiff's opposition papers focus on allegation of the Defendant's motion being untimely and having no meritorious defense.

13.     The Plaintiff has missed the point. The Court has no jurisdiction over the Defendant and as such the current judgment must be vacated under CPLR 5015 (a)4.

14.     Vacating a judgment under CPLR 5015(a)4 doesn't necessitate that the motion is to be filed within a year of the entry of the judgment nor does it need a meritorious defense. See *CPLR 5015,Commentary, C5015:3. Time for CPLR 5015(a) Application.* "Under paragraph 4, where want of jurisdiction is the ground, the

3

motion may of course be made at any time. Laches can't confer on a court jurisdiction it doesn't have."

15.    Plaintiff's entire argument focus on CPLR 317 and ignores the remedy available under CPLR 5015(a)4. Plaintiff fails to address this section because it knows it has no counter to it. So instead, Plaintiff attempts to strawman Defendant's argument so it can then easily dispose of them.

16.    Lastly, and most damning, is that Mr. Houslangers' client, Palisades Acquisition PLLC (Palisades") has no standing to even oppose the Defendant's motion.

17.    The action was originally filed by Centurion Capital Corporation as assignee of Providian Financial ("Centurion"). This entity obtained a judgement against the Defendant on March 9, 2007.

18.    Mr. Houslanger's office filed a notice of consent to change attorney on January 2, 2013. In this notice, Mr. Houslanger states he represents the current creditor, Palisades.

19.    However, there is no assignment of judgement filed with the clerk of this Court. Mr. Houslanger has not attached an assignment of judgment to the opposition papers. There is no admissible proof before this Court that Palisades owns the Centurion judgment.

20.    The bill of sale attached to the opposition papers are suspect and quite possibly fraudulent.

21.    On March 23, 2015, Mr. Houslanger was asked to provide proof of his Palisades ownership via an email from the undersigned to Mr. Houslanger. On

4

April 20, 2105, Mr. Houslanger responded by attaching a purported bill of sale. However, the bill of sale that was produced on April 20, 2015, is not the same set of documents that he is now proffering as evidence of ownership to this Court. The bill of sale that was provided on April 20, 2015 was from Great Seneca Financial Corp. ("Great Seneca"). Upon receipt of these documents, the undersigned emailed Mr. Houslanger and stated that none of the documents provided mention a sale of Mr. Mccrobie's account from Centurion to Palisades. Mr. Houslanger in a responding email, stated "this is the assignment." This was for a pool of matter in which you client was included. This is how they did things at the time of assignment." Attached as **Exhibit B** are copies of the four aforementioned emails with the Great Seneca attached bill of sale.

22. It is fascinating to counsel that after Plaintiff filed his motion to vacate the judgement, Mr. Houslanger suddenly provides to this Court a different set of documents purporting to be the true bill of sale of Mr. Mccrobies' account at Centurion. The Court should take special note that "Daniel Varner" is listed as President of Centurion but there is no affidavit attached to either bill of sale. The same "Daniel Varner" is the person who signed the bill of sale from Great Seneca.

23. Highly coincidental that Mr. Varner is president of both companies. The bill of sale is not notarized and the signature of "Daniel Varner" on the Great Seneca bill of sales is different than on the Centurion bill of sale. (The "d" appears to be different). Mr. Houslanger appears to stand for the proposition that Defendant and this Court should just accept that Daniel Varner is who he holds himself out to

5

24.    Leaving aside the veracity of this "new" bill of sale, it still fails to mention Mr. Mccrobie's account. All it establishes is that on March 5, 2007, accounts were transferred from Centurion to Palisades. It doesn't specify what so ever what accounts were transferred.

25.    Mr. Houslanger attempts to cure this defect with an affidavit from Stephen K. Braun, Assistant VP Operations/Director of Litigation. He claims that he is the custodian of records for Palisades and is aware of their procedure used to import and storage of records and assignment of electronically stored business records. He states that on March 5, 2007, Centurion sold a pool of account to Palisades and that Mr. Mccrobie's account was included in that purchase.

26.    First, the Court should take note of the date of this affidavit, which is September 14, 2015. Most convenient that the document Mr. Houslanger is relying on to substantiate his claim that Palisades owns the judgement was created after the Defendant filed his motion to vacate the judgement. Once again, it calls into question the veracity of the claim that Palisades has any ownership of Mr. Mccrobie's account.

27.    While Mr. Braun's title is impressive, his affidavit is worthless as it is hearsay. It does not meet the requirements to be admitted into evidence as a business record exception to the hearsay rule.

28.    "A business record is admissible if 'it was made in the regular course of any business and ... it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.' A proper foundation for the admission of a business record must be

6

provided by someone with personal knowledge of the maker's business practices and procedures.'" Palisades Collection, LLC v. Kedik, 890 N.Y.S.2d 230, 231 (4th Dept. 2009) (Citations omitted).

29.   Mr. Braun cannot overcome the hearsay rule by simply stating in an affidavit that there are electronic records pertaining to Mr. Mccrobie's account and that he knows this because they are kept in Palisades' ordinary course of business.

30.   In order for the business exception rule to apply, the actual documents to which the affiant is basing his knowledge must be produced. The foundation must be laid expressing what the documents(s) purport to be, how they are maintained in the regular course of business, and how the affiant has knowledge of these documents(s).

31.   Here, Mr. Braun's affidavit fails to set for any of the above requirements. He doesn't attach the business records that were allegedly obtained from Centurion. He doesn't state that he has reviewed these records in the regular course of business and that his sworn statement is based upon a review of these records. He merely states that there is a purported bill of sale on March 5, 2007 between Centurion and Palisades wherein Mr. Mccrobie's account was included in a pool of accounts.

32.   CPLR 4518 states that, "any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make

7

it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter. An electronic record, as defined in section three hundred two of the state technology law, used or stored as such a memorandum or record, shall be admissible in a tangible exhibit that is a true and accurate representation of such electronic record. N.Y. C.P.L.R. 4518 (McKinney).

33.    Here, the electronic records are not provided as mandated by CPLR 4518. Mr. Braun's affidavit itself is not even admissible as it was not made in the regular course of business, at the time the alleged purchase of the accounts were made by Palisades from Centurion. It would have had to been created in March of 2006, not September of 2015 for it to have been created in the normal course of business.

34.    The undersigned or even your Honor could supply the same affidavit as it does nothing except reiterate what the bill of sale already states.

35.    Even if the Court were to ignore the serious deficiencies in Mr. Houslanger's papers regarding the purported transfer of Mr. Mccrobie's account from Centurion to Palisades, it still should grant the Defendant's motion as the Plaintiff's papers fail to include the alleged prior assignment of the subject debt from the original creditor Providian Financial to Centurion. Therefore, the chain of custody is incomplete and Plaintiff has failed to establish it is the rightful owner of the alleged account it claims contains the Defendant's debt. See  LVNV Funding v. Guest, 2012 WL 1957715 (N.Y.City Ct.);Citibank v. C. Martin, 807 N.Y.S.2d 284 (Civil Ct New York 2005.).

8

36.    Plaintiff's jumbled mess of an argument is akin to throwing everything but the kitchen sink and hoping that something resonates with this Court. It ignores the fact that this Court does not have jurisdiction over the Defendant and further, that the purported Plaintiff, Palisades, has failed to demonstrate as a matter of law it has ownership of the default judgement entered against the Defendant by Centurion.

WHEREFORE, it is respectfully requested that Defendant's motion to vacate the default judgment be granted, dismiss the action in its entirety, together with such other relief as the court deems proper.

DATED:  September 18, 2015

Seth J. Andrews, Esq.
Law Offices of Kenneth Hiller PLLC
*Attorneys for Defendant*
6000 North Bailey Ave., Suite 1A
Amherst, New York 14226
(716) 564-3288
sandrews@kennethhiller.com

9

CITY COURT OF THE CITY OF BUFFALO
COUNTY OF ERIE

---

CENTURION CAPITAL CORPORATION
ASSIGNEE OF PROVIDAN FINANCIAL CO,

Plaintiff,

v.

**Index No. 007295-06**

CHRISTOPER MCCROBIE,

Defendants.

---

### AFFIRMATION OF SERVICE

Seth J. Andrews, hereby affirms under penalties of perjury, that the following statements are true and correct to the best of my knowledge, information and belief:

1. That on September 3, 2015, I mailed the Defendants Motion to Vacate Judgment, Affidavit of Christopher McCrobie with Exhibits in support of Defendant's Motion to Vacate the Judgement and Memorandum of Law upon the attorney of record for Plaintiff by using Fedex Express overnight Services, to said attorney to the address designated by them for that purpose, to wit:

   Houslanger & Associates, PLLC
   **Attorney for the Plaintiff**
   372 New York Avenue
   Huntington, New York 11743

Dated:  September 3, 2015

Seth J. Andrews

Sworn to before me this
3rd day of September, 2015.

Notary Public

LINDA DEDLINE
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
MY COMMISSION EXPIRES MAY 18 2019

000231

**Seth Andrews**

| | |
|---|---|
| **From:** | Todd E. Houslanger, Esquire <TEH@Toddlaw.com> |
| **Sent:** | Monday, April 20, 2015 5:16 PM |
| **To:** | 'Seth Andrews' |
| **Subject:** | RE: Christopher McCrobie v Palisades and Houslanger -  WDNY 15CV 018  -   H&A file # 168100 |

Seth,

I thought I forwarded this you previously, but upon review, I see that I had not.  I apologize.  Please see the attached presently.

Kindly contact me after your review so we may resolve this matter.

Much appreciated,

Todd



Chain of Title -
Great Seneca ...

Todd E. Houslanger, Esquire
HOUSLANGER & ASSOCIATES, PLLC
372  New York Avenue
Huntington, New York  11743
631-427-1140
TEH@TODDLAW.COM

_____

**From:** Seth Andrews [mailto:sandrews@kennethhiller.com]
**Sent:** Monday, March 23, 2015 12:12 PM
**To:** TEH@Toddlaw.com
**Subject:** RE: Christopher McCrobie v Palisades and Houslanger - WDNY 15CV 018 - H&A file # 168100

Todd,

Thank you for the various cases that you provided in your email. However, in order for us to properly evaluate Defendants' liability, we need to examine the alleged assignment of judgment. Please forward this to me at your earliest convenience.

-Seth

Seth Andrews
Attorney

1

## BILL OF SALE

THIS BILL OF SALE is dated as of March **5**, 2007 between GREAT SENECA FINANCIAL CORPORATION organized under the laws of the State of Maryland, located at 700 King Farm Blvd, Rockville, MD 20850 ("Seller") and PALISADES ACQUISITION XV, LLC, a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 ("Buyer").

For value received and subject to the terms and conditions of the Purchase and Sale Agreement (the "Agreement") dated February 5, 2007, between Buyer and the Sellers (as defined in the Agreement), Seller does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, all of the accounts of Seller included in the Accounts described in Section 1.2 of the Agreement, attached hereto as Schedule I.

This Bill of Sale is executed without recourse and without representations or warranties including, without limitation, any warranties as to collectibility, except as set forth in the Agreement.


GREAT SENECA FINANCIAL CORPORATION, Seller

By: _~Daniel Varner~_
    (Signature)
Name: _Daniel Varner_
Title:  _President_

PALISADES ACQUISITION XV, LLC Buyer

By: _____
       (Signature)
Name: _____
Title: _____

## BILL OF SALE

THIS BILL OF SALE is dated as of March 5 , 2007 between GREAT SENECA FINANCIAL CORPORATION organized under the laws of the State of Maryland, located at 700 King Farm Blvd, Rockville, MD 20850 ("Seller") and PALISADES ACQUISITION XV, LLC, a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 ("Buyer")

For value received and subject to the terms and conditions of the Purchase and Sale Agreement (the "Agreement") dated February 5, 2007, between Buyer and the Sellers (as defined in the Agreement), Seller does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, all of the accounts of Seller included in the Accounts described in Section 1.2 of the Agreement, attached hereto as Schedule I.

This Bill of Sale is executed without recourse and without representations or warranties including, without limitation, any warranties as to collectibility, except as set forth in the Agreement.

GREAT SENECA FINANCIAL CORPORATION,  PALISADES ACQUISITION XV, LLC
Seller                                   Buyer

By: _____           By: _____
        (Signature)                              (Signature)
Name: _____           Name: _Mitchell Chen_
Title: _____           Title: _Manager_

1002481
03/02/2007 2111467.02

## BILL OF SALE

Subject to the terms and conditions of that certain Sale Agreement, dated as of March 5, 2007 (the "Agreement"), between PALISADES ACQUISITION XV, LLC ("Seller"), a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 and PALISADES ACQUISITION XVI, LLC ("Buyer"), a Delaware limited liability company organized under the laws of the State of Delaware with its headquarters/principal place of business at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, and for the consideration set forth in the Agreement and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller does hereby sell, convey, assign, transfer, set over and deliver to Buyer all of Seller's right, title and interest in all of the Receivable Assets, which such Receivable Assets are more fully described in the Agreement.

This Bill of Sale is being delivered pursuant to the Agreement and is subject to each of the terms set forth therein.

This Bill of Sale shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

*[signature page follows]*

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed on its behalf by its duly authorized officer as of this _5_ day of March, 2007.

PALISADES ACQUISITION XV, LLC

By: _____

   Name: *Mitchell Sh*

   Title: *Manager*

-2-

000236

## Seth Andrews

| | |
|---|---|
| **From:** | Todd E. Houslanger, Esquire <TEH@Toddlaw.com> |
| **Sent:** | Thursday, May 07, 2015 4:43 PM |
| **To:** | 'Seth Andrews' |
| **Subject:** | RE: Christopher McCrobie v Palisades and Houslanger - WDNY 15CV 018 -   H&A file # 168100 |

That is the assignment. This was for a pool of matters in which your client was included.
This how they did things at the time of the assignment.

Your client was notified of the assignment and the assignee in our demand letter to him when we initially received the matter.

We would like to get some closure to this matter.

Please be advised that I shall be away from the office on vacation from tomorrow until May 19, 2014.

I hope we can it resolve it upon my return.  Thanks.

Regards,

Todd

Todd E. Houslanger, Esquire
HOUSLANGER & ASSOCIATES, PLLC
372  New York Avenue
Huntington, New York  11743
631-427-1140
TEH@TODDLAW.COM

---

**From:** Seth Andrews [mailto:sandrews@kennethhiller.com]
**Sent:** Wednesday, April 22, 2015 1:43 PM
**To:** TEH@Toddlaw.com
**Subject:** RE: Christopher McCrobie v Palisades and Houslanger - WDNY 15CV 018 - H&A file # 168100

Todd,

I am in receipt of the attached bill of sales, none of which mention Centurion Capital Corp. nor identify the alleged judgment  against my client.

-Seth

Seth Andrews
Attorney
 << OLE Object: Picture (Device Independent Bitmap) >>
6000 N Bailey Ave, Suite 1A
Amherst, NY 14226
Tel: (716)564-3288
Fax: (716)332-1884
Toll Free: 1-877-236-7366

000237