UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHRISTOPHER MCCROBIE, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 15-cv-0018-LJV-MJR |
| v. | ) ) | CLASS ACTION |
| PALISADES ACQUISITION XVI, LLC, ASTA FUNDING, INC., HOUSLANGER & ASSOCIATES, PLLC, and TODD HOUSLANGER, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## <u>SECOND AMENDED COMPLAINT</u>

1.      This is a consumer class action brought on behalf of consumers

subjected to Defendants' violations of the Fair Debt Collection Practices Act, 15

U.S.C. §1692 *et seq.* ("FDCPA") and New York General Business Law § 349 ("GBL

§ 349"). The FDCPA prohibits debt collectors from engaging in abusive, deceptive,

unfair, and illegal collection practices, while GBL § 349 prohibits deceptive acts or

practices in the conduct of any business.

2.      To summarize: In 2007, a company called Centurion Capital

Corporation (which is not a party to this action) obtained a default judgment

against Christopher McCrobie. Mr. McCrobie had no knowledge of the lawsuit or

the default judgment, as service appears to have been achieved by mailing the

pleadings to an old address at which he no longer resided. More than seven years

later, Houslanger & Associates, PLLC, a law firm acting on behalf of Palisades

Acquisition XVI, LLC ("Palisades"), forwarded an income execution to the Buffalo

1

City Marshall's Office, who pursuant to their instructions, forwarded it to Mr.
McCrobie's employer. But, as more fully explained below, neither Palisades, nor its
attorney and agent Todd Houslanger, nor his law firm Houslanger & Associates
PLLC, had the legal right to enforce the default judgment that had been obtained
by Centurion Capital Corporation, and, thus, Defendants' collection efforts violated
the FDCPA and GBL § 349.

## JURISDICTION AND VENUE

3.      Jurisdiction of this court arises under 15 U.S.C. §1692k(d), and 28
U.S.C. § 1331.

4.      This Court has supplemental jurisdiction over the state claims
pursuant to 28 U.S.C. §1367(a).

5.      Venue is proper in this district under 28 U.S.C. §1391(b) in that
Defendants transacts business within the Western District of New York and the
conduct complained of occurred here.

## PARTIES

6.      Plaintiff Christopher McCrobie, is a natural person residing in the
County of Erie and State of New York and is a "consumer" as that term is defined
by 15 U.S.C. §1692a(3).

7.      Defendant Palisades Acquisition XVI, LLC, ("Palisades") is a foreign
limited liability company organized and existing under the laws of the State of
New Jersey and is a "debt collector" as that term is defined by 15 U.S.C.
§1692a(6).

8.     Defendant, Palisades Acquisition XVI, LLC is a purchaser and collector of defaulted debts, regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

9.     Defendant Asta Funding, Inc. ("Asta") is a foreign corporation, organized and existing under the laws of the State of Delaware, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

10.     Asta is a purchaser and collector of defaulted debts, regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

11.     Defendant Palisades is a wholly owned subsidiary of Defendant Asta.

12.     Defendant Houslanger & Associates, PLLC is a domestic professional corporation organized and existing under the laws of the State of New York and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

13.     Defendant Houslanger & Associates, PLLC regularly attempts to collect debts alleged to be due another, and is principally engaged in debt collection.

14.     Defendant Todd Houslanger is the managing attorney of Houslanger & Associates, PLLC and is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6). On information and belief:

   a. Todd Houslanger is also the owner and founder of Houslanger & Associates, PLLC;

   b. Todd Houslanger personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this

complaint;

c. Todd Houslanger approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established; and

d. The tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

12.     Defendant Todd Houslanger regularly attempts to collect debts alleged to be due to another, and engages in a business in which the principal purpose is debt collection.

## FACTUAL ALLEGATIONS

13.     Plaintiff Christopher McCrobie allegedly incurred a credit card debt to Providian Financial. This debt will be referred to as "the subject debt."

14.     The subject debt arose out of a transaction in which money, services or property, which was the subject of the transaction, was primarily for personal, family and/or household purposes. As such, said debt is a "debt" as that term is defined by 15 U.S.C. §1692a(5).

15.     Plaintiff thereafter allegedly defaulted on the subject debt.

16.     Sometime after the alleged default, Providian Financial allegedly assigned the subject debt to Centurion Capital Corporation

17.     Centurion Capital Corporation filed an action against the Plaintiff in Buffalo City Court in or about August 6, 2006.

18.     The summons and complaint commencing the action referenced in paragraph 17 was never personally served upon Plaintiff. Instead, it was served

4

by substitute service (posting and mailing) at an outdated address of Plaintiff's.

19.     At the time of the service of the above-referenced action, Plaintiff did not reside at the address where the summons and complaint were posted and mailed to.

20.     Centurion Capital Corporation obtained a default judgment against the Plaintiff in said court on or about March 8, 2007.

21.     Plaintiff had no knowledge of the commencement of the above-reference action, or of the default judgment. The default judgment was never reported against his credit.

22.     Sometime before August 28, 2014, Palisades retained the services of Mr. Houslanger and his firm, Houslanger & Associates, PLLC, for the purpose of enforcing the default judgment that Centurion Capital Corporation had obtained against the Plaintiff.

### Background: New York State Law on Assignment of Judgments

23.     Under CPLR 5019(c), anyone who takes assignment of a City Court judgment must publicly file "a copy of the instrument on which [the assignee's] authority is based, acknowledged in the form required to entitle a deed to be recorded."

24.     Further, under the cases of *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 639-640 (S.D.N.Y. 2013) and *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010), in order for an assignment of a judgment to take effect, the *assignor* must notify the judgment debtor of the

assignment.

25. CPLR 5019(c) and the *Cardello* rule are not mere technicalities. In

*Cardello*, Judge Straniere explained why these rules are material:

> The recent experience of the Civil Court showing large numbers of default judgments being obtained in credit card cases against consumers far in excess of the default rate in regard to all other litigation, as well as studies done by independent consumer rights groups showing improper service of process in regard to credit card debt, requires that such notice be given to the defendant. The situation has been . . . fraught with abuse . . . . Further, on a regular basis this court encounters defendants being sued on the same debt by more than one creditor alleging it is the assignee of the original credit card obligation. Often these consumers have already entered into stipulations to pay off the outstanding balance due the credit card issuer and find themselves filing an order to show cause to vacate a default judgment from an unknown debt purchaser for the same obligation. Without receiving such notice of the assignment, a debtor seeking to make any application to the court would not have any idea as to which alleged creditor is to be served.
>
> . . . It is clear . . . that due process requires that notice of the assignment be given to the debtor by the assignor and not the assignee. . . .
>
> Allowing the assignee to give notice would enable dishonest debt collectors to search the court records, obtain the names of judgment debtors and send the debtor a letter stating they have purchased the debt and the debtor should make all payments to the third party. Requiring the assignor[] . . . to serve the notice would reduce the incidents of fraud in this regard. The Federal Fair Debt Collection Practices Act lists 16 "false, deceptive or misleading" practices, some of which would not be available by requiring a notice of assignment to be given by the assignor to the debtor. . . . As the [New York State] Court of Appeals stated in *Tri City Roofers v. Northeastern Indus. Park*, . . . "A judgment debtor

6

is not called upon to search the county's records every
time he is served with an execution or desires to make a
payment on his debt." The failure to establish that
notice of the assignment was given to the debtor makes
the assignment ineffective.

## *Background: New York State Law on Income Executions*

26.     Under CPLR 5230(b) and § 1501 of the New York Uniform City Court
Act, no income execution may be issued except by the clerk of the court or by the
judgment creditor's attorney.

27.     Moreover, under New York State law, a judgment creditor is not
required to first apply to any court before resorting to post-judgment remedies.

28.     As can be seen from the income execution attached to this Complaint
as **Exhibit A**, an income execution is an *order* to both the judgment debtor and to the
Marshall to take certain steps to effectuate a court's judgment – and that mandate
is backed up by the power of the court that handed down the judgment.

29.     In this way, a New York State income execution is similar to a federal
civil subpoena, which is a command by the federal court that may be signed and
issued by an attorney admitted to practice in that federal court. *See* Fed. R. Civ. P.
45.

30.     Thus, any New York State attorney who signs and issues an income
execution is acting as an officer of the court, just as any attorney who signs and
issues a federal civil subpoena is acting as an officer of the court. Indeed, CPLR
5230(b) states that any attorney signing and issuing an income execution is acting
as "officer of the court."

31.     As an officer of the court, an attorney who signs an income execution is under a duty to take minimal steps to satisfy himself that his client is entitled to garnish a consumer's wages. *See Scott v. Weltzler*, 600 N.Y.S.2d 974, 976-77 (N.Y. App. Div. 1993).

### Background: Attorney's Duties Before Signing Income Executions

32.     An attorney's duty to satisfy himself that his client is entitled to garnish a consumer's wages is not a burdensome one, since the underlying contract dispute that resulted in the alleged debt – however messy it might have been – has already been reduced to a judgment.

33.     That said, in order to fulfill his duty, the attorney signing an income execution must do no more than satisfy himself that a judgment exists, and that his client is entitled to execute upon it.

34.     The exact steps that the attorney must take to fulfill that duty depend on the circumstances.

35.     For example, an attorney who represents a client when the client obtains the judgment, then later signs an income execution on behalf of the same client, need not take *any* additional steps, because he already has personal knowledge that the judgment exists and that the client is entitled to execute upon it.

36.     On the other hand, an attorney who is retained *after* judgment is entered would be required to at least *look* at a copy of the judgment. If the client were to produce a copy of the judgment, and the client's name appeared in the caption as the judgment creditor, that would be enough to satisfy the duty. As

8

stated above, this duty is not burdensome – rather, it involves reviewing a single sheet of paper.

37.     Assuming, however, that the name of the client did *not* appear in the caption, the attorney would be under a duty to ask the client for a copy of the instrument(s) on which the client's authority to enforce the judgment is based, *before* signing and issuing the income execution.

38.     An attorney who signs an income execution without taking these minimal steps to steps to satisfy himself (a) that a judgment exists and (b) that his client is entitled to enforce the judgment is acting recklessly at best. After all, it would be all too easy for an unscrupulous actor to troll the state court's electronic dockets in search of stale judgments to misappropriate, or even to fabricate judgments out of whole cloth; an attorney who did not take even minimal steps to satisfy himself that a purported judgment actually exists and that his client is legally entitled to enforce it might become the accomplice of such an unscrupulous actor, even if unwittingly.

39.     Since it is the duty of an attorney, retained post-judgment, to at least look at a copy of the judgment to be enforced, it follows that, by signing an income execution, an attorney represents to the Marshall, the judgment debtor, and the judgment debtor's employer that he has in fact looked at a copy of the judgment.

40.     Further, since it is the duty of an attorney, retained post-judgment by someone other than the original judgment creditor, to verify that his client has taken the legal steps necessary to enforce the judgment, it follows that the

attorney's signature on the income execution represents to the Marshall, the judgment creditor, and the judgment creditor's employer that he has in fact verified that his client has taken the legal steps necessary to execute upon the judgment.

41.    In other words, by signing an income execution, an attorney is representing to the world that he is the attorney of record, that his client is entitled to collect on the judgment, that he is entitled to pay over the Marshall's poundage from any amounts collected, and that he has the right to issue a satisfaction of judgment in the name of the judgment creditor.

### *Houslanger Sends an Income Execution to McCrobie*

42.    On or about August 28, 2014, an attorney employed by Houslanger & Associates, PLLC signed an income execution bearing the caption of the Buffalo City Court case in which Centurion Capital Corporation obtained a default judgment against Plaintiff ("the Income Execution"). A copy of the Income Execution is attached to this Complaint as **Exhibit A**.

43.    The attorney employed by Houslanger & Associates, PLLC signed the Income Execution, not on behalf of Centurion Capital Corporation, but on behalf of *Palisades* as the purported judgment creditor.

44.    Houslanger & Associates, PLLC then forwarded the Income Execution to the Office of the Marshall of the City of Buffalo, with the knowledge and the intent that the Marshall, in turn, would forward the income execution first to Plaintiff, and then to Plaintiff's employer.

45.    The Income Execution was a "communication" as that term is defined

10

by 15 U.S.C. § 1692a(2).

46.   The Income Execution stated that Palisades was "the current creditor, as assignee to whom this debt is owed."

47.   The Income Execution commanded Plaintiff to begin sending 10% of his income to the Marshall, so that the Marshall could then forward that money to Houslanger & Associates, PLLC, as attorneys for Palisades.

48.   Moreover, the Income Execution threatened that, should Plaintiff refuse to send 10% of his income to the Marshall within 20 days, the Marshall would forward the income execution to Plaintiff's employer, and that Plaintiff's employer would begin sending 10% of Plaintiff's income to the Marshall – all for the purpose of forwarding that money to Houslanger & Associates, PLLC, as attorneys for Palisades.

49.   In short, the Income Execution represented that Palisades had the right to execute upon the judgment obtained by Centurion Capital Corporation – and, specifically, that Palisades had the right to garnish Plaintiff's income and pay over poundage to the Marshall from any amounts collected.

50.   For reasons more fully explained above in paragraphs 32 through 41, by signing the Income Execution, the attorney employed by Houslanger & Associates, PLLC represented that he had reviewed the judgment in the Buffalo City Court case as well as any other documents necessary to satisfy himself that a judgment existed, and that Palisades was legally entitled to execute the judgment.

### *Defendants Were Not Legally Entitled to Use Post-Judgment Remedies to Collect Upon Centurion's Judgment*

51.     Contrary to that representation, however, neither Palisades nor any of its alleged predecessors in interest ever took the steps required by New York State Law to take assignment of the judgment or to enforce the judgment.

52.     Specifically, no copy of the instrument on which Palisades' authority is based was ever filed at the Buffalo City Court – as required by CPLR 5019(c) – as evidenced by the fact that such copy is completely absent from Clerk's publicly available file on the case.

53.     Moreover, neither the assignor, Centurion Capital Corporation, nor the assignee, Palisades, ever notified Plaintiff of the assignment of the judgment, as required by *Cardello*.

54.     Because neither Centurion Capital Corporation nor Palisades followed CPLR 5019(c) or *Cardello*, Palisades lacked legal authority either to execute upon the Buffalo City Court judgment, and Houslanger & Associates, PLLC's representation to the contrary in the Income Execution was false and misleading.

55.     On information and belief, no attorney at Houslanger & Associates, PLLC reviewed the Buffalo City Court judgment before the Income Execution was signed.

56.     On information and belief, Houslanger & Associates, PLLC never asked Palisades to provide it with a copy of the instrument upon which Palisades's alleged authority to execute upon the judgment was based, nor did any attorney review any such documents.

57.     Thus, Houslanger & Associates, PLLC did not conduct the review of the Buffalo City Court judgment that, by signing the Income Execution, it represented that it had performed.

58.     The Income Execution did not contain a disclaimer stating that no attorney had personally reviewed the particular circumstances of Plaintiff's account.

59.     Here, Plaintiff never knew about the 2006 Buffalo City Court case, and Centurion Capital Corporation obtained a default judgment – because the process server hired by Centurion's attorneys nailed and mailed the summons and complaint to an address where Plaintiff no longer lived.

60.     Thus, Judge Straniere's explanation of why CPLR 5019(c) and *Cardello* are material is especially relevant to Plaintiff's situation.

61.     Defendants subsequently received $572.45 by executing on Plaintiff's income, as they later admitted in an email to Plaintiff's attorneys. A copy of the email chain containing this admission is attached to this Complaint as **Exhibit B**.

### *Further Confirmation that Defendants Never Took the Steps Necessary to Enforce the Centurion Judgment*

62.     On March 23, 2015 Plaintiff, by and through his attorney, contacted Houslanger & Associates, PLLC, by and through Todd Houslanger. Plaintiff requested that Mr. Houslanger provide a copy of the chain of title proving that Palisades had a right to enforce the default judgment obtained against Plaintiff by Centurion. *See* **Exhibit B**. Houslanger & Associates, PLLC, by and through Todd Houslanger, provided the following documents in response to that request:

a.  A purported Bill of Sale (signed in duplicates) between Great Seneca Financial Corporation and Palisades Acquisition XVI, LLC dated March 5, 2007,; and

b.  A purported Bill of Sale between Palisades Acquisition XV, LLC and Palisades Acquisition XVI, LLC dated March 5, 2007.None of the documents provided to Plaintiff make any reference to Plaintiff, Centurion Capital Corporation, or the default judgment obtained against Plaintiff.

Copies of these documents are attached to this Complaint as **Exhibit C**.

63.     None of the documents provided to Plaintiff establish that the default judgment obtained against Plaintiff was ever assigned, much less that the default judgment was ultimately assigned to Palisades XVI, LLC.

64.     On April 22, 2015, Plaintiff contacted Houslanger & Associates by and through Todd Houslanger, and informed it that none of the documents purportedly showing chain of title mention Centurion Capital Corp, or identify the default judgment taken against Plaintiff by Centurion Capital Corp. *See* **Exhibit B**.

65.     On May 7, 2015 Todd Houslanger responded via email. He reiterated his belief that the documents previously provided on March 23, 2015 evidenced "the assignment." He added that this assignment was for a "pool of matters" in which Plaintiff was apparently allegedly included. He stated "[t]his is how they did things at the time of the assignment." *See* **Exhibit B**.

66.     Plaintiff later learned that the "pool of matters" referred to by Mr. Houslanger involved a massive portfolio which Palisades Acquisition XVI, LLC allegedly acquired in March of 2007. A copy of a press release concerning this particular acquisition is attached to this Complaint as **Exhibit D**; a later press

release that referred to this massive portfolio as the "Great Seneca Portfolio" is attached as **Exhibit E**.

67.     According to an annual report it filed with the Securities & Exchange Commission Asta estimated the face value of the debts contained in the Great Seneca Portfolio to be $6.9 billion, yet Palisades paid only $300 million for it. In other words, Palisades paid roughly four cents per dollar of debt allegedly acquired. The portfolio was made up of "predominantly credit card accounts and includes accounts in collection litigation and accounts as to which the sellers have been awarded judgments and other traditional chargeoffs." A copy of the Annual Report is attached to this Complaint as **Exhibit F**.

68.     Shortly after purchasing roughly $6.9 billion in debt, Asta CEO Gary Stern indicated that there would be no corresponding ramp-up in Palisades's servicing capacity, commenting, "This significant portfolio purchase . . . will further demonstrate our outsourcing strategy and our ability to absorb such a large purchase without adding materially to our infrastructure." *See* **Exhibit D**.

69.     The terms of the Great Seneca Portfolio purchase agreement were described as follows in the Annual Report:

> Under the Portfolio Purchase Agreement, we assumed certain risks associated with the Portfolio Purchase. The representations and warranties with respect to the Portfolio which we received from the Sellers have limitations both in scope and, in certain cases, duration, including a limitation of our put-back rights with respect to certain types of claims, a requirement that certain claims be brought within 120 days of closing or be deemed waived, and a limitation with respect to the Sellers' responsibilities for acts of prior owners. Other than the

15

representations contained in the Portfolio Purchase
Agreement, the accounts were sold as is. No assurances
can be given that we will have an adequate remedy if our
understandings about the quality, quantity and
characteristics of the Accounts in the Portfolio prove to be
contrary to our expectations."

*See* **Exhibit F** at 13.

70.     Palisades apparently did not conduct a thorough review of the quality

of the assets in the Great Seneca Portfolio, but instead only conducted an "initial

review" about which it could make "no assurances." *See Id.*

71.     Shortly after the purchase, Palisades adopted a "current strategy of

suing debtors" to avoid a "slowing of collections" which could cause it to default on

its obligations to its creditors. *See Id.*

72.     A copy of Asta's August 10, 2015 quarterly statement is attached to

this Complaint as **Exhibit G**. On page 53, the quarterly statement states:

*Impairments* – There were no impairments in the nine
month period ended June 30, 2015 as compared to $19.6
million recorded during the nine month period ended
June 30, 2014. The $19.6 million of impairments in the
nine month period ended June 30, 2014 was comprised of
$14.0 million from the Great Seneca Portfolio…The Great
Seneca portfolio was purchased in March 2007. The
portfolio was purchased on the secondary market and as
such accounts included in the portfolio were 5 to 6 years
old at the time of purchase. Purchasing portfolios on the
secondary market was not a normal course of action for us
at the time, as we primarily purchased accounts from the
originator of the accounts. This action of purchasing from
the secondary market played a role in the determination
in March 2008 that we could no longer reasonably
forecast cash collections and therefore switched the
portfolio over to the cost recovery portfolio. Based upon
the age of the Great Seneca Portfolio in June 2014 (over
seven years from our purchase date, and 12 to 13 years

16

> from the inception of the portfolio) the portfolio was
> clearly on the outer bounds of our collection forecasts.
> Based upon the significantly reduced collection forecast
> and the lower valuation of the judgments as they age, we
> determined an impairment of $14 million was necessary
> in June 2014.

73.     Great Seneca Financial filed formal articles of dissolution on March 25,

2009, and these articles were accepted by the state of Maryland. *See Hartman v.*

*Great Seneca Financial Corp*, 596 F.3d 606, 617-618 (6th Cir. 2009).

74.     As of August 20, 2015, Asta Funding, Inc.'s website represented that,

after it purchases portfolios, it will not "burden[]" the seller with "overwhelming

requests for documentation, or ongoing communications with debtors whose

accounts have been sold." A print-out of this page of Asta's website is attached to

this Complaint as **Exhibit H**.

75.     Moreover, a review of New York and federal caselaw indicates that

Defendants Todd Houslanger, Houslanger & Associates, PLLC, and Palisades have

engaged in a pattern and practice initiating and enforcing post-judgment remedies

against large numbers of judgment debtors, without documentation sufficient to

prove that the Defendants have any right to enforce said judgments:

> a. Defendants Todd Houslanger, Houslanger &
>    Houslanger, and Palisades XVI, LLC have an
>    established practice of enforcing post judgment
>    remedies many years after the original judgment was
>    taken. *See Okyere v. Palisades Collection*, LLC, 961
>    F.Supp.2d 508, 510 (S.D.N.Y. 2013) (Noting that a
>    default judgment was taken against the Plaintiff in
>    2004, and that Palisades, by and through Todd
>    Houslanger, enforced post judgment remedies "[n]early
>    seven years later."); *Musah v. Houslanger & Associates*,
>    PLLC, 962 F. Supp. 2d 636, 637 (S.D.N.Y. 2013)

(pursuing post judgment remedies in 2011 for a judgment from 1997).

b. In *Centurion Capital Corp. v. Guarino*, 38 Misc. 3d 1216(A), 966 N.Y.S.2d 345 (Civ. Ct. 2012), Palisades XVI, LLC (represented by Todd Houslanger of Houslanger & Associates) was noted to be filing assignments of "judgements" with "so many defects" and in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected." *Id.* at *4. Particularly troubling to the court were "fundamental" discrepancies between the "name of the plaintiff and designated counsel in the court file and those on the papers being submitted by [Plaintiffs, including Palisades XVI, LLC and, interestingly, Centurion]." *Id.* While the court ultimately lifted the stay it had previously issued regarding the enforcement of post judgment remedies by Palisades, it noted that any defendant who seeks to vacate a judgment obtained by Palisades would be entitled to raise the issues addressed in its opinion. *Id.* at *8. Upon information and belief, and based on the entirety of the other facts laid out in this complaint, Todd Houslanger was the attorney who was filing many of the assignments of judgment noted by the court in *Centurion Capital Corp. v. Guarino*.

c. In *Colonial Credit Corp. v. Beyers*, 46 Misc. 3d 1221(A) (N.Y. Civ. Ct. 2015), Colonial Credit Corp, an assignee of Bally's Fitness Center, took a default judgment against an alleged debtor in 2005. Roughly seven years later, "Palisades Collection LLC as successor to Great Seneca Financial Corp" filed a notice to change attorneys from Wolpoff & Abramson, LLP to "Houslanger & Associates, PLLC" in June of 2012. *Id.* at 2-3. On December 18, 2012 the court ordered Defendants, including Palisades Collection LLC and Houslanger & Associates, PLLC, to provide proof of chain of title, as well as proof that proper notice had been given to the Defendant. *Id.* at 3. Defendants apparently did not respond to this request. *Id.* Further review of the file by the court revealed that the judgment had already been satisfied in July of 2007. *Id.* The court then ordered Defendants to appear at a conference to "explain why they should not either be

held in contempt or assessed costs for filing consents to change attorneys more than five years…after this matter was satisfied." *Id.* at 4. Neither of the Defendants appeared, and simply ignored the court order. *Id.* The court subsequently imposed sanctions against both Palisades, and Houslanger & Associates. *Id.* at 4-5. (Defendants have provided evidence indicating that, upon making assurances to the court that steps would be taken to ensure that no further collection activity would be taken on the previously satisfied account, that the sanctions were ultimately lifted. *See* Dkt #17-13.)

d. Plaintiff's attorneys previously brought suit against Houslanger & Associates, PLLC for attempting to enforce post judgment remedies without any legal right to do so in the matter of *Argenteri v. Credigy Receivables Inc. et al*, (W.D.N.Y. Civil Action No. 1:14-cv-00425). During the  course of that case, Mr. Houslanger failed to provide any documents demonstrating a valid assignment from the original creditor to Credigy.

## CLASS ACTION ALLEGATIONS

76.    Plaintiffs bring this case as a class action under Rule 23 of the Federal

Rules of Civil Procedure 23. A class action is appropriate and preferable in this case

because:

a. **Numerosity:** Based on the fact that, in one case, the court noted that Defendants were filing post judgment documents in such "large number[s]" that the court "had to intervene" to determine if "due process rights had been protected," *see* paragraph 66.b, it appears that the class is so numerous that joinder of all members is impractical.

b. **Common Questions Predominate:** There are questions of law and fact common to the class that predominate over any questions affecting only individual class members, specifically, whether the Defendants' initiation and enforcement of post judgment remedies

violated 15 U.S.C. §1692c(b) 1692e, 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(1), NY GBL §349, and New York Judiciary Law §487. The only individual issues are the identification of the consumers who received post judgment legal process (i.e. the class members) initiated by Defendants. These issues are matters capable of ministerial determination from Defendants' records.

c. **Typicality:** The Plaintiff's claims are typical of other class members. Plaintiff and all members of the Plaintiff's classes have claims arising out of the Defendants' unlawful initiation and enforcement of post judgment remedies. The entire class will benefit from the remedial and monetary relief sought in this action.

d. **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the individual Plaintiff, nor his counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

e. **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. The members of the class are generally unsophisticated consumers, whose rights will note be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the class would also create the risk of inconsistent and varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interests of judicial

economy.

77.     If the facts are discovered to be appropriate, Plaintiff will seek to

certify the class under Rule 23(b)(1), Rule 23(b)(2) and/or Rule 23(b)(3) of the

Federal Rules of Civil Procedure.

78.     Based on further discovery and further investigation (including, but no

limited to, Defendant's disclosure of class size and net worth), Plaintiff may, in

addition to moving for class certification using modified definitions of the classes,

class claims, and the class periods, seek class certification only as to particular

issues as permitted under Fed. R. Civ. P. 23(c)(4).

## COUNT ONE
### VIOLATIONS OF THE FDCPA BY ALL NAMED DEFENDANTS

79.     Plaintiffs reallege and reincorporate by reference the allegations in the

preceding paragraphs of this Complaint.

80.     This count is brought by Plaintiff, individually and on behalf of a class

consisting of consumers with New York addresses, who:

    a.  Within one year of August 27, 2015;

    b.  Had an income execution forwarded to their employer
       bearing the signature of Todd Houslanger (or any
       other attorney employed by Houslanger & Associates);
       or

    c.  Had their bank account restrained after a subpoena
       and/or restraining notice bearing Todd Houslanger's
       signature (or any other attorney employed by
       Houslanger & Associates) was forwarded to their
       bank;

    d.  In which Defendant Todd Houslanger represented that
       Palisades Acquisition XVI, LLC was the "current
       creditor" (or employed any other substantially similar

language) by way of assignment; and

   e.   Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendant Todd Houslanger.

81.    Section 1692c(b) of the FDCPA prohibits a debt collector from communicating, in connection with the collection of any debt, with any person other than a consumer, his attorney, or a consumer reporting agency, unless one of several exceptions applies.

82.    Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

83.    Specifically, FDCPA §1692e(2)(A) states that a debt collector cannot make a "false representation of the character, amount, or legal status of any debt."

84.    Furthermore, FDCPA §1692e(3) prohibits a debt collector from making a "false representation or implication that any individual is an attorney or that any communication is from an attorney."

85.    Furthermore, FDCPA §1692e(4) prohibits a debt collector from a "representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."

86.    Furthermore, FDCPA §1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken."

87.     Furthermore, FDCPA §1692e(10) prohibits a debt collector from using any "false representation or deceptive means to collect or attempt to collect any debt."

88.     FDCPA §1692f prohibits a debt collector from "using unfair or unconscionable means to collect or attempt to collect any debt."

89.     Specifically, FDCPA §1692f(1) prohibits a debt collector from collecting "any amount...unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

90.     Defendant Houslanger & Associates, PLLC and Todd Houslanger violated 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10) , §1692f and 15 U.S.C. §1692f(1) by personally signing, forwarding, and enforcing post judgment remedies against class members without conducting even a minimal review into the factual and legal basis supporting the right of his client, Palisades Acquisition XVI, LLC, to initiate and enforce post-judgment remedies. These actions were misleading in that they gave the impression that Palisades was entitled to use post-judgment remedies despite the facts that (1) Palisades Acquisition XVI, LLC lacked any valid assignment transferring interest in the judgments entered against class members; (2) Palisades Acquisition XVI, LLC never publicly filed in the appropriate courts copies of the instruments on which its authority was based, acknowledged in the form required to entitle a deed to be recorded; and (3) Palisades Acquisition XVI, LLC's and their alleged predecessors in interest never gave notice to class members that they were assigning their judgments. These

actions were also misleading in that, by signing and enforcing income executions on class members' wages and subpoenas and restraints directed to class members' banking institutions, Todd Houslanger and/or Houslanger & Associates, PLLC represented that they had conducted a minimal review to satisfy themselves that judgments existed, and that Palisades Acquisition XVI, LLC was entitled to execute upon those judgments against class members. However, as pled in this Complaint and upon further information and belief, Defendant Todd Houslanger and Houslanger & Associates, PLLC did not conduct even a minimal review sufficient to satisfy themselves that Palisades Acquisition XVI, LLC was entitled to enforce post judgment remedies against class members. Defendants Todd Houslanger's and Houslanger & Associates, PLLC's actions were also unfair and unconscionable because they resulted in money being collected from Plaintiff, and other class members, despite the fact that Palisades had no legal right to collect from Plaintiff and other class members. Specifically, not only did Defendants lack legal authority to collect the underlying debts, but – because Defendants were not entitled to use post- judgment remedies – Defendants lacked legal authority to add the 5% poundage fee to each class member's collection account.

91.     Moreover, Todd Houslanger and Houslanger & Associates, PLLC violated FDCPA § 1692c(b) by communicating with Marshalls and Sheriffs and, indirectly, with class members' employers and banks, concerning alleged debts by issuing income executions. These income executions were not "reasonably necessary to effectuate a post-judgment judicial remedy" because, as Todd Houslanger's and/or

Houslanger & Associates, PLLC's client was not entitled to use post-judgment remedies, sending the income executions was neither reasonable nor necessary.

92.     Defendant Houslanger & Associates, PLLC is vicariously liable for Defendant Todd Houslanger's violations of 15 U.S.C. §1692c(b), §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1) because Defendant Todd Houslanger was acting within the scope of his employment at Houslanger & Associates, PLLC. Additionally, they are responsible for other attorneys employed by Houslanger & Associates who, within the scope of their employment, initiated and enforce post judgment remedies without conducting a good faith investigation into the legal and factual basis for doing so.

93.     Defendant Palisades Acquisition XVI, LLC is vicariously liable for Defendants Todd Houslanger and Houslanger & Associates, PLLC's violations of 15 U.S.C. §1692c(b), § 1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5), §1692e(10), §1692f and 15 U.S.C. §1692f(1), because both Todd Houslanger and Houslanger & Associates, PLLC were their attorneys and agents in-fact, who were acting within the scope of their authority. Defendant Palisades Acquisition XVI, LLC further had actual or constructive knowledge that Defendants Todd Houslanger and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

94.     Defendant Palisades' is also individually liable for violating 15 U.S.C.

§1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10), §1692f

and 15 U.S.C. §1692f(1) because it has actual or constructive knowledge that it

lacked standing to enforce post judgment remedies against Plaintiff and other class

members, but employed Todd Houslanger and Houslanger & Associates, PLLC to

initiate and enforce post judgment remedies against Plaintiff and other class

members anyway.

95.     Defendant Palisades Asta Funding, Inc. is vicariously liable for

Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC's

violations of 15 U.S.C. §1692e, §1692e(2), §1692e (3), §1692e(4), §1692e(5),

§1692e(10), §1692f and 15 U.S.C. §1692f(1) because (a) both Todd Houslanger and

Houslanger & Associates, PLLC were Palisades attorneys and agents in-fact, who

were acting within the scope of their authority, and (c) Asta Funding, Inc. had the

right and ability to supervise Palisades, and had a direct financial interest in the

manner in which Palisades managed the Great Seneca portfolio. Defendant Asta

Funding, Inc., further, had actual or constructive knowledge that Defendants

Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC were not

conducting a meaningful investigation into the underlying documents prior to

initiating and enforcing post judgment remedies which certified that Palisades

Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

96.     Defendant Asta Funding, Inc. is also individually liable for violating 15

U.S.C. §1692c(b), §1692e, §1692e(2), §1692e(3), §1692e(4), §1692e(5), §1692e(10),

§1692f and 15 U.S.C. §1692f(1) because it has actual or constructive knowledge that

Palisades lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyway.

97.     Defendant Todd Houslanger is personally liable for the tortious acts of Houslanger & Associates, PLLC because (a) he is the owner, founder, and managing attorney of of Houslanger & Associates, PLLC, (b) he personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint, (c) he approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established, and (d) the tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

98.     As a direct and proximate result of the Defendants' FDCPA violations as alleged herein, Plaintiffs have suffered actual damages in an amount to be determined at trial, and are also entitled to statutory damages, attorneys' fees, and costs.

## COUNT TWO
## VIOLATIONS OF NY GBL §349 BY ALL NAMED DEFENDANTS

99.     Plaintiffs reallege and reincorporate by reference the allegations in the

27

preceding paragraphs of this Complaint.

100.    This count is brought by Plaintiff, individually and on behalf of a class

consisting of consumers with New York addresses, who:

    a.  Within one year of August 27, 2015;

    b.  Had an income execution forwarded to their employer
        bearing the signature of Todd Houslanger (or any
        other attorney employed by Houslanger & Associates,
        PLLC); or

    c.  Had their bank account restrained after a subpoena
        and/or restraining notice bearing Todd Houslanger's
        signature (or any other attorney employed by
        Houslanger & Associates, PLLC) was forwarded to
        their bank;

    d.  In which Defendant Todd Houslanger and/or
        Houslanger & Associates, PLLC represented that
        Palisades Acquisition XVI, LLC was the "current
        creditor" (or employed any other substantially similar
        language) by way of assignment; and

    e.  Subsequently had their wages garnished, or had
        money taken from their bank accounts pursuant to
        post judgment remedies initiated and enforced against
        them by Defendants Todd Houslanger and/or
        Houslanger & Associates, PLLC.

101.    The Defendants' collection actions complained of herein, include

making written representations to Plaintiff and other class members that were

false, deceptive, and misleading in that they implied that Todd Houslanger and

Houslanger & Associates, PLLC had conducted a good faith review of whether

Palisades Acquisition XVI, LLC was entitled to initiate and enforce post judgment

remedies against Plaintiff and other class members.

102.    The Defendants' collection actions complained of herein, include

making written representations to Plaintiff and other class members that were false, deceptive and misleading in that they (a) implied that Palisades Acquisition XVI, LLC was the current creditor by way of assignment from the judgment creditor, when, in fact, Palisades Acquisition XVI, LLC has no documentation to support that claim; and (b) implied that defendants Todd Houslanger and/or Houslanger & Associates, PLLC had conducted a good faith investigation into the legal and factual bases for Palisades Acquisition XVI, LLC to initiate and enforce post judgment remedies against class members when, in fact, no such good faith investigation had occurred.

103.   The Defendants' collection actions complained of herein, included the false, misleading, and deceptive practice of taking money from the wages and bank accounts of Plaintiff and other class members despite the fact that Palisades Acquisition XVI, LLC had no legal right to do so.

104.   The Defendants' actions complained of herein were committed in the conduct of business, trade, commerce or the furnishing of service in this state and constituted a violation of NY GBL §349 independent of whether it also constituted a violation of any other law.

105.   The Defendants' actions complained of herein were consumer-oriented, involving deceptive representations made in form/standardized correspondence with large numbers of consumers. The violations alleged herein are recurring and have a broad impact upon the public.

106.   Indeed, although Plaintiff cannot say with certitude exactly how

many individuals have been subjected to Defendants' false, misleading, and deceptive acts, it is virtually certain to be in the hundreds, if not thousands.

107.   Defendants' deceptive acts, by their nature, involved material misrepresentations regarding alleged obligations owed to Palisades Acquisition XVI, LLC by Plaintiff and other class members.

108.   Defendants engaged in such conduct in the course of trade and commerce.

109.   Defendants willfully, knowingly and/or recklessly disregarded the unlawful nature of the debts they sought to collect from Plaintiff and other similarly situated consumers in the State of New York.

110.   Defendant Houslanger & Associates, PLLC is vicariously liable for Defendant Todd Houslanger's violations of NY GBL §349 because Defendant Todd Houslanger was acting within the scope of his employment at Houslanger & Associates, PLLC. Additionally, they are responsible for other attorneys employed by Houslanger & Associates who, within the scope of their employment, initiated and enforce post judgment remedies without conducting a good faith investigation into the legal and factual basis for doing so.

111.   Defendant Palisades Acquisition XVI, LLC is vicariously liable for Defendants Todd Houslanger and Houslanger & Associates, PLLC's violations of NY GBL §349 because both Todd Houslanger and Houslanger & Associates, PLLC were their attorneys and agents in-fact, who were acting within the scope of their authority. Defendant Palisades Acquisition XVI, LLC further had actual

or constructive knowledge that Defendants Todd Houslanger and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades Acquisition XVI, LLC was the current creditor as assignee of the judgment creditor.

112.    Defendant Palisades' is also individually liable for violating NY GBL §349 because it has actual or constructive knowledge that it lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyway.

113.    Defendant Palisades Asta Funding, Inc. is vicariously liable for Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC's violations of NY GBL §349 because (a) both Todd Houslanger and Houslanger & Associates, PLLC were Palisades attorneys and agents in-fact, who were acting within the scope of their authority, and (b) Asta Funding, Inc. had the right and ability to supervise Palisades, and had a direct financial interest in the manner in which Palisades managed the Great Seneca portfolio. Further, Defendant Asta Funding, Inc. had actual or constructive knowledge that Defendants Palisades, Todd Houslanger's, and Houslanger & Associates, PLLC were not conducting a meaningful investigation into the underlying documents prior to initiating and enforcing post judgment remedies which certified that Palisades Acquisition XVI,

LLC was the current creditor as assignee of the judgment creditor.

114.    Defendant Asta Funding, Inc. is also individually liable for violating NY GBL §349 because it has actual or constructive knowledge that Palisades lacked standing to enforce post judgment remedies against Plaintiff and other class members, but employed Todd Houslanger and Houslanger & Associates, PLLC to initiate and enforce post judgment remedies against Plaintiff and other class members anyway.

115.    Defendant Todd Houslanger is personally liable for the tortious acts of Houslanger & Associates, PLLC because (a) he is the owner, founder, and managing attorney of of Houslanger & Associates, PLLC, (b) he personally developed and was instrumental in implementing the patterns and practices of Houslanger & Associates, PLLC with respect to the collection of consumer debts as alleged in this complaint, (c) he approved the signing and serving of income executions by himself and other employees of Defendant Houslanger & Associates, PLLC on behalf of purported assignees of judgments without first conducting an investigation to determine whether proof of the purported assignment could be established, and (d) the tortious conduct alleged in this complaint done in accordance with the instructions of Todd Houslanger in his capacity of managing attorney of Defendant Houslanger & Associates, PLLC.

116.    As a direct and proximate result of Defendants' violations of NY GBL §349, Plaintiff and the class of consumers he seeks to represent have suffered compensable harm and are entitled to preliminary and permanent

injunctive relief, and to recover actual and treble damages, costs and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that grant the following relief against Defendants:

(1)   An order certifying this case as a class action under Fed.R.Civ.P. 23;

(2)   A judgment declaring that the Defendants have committed the violations of law alleged in this action;

(3)   An order enjoining and directing Defendants to comply with the New York Civil Procedure Law and Rules; to cease engaging in debt collection practices that violate the FDCPA and NY GBL §349; to cease the initiation and enforcement of judgments, including those currently being enforced, unless they possess legally sufficient assignments from all prior judgment owners, have filed said assignments with the appropriate court of record, and have given the Plaintiffs notice of the assignment as required by *Chase Bank USA v. Cardello*, 27 Misc. 3d 791, 794 (N.Y. Civ. Ct. 2010);

(4)   Actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

(5)   Statutory damages pursuant to the FDCPA, and NY GBL §349;

(6)   Treble damages pursuant to NY GBL §349; and

(7)   Such other and further relief that to this Court may seem just and proper.

## JURY DEMAND

Please take notice that Plaintiff demands trial by jury with respect to all claims and all issues in this action.

Dated: August 29, 2019
   St. Louis, Mo.

        /s/ Jonathan R. Miller
        Jonathan R. Miller
        One of Plaintiff's Attorneys

Attorneys for Plaintiff:

Timothy Hiller
Seth Andrews
Kenneth Hiller
Law Offices of Kenneth Hiller, PLLC
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
Email: thiller@kennethhiller.com

Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 27th Floor
New York, NY 10004
(212) 248-7906
Email: brian@bromberglawoffice.com

Jonathan R. Miller
Law Office of Jonathan Miller, LLC
449 N. Euclid St., Ste. 140
St. Louis, MO 63108
(314) 582-1892
Email: jonathan@stlconsumerlaw.com