UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER MCCROBIE,

                Plaintiff,

      v.                                        15-cv-00018-LJV-MJR

PALISADES ACQUISITION XVI, LLC;
ASTA FUNDING, INC.; HOUSLANGER
& ASSOCIATES, PLLC; and TODD
HOUSLANGER,

                Defendants.

_____

**Reply Memorandum of Law in Support of Plaintiff's Motion for
Class Certification and to Appoint Class Counsel**

Respectfully submitted,

Brian L. Bromberg
Joshua Tarrant-Windt
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, New York 11225
(212) 248-7906
brian@bromberglawoffice.com
joshua@bromberglawoffice.com

Timothy Hiller
Seth Andrews
Kenneth Hiller
Law Offices of Kenneth Hiller, PLLC
6000 North Bailey Ave., Suite 1A
Amherst, NY 14226
(716) 564-3288
thiller@kennethhiller.com
sandrews@kennethhiller.com

# Table of Contents

*Table of Authorities* ........................................................................................................... *ii*

*Argument* ............................................................................................................................ *1*

    I.    **There is Commonality** ............................................................................... 1

    II.   **Plaintiff is a Typical Class Representative** ............................................ 7

    III.  **Plaintiff is an Adequate Class Representative**.................................... 10

        A.    **Plaintiff has demonstrated sufficient knowledge of the case and has been actively involved as a class representative** ......................................................................... 10

        ████████████████████████████████████████████████████████████ ..............14

    IV.  **There is Predominance** ........................................................................... 16

    V.   **There is Superiority** ................................................................................ 18

*Conclusion* ....................................................................................................................... *20*

**Table of Authorities**

**Page(s)**

**Cases**

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP,*
    875 F.3d 128 (2d Cir. 2017)..................................................................................................8

*Baltazar v. Houslanger & Assocs., PLLC,*
    No. 16-4982 (JMA) (AKT), 2018 WL 3941943 (E.D.N.Y. Aug. 16, 2018)........................5, 8

*Bradshaw v. Hilco Receivables, LLC,*
    765 F. Supp. 2d 719 (D. Md. 2011) ......................................................................................7

*Casale v. Kelly,*
    257 F.R.D. 396 (S.D.N.Y. 2009) .........................................................................................13

*Currier v. First Resol. Inv. Corp.,*
    762 F.3d 529 (6th Cir. 2014) ................................................................................................8

*Diaz v. Residential Credit Sols., Inc.,*
    299 F.R.D. 16 (E.D.N.Y. 2014).............................................................................................12

*Ebin v. Kangadis Food Inc.,*
    297 F.R.D. 561 (S.D.N.Y. 2014) .........................................................................................12

*Fainbrun v. Sw. Credit Sys., L.P.,*
    No. CV-05-4364 VVP, 2008 WL 750550 (E.D.N.Y. Mar. 18, 2008)....................................19

*Flores v. Anjost Corp.,*
    284 F.R.D. 112 (S.D.N.Y. 2012) ..............................................................................10, 11, 12

*Gallego v. Northland Grp. Inc.,*
    814 F.3d 123 (2d Cir. 2016)..................................................................................................19

*Graff v. United Collection Bureau, Inc.,*
    132 F. Supp. 3d 470 (E.D.N.Y. 2016) ..................................................................................19

*Hackett v. Midland Funding LLC,*
    No. 18-CV-6421 FPG, 2019 WL 1902750 (W.D.N.Y. Apr. 29, 2019)...................................7

*Jenkins v. Pech*,
   No. 8:14CV41, 2015 WL 3658261 (D. Neb. June 12, 2015) ....................................................5

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ............................................................................................19

*Kelen v. World Fin. Network Nat. Bank*,
   295 F.R.D. 87 (S.D.N.Y. 2013) ..............................................................................................10

*Martinez v. Cap. One Bank, N.A.*,
   No. 10-CV-8028 RJS, 2015 WL 4270172 (S.D.N.Y. July 13, 2015).....................................18

*Miller v. Wolpoff & Abramson, L.L.P.*,
   321 F.3d 292 (2d Cir. 2003).....................................................................................................5

*Morangelli v. Chemed Corp.*,
   275 F.R.D. 99 (E.D.N.Y. 2011) ..............................................................................................10

*Moskowitz v. La Suisse, Societe D'Assurances sur la Vie*,
   282 F.R.D. 54 (S.D.N.Y. 2012) ..............................................................................................13

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,
   No. 14-CV-7539 (MKB), 2016 WL 1274541 (E.D.N.Y. Mar. 31, 2016) ........................5, 6, 9

*Musah v. Houslanger & Assocs., PLLC*,
   962 F. Supp. 2d 636 (S.D.N.Y. 2013)............................................................................. *passim*

*Rumfelt v. Midland Funding LLC*,
   No. 18-CV-6420 FPG, 2019 WL 1902784 (W.D.N.Y. Apr. 29, 2019)............................4, 5, 8

*Russell v. Forster & Garbus, LLP*,
   No. 17-CV-4274(JS)(AYS), 2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020)...........................13

*Scott v. New York City Dist. Council of Carpenters Pension Plan*,
   224 F.R.D. 353 (S.D.N.Y. 2004) ............................................................................................13

*Sprinkle v. SB&C Ltd*,
   472 F. Supp. 2d 1235 (W.D. Wash. 2006) ................................................................................7

*Vandehey v. Client Servs., Inc.*,
   390 F. Supp. 3d 956 (E.D. Wis. 2019) ...................................................................................19

*Vu v. Diversified Collection Services, Inc.*,
   293 F.R.D. 343 (E.D.N.Y. 2013) ...........................................................................................17

**Statutes**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ............................................. *passim*

New York General Business Law § 349 ........................................................................1, 4, 6, 16

**Other Authorities**

Fed. R. Civ. P. 23 ...............................................................................................................3, 19

## Argument

Plaintiff Christopher McCrobie seeks an order certifying this action against Defendants Palisades Acquisition XVI, LLC ("Palisades"), Asta Funding Inc. ("Asta"), Houslanger & Associates, PLLC ("H&A"), and Todd E. Houslanger ("Houslanger") for violations of the Fair Debt Collection Practices Act ("FDCPA")[1] and the New York General Business Law ("GBL")[2] as a class action.

### I.       There is Commonality

This class action not only asks common questions but those questions are susceptible to common answers. Liability turns on two issues: (1) Did class members ever receive adequate notice of the assignment of a judgment to the Palisades Defendants, and (2) if not, did Defendants violate the law by collecting on those judgments?

The Houslanger Defendants present the first issue as two sub-questions: (1) whether the assignor ever sent a notice of assignment to the class and (2) whether the class ever received that notice. It is worth clarifying that, under *Musah v. Houslanger & Assocs., PLLC*,[3] a judgment debtor must receive notice of assignment, which under state law should come from the assignor but which may also be satisfied through notice from the assignee of the judgment.

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

---

[1] Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.
[2] New York General Business Law § 349.
[3] *Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 641 (S.D.N.Y. 2013).



---

[4] *See* Deposition of David Cavill, Representative for Palisades, dated January 4, 2021 ("Palisades Dep.") at 62-63, attached as Exhibit B to the Declaration of Brian L. Bromberg ("June 4 Bromberg Decl."), dated June 4, 2021 (Dkt. 163-4); June 4 Bromberg Decl., Ex. C. (Dkt. 163-5) (filed under seal).

[5] *See* June 4 Bromberg Decl., Ex. C.

[6] *Id.*



There is also common, class-wide proof that the Defendants did not send any notices of assignment to class members.[9] The Palisades Defendants do not even try arguing that they sent any class member a notice of assignment. The Houslanger Defendants offer three ways in which they send notices of assignment to class members: (1) through initial communications under 16 U.S.C. § 1692g; (2) through Consent to Change Attorney forms in the underlying state court proceedings and (3) through legal process such as income executions.[10] None of these communications satisfy the requirements for a notice of assignment laid out in *Musah* and subsequent cases. Notices sent pursuant to § 1692g do not satisfy the requirements of notice.[11] Similarly, a notice of a change in attorney does not adequately inform a judgment debtor that a

---

[7] Palisades Dep. at 174-75.

[8] *Id.* at 178.

[9] June 4 Bromberg Decl., Ex. E, Request for Admission No. 99 (Dkt. 163-7); June 4 Bromberg Decl., Ex. F, Request for Admission No. 102 (Dkt. 163-8).

[10] Houslanger Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 ("Houslanger Mem."), dated July 5, 2021, at 14 (Dkt. 168). Although the Houslanger Defendants present these as unique to Plaintiff and therefore undermining typicality, these documents are not unique to Plaintiff and are therefore better analysed in the context of commonality.

[11] *See Musah*, 962 F. Supp. 2d at 640 (finding that requirements of Section 1692g "has nothing to do with . . . the requirement to give a debtor notice that the debt has been assigned").

judgment has been assigned—especially when almost all class members will have received a default judgment and therefore would not have known that a change of attorney form had even been filed, let alone the significance of such a form. Finally, the execution notice itself cannot prove notice of assignment because notice must come *before* the new owner of the judgment attempts to collect on it.[12] Regardless, the sufficiency of these purported notices of assignment is a question of law that can be resolved equally as to all class members; it does not present individualized issues that would defeat certification.

In light of this evidence, there is a common answer to the Houslanger Defendants' question about how Plaintiff can prove that each class member did not receive a notice of assignment: if neither the assignors nor the Defendants sent out notices of assignment then there is nothing for the class members to have received.

For the second common issue at issue in this case – whether Defendants violated the FDCPA and GBL[13] by collecting on a debt where there has been no notice of assignment— Defendants again fail to offer a compelling reason why it cannot be answered through common proof. *Musah* and numerous follow-on cases have established that liability under §§ 1692e(3) and 1692e(5) of the FDCPA automatically flows from collection efforts in the absence of a

---

[12] *See Rumfelt v. Midland Funding LLC*, No. 18-CV-6420 FPG, 2019 WL 1902784, at *6 (W.D.N.Y. Apr. 29, 2019) ("[A] debtor could state an FDCPA claim against an assignee for conducting collection activities *before* the debtor had been given notice of assignment." (emphasis added)).

[13] The Palisades Defendants accuse Plaintiff of failing to provide sufficient evidence of a violation of GBL § 349. This is not the case. The type of FDCPA violation alleged in this case – attempting to collect on a debt in the absence of a notice of assignment – is also a violation of GBL § 349. *See Rumfelt*, 2019 WL 1902784, at *10 ("To the extent that [plaintiff] alleges that [defendant] violated § 349(a) by misrepresenting that it was entitled to pursue collection activities against [plaintiff] before he had been notified of an assignment, the Court permits [plaintiff's] § 349(a) claim to proceed."). The evidence for each of the claims is therefore identical and certification of a class for the FDCPA claims should also lead to certification for the GBL claims.

notice of assignment.[14]

The Houslanger Defendants direct all of their attention on their liability under § 1692e(3), which requires meaningful attorney review.[15] Contrary to the Houslanger Defendants' assertion, there is no need to conduct an inquiry into their review of every single class members' file. *Musah* established that, as a matter of law, "where the judgment was assigned to a third party, § 1692e(3) requires that an attorney seeking to collect that judgment engage in a review [of] the case file sufficient to determine that the judgment debtor received notice of the assignment."[16] Since, for the reasons described above, none of the class members received a notice of assignment, any review that the Houslanger Defendants conducted was deficient.[17] The Houslanger Defendants do not dispute Plaintiff's ability to prove violations of § 1692e(5) on a class-wide basis.

The Palisades Defendants argue that they cannot be liable because Plaintiff has focused entirely on the actions of the assignor of the judgment rather than Palisades and therefore no

---

[14] *See Musah*, 962 F. Supp. 2d at 641 (violation of § 1692e(3)); *Rumfelt*, 2019 WL 1902784, at *7 (violation of § 1692e(5)); *Baltazar v. Houslanger & Assocs., PLLC*, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *8 (E.D.N.Y. Aug. 16, 2018), report and recommendation adopted, No. 16CV04982JMAAKT, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018) (violation of § 1692e(5)); *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-CV-7539 (MKB), 2016 WL 1274541, at *11 (E.D.N.Y. Mar. 31, 2016) (violation of § 1692e(5)).

[15] *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 301 (2d Cir. 2003).

[16] *Musah*, 962 F. Supp. 2d at 641; *see also Baltazar*, 2018 WL 3941943, at *8 ("[A]n attorney seeking to collect a judgment, which includes that of the assignee, has an independent duty to conduct a meaningful review of the file, which should include a determination of whether the debtor received notice of the assignment.").

[17] The Houslanger Defendants' reliance on *Jenkins v. Pech*, No. 8:14CV41, 2015 WL 3658261, at *17 (D. Neb. June 12, 2015), is misplaced for this reason. Whereas the § 1692e(3) claim in *Jenkins* turned on whether a lack of meaningful review in each case led to errors in a communication with debtors, an inherently fact-specific question, here the lack of meaningful attorney review is established through the Houslanger Defendants' failure to recognize that no notice of assignment had been sent out before initiating collection efforts. All the Court (or jury) need determine is whether any notice of assignment was sent; if not then the attorney review was deficient.

common conduct is "fairly traceable to the actions of the defendants to this action."[18] This drastically misreads the operative pleadings and Plaintiff's motion for class certification. Both the Second Amended Complaint and Plaintiff's opening brief put the onus of providing the notice of assignment to class members on both the assignors and Defendants.[19] This accords with post-*Musah* rulings that, even though "it is the assignor's obligation to provide" the notice of assignment under New York law, the assignee still has an obligation to ensure that the judgment debtor has received a notice of assignment.[20] If the assignor has not provided the notice of assignment then the assignee must do so itself before it can initiate collection efforts.[21] Moreover, Defendants violated the FDCPA and GBL in a common way through their collection efforts.

As discussed in greater detail above and in Plaintiff's opening brief, one common question that a class action can resolve is whether the class members received adequate notices of assignment but the second question is whether Defendants' collection efforts in the absence of a notice of assignment violate the FDCPA and GBL.

The Palisades Defendants also claim that the common answers to these questions will necessitate "mini-hearings on the merits of each individual case"[22] but never explain why. To the contrary, as described above, each of the two common questions that this case poses are amenable to common answers through class-wide evidence.

---

[18] Palisades Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification and to Appoint Class Counsel ("Palisades Mem."), dated July 5, 2021, at 14 (Dkt. 175).

[19] Second Amended Complaint, dated August 29, 2019 (Dkt. 114), ¶ 90; Plaintiff's Motion for Class Certification and to Appoint Class Counsel, dated June 4, 2021 (Dkt. 163), at 4.

[20] *Moukengeschaie*, 2016 WL 1274541, at *11.

[21] *Musah*, 962 F. Supp. 2d at 640 (discussing how an assignee may satisfy the FDCPA by ensuring that a judgment debtor receives a notice of assignment).

[22] Houslanger Mem. at 13.

## II.       Plaintiff is a Typical Class Representative

Plaintiff is a typical class representative because just like every other putative class member he was subject to post-judgment collection efforts from Defendants without having received adequate notice of the assignment of the judgment against him. The class claims, including Plaintiff's claims, do not turn on the validity of the underlying judgments being enforced. Rather, the claims are based on Defendants' post-judgment collection efforts regardless of whether the judgment is valid or whether it was a contested or default judgment. Plaintiff's state court proceedings are therefore irrelevant to his claims and do not render him an atypical class representative.

The Palisades Defendants argue that Plaintiff fails to satisfy typicality because he does not have a claim under 15 U.S.C. § 1692e(5) like the other class members.[23] Specifically, the Palisades Defendants assert that they could not have threatened Plaintiff under the FDCPA because their first action was to garnish his wages. There is a split of authority as to whether § 1692e(5) bars unlawful collection efforts that are actually undertaken as opposed to threatened.[24] Within that split, the interpretation of § 1692e(5) that encompasses unlawful acts as well as threats better accords with the intent and purpose of the FDCPA as set forth in *Bradshaw v. Hilco Receivables, LLC*,[25] and *Sprinkle v. SB&C Ltd.*[26]

In any case, the Court need not resolve the split here because the specific action taken in this case—garnishing Plaintiff's income—also counts as a threat for purposes of § 1692e(5). As the Sixth Circuit has explained in an analogous context,

---

[23] 15 U.S.C. § 1692e(5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."

[24] *See Hackett v. Midland Funding LLC*, No. 18-CV-6421 FPG, 2019 WL 1902750, at *8 n.2 (W.D.N.Y. Apr. 29, 2019) (noting but not resolving this split).

[25] *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 730-31 (D. Md. 2011).

[26] *Sprinkle v. SB&C Ltd*, 472 F. Supp. 2d 1235, 1246-47 (W.D. Wash. 2006).

> The alleged conduct of filing and maintaining an invalid lien for a month can also fairly be characterized as a threat to take an action that cannot legally be taken within the meaning of § 1692e(5). . . . This is so because even if the least sophisticated consumer, or indeed any consumer, would view [the lien] as an actual attempt to collect [the debt], the attempts would nonetheless embody an ongoing threat that [the debt collector] would force the sale of her home or refuse to voluntarily release the lien.[27]

An income execution operates similarly to a lien and involves the same "ongoing threat" of further unlawful action. Another court in this Circuit has already concluded that such legal process can constitute a violation of § 1692e(5). In *Baltazar v. Houslanger & Associates, PLLC*, the Court found that Plaintiff stated a claim for a violation of § 1692e(5) based on lack of notice of assignment where the judgment debtor did not receive any direct communication from a debt collector before being subject to collection efforts but instead learned of the restraining notice from his bank.[28] Plaintiff, like all other class members, has a § 1692e(5) claim.

The Houslanger Defendants do not contest that Plaintiff's claims are typical but instead identify three "unique defenses" that purportedly render Plaintiff atypical. None of those "defenses" are unique or pose an obstacle to certification. First, the Houslanger Defendants note that, under the reasoning of *Musah*,[29] they were not obligated to file in court a notice of assignment before initiating collection efforts.[30] However, *Musah* and its progeny require notice

---

[27] *Currier v. First Resol. Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014) (internal quotations marks and citations omitted); *see also Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017) (citing *Currier* approvingly for the proposition that "alleged illegal conduct 'can also fairly be characterized as a threat to take [that illegal action]'").

[28] *Baltazar v. Houslanger & Associates, PLLC*, 2018 WL 3941943, at *10. *Rumfelt*, 2019 WL 1902784, at *8, on which the Palisades Defendants rely, is distinguishable because the debtor only identified the threat to take legal action. The Court found that filing a complaint was not threat of action but instead the action itself. An income execution, by contrast, involves an ongoing threat to garnish wages. It is both an unlawful act in itself *and* a threat to engage in unlawful action.

[29] *Musah*, 962 F. Supp. 2d at 639.

[30] Houslanger Mem. at 13.

of assignment to the judgment debtor, even if it is not filed in court.[31] Moreover, the whole class is subject to the defense that they received adequate notices of assignment.

Second, the Houslanger Defendants assert that Plaintiff had actual notice of the assignment. They point to three ways in which Plaintiff may have had notice of the assignment: (1) a December 21, 2021 letter and accompanying notice;[32] (2) a Consent to Change Attorney form that was filed in the underlying state court action; and (3) the income execution that garnished Plaintiff's wages. None of these communications are unique to Plaintiff—all, if not most, of the class members would face an identical defense. Moreover, none of these communications satisfy the requirements of *Musah* and subsequent cases for the reasons discussed in Part I, *supra*. Defendants' contention that Plaintiff received actual notice is not unique to Plaintiff, is resolvable as a matter of law, and can be resolved on a class-wide basis.

Finally, both the Houslanger and Palisades Defendants claim that Plaintiff lacks Article III standing. An opposition to class certification is an odd means by which to challenge Plaintiff's standing to bring this case. Nevertheless, Plaintiff suffered a tangible injury when money was taken from his bank account due to Defendants' unlawful collection practices.[33] Although Defendants later returned Plaintiff's money to him, they did not compensate him for the period of time in which he did not have access to that money.[34] They also continue to claim

---

[31] *Id.*; *see also Moukengeschaie*, 2016 WL 1274541, at *11 ("[U]nder New York law, an assignee may not attempt to collect on an assigned judgment until the consumer has actual notice of the assignment.").

[32] Plaintiff never received this letter and notice. McCrobie Dep. at 210 and Errata Sheet. Nevertheless, his receipt is beside the point because the letter does not constitute notice of the assignment as a matter of law.

[33] *See* McCrobie Dep. at 10.

[34] *See* Declaration of Christopher McCrobie, dated July 25, 2021, ¶ 4.

that Plaintiff owes them money and a debt is a form of intangible injury.[35]

### III.   Plaintiff is an Adequate Class Representative

Plaintiff can adequately represent the class in this action. Defendants' objections to Plaintiff's adequacy are of two kinds: (1) he lacks a sophisticated understanding of the FDCPA and civil procedure and ████████████████████████████████████ ███████████████[36] Neither of these objections offer a valid basis for finding Plaintiff inadequate.

### A.  Plaintiff has demonstrated sufficient knowledge of the case and has been actively involved as a class representative

Defendants' first objection downplays and ignores Plaintiff's demonstrated knowledge of his claims and exaggerates the sophistication necessary to be a class representative in a consumer action. "The bar for showing sufficient knowledge is quite low."[37] "[A] class representative's ignorance alone does not prove inadequacy of class representation."[38] Plaintiff easily clears the bar for adequacy.

During his deposition, Plaintiff demonstrated his knowledge of the basic legal theory of the case. He testified that he is suing Defendants because "under the [FDCPA] the original creditor is supposed to file forms in the City Court of Buffalo, which were never filed properly,

---

[35] *See* Palisades Mem. at 7 (stating that Plaintiff is required to repay the garnished funds). The Palisades Defendants' separate but related argument that other class members lack standing is addressed in Part IV, *infra*.

[36] The Houslanger Defendants also argue that Plaintiff is inadequate because his claims and defences to those claims are unique, Houslanger Mem. at 14-15, but those arguments are addressed in the context of Plaintiff's typicality. *See Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (claim that named plaintiff is subject to unique defences "belongs under the typicality inquiry").

[37] *Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y. 2012) (quoting *Morangelli*, 275 F.R.D. at 119).

[38] *Kelen v. World Fin. Network Nat. Bank*, 295 F.R.D. 87, 93 (S.D.N.Y. 2013).

and the original purchaser of the debt is supposed to notify me, which never happened."[39] He explained that before the income execution he had never heard of either the original judgment creditor or Palisades,[40] and that it caused him distress to learn that "a company that I have never heard of is, for lack of terms, stealing money from my paycheck, which I use to, you know, support my family with."[41]

Plaintiff has also demonstrated his understanding of the role and responsibilities of a class representative. He understands a class action is where "one person represents a large group of people going after, in this case, the defendants, for . . . wrongful wrongdoing."[42] He described how his role is to "represent a large group of people" and this would involve "go[ing] to court" and "view[ing] documents, legal documents."[43] He also knows his "name would be on most of the paperwork" and he has to "attempt to make what would be in the overall best judgment and best decision for everyone in the class action suit."[44] That understanding comfortably exceeds the "low" threshold that a class representative must satisfy.[45]

Plaintiff has also played an active role in the litigation. He was involved in the decision to file the initial and amended complaints,[46] and has spent time reviewing papers and information before they are submitted to Defendants or the Court,[47] including answers to Defendants'

---

[39] McCrobie Dep. at 130; *see also id.* at 188-89 ("[The] original seller of the debt should have filed a form with the City of Buffalo, and it was never done, and I should have received notification in the mail stating that they sold their debt . . . to the next collector, and that was never done also.").
[40] *Id.* at 199, 206-07.
[41] *Id.* at 130.
[42] *Id.* at 137.
[43] *Id.* at 139-40.
[44] *Id.*
[45] *Flores*, 284 F.R.D. at 129.
[46] McCrobie Dep. at 12.
[47] *Id.* at 140.

discovery requests and Defendants' document production.[48] On top of this, Plaintiff has now

been deposed and answered all questions put before him. He then reviewed the deposition

transcript and completed an errata sheet.[49] This effort is reinforced through Plaintiff's supporting

declaration accompanying Plaintiff's opening brief.[50] All of this provides ample support to

conclude that Plaintiff is an adequate class representative.[51]

Defendants ignore the relevant standards for adequacy and instead present adequacy as a

bar so insurmountable that hardly any class representative could pass it. The Defendants fault

Plaintiff for not conducting his own investigation into their wrongdoing and instead relying on

his attorneys.[52] The Houslanger Defendants accuse Plaintiff of being an inadequate class

representative because he does not know whether his alleged debt continues to accrue post-

judgment interest.[53] The Palisades Defendants claim it is not enough that Plaintiff reviewed all

---

[48] *Id.* at 165-66, 176-77.

[49] *See* McCrobie Dep. and Errata Sheet, generally.

[50] *See* Declaration of Christopher McCrobie, dated June 4, 2021 (Dkt. 163-1), ¶¶ 19-20. Although the Palisades Defendants urge this Court to ignore the declaration as self-serving and inconsistent with Plaintiff's deposition testimony, Palisades Mem. at 19 n.9, they do not identify any inconsistences. Moreover, declarations of class representatives are commonly accepted as evidence of adequacy. *See Flores*, 284 F.R.D. at 130 ("[P]laintiffs' affidavits can properly satisfy evidence [of] adequacy.").

[51] *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (adequacy satisfied by "responding to extensive written discovery requests and sitting for lengthy depositions"); *Diaz v. Residential Credit Sols., Inc.*, 299 F.R.D. 16, 20 (E.D.N.Y. 2014) (adequacy satisfied where plaintiff reviewed all pleadings before filing, understood the claim was brought on behalf of others, understood she was to act in the best interest of class members, and had knowledge of the claims).

[52] *Compare* Palisades Mem. at 18 (Plaintiff "did not conduct any investigation regarding the claims in this action"), *and* Houslanger Mem at 16 (Plaintiff did not know the details of the investigation into "the allegation that the Houslanger Defendants initiated post-judgment remedies on behalf of creditors all over the State of New York without proper documentation") *with* McCrobie Dep. at 123-24 (noting his reliance on lawyers for any investigation into Defendants' wrongdoing).

[53] Houslanger Mem. at 15.

pleadings before filing but should also have personally drafted and revised those pleadings.[54] They also disparage Plaintiff's adequacy because he did not understand, on the spot, a judicial opinion or how costs may be allocated if his claim is unsuccessful.[55] Many practicing lawyers would fail to satisfy these requirements, let alone the least sophisticated consumer that the FDCPA is designed to protect.[56]

More egregiously, Defendants have in many instances asserted that Plaintiff failed to answer questions that he did, in fact, answer. For example, the Houslanger Defendants assert that Plaintiff "has a very limited understanding of what a class action is and his role as a class representative,"[57] but as shown by the quotes above, Plaintiff understands class actions and his responsibilities as a class representative and has acted in accordance with those responsibilities.

Similarly, the Defendants wrongly claim that Plaintiff did not understand the role each of the various Defendants play in this action.[58] Although Plaintiff honestly admitted that he can have trouble "keeping . . . all the different collectors' names straight,"[59] he nevertheless

---

[54] Palisades Mem. at 18.

[55] *Id.* at 18-19; *see also Casale v. Kelly*, 257 F.R.D. 396, 412 (S.D.N.Y. 2009) (holding that it is "irrelevant that both named plaintiffs were unaware of potential liability for defendants' fees and costs").

[56] Defendants cite cases invariably involving far more serious problems with adequacy than a lack of sophistication. *See, e.g.*, *Russell v. Forster & Garbus, LLP*, No. 17-CV-4274(JS)(AYS), 2020 WL 1244804, at *4 (E.D.N.Y. Mar. 16, 2020) (plaintiff did not communicate with lawyer until a year and a half after complaint was filed and had not seen the complaint until just before deposition); *Moskowitz v. La Suisse, Societe D'Assurances sur la Vie*, 282 F.R.D. 54, 62, 72-73 (S.D.N.Y. 2012) (plaintiffs only became aware of lawsuit before their deposition, did not authorize the filing of the lawsuit in their names, and did not know who was making litigation decisions); *Scott v. New York City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004) (plaintiffs were unfamiliar with the complaint, the nature of class actions, and their responsibilities as class representatives).

[57] Houslanger Mem. at 18.

[58] *Id.* at 15; Palisades Mem. at 18.

[59] McCrobie Dep. at 126.

demonstrated that he knows Palisades is the entity attempting to unlawfully collect from him,[60] Asta is the parent of Palisades,[61] both Asta and Palisades therefore have ownership of the debt,[62] and both Asta and Palisades were responsible for retaining the Houslanger Defendants to collect against him.[63] The Defendants do not and cannot explain how these answers render Plaintiff inadequate as a class representative.[64]

In the same vein, Defendants accuse Plaintiff of having "no input in case strategy or the prosecution of this lawsuit" and lacking "any input on the strategic decisions of this matter,"[65] even though he testified to numerous ways in which he actively participated in this lawsuit. He made the decision to obtain legal representation, file a complaint, amend the complaint, and seek class-wide relief.[66] He also reviewed all pleadings and discovery responses in addition to sitting for an all-day deposition. Defendants have twisted Plaintiff's humble admission that he is "not a lawyer" and does not "know all the legal in and outs"[67] and ignored his testimony about all the active steps he has taken as class representative.

Plaintiff has demonstrated sufficient knowledge of the case and involvement in its prosecution to demonstrate that he would be a more than adequate class representative.

[REDACTED]

---

[60] *Id.* at 23.

[61] *Id.* at 13.

[62] *Id.* at 13, 155.

[63] *Id.* at 155, 175.

[64] The Palisades Defendants do not attempt to square Plaintiff's straightforward explanation for adding Asta as a defendant with their assertion that Plaintiff "had no information, knowledge or understanding as to . . . why Asta was added as a defendant in this action." Palisades Mem. at 18-19.

[65] Houslanger Mem. at 16; Palisades Mem. at 18.

[66] McCrobie Dep. at 12-13, 137-38

[67] *Id.* at 140.





## IV.    There is Predominance

The common answers in this case predominate over any individualized differences between the class members. In arguing against predominance, Defendants largely repeat their arguments against commonality and typicality which have been addressed above.



The Houslanger Defendants present five issues that they claim present individualized issues that predominate over the common answers described above: (1) whether the debt at issue was properly assigned to the Palisades Defendants, (2) whether the assignor sent a notice of assignment, (3) whether class members received a notice of assignment, (4) whether the class members' judgment is valid, and (5) whether the Houslanger Defendants could lawfully enforce these judgments. These issues are either irrelevant or can be resolved through common proof.

The first and fourth issues that the Houslanger Defendants identify are not relevant. The class claims do not require any deficiency in the chain of title of the judgments. Plaintiff can identify the assignors and the assignees who were responsible for ensuring that the class members should receive notices of assignment and that is enough. Similarly, the class claims do not require proof of any judgments' validity or invalidity.

The remaining issues are dealt with in greater detail above but the bottom line is that they are susceptible to common, class-wide proof and do not require individualized inquiry. In particular, there is evidence that the Palisades Defendants agreed to take on the burden of sending out notices of assignment to all class members from the assignors and then failed to do so. If Defendants failed to send out notices of assignment then the class members could not receive them and, accordingly, any collection efforts would be unlawful. None of this requires delving into the specifics of each class members' collection file.[76]

The Palisades Defendants argue that there is no predominance because of Plaintiff's

---

[76] *Vu v. Diversified Collection Services, Inc.*, 293 F.R.D. 343, 356 (E.D.N.Y. 2013), is inapposite because that case involved an attempt to create a class out of the breakdown of an otherwise generally-applicable policy concerning when communications were sent to prospective class members. In this case, by contrast, Plaintiff can establish by common evidence that the relevant communications, *i.e.*, notices of assignment, were not sent at all.

unsuccessful attempt to vacate the state court judgment against him.[77] As Plaintiff has reiterated, liability in this case does not turn on whether or not the underlying judgment was valid. Each class member may have their own unique journey through the legal system that culminated in a judgment against them but none of that is relevant to whether or not they received an adequate notice of assignment before Defendants engaged in collection efforts against them.

The Palisades Defendants argue elsewhere that there will need to be an individualized analysis of each class members' standing. Although Plaintiff has Article III standing as discussed in Part II, *supra*, the Palisades Defendants claim that other class members may lack standing because any collections efforts were pursuant to a valid judgment and therefore did not result in an injury.[78] This just reframes their argument about valid judgments defeating liability in the language of standing. A valid judgment does not render Defendants' collection efforts lawful and therefore does not render class members' injuries uncognizable. Plaintiff has tailored the class to account for collections efforts by the Houslanger Defendants involving income executions or restraining notices, *i.e.*, involuntary post-judgment collection mechanisms that target specific individuals who are thereby harmed.[79] This limitation ensures that class membership is limited to victims of unlawful collection efforts, which is the violation that matters for standing purposes.

## V.   There is Superiority

The superiority of the class action flows from common answers that a class resolution can provide and the predominance of those common answers over any individualized questions. The Houslanger Defendants concede as such when their only objection to superiority is the absence

---

[77] Palisades Mem. at 21.
[78] Palisades Mem. at 11-12.
[79] *See Martinez v. Cap. One Bank, N.A.*, No. 10-CV-8028 RJS, 2015 WL 4270172, at *3 (S.D.N.Y. July 13, 2015) (finding standing based on defendant's improper freezing of class members' accounts).

of commonality and predominance.[80]

The Palisades Defendants make the curious argument that a class action is not a superior method because Plaintiff has not provided sufficient evidence of Defendants' net worth and therefore statutory damages under the FDCPA. Nothing in the text of 23(b)(3) or case law requires Plaintiff to provide evidence of net worth to establish superiority. Almost all of the cases that the Palisades Defendants rely upon are in the context of class action settlements or involve a net worth close to $0.[81] For class action settlements, where the compensation to all class members is known at the time of application, consideration of how much each class member is receiving is mandated by Rule 23.[82] Ironically, the Palisades Defendants rely on a case holding that the *defendant* rather than plaintiff bears the burden of establishing that its net worth is too small compared to the size of the class.[83]

In any event, the Palisades Defendants' net worth through at least the end of 2019 is publicly available information.[84] As of September 30, 2019, the end of the Palisades Defendants' financial year, they had a combined net worth of almost $90 million.[85] Under the FDCPA's

---

[80] Houslanger Mem. at 19-20.

[81] *See Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016) (class action settlement); *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (class action settlement); *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 482 (E.D.N.Y. 2016) (class action settlement); *Fainbrun v. Sw. Credit Sys., L.P.*, No. CV-05-4364 VVP, 2008 WL 750550, at *1 (E.D.N.Y. Mar. 18, 2008) (net worth of just $5,000).

[82] Fed. R. Civ. P. 23(e)(2)(c); *see also Gallego*, 814 F.3d at 129 ("In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance.").

[83] *See Vandehey v. Client Servs., Inc.*, 390 F. Supp. 3d 956, 964 (E.D. Wis. 2019) ("It makes sense to hold that a defendant's net worth limitation on liability in an FDCPA action is an affirmative defense on which the defendant has the burden of proof, not only because such a limitation is a matter of avoidance, but also because the defendant is in the best position to present evidence of its own net worth.").

[84] The Palisades Defendants went private in late 2020.

[85] *See* Ex. A to Declaration of Brian L. Bromberg, dated July 26, 2021 at PA_004078 (showing assets of over $90 million and liabilities of less than $2 million).

19

damages provisions, the class would be entitled to up to $500,000 in statutory damages alone, let alone actual damages.[86]

## Conclusion

For the above reasons, the proposed classes should be certified.

Dated: July 26, 2021

<div style="margin-left:45%">

/s/ _Brian L. Bromberg_
Brian L. Bromberg
Attorney for Plaintiff

</div>

---

[86] 15 U.S.C. § 1692k(a).