UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────

CHRISTOPHER McCROBIE,

          Plaintiff,

    v.                                                      15-CV-18-LJV-MJR
                                                             DECISION & ORDER
PALISADES ACQUISITION XVI, LLC, *et
al.*,

          Defendants.

───────────────────────────

On January 6, 2015, the plaintiff, Christopher McCrobie, commenced this

putative class action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

§ 1692 *et seq.*[1]  Docket Item 1.  He alleges that the defendants, Palisades Acquisition

XVI, LLC ("Palisades"); Asta Funding, Inc. ("Asta"); Houslanger & Associates, PLLC

("Houslanger & Associates"); and Todd Houslanger attempted to unlawfully collect a

debt from him.[2]  Docket Item 114.

On February 15, 2019, the case was referred to United States Magistrate Judge

Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket

Item 80.  On June 4, 2021, McCrobie moved for class certification, Docket Item 163;

on July 5 and 15, 2021, the defendants responded, Docket Items 168, 175; and on July

26, 2021, McCrobie replied, Docket Item 178.  After Judge Roemer heard oral

argument, Docket Item 185, the parties submitted additional briefing to address whether

───────────────────

[1] McCrobie later amended his complaint to add a claim under New York General
Business Law § 349 ("New York GBL").  *See* Docket Items 7, 114.

[2] The Court refers to Palisades and Asta as the "Palisades defendants" and to
Houslanger & Associates and Todd Houslanger as the "Houslanger defendants."

McCrobie has standing in light of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), Docket Items 189, 191-92, 196, 199.  On March 4, 2022, Judge Roemer issued a Report and Recommendation ("R&R") finding that McCrobie's motion for class certification should be granted and rejecting the defendants' argument that McCrobie and the proposed class members lack standing.  Docket Item 200.

On April 1, 2022, the defendants objected to the R&R on the grounds that Judge Roemer incorrectly concluded that McCrobie and the proposed class (1) have standing, and (2) satisfy the requirements for class certification.  Docket Items 205, 207.  On May 25, 2022, McCrobie responded to the objections, Docket Items 211, 212; and on June 22, 2022, the defendants replied, Docket Items 215, 216.  On August 30, 2022, the Palisades defendants filed a notice of supplemental authority, Docket Item 217, and on September 13, 2022, McCrobie responded, Docket Item 218.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, responses, and replies; and the materials submitted to Judge Roemer.  Based on that *de novo* review, the Court accepts and adopts Judge Roemer's recommendation to grant McCrobie's motion.

**FACTUAL BACKGROUND**[3]

Sometime before 2007, McCrobie "incurred a credit card debt to Providian Financial."  Docket Item 114 at ¶ 13; *see id.* at ¶ 2.  After McCrobie defaulted on the debt, Providian Financial assigned it to Centurion Capital Corporation ("Centurion").  *Id.* at ¶ 16.  Centurion then commenced an action against McCrobie in Buffalo City Court to recover the money.  *Id.* at ¶ 17.

On March 8, 2007, Centurion obtained a default judgment against McCrobie.  *Id.* at ¶ 20.  Because the summons and complaint had been mailed to an old address where McCrobie no longer lived, however, he "had no knowledge" of the action or the default judgment.  *Id.* at ¶¶ 18-19, 21.  Apparently, the default judgment against McCrobie later was assigned to defendant Palisades as part of a purchase of debts referred to as the "Great Seneca portfolio,"[4] and Palisades was substituted as a successor to Centurion in the Buffalo City Court action.  *See* Docket Item 168-4.

On December 12, 2012, defendant Todd Houslanger filed a "consent to change attorney" form substituting defendant Houslanger & Associates as the attorney of record

---

[3] On a motion for class certification, "the plaintiff's pleadings are assumed to be true."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014).  "[T]he court must nevertheless conduct a rigorous analysis to determine whether a class action is appropriate, considering materials outside [] the pleadings and weighing conflicting evidence as necessary."  *Id.*  The following facts are taken from the second amended complaint, Docket Item 114, and the parties' other filings as noted.

[4] *See* Docket Item 114-3 at 2-3 (March 5, 2007, bill of sale between Great Seneca Financial Corporation and Palisades Acquisition XV, LLC); *id.* at 4-5 (March 5, 2007, bill of sale between Palisades Acquisition XV, LLC and Palisades Acquisition XVI, LLC); *see also* Docket Item 114-2 at 2-3 (email from Todd Houslanger explaining that McCrobie's debt was included in the "pool of matters" covered by the bills of sale); Docket Item 114-7 at 11 (portion of Asta financial report explaining that its subsidiary, Palisades, purchased the "Great Seneca portfolio" in March 2007).

for Palisades in the Buffalo City Court action against McCrobie.  *Id.* (capitalization

omitted).  Then, on August 28, 2014, an attorney from Houslanger & Associates "signed

an income execution" on behalf of Palisades "represent[ing] that Palisades had the right

to execute upon the judgment obtained by Centurion."  Docket Item 114 at ¶¶ 42-43, 46,

49; *see* Docket Item 114-1.  The income execution "commanded [McCrobie] to begin

sending 10% of his income" to pay off his debt and "threatened" that if McCrobie did not

comply, the income execution would be sent to McCrobie's employer for the purpose of

garnishing his wages.  Docket Item 114 at ¶¶ 47-48.  The defendants "subsequently

received $572.45 by executing on [McCrobie's] income."  *Id.* at ¶ 61.

    In March 2015—after he commenced this action—McCrobie contacted the

Houslanger defendants through his attorney and requested a "copy of the chain of title

proving that Palisades had a right to enforce the [Buffalo City Court] default judgment

obtained . . . by Centurion."  *Id.* at ¶ 62; *see* Docket Item 114-2.  In response, the

Houslanger defendants provided the bills of sale for the Great Seneca portfolio.  Docket

Item 114 at ¶ 62; *see* Docket Item 114-3 at 2-5.  But the bills of sale do not "reference"

McCrobie, Centurion, or the default judgment against McCrobie.  Docket Item 114 at ¶¶

62-63; *see* Docket Item 114-3 at 2-5.

    Several months later, McCrobie moved to vacate the default judgment against

him.  *See* Docket Item 25-2.  The Buffalo City Court initially granted the motion to

vacate, and the defendants then returned the money they had obtained from McCrobie.

Docket Item 168-6; *see* Docket Item 163-3 at 152.  But on May 22, 2017, the Buffalo

City Court reinstated the default judgment against McCrobie because his motion to

vacate had been untimely.  Docket Item 168-7.  Although the Buffalo City Court ordered

4

McCrobie to repay the money the defendants had recovered from him, *id.*, McCrobie has not done so, Docket Item 163-3 at 98-99.

McCrobie now asserts that the defendants' enforcement of the default judgment was impermissible for several reasons. As relevant to the instant motion to certify, he argues that "neither Palisades nor any of its alleged predecessors in interest ever took the steps required . . . to take assignment of the judgment or to enforce the judgment." Docket Item 114 at ¶¶ 51-53. More specifically, he says that "for an assignment of a judgment to take effect, the *assignor* must notify the judgment debtor of the assignment." *Id.* at ¶ 24 (emphasis in original) (citing *Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 639-40 (S.D.N.Y. 2013); *Chase Bank USA, N.A. v. Cardello*, 27 Misc. 3d 791, 794, 896 N.Y.S. 2d 856, 857-58 (N.Y. Civ. Ct. 2010)). McCrobie explains that this requirement prevents debt collectors from attempting to collect debts that they do not have the right to collect. *Id.* at ¶ 25.

A Palisades representative has "testified that when Palisades purchases a new debt portfolio, it will typically 'send an introductory letter [to the debtors] which provides the [identity of the] previous creditor and the current creditor [and] announc[es the] assignment of their debt.'" Docket Item 200 at 6 (quoting Docket Item 163-4 at 143-44)). But the Palisades defendants do not know whether Centurion or the Great Seneca Financial Corporation—the seller of the Great Seneca portfolio—sent a notice of assignment to McCrobie. Docket Item 163-7 at 29-30. The Houslanger defendants say the same. Docket Item 163-8 at 10-12.

**LEGAL PRINCIPLES**

I.     **STANDING**

"Article III restricts federal courts to the resolution of cases and controversies."

*Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (citation omitted).  "That

restriction requires that the party invoking federal jurisdiction have standing—the

personal interest that must exist at [both] the commencement of the litigation" and "at all

stages of review."  *Id.* (citations and internal quotation marks omitted).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact

that is concrete, particularized, and actual or imminent; (ii) that the injury was likely

caused by the defendant; and (iii) that the injury would likely be redressed by judicial

relief."  *TransUnion*, 141 S. Ct. at 2203 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

561 (1992)).  Concrete harms can be "tangible"—such as physical or financial harm—or

"intangible."  *Id.* at 2204.  But a statutory violation alone does not confer standing;

rather, "Article III standing requires a concrete injury even in the context of a statutory

violation."  *Id.* at 2205 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

In a class action, the class must "be defined in such a way that anyone within it

would have standing."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).

But it is not necessary for "each member of a class [to] submit evidence of personal

standing."  *Id.* at 263 (collecting cases); *see also Chen-Oster v. Goldman, Sachs & Co.*,

2022 WL 3586460, at *3 (S.D.N.Y. Aug. 22, 2022) (explaining that while *TransUnion*

"clarified that '[e]very class member must have Article III standing in order to *recover*

individual damages,'" it "did not address the 'distinct question' of whether each member

of the class must demonstrate standing during class certification" (alteration and emphasis in original) (quoting *TransUnion*, 141 S. Ct. at 2208 & n.4)).

"At the class certification stage, a named plaintiff must prove standing by a preponderance of the evidence." *Pryce v. Progressive Corp.*, 2022 WL 1085489, at *5 (E.D.N.Y. Feb. 17, 2022).

## II.    CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 sets out the requirements for certification of class actions.  First, the court must "ascertain whether the claims meet the preconditions of Rule 23(a)."  *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).  Those preconditions are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  The four preconditions often "are referred to as 'numerosity, commonality, typicality, and adequacy of representation.'"  *Martinez v. Avantus, LLC*, 343 F.R.D. 254, 261 (D. Conn. 2023) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013)).

A proposed class also must meet at least one of the three requirements in Rule 23(b).  *Umbrino v. L.A.R.E. Partners Network, Inc.*, 585 F. Supp. 3d 335, 355 (W.D.N.Y. 2022).  Here, McCrobie asserts that the proposed class satisfies Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to

class members predominate over any questions affecting only individual members[] and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

**DISCUSSION**

**I.      STANDING**

The defendants argue that for several reasons Judge Roemer incorrectly concluded that McCrobie and the other proposed class members have standing. Docket Item 205 at 10-17; Docket Item 207 at 6-10; *see* Docket Item 200 at 27-30 (the R&R's standing analysis).  McCrobie responds that each of the defendants' standing arguments fail.  Docket Item 211 at 5-9; Docket Item 212 at 5-12.

**A.      Whether McCrobie Has Standing**

Judge Roemer determined that McCrobie has standing because "the [allegedly] improper income execution, combined with the garnishment of McCrobie's wages, the deprivation of his funds for a period of time, and the fact that [the] defendants still maintain they have a right to collect a debt from McCrobie, constitute an injury-in-fact resulting from [the] defendants' unlawful conduct."  Docket Item 200 at 30.  The defendants object to that conclusion and say that McCrobie has not suffered an actual, concrete injury.  Docket Item 205 at 10-17; Docket Item 207 at 6-10.  This Court agrees with Judge Roemer.

Both sets of defendants argue that McCrobie was not harmed by the execution of his wages because Palisades—not McCrobie—had the right to the money at issue. Docket Item 205 at 13-14; Docket Item 207 at 8-10.  To support that assertion, they rely on the default judgment against McCrobie and the Buffalo City Court's denial of McCrobie's motion to vacate the default against him.  Docket Item 205 at 13 (arguing that the Buffalo City Court "concluded that Palisades had the right to collect the debt at issue from [McCrobie], and that the income execution and garnishment were proper"); Docket Item 207 at 10 (arguing that McCrobie "unequivocally did <u>not</u> have the right to the money garnished from [his] wages," as "later confirmed" by the Buffalo City Court (emphasis in original)).  In essence, the defendants make an argument based on collateral estoppel—though only the Palisades defendants explicitly invoke that doctrine.  *See* Docket Item 215 at 7-8.

 "When determining the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state."  *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008) (alteration, citation, and internal quotation marks omitted).  Under New York law, collateral estoppel—also called issue preclusion—applies where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 94 (2d Cir. 2005) (alterations and citation omitted).

According to the defendants, the Buffalo City Court determined that McCrobie did not have a right to the money at issue and that the defendants' enforcement of the

default judgment was legal and permissible. *See* Docket Item 205 at 13 (arguing that the Buffalo City Court "concluded . . . that the income execution and garnishment were proper"); Docket Item 207 at 9-10 (asserting that the Buffalo City Court established "the validity of the garnishment"); *see also* Docket Item 215 at 8 ("[T]he Buffalo City Court ruled that [McCrobie's] wages had been 'rightfully obtained by execution of a valid judgment.'" (quoting the Buffalo City Court decision)). But that is not quite correct.

The Buffalo City Court denied McCrobie's motion to vacate the default judgment because the motion was untimely. *See* Docket Item 68 at 8 ("Delays [] shorter in length [than] the delay in this case have [been] held to be too long to permit a defendant [to] successfully mov[e] to vacate a default judgment[.]"). So in refusing to vacate the default judgment, the Buffalo City Court did not consider the validity of the judgment, let alone decide whether the defendants' efforts to enforce that judgment were appropriate. *Id.* ("Failure to demonstrate a valid excuse for the delay in moving to vacate a default . . . precludes consideration of any potentially proffered defenses.").

Moreover, the Buffalo City Court never even decided the merits of the underlying claim against McCrobie: The judgment against him was entered by default by the clerk of the court. Docket Item 25-2 at 9; *see* N.Y. C.P.L.R. § 3215(a) (explaining that when a defendant has failed to appear and the claim "is for a sum certain," the plaintiff may apply to the clerk for a default judgment and the clerk "shall enter judgment for the amount demanded in the complaint"). The defendants therefore cannot argue that McCrobie is precluded from challenging the validity of the underlying default itself.

And even if they could—that is, even if McCrobie were precluded from contesting the validity of the judgment—he still could contest the means of enforcing that judgment.

10

As Judge Roemer explained, the validity of the default judgment "has no bearing on whether [the] defendants' post-judgment collection efforts violated the FDCPA and New York law."  Docket Item 200 at 28.  In fact, "[t]he Second Circuit previously made this very point, in this very case."  *Id.* (citing *McCrobie v. Palisades Acquisition XVI, LLC*, 664 F. App'x 81, 83 (2d Cir. 2016) (summary order)).  And as McCrobie argues, "the existence of a judgment does not allow a debt collector to simply take a judgment debtor's money through improper legal process."  Docket Item 212 at 8.  In other words, a party cannot use improper methods even to collect a debt that it has the right to collect or even to enforce a judgment that it is entitled to enforce.

The defendants therefore cannot use the Buffalo City Court proceedings to establish the propriety of the execution of McCrobie's wages because the Buffalo City Court did not "actually and necessarily decide[]" the merits of the underlying claim against McCrobie or the means of executing the default judgment.  *See Hoblock*, 422 F.3d at 94.  The Houslanger defendants' attempt to distinguish the cases cited in the R&R fails for the same reason: it assumes that, unlike the plaintiffs in those cases, McCrobie was not entitled to the money at issue based on a prior court decision.  *See* Docket Item 207 at 9-10.

The Houslanger defendants also argue that McCrobie "cannot possibly have incurred any harm based on any allegedly misleading or deceptive practices by the [defendants]" because he "received actual notice" of the assignment of his debt.  Docket Item 207 at 8.  In support of their argument, they cite a portion of McCrobie's deposition in which he was shown "a letter from Houslanger & Associates" advising him that Palisades was the assignee of McCrobie's debt.  *See* Docket Item 168-9 at 14-21.

Initially, McCrobie said that he recalled receiving that letter in December 2012, *id.* at 15; later, he said that while the letter looked "familiar," he "was never mailed [the letter] at [his] house," *id.* at 21.  But even setting aside the fact that McCrobie's deposition testimony does not "indisputably" establish that he received the letter as the Houslanger defendants suggest, Docket Item 207 at 8, the argument that McCrobie was not injured because he received actual notice of the assignment from the defendants fails for two reasons.

First, McCrobie asserts that the *assignor* of his debt was required to provide notice of the assignment.  Docket Item 114 at ¶¶ 24-25 (explaining that requiring notice by the assignor prevents dishonest debt collectors from falsely claiming a right to collect debt they do not own).  Here, the Great Seneca Financial Corporation assigned the default judgment against McCrobie to Palisades.  Docket Item 114-3 at 2-5.  So even if McCrobie received actual notice of the assignment from Palisades—either directly or through the Houslanger defendants—the execution of his wages by those defendants still may have been deficient because Palisades was not the assignor of McCrobie's debt.

Second, the issue of whether McCrobie received adequate notice goes to the merits of his claims—not to standing.  The Second Circuit has "cautioned against arguments that would essentially collapse the standing inquiry into the merits . . . [and] conflate the threshold question of the plaintiff's standing under Article III with the question of whether he has a valid claim on the merits."  *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (alterations, citations, and internal quotation marks omitted).  That is precisely what the Houslanger defendants attempt to do by asserting

that receipt of adequate notice—which may bear on the deceptiveness of the defendants' actions—is dispositive of standing. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 n.5 (2d Cir. 2018) (FDCPA case noting that the defendants' argument that certain misinformation was too "trivial" to cause a sufficient injury "[went] to the materiality of the allegedly false information in the defendants' communications" rather than standing).

In short, McCrobie alleges that the defendants deprived him of more than $500 for several months by enforcing a default judgment using practices that violate the FDCPA and New York law.[5]  *See generally* Docket Item 114.  And he says that the defendants claim that they still can enforce that judgment if they so choose.  Docket Item 196 at 2-3.  For the reasons stated above and in the R&R, those allegations establish that McCrobie suffered a concrete and particularized injury sufficient to confer Article III standing.

> **B.   Whether Other Class Members Have Standing**

McCrobie seeks to certify a class "consisting of consumers with New York addresses" who:

a.  Within one year of August 27, 2015;

b.  Had an income execution forwarded to their employer bearing the signature of Todd Houslanger (or any other attorney employed by Houslanger & Associates, PLLC); or

---

[5] The Palisades defendants submitted *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022), as supplemental authority relevant to this Court's standing analysis.  Docket Item 217.  But *Perez* is not binding on this Court, and even if it were, it is distinguishable: the *Perez* plaintiff did not allege that the defendants actually collected money from her.  *Perez*, 45 F.4th at 820-21.

c.  Had their bank account restrained after a subpoena and/or restraining notice bearing Todd Houslanger's signature (or any other attorney employed by Houslanger & Associates, PLLC) was forwarded to their bank;

d.  In which Defendant Todd Houslanger and/or Houslanger & Associates, PLLC represented that Palisades Acquisition XVI, LLC[,] was the "current creditor" (or employed any other substantially similar language) by way of assignment; and

e.  Subsequently had their wages garnished, or had money taken from their bank accounts pursuant to post judgment remedies initiated and enforced against them by Defendants Todd Houslanger and/or Houslanger & Associates, PLLC.

Docket Item 114 at ¶¶ 80, 100.

Judge Roemer concluded the "proposed class members have Article III standing" because the proposed class "includes only those debtors who were subject to allegedly unlawful collection efforts by the Houslanger defendants and had money taken from them through either an income execution or a bank account garnishment."  Docket Item 200 at 30 n.13.  The Palisades defendants object that for two reasons McCrobie's "proposed class definition necessarily includes individuals that did not suffer an injury in fact."  Docket Item 205 at 14.

First, they argue that some members of the proposed class may have received notices of assignment from the defendants and thus were not injured by lack of notice.[6] *Id.* at 15.  Second, they argue that because the class definition does not identify "conduct that allegedly violates the FDCPA or [New York] GBL § 349," it "includes all

---

[6] The defendants may intend to argue that McCrobie's class definition includes individuals who received notices of assignment from the assignors of their debts. Docket Item 205 at 15.  But those individuals are not included in the Court's modified class definition set forth at the end of this section for the reasons explained below.  *Infra* at 15-17.

consumers who were subject to judgment execution without regard to whether such execution was in any way deceptive, unlawful, excessive, or unauthorized." *Id.* at 15-16.  Those arguments are unavailing.[7]

As already discussed, McCrobie argues that any notices of assignment provided by the defendants were insufficient because Palisades was the assignee of the debts at issue, not the assignor.  Docket Item 114 at ¶¶ 24-25.  So even if class members received notices of assignment from the defendants, as the Palisades defendants argue, they still suffered the same injury as McCrobie: financial harm after allegedly insufficient notice.  Likewise, the argument that the proposed class lacks standing because it includes consumers whose debt was lawfully collected is meritless because the alleged deceptive practice here is the collection of debts from consumers who did not receive a notice of assignment from the assignors of those debts.

And at the class certification stage, McCrobie has adequately established that consumers whose debts were included in the Great Seneca portfolio did not receive the appropriate notice from the Great Seneca Financial Corporation, the assignor of those debts.  First, an email from Todd Houslanger suggests that the Great Seneca Financial Corporation did not provide notices of assignment: when McCrobie's attorney raised questions about the contents of the bill of sale for the Great Seneca portfolio, Houslanger responded, "That is the assignment . . . . This [is] how they did things at the

---

[7] The Palisades defendants provide another reason why the class members lack standing: "[T]he proposed class definition is [] inadequate and deficient because it omits a critical component of [McCrobie's] circumstances—that a state court determined that the enforcement of the judgment against him was valid."  Docket Item 205 at 16. But the Court does not see how that argument—which goes to the commonality and typicality of McCrobie's claims, *see infra* at 19-23—bears on standing.

time of the assignment." *See* Docket Item 114-2 at 3-4.  Second, as of August 2015, a portion of Asta's website states that after a debt portfolio purchase, Asta will not "burden[]" the assignor with "overwhelming requests for documentation, or ongoing communications with debtors whose accounts have been sold."  Docket Item 114 at ¶ 74 (quoting Docket Item 114-8 at 2).  In fact, the website touted the fact that Asta minimizes sellers' "post-sale involvement in every way."  Docket Item 114-8 at 2.

So Houslanger's email and Asta's website suggest that the defendants did not expect assignors of debt to take any action to assign the debt other than executing a bill of sale.  *See* Docket Item 200 at 7-8 (noting the lack of "affirmative evidence" that the original holder of McCrobie's debt "sent notices to any of the judgment debtors").  McCrobie therefore has established by a preponderance of the evidence that consumers included in the Great Seneca portfolio did not receive notices of assignment from the assignor of their debts.

The Court acknowledges, however, that the class definition—which does not address the issue of notice or include only those consumers with debts sold in the Great Seneca portfolio—may be overly broad.  For example, it might include consumers whose debt was transferred by a different assignor who did provide notice of assignment.  The Court therefore will "redefine the class to address any standing concerns and ensure the class has standing."  *Chen-Oster*, 2022 WL 3586460, at *3; *cf. Alexander v. Azar*, 370 F. Supp. 3d 302, 326 (D. Conn. 2019) ("[S]tanding issues are better addressed by redefining the class than by decertifying it entirely.").  Accordingly, the class shall consist of consumers who (1) meet the criteria set forth in McCrobie's proposed definition, and (2) purportedly owed a debt included in the Great Seneca

portfolio.  That additional requirement should ensure that the class includes only consumers who did not receive notice of assignment from the assignor of their debts.

With that modification, the Court adopts Judge Roemer's recommendation finding that the putative class members have standing.

### C.     Standing as to Asta

Finally, the Palisades defendants argue that McCrobie and the putative class members lack standing for another reason as well: they say that McCrobie has not established that Asta caused him or other class members a concrete injury because he "alleges only that Asta was Palisades' parent corporation," Docket Item 205 at 11, and because the proposed class definition does not mention Asta, *id.* at 16.

The Palisades defendants rely on *Mahon v. Tico Title Insurance Co.*, 683 F.3d 59 (2d Cir. 2012), in which the Second Circuit addressed whether a class action plaintiff had standing against two entities that had not injured her but that shared a common parent with another defendant that allegedly had injured her.  *Id.* at 61.  But *Mahon* is inapposite: Asta does not merely *share* a parent corporation with Palisades; it *is* the parent corporation of Palisades.  *See* Docket Item 114 at ¶ 11; *see also Pryce*, 2022 WL 1085489, at *10 (declining to apply *Mahon* to evaluate standing against a parent corporation because "the putative class representative in *Mahon* did not name the compan[ies'] shared corporate parent").

It is true that allegations of a parent-subsidiary relationship, without more, are not enough to establish standing against a parent corporation.  *See, e.g.*, *Pryce*, 2022 WL 1085489, at *10 (no standing against parent corporation because plaintiff did not establish "any facts that would support a reasonable inference of [the subsidiary's]

17

actual or apparent authority to act on behalf of [the parent corporation]").  But McCrobie alleges more here.  For example, he alleges that the other defendants acted on Asta's behalf and at Asta's behest by collecting debt owed to Asta.  *See* Docket Item 114 at ¶¶ 95, 113; *see also id.* at ¶¶ 62, 66-68; Docket Item 114-4 at 2 (press release titled "Asta Funding Completes Purchase of $6.9 Billion Portfolio").  Indeed, he provided an Asta financial report stating that Asta "has the power to direct the significant activities of [Palisades] via its ownership and service contract."  Docket Item 114-7 at 11.  And that report and a second financial report recount Palisades' purchase of the Great Seneca portfolio and discuss the portfolio as one of Asta's assets.  *Id.* at 11, 53, 55; Docket Item 114-6 at 13, 55.

At this stage, those allegations suffice to establish that Asta jointly caused McCrobie's and the other class members' injuries.  *See Cassese v. Wash. Mut., Inc.*, 262 F.R.D. 179, 185 (W.D.N.Y. 2009) (certifying class action against parent company where plaintiff alleged "direct control" of the subsidiary by the parent corporation and showed that the parent corporation's "financial statements include earnings derived from the . . . activities of [the subsidiary]").  McCrobie and the other class members therefore have standing against Asta, as they do against the other defendants.

## II.   CLASS CERTIFICATION

Judge Roemer also determined that McCrobie and the proposed class satisfy the requirements for class certification.  Docket Item 200 at 12-27.  More specifically, he concluded that they meet the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), *id.* at 12-23, as well as the predominance and superiority requirements of Rule 23(b), *id.* at 23-27.  The defendants do not object to Judge

Roemer's numerosity determination, so the Court adopts the recommendation that the numerosity requirement is met.[8]  But the defendants object to each of Judge Roemer's other conclusions regarding the class certification requirements, *see* Docket Item 205; Docket Item 207, and this Court therefore addresses each of those requirements in turn.

### A.   Commonality and Typicality

Rule 23(a) requires that a putative class action present "questions of law or fact common to the class" and that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Judge Roemer noted that those two requirements "tend to merge into one another" and addressed them together.  Docket Item 200 at 13-19.  So this Court does the same.

Judge Roemer found that "McCrobie has identified two common questions of fact and law at the core of this dispute": (1) "whether the proposed class members received adequate notice of the assignment of their judgments to Palisades"; and (2) "if adequate notice was not received by class members, whether the post-judgment collection efforts by the . . . defendants . . . violated the FDCPA and [New York] GBL § 349."  *Id.* at 14.

---

[8] That conclusion is not altered by the modified class definition.

McCrobie's original class definition encompassed an estimated 8,800 to 11,000 individuals.  *See* Docket Item 200 at 12-13.  For a presumption of numerosity, at least 40 of those individuals must have owed debts included in the Great Seneca portfolio. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members.").  The Court finds it exceedingly unlikely that of the approximately 10,000 debts the Houslanger defendants collected or attempted to collect on behalf of the Palisades defendants, fewer than 40 were sourced from the Great Seneca portfolio—which included debts worth an estimated $6.9 billion. Docket Item 114 at ¶ 67.

Accordingly, the Court is satisfied that the modified class exceeds 40 members.

He also found that "the harm that McCrobie has allegedly suffered in having post-judgment [] remedies taken against him without notice that his debt had been assigned[] is the same harm suffered by each class member." *Id.* at 15 (alterations, citation, and internal quotation marks omitted).  Therefore, he concluded, McCrobie satisfies Rule 23's commonality and typicality requirements. *Id.* at 13-19.  The defendants object to that conclusion on several grounds.  Docket Item 205 at 17-21; Docket Item 207 at 10-13.

First, the Palisades defendants argue that the R&R "presents insurmountable commonality problems that can be resolved only through litigation on a class-member-by-class-member basis."  Docket Item 205 at 17.  More specifically, they take issue with Judge Roemer's conclusion that the defendants likely treated all the debts in the Great Seneca portfolio the same way. *Id.* at 18.

But contrary to the Palisades defendants' argument, the record supports that conclusion. *See supra* at 14-16.  In fact, as the Palisades defendants repeatedly reiterate, representatives for the defendants "unequivocally testified that notice of assignment is sent to each and every consumer."  Docket Item 205 at 15, 18; Docket Item 215 at 10, 12; *see* Docket Item 163-4 at 143-44, 149; Docket Item 168-8 at 3-4. That testimony suggests that the class members were treated uniformly and supports Judge Roemer's analysis.  For the same reason, there is no merit to the Palisades defendants' argument that McCrobie relies on the pleadings alone to establish commonality and typicality, *see* Docket Item 205 at 19; the record establishes that the class members were treated similarly with respect to the notice that was or was not adequate under the law and that they did or did not receive.

Next, the Palisades defendants argue that McCrobie's claims are not typical of the class because of the Buffalo City Court decision denying McCrobie's motion to vacate the default judgment against him. *Id.* According to the Palisades defendants, that decision "affirmed" the defendants' execution of the default judgment and thus provides a "unique" defense against McCrobie's claim that may not be available against the claims of other class members.[9] *Id.* But Judge Roemer addressed—and correctly dismissed—the argument that the Buffalo City Court proceedings render McCrobie's claims atypical, Docket Item 200 at 15-16, because McCrobie challenges the defendants' effort to *enforce the judgment*, *not the judgment itself*, *see supra* at 10-11. So for the same reason that the Buffalo City Court decision did not deprive McCrobie of standing, *see supra* at 9-11, it does not make McCrobie's claims atypical.

Finally, the Houslanger defendants argue that McCrobie does not meet the commonality and typicality requirements because Judge Roemer incorrectly "presume[d] that the Houslanger [d]efendants failed to provide notice to all putative class members." Docket Item 207 at 11. Therefore, they say, there is no "same set of facts and standardized conduct" to establish commonality. *Id.* But that argument mischaracterizes the R&R: Judge Roemer found that even if the defendants had sent notices of assignment to the class members, it would not change his conclusions as to the commonality and typicality of McCrobie's claims.[10] Docket Item 200 at 17. And that

---

[9] Although they frame it as an adequacy argument, the Houslanger defendants also argue that they have "unique defenses" against McCrobie's claims. Docket Item 207 at 16. More specifically, they say that they can assert defenses based on (1) McCrobie's purported lack of standing and (2) the fact that McCrobie "actually received" notice of assignment. *Id.* But those defenses would be common to all class members.

[10] The Court does not agree with Judge Roemer that "[t]here is *no* evidence" that the defendants sent notices of assignment to class members. *See* Docket Item 200 at

is because the question is not whether notice was given but rather whether any notice given was adequate under the law.

As McCrobie explains, the defendants argue that they provided notice to class members in several ways.  Docket Item 211 at 10-11.  But according to McCrobie, "none of th[o]se communications satisfy the requirements for a notice of assignment." *Id.*  As McCrobie correctly argues, "the sufficiency of these purported notices of assignment is a question of law that can be resolved equally as to all class members; it does not present individualized issues that would defeat certification."[11]  *Id.* at 11.

In other words, the question of whether any notices of assignment provided by the defendants were adequate is common to all class members.  And McCrobie's claim—that notice is insufficient unless provided by an assignor—is typical of the class. While there may be some factual variation among the class members, that does not defeat commonality or typicality because "McCrobie's claims and the proposed class members' claims all depend on the same legal theories."  Docket Item 200 at 15, 17-18; *see Morris v. Alle Processing Corp.*, 2013 WL 1880919, at *9 (E.D.N.Y. May 6, 2013) (noting that "factual variations" among class members could not defeat commonality and typicality because "[t]he named plaintiffs' claims and the proposed class members'

---

17 (emphasis added).  As discussed, the testimony of the defendants' representatives suggests that the class members may have received some notice.  But regardless of whether the defendants provided *some* notice of assignment, the relevant question remains: did the class members receive *adequate* notice?  *See* Docket Item 211 at 14 (arguing that communications from the defendants are "insufficient to provide a notice of assignment as a matter of law even if [McCrobie] had received the [communications]").

[11] In their reply, the Houslanger defendants address the merits of McCrobie's argument.  Docket Item 216 at 9-10.  But they do not explain why that legal theory cannot be addressed on a class-wide basis.  *See generally* Docket Item 216.

claims arise from the same course of conduct . . . , raise common issues of law and fact . . . , and are based on the same legal theories").

Commonality and typicality therefore are both satisfied here.

### B.    Adequacy

A court may certify a class action only if it finds that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). Both the named plaintiff and the named plaintiff's attorneys must be adequate representatives.  *Umbrino*, 585 F. Supp. 3d at 360.  Judge Roemer recommended that this Court find both McCrobie and his attorneys adequate, Docket Item 200 at 20-22, and the Palisades defendants object to his recommendation as to McCrobie's adequacy, Docket Item 205 at 21-24.[12]

For a named plaintiff to be an adequate representative, his "interests must not be antagonistic to those of the remainder of the class."  *Umbrino*, 585 F. Supp. 3d at 360 (citation omitted).  A court also may consider a plaintiff's knowledge of the class action to determine whether he can adequately represent the other class members.  *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (noting that a plaintiff may be inadequate if he has "so little knowledge of and involvement in the class action that [he] would be unable or unwilling to protect the interests of the class against the possibly completing interests of the attorneys" (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995))).  But the Supreme Court has

---

[12] Neither set of defendants argues that McCrobie's attorneys are inadequate, so this Court adopts Judge Roemer's recommendation to find McCrobie's attorneys adequate and appoint them as class counsel.

"expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance."  *Id.* (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966)).  In fact, "[t]he bar for showing sufficient knowledge is quite low," and "plaintiffs are entitled to rely on their counsel for the legal underpinnings of their claims."  *Flores v. Anjost Corp.*, 284 F.R.D. 112, 129 (S.D.N.Y. 2012) (citations omitted).

The Palisades defendants say that there are two reasons why Judge Roemer erred in finding McCrobie to be an adequate representative.  Docket Item 205 at 21-24.

First, they say that "McCrobie cannot be an 'adequate' class representative because he (1) is not a member of the class he purports to represent, and (2) has an inherent conflict of interest with the putative class members."  *Id.* at 23 (footnote omitted).  More specifically, they argue that other class members "allege that their respective judgments are invalid and unenforceable," while the Buffalo City Court determined that the default judgment against McCrobie was valid.  *Id.*  McCrobie responds that the validity of the default judgments against each class member is irrelevant to the question at issue here: "whether or not [the class members] received an adequate notice of assignment before [the d]efendants engaged in collection efforts against them."  Docket Item 212 at 17.

For the same reasons already stated twice, the Buffalo City Court proceedings have no bearing on whether McCrobie belongs to a class alleging insufficient notice of assignment.  And because the Palisades defendants do not further elaborate on how McCrobie's interests are purportedly adverse to the interests of the other class members, this Court concludes that "there is no indication that [McCrobie's] interests are antagonistic to the remainder of the class."  *See* Docket Item 200 at 21.

Second, the Palisades defendants argue that McCrobie lacks sufficient knowledge of the facts of this litigation, the legal bases for his claims, and his attorneys' case strategy. Docket Item 205 at 21-23. But a holistic view of McCrobie's testimony confirms that McCrobie is an adequate representative who understands his responsibilities and the general contours of this litigation.

First, McCrobie accurately described a class action as a lawsuit "against a company or individuals where one person represents a large group of people going after . . . the defendants[] for . . . wrongdoing." Docket Item 163-3 at 136. He understands that as the named plaintiff, he represents others. *Id.* at 9-10 ("[In] the class action suit, I'm the acting person of many people."). And he is able to articulate his responsibilities as a class representative, including reviewing legal documents, attending court, and—most important—making decisions that are in the best interests of the class. *Id.* at 138-40. So McCrobie understands class actions generally.

McCrobie also understands this litigation specifically. He explained that he commenced this action after "things [] were done improperly" in connection with an effort to collect a debt he allegedly owed. *Id.* at 11. He understands that the basis for his claim is inadequate notice of the assignment of his debt and that the other class members have similar claims. *Id.* at 66 (explaining that McCrobie commenced this action to "seek justice for everyone that was wronged" when "things weren't done properly" with "the initial filings," such as when McCrobie "[didn't] receive[] notice or anything else like that"). Although McCrobie could not name the defendants "off the top of [his] head," he understands that he is suing Palisades and the Houslanger defendants. *Id.* at 10-11. And contrary to the Palisades defendants' assertion that

25

McCrobie does not know "why Asta was added as a defendant," Docket Item 205 at 22,

McCrobie was able to identify Asta as an "owner[] of . . . Palisades," Docket Item 163-3

at 14; *see also id.* at 154 ("[To] the best of my knowledge . . . Asta Funding . . . claim[s]

that [it has] ownership of the debt itself, and hired Houslanger & Associates to collect

it.").

It is true that McCrobie was not able to answer some questions during his

deposition, such as whether he perfected an appeal of the Buffalo City Court decision.

*Id.* at 102.  But he repeatedly explained that he is unfamiliar with legal terminology, did

not want to misspeak, and therefore would need to consult with his attorneys to answer

those questions.  *See, e.g.*, *id.* at 74, 94, 99-100, 103, 135.  Similarly, McCrobie

indicated that he relied on his attorneys to investigate the defendants' conduct, *id.* at

123, draft the complaint and the amended complaints, *id.* at 190-91, and determine

case strategy, *id.* at 139.

But that lack of legal knowledge is likely true of many—if not most—class action

plaintiffs, *cf. Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 176 (S.D.N.Y. 2008)

(noting that a named plaintiff need have only "a minimum threshold of knowledge about

the case" (citation omitted)), and McCrobie's reliance on his lawyers does not

undermine his adequacy because he still is personally interested and involved in the

litigation*, see In re Risk Mgmt. Alts., Inc., Fair Debt Collection Practices Litig.*, 208

F.R.D. 493, 506 (S.D.N.Y. 2002) (a plaintiff who "is not a lawyer . . . is not expected to

have a full legal comprehension of all [his] claims"); *County of Suffolk v. Long Island

Lighting Co.*, 710 F. Supp. 1407, 1416 (E.D.N.Y. 1989) ("In complex actions such as

this one, named plaintiffs are not required to have expert knowledge of all the details of

the case, and a great deal of reliance on the expertise of counsel is to be expected."
(alteration, citation, and internal quotation marks omitted)).  For example, he reviews
documents before his attorneys file them, and he met with his attorneys multiple times
to prepare for his deposition.  Docket Item 163-3 at 20-21, 124, 133-34, 164-65, 190-91;
*see also* Docket Item 163-1 at ¶ 19 ("I have been actively involved in this litigation from
the time that it commenced, . . . and I have remained in contact with [my attorneys]
about the status of the case since the time that I authorized the suit.").  And he rejected
an early settlement offer because he felt it was too low and did not think that accepting it
was in the class's best interest.  Docket Item 163-3 at 162-63.

  In sum, this is not the "rare[]" case where the class representative has displayed
an "alarming unfamiliarity with the suit . . . [or] an unwillingness to learn about the facts
underling [his] claims."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D.
332, 345 (S.D.N.Y. 2015).  On the contrary, McCrobie understands his role and
responsibilities as class representative, perhaps best evidenced by his response when
asked why he decided to take on that role:

> Initially, I guess I didn't want to, but after thinking of it [for] some time I
> realized that . . . if there are other cases that were exactly the way mine
> was, how many people did not know what their legal obligations were or
> weren't, and how many were taken advantage of and everything else, . . . I
> felt that if . . . a large group of people . . . were being taken advantage of,
> then a class action suit would be the best route instead of individual cases.

Docket Item 163-3 at 137-38.  That is sufficient.  *See Risk Mgmt. Alts.*, 208 F.R.D. at
506 (plaintiff who understood the allegations in the complaint, reviewed the complaint
prior to filing, and understood her "duties as a class representative and the need to
observe the best interests of those she represents" was adequate).

For those reasons, and because McCrobie's interests are not antagonistic to the interests of the other class members, he is an adequate class representative.

### C.    Rule 23(b) Requirements

Once it is satisfied that the requirements of Rule 23(a) are met, a court may certify a class action if it finds that (1) common questions of law or fact "predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.    Predominance

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."  *Id.*  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."  *Id.* (alteration, citation, and internal quotation marks omitted).  "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."  *Id.* (citation and internal quotation marks omitted).

Judge Roemer found that this action satisfies the predominance requirement because "the factual and legal bases of the class members' claims may be submitted to the Court through generalized proof."  Docket Item 200 at 24.  More specifically, he found that the class members' claims (1) "arise from a common nucleus of operative facts," and (2) rely on "the same legal theory."  *Id.*  He acknowledged that the defendants "have attempted to raise issues that may arguably be subject to individualized proof," but he concluded that "none of the purported individual issues . . . would predominate over the common questions of fact and law presented in the class."  *Id.* at 24-25.

Again, the Palisades defendants object based on the Buffalo City Court proceedings.  Docket Item 205 at 24-25.  They contend that those proceedings demonstrate that "the predominant legal and factual issues will be unique to each class member and will not rely on generalized facts associated with the conduct of [the defendants]."  *Id.* at 25.  But that argument does not address the common legal question of whether *any* notice provided *by the defendants* was sufficient under the FDCPA and New York GBL.  An answer to that question can be achieved through generalized proof and likely will be dispositive of this action's outcome:  If a notice of assignment provided by an assignee is inadequate, each class member will have a claim against the defendants unless the defendants can show that the assignors provided a notice of assignment.  That common legal question therefore predominates over the purportedly "unique" circumstances of each class member.

The Houslanger defendants, on the other hand, argue that the common questions of law and fact do not predominate over the "individualized inquiries into

whether each potential class member received notice in the first place and in what form." Docket Item 207 at 14. But as just discussed, the question underlying the finding of predominance is not whether class members received notice but whether that notice was adequate. Stated another way, the common questions of law and fact that predominate are whether the assignors of the class members' debts provided notice of the assignment and, if not, whether the notice provided by the assignees was sufficient.

Moreover, the record suggests that the class members did not receive notice from the assignor of their debts and that the class members generally were treated the same by the defendants. *See supra* at 14-16; *see also* Docket Item 200 at 17 ("[T]o the extent that Palisades intends to offer evidence that it did, in fact, send a notice of assignment to McCrobie, such evidence would presumably apply to all or many of the class members whose debts were purchased by Palisades, together with McCrobie's debt, in the Great Seneca [p]ortfolio."). If a notice of assignment is adequate only if provided by an assignor, it does not matter what notice the class members received from the defendants, who are assignees. So the common question of what constitutes adequate notice predominates over the "individualized" question of whether the defendants provided notice to each class member. *See* Docket Item 211 at 13 ("[T]he issue of whether any purported notices sent by Palisades satisfied the requirements of the FDCPA and/or New York law is a legal argument or defense that would govern each class members' claim in the same manner, and therefore could also be resolved on a class-wide basis.").

The predominance requirement therefore is satisfied.

### 2.    Superiority

Finally, to certify a class action under Rule 23(b)(3), a district court must find that a class action is the superior method of adjudication.  In assessing superiority, a court considers:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Judge Roemer concluded that this action meets the superiority requirement for several reasons.  Docket Item 200 at 25-27.  First, he noted that a class action will give "individual plaintiffs a method to combine claims" that they otherwise likely would not pursue due to the small potential recovery for each individual class member.  *Id.* at 25-26.  Second, he observed that a class action will "aid potential class members who are unlikely to have knowledge of their rights due to their economic circumstances or other factors."  *Id.* at 26.  Third, he determined that "it is more efficient to decide a single set of facts and single theory for liability in one case, rather than having multiple litigants bring individual actions on the same—or substantially similar—causes of action."  *Id.*  Finally, he noted that there does not seem to be "any other pending litigation related to [the] defendants' collection efforts in the absence of notices of assignment"; that "[t]he instant forum is appropriate because the alleged wrongs took place in New York"; and that he

could identify "no significant difficulties in managing the proposed class action." *Id.* at 26-27. The defendants object to the R&R's superiority findings.

The Palisades defendants contend that a class action is not superior because McCrobie "is asking the proposed class to waive claims of allegedly significant value in exchange for an undisclosed amount of consideration." Docket Item 205 at 25-27. More specifically, they argue that the R&R "proposes incorrectly that a class action is superior based upon [McCrobie's] assertion that the Palisades [d]efendants had a combined $90 million net worth" and that McCrobie "did not offer any evidence of Palisades' individual net worth as a standalone entity." *Id.* Apparently, the Palisades defendants suggest that because of the one percent cap of a defendant's net worth on FDCPA class action recovery, individual claims might be more lucrative for class members. Docket Item 215 at 14.

But for the reasons explained by Judge Roemer in the R&R, Docket Item 200 at 25-26, it seems unlikely to this Court that class members will pursue individual claims, *see also* Docket Item 212 at 19 ("Nothing in the text of 23(b)(3) or case law requires [McCrobie] to provide evidence of net worth to establish superiority."). And if that is so, then the one percent cap will make little, if any, difference.

The Houslanger defendants repeat their argument about "individualized issues." Docket Item 207 at 16-18. Because it would be "unmanageable" to litigate those issues in a class action, they say, McCrobie has not established superiority. *Id.* at 18. But that argument fails for the same reasons it failed in the predominance context: the common legal issue of adequacy of the notices purportedly provided by the defendants predominates, and that can be resolved on a class-wide basis.

For those reasons, and for the reasons articulated in the R&R, a class action is the superior method of litigation here.

## **CONCLUSION**

For the reasons stated above and in the R&R, McCrobie's motion for class certification, Docket Item 163, is GRANTED.  The class shall include consumers who (1) meet the criteria set forth in McCrobie's proposed class definition, and (2) purportedly owed a debt included in the Great Seneca portfolio.  McCrobie's attorneys are appointed as class counsel.

The case is referred back to Judge Roemer for further proceedings consistent with the referral order of February 15, 2019, Docket Item 80.

SO ORDERED.

Dated:      August 18, 2023
            Buffalo, New York


                                  */s/ Lawrence J. Vilardo*
                                  LAWRENCE J. VILARDO
                                  UNITED STATES DISTRICT JUDGE